UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEL BURT<br><br>Plaintiff,<br><br>v.<br><br>NICOLAI RAMOS, in his individual capacity; COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1–5,<br><br>Defendants. | Case No.: 3:24-cv-00662-CAB-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY'S MOTION TO DISMISS; ORDER GRANTING ALCARION'S MOTION TO DISMISS**<br><br>[Doc. Nos. 42, 43] |

On April 10, 2024, Plaintiff Jamel Burt ("Plaintiff") brought a lawsuit pursuant to 42 U.S.C. § 1983 and other causes against Defendant Nicolai Ramos ("Ramos") and Defendant County of San Diego (the "County"). [Doc. No. 1 ("Compl.").] Without seeking leave from the Court, Plaintiff filed an amended complaint on November 27, 2024 against Ramos and the County, as well as Defendants Michael Alcarion ("Alcarion"), Matthew Glisson, David Perkins, Brian Nevins, and Does 1–5 (the "Doe Defendants"). [Doc. No. 17.] Later that same day, Plaintiff withdrew the amended complaint. [Doc. No. 18.] Then, on December 3, 2024, Plaintiff filed a second federal action which named Alcarion, Matthew Glisson, David Perkins, Brian Nevins, and the Doe Defendants. *Burt v. County of San Diego*, No. 24-CV-2255-CAB (S.D. Cal. Dec. 3, 2024) ("*Burt II*"). With

leave from the Court, [*see generally* Doc. No. 33], Plaintiff filed another first amended complaint ("FAC").[1] [Doc. No. 35.] The FAC names Ramos, the County, Alcarion and Does 1–5 as defendants and states causes of action pursuant to 42 U.S.C. § 1983, state law, and the Bane Act.

On May 13, 2025, Ramos filed an answer to the FAC. [Doc. No. 41.] The County and Alcarion each filed a motion to dismiss the FAC. [Doc. Nos. 42–43.] The Court **PARTIALLY GRANTS** the County's motion to dismiss. The Court **GRANTS** Alcarion's motion to dismiss.

## I.   FACTUAL ALLEGATIONS

The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiff. *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).

Plaintiff alleges that on December 18, 2022, Ramos conducted an investigative traffic stop in San Diego County involving Plaintiff as the passenger of the vehicle. [FAC ¶ 1.] During that stop, Plaintiff claims that he was handcuffed and viciously slammed into the concrete because, according to him, Plaintiff refused to answer Ramos's questions. [*See id.* at ¶¶ 2–3.] Specifically, Plaintiff alleges that Ramos "use[d] . . . excessive and unnecessary force includ[ing], but . . . not limited to: grabbing and jerking the handcuffed Plaintiff and slamming him face first into a concrete sidewalk, knowing that [Plaintiff] was handcuffed behind his back and unable to break his fall." [FAC at ¶ 47.] According to the complaint, Ramos' conduct resulted in two broken teeth, a sprained right shoulder, wrist sprains, and contusions on Plaintiff's chest wall and right foot. [FAC at ¶¶ 29–30.]

Plaintiff also alleges the County maintained a de facto policy of allowing its deputies to use force on citizens who were in restraints. [*Id.* at ¶ 31.] And Plaintiff alleges 12 other instances where the County knew of its deputies using excessive force on citizens who were already restrained but failed to supervise, discipline, or train their deputies. [*Id.* at

---

[1] The Court refers to the instant action generally as "*Burt I*".

¶ 33.] Plaintiff alleges the County was aware of several cases where similar allegations have been alleged. [*Id.* at ¶¶ 32–33.]

## II. LEGAL STANDARD

At the pleading stage, the Court looks to whether Plaintiff has plausibly stated a claim: an exercise that draws on judicial experience and common sense. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014). Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Vague and conclusory allegations" concerning government involvement in civil rights violations are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## III. ANALYSIS

Plaintiff's FAC presents seven causes of action under Section 1983: (1) excessive force, (2) retaliation, (3) false arrest, (4) failure to train, (5), failure to supervise, (6) failure to discipline, and (7) *Monell* liability. The FAC also brings an eighth cause of action of assault and battery and a ninth cause of action of a violation of Cal. Civil Code § 52.1 (the "Bane Act").

The County moves to dismiss the fourth, fifth, sixth, and seventh claims against it. The County's motion is based on four arguments: (1) Plaintiff's *Monell* claim is time-barred by the statute of limitations, (2) Plaintiff's *Monell* claim is time-barred by the Court's scheduling order, (3) Plaintiff's fourth, fifth, and sixth claims fail because a municipality cannot be liable under a *respondeat superior* theory, and (4) Plaintiff fails to state facts sufficient to sustain a *Monell* claim against the County. The County did not move to dismiss the Bane Act claim against it.

