EUGENE G. IREDALE: SBN 75292
PETER BIBRING: SBN 223981
SARAH MUSUMECI: SBN 328306
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
Telephone: (619) 233-1525
Fax: (619) 233-3221
Email: egiredale@iredalelaw.com
Email: pbibring@iredalelaw.co
Email: smusumeci@iredalelaw.com

JOSEPH C. CRUDO: SBN 263993
JOSEPH C. CRUDO PLC
3990 Old Town Avenue, Suite C101
San Diego, CA 92110
Telephone: (858) 622-7280
Fax: (858) 450-9411
Email: joseph@crudoplc.com

Attorneys for Plaintiff Jamel Burt

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEL BURT,<br><br>                    Plaintiff,<br><br> vs.<br><br>NICOLAI RAMOS, in his individual capacity; COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5,<br><br>                    Defendants, | Case No: 24-CV-0662-CAB-VET<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SAN DIEGO'S AND NICOLAI RAMOS'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT ROGER CLARK**<br><br>Date: July 27, 2026<br>Judge: Hon. Cathy A. Bencivengo<br>Courtroom: 15A<br><br>**[PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT]** |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................3

II.     ROGER CLARK'S PROFESSIONAL BACKGROUND......................................3

III.    OPINIONS ROGER CLARK INTENDS TO PROFFER IN THIS CASE AND THE BASES FOR THOSE OPINIONS ................................................................5

IV.     LEGAL STANDARD ...........................................................................................7

V.      ARGUMENT.........................................................................................................8

    A.  Mr. Clark's Opinions are Reliable Because They are Based Upon His Specialized Knowledge..........................................................................................8

    B.  The Majority of Defendants' Objections Go to the Weight of Mr. Clark's Testimony, Not Its Admissibility and Are Inappropriate for Resolution by Way of a *Daubert* Motion. ........................................................................................9

    C.  Mr. Clark May Opine on Objective Standards of Officer's Conduct. .................11

    D.  Defendants Misconstrue Mr. Clark's Opinions on the Sheriff's Department's Systemic Failure to Discipline for Excessive Force .............................................13

    E.  Mr. Clark Can Opine on What He Observed in the Body Worn Camera Footage, Including Contested Facts, Because It Provides the Necessary Basis for His Opinions. ..............................................................................................................14

    F.  Mr. Clark's Opinions Regarding Strikes to the Head are Relevant. ....................15

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982 (S.D. Cal. July 31, 2020) ................................................................................................................12

*A. K. H by & through Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016)............1

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.* 738 F.3d 960 (9th Cir. 2013).........5, 8

*Baldauf v. Davidson*, No. 1:04-cv-1571-JDT-TAB, 2007 WL 2155967 (S.D. Ind. July 24, 2007) ................................................................................................................6

*Children's Broad Corp. v. Walt Disney Co.*, 357 F.3d 860 (8th Cir. 2004).....................7

*City of Pomona v. SWM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) ..........................5

*Cooke v. City of Stockton*, No. 2:14-CV-00908-KJM-KJN, 2017 WL 6447999 (E.D. Cal. Dec. 18, 2017) ...............................................................................................10

*Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579 (1993)...........................................5

*Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311 (9th Cir. 1995).........5

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004)..........6, 7

*lankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) ..........................................1

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018) ..............................................................1

*Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723 (E.D. Cal. Sep. 16, 2016) ...............................................................................................10

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010).....................................................5, 7, 14

*S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019) .................................................1

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ....................................................6

*Tabares v. City of Huntington Beach*, 988 F.3d 1119 (9th Cir. 2021) ............................1

*Tyus v. Urban Search Mgmt.*, 102 F.3d 256 (7th Cir. 1996)...........................................6

*United States v. Gwaltney*, 790 F.2d 1378 (9th Cir. 1986)…………….....................14

*U.S. v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006)...............................................5

**Rules**

Federal Rule of Evidence 704(a)......................................................................................9