Alcarion moved to dismiss all claims against him based on four arguments: (1) Plaintiff's supervisory liability claims against Alcarion and the Doe Defendants are time-

barred by the statute of limitations, (2) Plaintiff's supervisory liability claims against Alcarion and the Doe Defendants are time-barred by the Court's scheduling order, (3) Plaintiff fails to state facts sufficient to support his supervisory liability claims against Alcarion, and (4) Plaintiff fails to state facts sufficient to support claims against the Doe Defendants. The Court takes the County's arguments and Alcarion's arguments in turn.

### A. The County's Motion to Dismiss

#### i. Timeliness of Plaintiff's Claim Considering the Statute of Limitations

The County argues that Plaintiff's *Monell* claim is time-barred by the statute of limitations. [Doc. No. 42-1 at 9.] The statute of limitations for this claim expired on December 18, 2024, [*id.*], which is before the FAC was filed on April 29, 2025. The County also notes that Plaintiff did not seek leave to amend his complaint to raise the *Monell* claim until April 10, 2025. [*Id.* at 9–10.]

Plaintiff does not dispute that the FAC was filed after December 18, 2024, but instead argues that the FAC relates back to the date of the original complaint under Fed. R. Civ. P. 15(c)(1)(B), which was April 10, 2024. [Doc. No. 44 at 11–12.] Under Fed. R. Civ. P. 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Plaintiff argues the Court should therefore consider the FAC as filed on April 10, 2024 in assessing whether Plaintiff brought the *Monell* claim within the statute of limitations. [Doc. No. 44 at 12.]

Plaintiff's original complaint, filed in April 2024, named the County under a theory of *respondeat superior* and Cal. Code § 815.2(a). [*Id.*; *see also* Compl.] Plaintiff therefore contends the added *Monell* claim rises out of the same "conduct, transaction or occurrence" as pleaded in the original complaint. The County argues that Plaintiff's original complaint only alleged facts having to do with his claim of constitutional violations by Deputy Ramos

and the County's vicarious liability for those actions—not a *Monell* claim. [Doc. No. 45 at 4.]

The Ninth Circuit has affirmed that "state law, 'not the Federal Rules of Civil Procedure, governs whether in a Section 1983 action an amended complaint relates back to the filing of the original complaint.'" *Palmer v. Arizona*, No. 2:09-CV-01791-JWS, 2011 WL 3290602, at *3 (D. Ariz. Aug. 1, 2011) (quoting *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989)). Therefore, the Court turns to California law and its doctrine of relation back. Under the doctrine of relation back, a court deems an amended complaint to have been filed at the time of an earlier complaint. *Hutcheson v. Superior Ct.*, 74. Cal.App.5th 932, 940 (2022). The doctrine requires that the amended complaint "(1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original [complaint]." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 409 (1999).

To determine whether an amended complaint rests on the same general set of facts for purposes of the statute of limitations, the most important consideration is whether the original pleading gave the defendant adequate notice of the claim. *Hutcheson*, 74. Cal.App.5th at 940. "An amended complaint relates back to the original complaint *even if the plaintiff alleges a new legal theory or cause of action*, so long as the amended complaint is based on the same general set of facts." *Id.* (emphasis added). The County argues that because the original complaint did not provide notice to the County of any defect in its policies or customs, or lapse in its training of deputies, the County did not have adequate notice of the claims against it. [Doc. No. 45 at 4.]

The Court does not find the County's argument compelling. First, Plaintiff pleaded that "Defendant San Diego County employed Ramos as a deputy sheriff and is liable for Ramos' conduct[.]" [Compl. ¶ 8.] Next, Plaintiff pleaded that "The County of San Diego is responsible for the acts of its employees within the course and scope of their employment." [*Id.* at ¶ 37.] Third, Plaintiff pleaded that "[b]y engaging in the acts alleged above, Defendants Ramos and County of San Diego denied those rights to Plaintiff, thus

giving rise to claims for damages[.]" [*Id.* at ¶ 47.]  Finally, Plaintiff pleaded that "the County is responsible for compensation for Ramos' actions." [*Id.* at ¶ 51]. Taken together, these claims meet California's standard for relation back.  Both complaints plead the same general set of facts and use Ramos as the instrumentality for the injury.  *See Norgart*, 21 Cal. 4th at 409. The FAC involves the same injury to Plaintiff and does not plead an additional injurious incident.  *See id*.  Therefore, the Court finds that the *Monell* claim against the County relates back to the original complaint.

    ii.  **Timeliness of Plaintiff's Claim Considering the Court's Scheduling Order**

  The County next argues that because Plaintiff cannot demonstrate good cause for his failure to file an amended complaint by the December 2, 2024 deadline set by the Court's scheduling order, [Doc. No. 12], the Court should dismiss the *Monell* claim against the County. [Doc. No. 42 at 10–11.]  The County argues that Plaintiff knew of the deadline because he filed the *Burt II* claim before the statue of limitations expired and therefore should not be excused for missing the deadline here. [Doc. No. 42-1 at 10–11.]  Plaintiff replies that filing his amended complaint late with leave from the Court, [Doc. No. 33], is not grounds for dismissing the *Monell* claim.