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

## I.  INTRODUCTION

Roger Clark served with the Los Angeles County Sheriff's Department for twenty-seven years. He has been an expert on police practices for twenty-six years. The Ninth Circuit has repeatedly turned to Mr. Clark's testimony when defining the applicable standard of conduct for law enforcement officers. *See, e.g., Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1127 (9th Cir. 2021); *S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019); *Mellen v. Winn*, 900 F.3d 1085, 1088 (9th Cir. 2018); *A. K. H by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1012-13 (9th Cir. 2016); *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007). Despite his extensive history as a recognized authority on police practices, Defendants cherry-pick his testimony and curated excerpts of his report in a transparent effort to manufacture doubt where none exists.[1] Mr. Clark is more than qualified to offer the opinions he sets forth in this case. Further, most of the challenges Defendants make go to the weight of the evidence and call for credibility determinations that are within the sole province of the fact finder, not the trial court. Because Defendants ask this Court to go beyond its gatekeeper function, its motion is frivolous and should be denied.

## II.  ROGER CLARK'S PROFESSIONAL BACKGROUND[2]

Mr. Clark's opinions are based on his extensive training, professional experience, and education. He served as a veteran of the Los Angeles County Sheriff's Department ("LASD") for 27 years, from December 1, 1965, until his retirement on March 31, 1993. His career included six years as a Deputy Sheriff, six years as a Sergeant, and 15 years as

---

[1] Defendants' decision to place the word "expert" in scare quotes in the caption is disrespectful, especially in light of Mr. Clark's extensive and judicially recognized qualifications and violates the Southern District of California Local Rules on professionalism, which provide, in pertinent part: "We expect lawyers to treat adverse witnesses, litigants and opposing counsel with courtesy, fairness and respect." Local Rules for the Southern District of California, Civil Rule 2.1(a)(3)(b)).

[2] The following section is drawn from the "Qualifications section of Mr. Clark's Rule 26 Report, which is attached as **Exhibit A** to the Declaration of Tim Hanna filed in support of Defendants' motion (ECF No. 82-2) and hereinafter referred to as "Clark Report."

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

a Lieutenant. Mr. Clark holds a California Peace Officer Standards and Training (POST) Advanced Certificate and is a graduate of the POST Command College (class #5, 1988), a Master's level program in Police Administration.

Throughout his career, Mr. Clark held various assignments, including working in the Men's Central Jail for a total of three years, first as a staff jail deputy and later as a Lieutenant. He also served as a patrol officer, field supervisor, jail watch commander, station watch commander, and commanding officer of investigative units. He was a field training officer, training new officers in patrol procedures, investigations, apprehension techniques and emergency protocols.

As a Station Detective, Mr. Clark reviewed cases from patrol officers, often requiring follow-up investigations. He was trained in and later taught interview and interrogation techniques. As a Sergeant, he supervised field officers and detectives handling criminal and administrative investigations. Mr. Clark also served on the training staff of LASD's Patrol School, teaching POST-approved patrol tactics and investigative methods.

During his tenure as Watch Commander and Lieutenant, he investigated officer-involved shootings and use-of-force incidents. He also sat on departmental review committees to assess the reasonableness of force and tactics. Mr. Clark gained significant experience in jail administration, overseeing the daily operations of the Men's Central Jail, which housed over 7,000 inmates.

In his role as Administrative Lieutenant of the Reserve Forces Bureau, Mr. Clark helped revamp the Reserve Academy to meet state compliance standards. He also lectured on legal and moral use of force, firearms, and investigative procedures. During the 1984 Olympics, he served as the Intelligence Officer for the Los Angeles Olympics Emergency Operations Center.

For the final five and a half years of his career, Mr. Clark commanded the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which investigated and apprehended career criminals involved in serious crimes such as homicide, robbery, and

P

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

narcotics violations. Under his leadership, N.O.R.S.A.T. achieved over 2,000 arrests without a single shot fired, despite facing dangerous and armed suspects.

In addition to his law enforcement career, Mr. Clark authored Field Operations Directive 89-3, which outlined tactical operations involving detective personnel. Since his retirement, he has testified as an expert in multiple states and federal courts on issues related to use of force, police tactics, and investigations. He has consulted on cases involving police procedures and injuries or deaths during arrests or custody.