  If a plaintiff seeks to amend a complaint after the deadline established by a pretrial scheduling order, Fed. R. Civ. P. 16 requires that such a request to amend must show good cause for not having amended the complaint within the time specified by the court, as well as excusable neglect if seeking to move after the deadline has already passed.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Nangle v. Penske Logistics, LLC*, No. 3:11-CV-00807-CAB-BLM, 2016 WL 9503736, at *1–2 (S.D. Cal. July 20, 2016). Plaintiff set forth grounds for finding good cause and excusable neglect in his briefing accompanying the request to amend. [*See* Doc. No. 31 at 7–12.]  The Court granted Plaintiff's motion to file the FAC. [Doc. No. 33.]  The County's motion to dismiss on this ground is an attempt to re-visit that decision, which the Court declines to do.

///

### iii.  *Respondeat Superior* Theory

Plaintiff named the County as a defendant in its fourth, fifth, and sixth causes of action alleging liability based on failure to train, failure to supervise, and failure to discipline. The County argues that a public entity can only be held liable for its own actions under Section 1983. [Doc. No. 42-1 at 12.]

In *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691 (1978) (emphasis in original). Plaintiff acknowledges that the County is liable for constitutional violations under Section 1983 only pursuant to *Monell* and agrees to remove the County from claims four through six. [Doc. No. 44 at 18 n.6.] The Court **GRANTS** the motion to dismiss the County with respect to the fourth, fifth and sixth causes of action.

### iv.  Plaintiff's *Monell* Claim

To survive a motion to dismiss a claim under Section 1983, plaintiffs must sufficiently allege facts "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (alteration in original)).

"Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). Put differently, "a municipality sued under Section 1983 is not subject to vicarious liability for the acts of its agents[.]" *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

///

///

### a. Official County Policy

Following *Monell*, "it is well-settled that in claims brought under 42 U.S.C. § 1983, municipalities are liable only for constitutional violations resulting from an official 'policy or custom.'" *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 694). "The 'first inquiry in any case alleging municipal liability under Section 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (quoting *City of Canton, Ohio*, 489 U.S. at 392). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989) (emphasis removed); *see also City of Canton*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

The County argues that the FAC fails to state a *Monell* claim because Plaintiff does not allege specific facts regarding the County's alleged policy of using force on unrestrained individuals. [Doc. No. 42-1 at 15.] But the FAC alleges that the County "maintained a de facto policy of allowing its deputies to use force on citizens who were in restraints" and "maintained a well-settled custom or practice of allowing its deputies to use unnecessary force on individuals in handcuffs." [Doc. No. 35 at ¶¶ 31–32.] Plaintiff also alleges the County was specifically aware of such a policy by *inter alia*, citizen complaints, newspaper articles, lawsuits, and settlements. [*Id.* at ¶¶ 37–38.] Finally, Plaintiff alleges it was "this history of permitting the use of force on restrained individuals, including repeat instances of use of excessive force by Defendant Ramos, that was the moving force behind

Ramos slamming Mr. Burt face first into the ground while Mr. Burt's hands were handcuffed behind his back and the resultant smashing of Mr. Burt's front teeth." [*Id.* at ¶ 42.]

The County argues that the other cases of alleged excessive force on restrained suspects cited by Plaintiff actually resulted in no finding of excessive force and dismissal following a settlement or have yet to be adjudicated. [Doc. No. 45 at 8–9.] At this time, the Court will not delve into the specifics of each of these cases or construe any settled cases in favor of either party. Construing the allegations in the light most favorable to Plaintiff, at this stage of the proceedings, the Court finds that Plaintiff has plausibly alleged that the County has a custom or practice of allowing unnecessary force on restrained individuals, the County was on notice of this custom, and the custom was the moving force behind Plaintiff's alleged injuries. Accordingly, the County's motion to dismiss Plaintiff's *Monell* claim for failure to demonstrate the existence of a policy or custom that could have been a moving force behind Plaintiff's alleged injuries is **DENIED**.