Mr. Clark has been involved in numerous civil rights projects, providing expert testimony in cases such as *Border Network for Human Rights v. Otero County, New Mexico* and Tamir Rice's shooting death. He continues to lecture and provide expertise on law enforcement practices, including the use of force and TASER technology. His work as an expert consultant has earned him national recognition, including serving on review boards and testifying in high-profile cases across the country.

### III.   OPINIONS ROGER CLARK INTENDS TO PROFFER IN THIS CASE AND THE BASES FOR THOSE OPINIONS

1. Based on the video evidence, Mr. Burt was never a threat to any deputy and was handcuffed and detained. Accordingly, it is uncontested in the record that Mr. Burt was unarmed and non-threatening. As such, no physical force whatsoever was necessary. Deputies are trained that excessive force is defined as force that is not necessary or appropriate. Accordingly, the force inflicted by Deputy Ramos was excessive and in violation of police standards and policy (as trained).

2. The record supports that Deputy Ramos' grabbing/manhandling Mr. Burt and slamming him to the ground was excessive (i.e., not necessary or appropriate) as trained. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, restraint techniques, and care for individuals taken into custody. The aim of this training is to prevent injuries and/or fatalities, such as occurred in this case (facial injuries). These methods are well-known and proven effective for the safety and welfare of both Deputies and the public. Deputy Ramos utterly failed to follow these standards and their training in this incident.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

3.     Deputies are trained regarding excessive force. Mr. Burt was contained and handcuffed and in the presence of two trained, equipped and armored deputies. He was never a credible threat to any deputy. Therefore, no force was necessary or justified (as trained).

4.     Deputy Ramos failed to employ any of the de-escalation techniques on which he received training to properly implement and were at his disposal before using force against Mr. Burt. As such, he violated policy and training when he threw Mr. Burt, who was handcuffed, to the ground.

5.     Those de-escalation techniques include tactical communication, crisis intervention, advisements, warnings, verbal persuasion, and other commonsense methods. When Deputy Ramos approached Mr. Burt, he was seated on the sidewalk, handcuffed and in Deputy Wilder's control. He therefore posed no reasonable threat to anyone. Deputy Ramos therefore failed to avail himself of any of the well-known and effective methods of de-escalation before resorting to use of force.

6.     The force used by Deputy Ramos to throw Mr. Burt to the ground, was excessive, and violated policy and training.

7.     Unlike many other departments, SDCSD use of force policies and training provide no express limitations on use of force against subjects who are handcuffed or otherwise restrained (other than very narrow limits on chemical agents), no warning that takedowns of such subjects pose risks of serious injury or death, and not even any instruction that the degree to which a subject is restrained and unable to pose a threat should factor in whether force should be used or subject to review. Especially in light of a pattern of use of force against restrained individuals, this creates a de facto policy that deputies need not limit use of force against handcuffed individuals.

8.     SDCSD finds only about one in 3500 uses of force to be out of policy. It is simply unrealistic that such a miniscule number accurately reflects the number of cases where deputies use excessive force, and the statistics show that SDCSD tolerates excessive force and that their process of reviewing force through supplemental reports is effectively a sham that provides no meaningful oversight.

9.     SDCSD's lamentable failure to discipline Deputy Ramos for his obviously excessive force in the Strode case provides a clear demonstration of the department's policy of tolerating physical abuse by deputies and communicated that policy clearly to Deputy Ramos, causing him to use strikingly excessive force in a strikingly similar fashion against Mr. Burt.