### b. Constitutionality of the County Policy

The County argues that Plaintiff does not identify an *unconstitutional* official policy because using force on restrained individuals may be constitutional in some circumstances. [Doc. No. 42-1 at 13.] In his opposition, Plaintiff argues that the Ninth Circuit has long acknowledged that using significant force on restrained individuals is generally unconstitutional. [Doc. No. 44 at 18.]

The Court agrees with Plaintiff. To state a claim for a constitutional violation under Section 1983, a plaintiff "must plead facts sufficient to show that [his] claim has substantive plausibility[,]" *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 12 (2014) (citing *Bell Atlantic Corp.*, 550 U.S. at 544; *Ashcroft*, 556 U.S. at 662), and using significant force on a restrained individual is frequently unconstitutional. *See, e.g., Davis v. City of Las Vegas*, 478 F.3d 1048, 1057 (9th Cir. 2007) (collecting cases); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003). The Court finds that Plaintiff identified an unconstitutional policy of using significant force on restrained

individuals and declines to dismiss Plaintiff's *Monell* claim based on a failure to identify an unconstitutional official policy.

### c. Unconstitutional Patterns or Practices

Third, the County argues that the complaint does not contain sufficient unconstitutional patterns or practices to state a violation. The County argues that Plaintiff's citation of allegations in other lawsuits do not allege repeated constitutional violations. [Doc. No. 45 at 9.]

As discussed in Section III.A.iv.a, *supra*, the FAC references 12 other cases with allegations of unconstitutional excessive force used on restrained individuals. Again, the Court need not delve into the specifics of each of these cases or construe any settled cases in favor of either party. Construing the allegations in the light most favorable to Plaintiff at this stage of the proceedings, the Court finds that Plaintiff has alleged that the County maintained sufficient unconstitutional practices leading to Plaintiff's injuries.

### d. Sufficiently Pled Facts for Failure to Train Claim

Defendant notes Plaintiff's FAC also includes a *Monell* claim based on a failure to train theory but argues this theory is not viable. "[A]s to a municipality, 'the inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton*, 489 U.S. at 388). This means Plaintiff "'must demonstrate a conscious or deliberate choice on the part of a municipality in order to prevail on a failure to train claim.'" *Id.* (quoting *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008)) (internal quotation marks omitted). "Under this standard, [Plaintiff] must allege facts to show that the County . . . 'disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights.'" *Id.* at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). In the failure to train context, additional instances of misconduct are usually required to

show deliberate indifference, however, a narrow range of possibilities exist where the need for training is so "obvious" as to be satisfied by a single incident. *Connick*, 563 U.S. at 64.

As discussed above, Plaintiff alleged that the County was on notice from repeated incidents that the County's training on the use of force on restrained individuals was inadequate. Therefore, Plaintiff has provided enough facts such that the County will be able to defend Plaintiff's *Monell* claim based on a failure to train. Accordingly, the County's motion to dismiss Plaintiff's *Monell* claim based on a failure to train theory is **DENIED**.

## IV. Alcarion's Motion to Dismiss

### A. Timeliness of Supervisory Liability Claims Considering the Statute of Limitations

Alcarion argues that Plaintiff's Section 1983 claim against him and the Doe Defendants are time-barred because they arose from constitutional violations which are alleged to have occurred on December 19, 2019, and the FAC was filed after the statute of limitations for this claim expired on December 18, 2024. [Doc. No. 43-1 at 9.] The original complaint in *Burt I* did not name Alcarion or the Doe Defendants. [*See generally* Compl.]

Plaintiff acknowledges this issue but argues that Alcarion and the Doe Defendants were put on notice by being named in the *Burt II* action. [Doc. No. 44 at 12–13.] Plaintiff suggests that these claims against Alcarion and the Doe Defendants in the *Burt I* FAC relate back to the *Burt II* complaint filed on December 3, 2024. [*See id.* at 13.] By relating to the December 3, 2024 complaint, Plaintiff alleges that Alcarion and the Doe Defendants had notice before the statute of limitations expired.

As discussed in Section III.A.i, *supra*, the most important consideration is whether the original pleading gave the defendant adequate notice of the claim. *Hutcheson*, 74 Cal. App. 5th at 940. *Burt II* named Defendant Alcarion on the same failure to train theory as the claim brought here, and *Burt II* had a "one-to-one factual overlap" with *Burt I*. [*Burt II*, Doc. No. 14 at 4.] This Court dismissed *Burt II* for impermissible claim splitting, meaning the same controversy existed in *Burt I* and *Burt II*. [*Burt II*, Doc. No. 14 at 1.]