## IV.    LEGAL STANDARD

Federal Rule of Evidence 702 requires that a district judge ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 597 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.* 738 F.3d 960, 969 (9th Cir. 2013) (internal citations omitted). To evaluate reliability, the district court must "assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona v. SWM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). These factors are nonexclusive, and "the trial court has discretion to decide how to test an expert's reliability . . . based on the particular circumstances of the particular case." *Id.* quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

"[T]he test under *Daubert* is not the correctness of the expert's conclusions, but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1318 (9th Cir. 1995). But the court is "a gatekeeper, not a fact finder." *Primiano*, 598 F.3d at 566 (internal citations omitted). Accordingly, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance that it would be helpful to a jury." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969-70. If the proposed testimony meets the threshold of relevance and reliability, its proponent is "entitled to have the jury decide upon [its] credibility, rather than the judge." *U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 656 (9th Cir. 2006). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury."

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

*City of Pomona*, 750 F.3d at 1044; *accord Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.")

## V.    ARGUMENT

### A. Mr. Clark's Opinions are Reliable Because They are Based Upon His Specialized Knowledge.

Rule 702 recognizes that "[t]he measure of intellectual rigor [required] will vary by the field of expertise and the way of demonstrating expertise will also vary." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). In the context of "the reliability of non-scientific testimony," such as expert testimony on police practices and use of force, "the *Daubert* factors (peer review, publications, potential error rate, etc.) simply are not applicable" because "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).

Expert testimony on law enforcement practices and the use of force has generally been found to be admissible in cases concerning police misconduct, including when the expert's opinion is based on his experience as a police officer or experience with police training standards and policies. *See, e.g., Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (*en banc*) (expert submitted report regarding training of police dogs and police dog handlers, relying on California's Peace Officer Standards and Training); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 635, 647 (9th Cir. 1991) (relying on the plaintiff's expert as a former New York City police officer); *Baldauf v. Davidson*, No. 1:04-cv-1571-JDT-TAB, 2007 WL 2155967, at *5 (S.D. Ind. July 24, 2007) (stating that "[k]nowledge about police training is a specialized body of knowledge" and "[a] police officer's testimony about that training can be helpful even when the testimony covers matters that are within the average juror's comprehension" (citing *Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998)) (internal quotations omitted);

An expert's specialized knowledge and experience can serve as the requisite "facts or data" on which they render an opinion. In fact, an expert's experience in certain fields

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

can be "the predominate, if not sole, basis for a great deal of reliable expert testimony." *Hangarter*, 373 F.3d at 1015 (citing Fed. R. Evid. 702's advisory committee's note).

Roger Clark's experience and accolades speak for themselves. In his report, Mr. Clark specifies that his opinions "rest on the training given to every California POST certified Officer and the reasonable professional standard of care as expressed and required pursuant to the training provided to every certified Law Enforcement Officer." (Clark Report, pp. 1-2). As a twenty-seven-year veteran of the Los Angeles County Sheriff's Department with a Master's degree from POST Command College, Mr. Clark's qualifications cannot reasonably be questioned.

## B. The Majority of Defendants' Objections Go to the Weight of Mr. Clark's Testimony, Not Its Admissibility and Are Inappropriate for Resolution by Way of a *Daubert* Motion.

As the Ninth Circuit noted in *Primiano*, even "shaky but admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *Children's Broad Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004). Despite this clearly established law, Defendants raise purported issues with Mr. Clark's report that are simply not appropriate for resolution via a *Daubert* motion.

For example, Defendants claim that Mr. Clark should be precluded from providing testimony derived from statistics as he has no background, experience or training in statistical analysis. (Defs' Mot. 2:25-26). They argue that his methodology is unsound as he reaches conclusions on the peculiarity of statistical findings but fails to identify the statistics of comparable law enforcement agencies. (*Id.* 2:27-28.) Defendants further claim that Mr. Clark's statistical analysis fails because it does not indicate how many of the uses of force are analyzed are of the same type, nature, or extent as the force at issue in this case. (*Id.* 4:5-7).