And the Court said it would "consider an amended complaint in *Burt I*." [*Id.* at 5.] Therefore, the Court does not find that the Section 1983 claims against Alcarion and the Doe Defendants are time-barred.

### B. Timeliness of Supervisory Liability Claims Considering the Court's Scheduling Order

As discussed in Section III.A.ii, *supra*, the Court granted Plaintiff's motion to file the FAC. [Doc. No. 33.] Again, Alcarion's motion to dismiss on this ground is an attempt to re-visit that decision, which the Court declines to do.

### C. Supervisor Liability Claims Against Alcarion

Plaintiff alleges that Defendant Alcarion was "aware of the previous incidents in which deputies used excessive force on handcuffed . . . individuals" and "condoned or acquiesced in the abusive behavior of Nicolai Ramos." [FAC ¶¶ 65, 67.] Accordingly, Plaintiff claims Alcarion is liable for damages under Section 1983.

Under 42 U.S.C. § 1983, supervisors are not vicariously liable for the deprivation of constitutional rights by employees. *Ashcroft*, 556 U.S. at 676 (explaining that supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). "Under 'limited circumstances,' the failure to train municipal employees can sustain a *Monell* claim." *Manlove v. County of San Diego*, 759 F. Supp. 3d 1057, 1068 (S.D. Cal. 2024) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 407 (1997)). The Supreme Court has held that in order to make a claim of inadequate police training, a plaintiff is required to prove that the training program was deficient and was deliberately indifferent to the rights of the city's inhabitants. *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). Further, to successfully plead a Section 1983 claim, Plaintiff must set forth facts that each defendant personally violated his constitutional rights. *See Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (explaining that a supervisor-liability theory under Section 1983 requires a showing of personal involvement in the deprivation and a sufficient causal connection to the supervisor's wrongful conduct). This requires an "individualized" assessment of causality

24-cv-00662-CAB-VET

to attribute conduct (or lack thereof) that allegedly forms the basis of a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff has not alleged a sufficiently individualized claim against Alcarion to sustain a Section 1983 failure to train claim. As previously discussed in our *Burt II* order, Plaintiff must plausibly allege that Alcarion was deliberately indifferent to the needs of his subordinates and that the failure to train caused the complained of constitutional harm. [*Burt II*, Doc. No. 14 at 4–5]; *see also Flores*, 758 F.3d at 1158–59. Based on the FAC, it is unclear how Alcarion violated Plaintiff's constitutional rights, other than the conclusory allegation that Alcarion was Ramos' supervisor and therefore responsible for training him. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights."). For example, the allegation that Alcarion "th[r]ough the County . . . [was] aware of the previous incidents" is an entirely conclusory allegation that is not sufficiently individualized. Therefore, the Court **DISMISSES** the claims brought against Alcarion **WITHOUT LEAVE TO AMEND.**[2]

### D. Claims Against Doe Defendants

Similarly, Plaintiff must allege individualized facts to support his claim against each Doe Defendant. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citing *Wiltsie v. California Department of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968)). Plaintiff alleges no facts indicating what individual involvement any Doe Defendant had relating to the constitutional claims at issue. *See Leer*, 844 F.2d at 633 (explaining that a Section 1983 claim requires an "individualized" assessment of causality). Therefore, the Court

---

[2] Although leave to amend is normally granted liberally, s*ee* Fed. R. Civ. P. 15(a), the Court previously provided Plaintiff with detailed instructions about the standards for bringing a *Monell* claim against Alcarion. [*See Burt II*, Doc. No. 14 at 4–5.] Therefore, the Court dismisses the claims without leave to amend.

**DISMISSES** the claims brought against the Doe Defendants **WITHOUT LEAVE TO AMEND**.[3]

## V. CONCLUSION

For the reasons discussed above, the Court:

(1) **DENIES** the motion to dismiss Plaintiff's seventh cause of action against the County;

(2) **GRANTS** the motion to dismiss Plaintiff's fourth, fifth, and sixth cause of action against the County for failure to train, failure to supervise, and failure to discipline;

(3) **GRANTS** the motion to dismiss the Section 1983 claims against Defendant Alcarion and the Doe Defendants.

Defendant should file an answer to the operative first amended complaint by **December 5, 2025**.

It is **SO ORDERED**.

Dated:  November 14, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[3] Again, although leave to amend is normally granted liberally, see Fed. R. Civ. P. 15(a), the Court previously provided Plaintiff with detailed instructions about the standards for bringing a *Monell* claim against the Doe Defendants. [*See Burt II*, Doc. No. 14 at 5.]  Therefore, the Court dismisses the claims without leave to amend.