First, Mr. Clark does not need to be a credentialed statistician to offer the opinion that for a law enforcement agency the size of San Diego Sheriff's Department to find on average only *one* of its 3,500 uses of force each year out of policy is "miniscule and utterly

-9-

unrealistic." His conclusions rest not on statistical analysis but on decades of professional training and experience. During deposition, when asked whether his conclusion that the sustained excessive force rate was "miniscule and utterly unrealistic" was based purely on statistics, Mr. Clark testified that it was "based on [his] training experience, and other uses of force that I've reviewed with other departments and their statistics." (See Exh. A, Roger Clark Depo, at 77:6-15.) He explained that he had "never seen such a low determination of excessive force before - -  this is unique, I will say it that way. This is a unique statistic compared to what I have seen in cases that I have had." (*Id.* at 77:15-18.) He further explained that he conducted statistical review in *Enriquez v. Fresno*, a *Monell* case involving deadly force, where his statistical methodology was "approved by the court, and [he was] allowed to comment on them" (*Id.* at 77:19-25; 78:1-3.) Mr. Clark further testified that he was heavily engaged in statistical analysis related to his Command College thesis, a Master's level course. (*Id.* at 78:15-19; 79:17-18.) His faculty advisor held a doctorate in statistics and assisted Mr. Clark in surveying data from law-enforcement agencies statewide. (*Id.* at 78:19-21.) Taken together, his testimony reflects that his opinions rest on the same kind of specialized experience-based methodology that qualifies him as an expert in police practices.

But most importantly, it is not the Court's job to decide whether Mr. Clark is right or wrong. *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969-70. As discussed extensively above, Mr. Clark is more than qualified to opine on generally accepted police policies and practices. If Defendants disagree with the bases for Mr. Clark's conclusions, they will have their chance to cross-examine him on the issues. The same holds true for Defendants' arguments that Mr. Clark should be barred from testifying on patterns and practices based on the Sheriff's Department's failure to discipline Ramos after his use of force on Joshua Strode and twelve other incidents whose underlying findings he did not review. These too, are matters for cross-examination, not exclusion.

Likewise, Defendants' objections to Mr. Clark's opinions, consistent with his experience, with relevant policy and based upon his review of the body worn camera footage, that Mr. Burt posed no threat to anyone, that Ramos failed to employ de-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

escalation techniques and that the County's use-of-force policy was insufficient do not warrant exclusion simply because Defendants intend to offer contrary evidence. Defendants remain free to present whatever evidence they choose to rebut Mr. Clark's opinions. Ultimately, Defendants' grievances are not admissibility issues but are issues of the appropriate weight a fact finder should assign to the opinions. Defendants' motion to exclude should be denied.

### C. Mr. Clark May Opine on Objective Standards of Officer's Conduct.

Defendants contend that Mr. Clark has overstepped his bounds by testifying to legal conclusions. (Defs. Mot. 4:17-6:23.) But under Ninth Circuit law, Mr. Clark may properly offer testimony, without invading the province of the jury, when he discusses deviations from standard police practices. Under Federal Rule of Evidence 704(a), "an opinion is not objectionable just because it embraces the ultimate issue."

In *Smith*, 394 F.3d at 703, the Ninth Circuit held that a rational jury could rely on expert testimony regarding applicable police standards and training to determine whether the officers' use of force was reasonable. Similarly, in *Hangarter*, 373 F.3d at 1017, the court found that an expert's opinion that an insurance company deviated from industry standards was sufficiently distinguishable of whether the company acted in bad faith: "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. *Id*. Indeed a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id*.

At the outset of his report, Mr. Clark makes clear that he is not a lawyer nor a public official who hears and decides cases brought in court. He states that his opinions rest on his POST training and the standards of professional care required by the training provided to Certified Law Enforcement Officers. Plaintiff contends that there will be circumstances where Mr. Clark will be required to aid the jury in understanding those opinions on police standards and training that are couched in terms that also carry legal significance.

One such example is the use of the term "excessive force," which is a term defined and relied upon within police training and standards, and about which Mr. Clark testified

during his deposition and addressed in his expert report. Specifically, Mr. Clark's report states that "[d]eputies are trained that excessive force is defined as force that is not necessary or appropriate." (Clark Report, p. 14). Consistent with this, Mr. Clark testified during his deposition that "in terms of a definition given to every officer," excessive force occurs "when the type, degree, or duration of the force was not necessary or appropriate." (Clark Depo at 60:18-21.) This testimony and report language demonstrate that Mr. Clark's use of the term "excessive force" is not a pronouncement on an ultimate issue of law, but rather reflects a judgment based on law enforcement training and policy, which is the very framework Mr. Clark relies upon based on his decades of practical experience, and expertise in police practices.

Defendants seek exclusion of Mr. Clark's opinions by isolating individual phrases and ignoring the substance and context of the conclusions in which those words appear. An expert may not testify to an ultimate legal conclusion but may testify that an officer's conduct deviated from the training, policies, and professional standards that govern the use of force. Mr. Clark may not simply declare "Defendant used excessive force" as a legal conclusion; he may, however, testify that Deputy Ramos's conduct did not comply with applicable law enforcement guidelines and training that provide the professional framework defining what does and does not constitute excessive force in the field. *Cooke v. City of Stockton*, No. 2:14-CV-00908-KJM-KJN, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017) ("Clark may within the scope of his expertise opine as to whether defendants complied with applicable procedures on the night of the incident"); *Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, at *6 (E.D. Cal. Sep. 16, 2016) ("[P]laintiffs' expert will be allowed to express an opinion on whether the officers' conduct, after they got out of their vehicle, was consistent with POST and constituted part of the totality of circumstances that led to their use of deadly force."). A review of Mr. Clark's actual opinions, in full and in context, confirms that this is precisely what he does. Far from rendering naked legal conclusions, virtually every opinion Defendants challenge is expressly and specifically tethered to a deviation from training, policy, or practice. Mr. Clark's testimony will assist the jury in understanding whether

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

Ramos' conduct fell below the standard of conduct and violated multiple San Diego Sheriff's Department policies, which is properly the subject of admissible expert opinion.

### D. Defendants Misconstrue Mr. Clark's Opinions on the Sheriff's Department's Systemic Failure to Discipline for Excessive Force

In suggesting that Mr. Clark testifies that "sporadic incidents demonstrate a custom or practice" (Defs. Mot. at 6:26-27), Defendants drastically mischaracterize Mr. Clark's report.

First, Defendants wrongly frame Mr. Clark's review of Deputy Ramos's 2017 use of force on Joshua Strode as an attempt to testify "that this one investigation, in and of itself, demonstrates a 'systemic failure' or patterns or practices." (Defs. Mot. at 7:7-17.) Mr. Clark's offers the discussion of the Strode incident — and the Department's failure to discipline Deputy Ramos — not to establish the systemic failure, but to show causation: that, given the systemic failure to discipline deputies for excessive force (which Mr. Clark has already established through the Department's failure to correct deputies' use force incorrectly all but a vanishingly small number of incidents), it is clear that "the failures in these policies directly resulted in the improper use of force in this case." (Defs. Mot. at 7:9-11, citing Clark Report at p. 14.)  As Mr. Clark explains in the following paragraph of his report:

> Deputy Ramos thus used excessive force against a partially handcuffed Strode. SDCSD reviewed the force and deemed it consistent with its policies. Deputy Ramos heard this message clearly and proceeded to use excessive force in a strikingly similar fashion against Jamel Burt. His decision to do so flows directly from SDCSD's policy of tolerating excessive force and its use of force policy that treats takedowns and use of force against restrained individuals as a nonissue.

(Clark Report at p.14.) This testimony on causation, given Mr. Clark's understanding on the operation of law enforcement disciplinary systems, is unquestionably proper expert opinion.

Second, Mr. Clark's testimony that twelve incidents of excessive force against people who are restrained or handcuffs "demonstrates a persistent problem with use of excessive force against handcuffed individuals" (Clark Report at p. 12) constitutes valid

expert opinion, based on his experience with law enforcement agencies, on how many incidents should suffice to place an agency the size of the San Diego County Sheriff's Office on notice of a "persistent problem." The fact that he did not personally review the files and make an independent determination that each constituted a policy violation goes to the weight of his opinion, not its admissibility as proper expert testimony. *See supra*, Part B.

### E. Mr. Clark Can Opine on What He Observed in the Body Worn Camera Footage, Including Contested Facts, Because It Provides the Necessary Basis for His Opinions.

Defendants seek to prevent Mr. Clark from "testifying as to factual conclusions he has reached that that the jury can reach itself without any specialized knowledge." (Defs. Mot. at 8:14-15.) Defendants are correct that experts should testify based on specialized knowledge, but they misconstrue Mr. Clark's opinions.

First, Mr. Clark should be permitted to identify the facts he observed in the body-worn camera video that form the basis of his opinions as to whether a trained officer would belief Mr. Burt posed a threat or a flight risk, or the severity of the force used — opinions he is more than qualified to render. In *A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *2-3 (S.D. Cal. July 31, 2020) the court allowed the defendants' police practices experts to testify to what he observed in the videos because those videos formed the basis for his opinions as to whether the officers acted appropriately. The same is true here. Just as the police practices expert in *A.B.* was allowed to testify about his observations as the basis for his opinions, so too should Mr. Clark. Contrary to Defendants' assertion, such testimony *is* helpful to the jury because Mr. Clark will be able to explain what specific aspects of video evidence he considered in his analysis, and how, and how they support his conclusions. To prevent him from doing so would force him to render his opinions in a factual vacuum, divorced from the very evidence that gives those opinions their foundation, making them incomprehensible to the jury.

Second, several of the opinions Defendants identify most certainly are within the expertise of a policy practices expert, not a lay person. For example, his testimony that the handcuffed Mr. Burt "was under the control of Deputy Ramos at all times during the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

escort," that "no deputy's life was in danger," or that Mr. Burt "was not a risk of flight or assault" or showing signs a trained deputy would interpret as "preparing to 'escape'" (Defs' Mot. at 9:7, 9:15, 9:13-14, 9:17-19) are more than a layperson's observations, but are an expert opinions based on his knowledge and experience with law enforcement training on arrest and control techniques, risk assessment, and use of force.

Finally, Defendants' mischaracterize Mr. Clark's report by characterizing him as offering opinions on what is "contested." (Defs. Mot. 9:21-11:6.) While Mr. Clark in a single instance stated in his report that it was "uncontested in the record that Mr. Burt was unarmed and non-threatening" (Defs. Mot. 10:4-5; Clark Report at p. 14), read in context Mr. Clark's statement makes no representation about defendants' litigation position. Rather, Mr. Clark simply states his opinion, based on the evidence he reviewed — and his training and experience — that a trained peace officer would find no indication that Mr. Burt posed any threat or had any weapons. That opinion provides the factual basis for his subsequent opinion that, based on peace officer training and department policies, no physical force would be required to handle Mr. Burt. Both those opinions are within the proper scope of expert testimony.

### F. Mr. Clark's Opinions Regarding Strikes to the Head are Relevant.

Defendants seek to exclude Mr. Clark's opinions that officers are trained that blows to the head cause serious injury or death, primarily because they suggest "it has never been alleged that Plaintiff was intentionally struck in the head." (Defs. Mot. at 12:1.) But this contention is completely at odds with the complaint, the evidence, and the briefing on motions for summary judgment. Plaintiff has consistently maintained that Deputy Ramos deliberately executed a takedown on the handcuffed Mr. Burt, intentionally throwing him face-first into the ground — a maneuver that Ramos clearly understood would mean Mr. Burt would hit his head on the ground. (*See* Clark Report at pp. 6-7.) Mr. Clark's testimony explains that officers are trained to know about the serious risks of head strikes, which bears on whether Ramos' response to Burt was objectively reasonable.

Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 565. The general test regarding

P

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK

the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). Mr. Clark's opinions on officer training on the risks of head-strikes are relevant and not subject to exclusion.

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' motion to exclude the testimony of police practices expert Roger Clark.

Respectfully submitted,

**IREDALE & YOO, APC**
**JOSEPH C. CRUDO PLC**

Dated: July 13, 2026         /s/ Sarah Musumeci
                             SARAH MUSUMECI

                             Attorneys for Plaintiff Jamel Burt

-16-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ROGER CLARK