EUGENE G. IREDALE: SBN 75292
PETER BIBRING: SBN 223981
SARAH MUSUMECI: SBN 328306
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221
Attorneys for Plaintiffs

JOSEPH C. CRUDO: SBN 263993
JOSEPH C. CRUDO PLC
3990 Old Town Avenue, Ste. C101
San Diego, CA  92110
Telephone: (858) 622-7280
Fax: (858) 450-9411
Email:  joseph@crudoplc.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEL BURT,<br><br>Plaintiff,<br><br>v.<br><br>NICOLAI RAMOS, in his individual capacity, and the COUNTY OF SAN DIEGO,<br><br>Defendants. | CASE NO. 24-CV-0662-CAB-VET<br><br>**DECLARATION OF PETER BIBRING IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Hon. Cathy Ann Bencivengo<br><br>Date:  July 27, 2025<br>Courtroom: 15A<br><br>**[PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS ORDERED BY COURT]** |

## DECLARATION OF PETER BIBRING

I, PETER BIBRING, being duly sworn, hereby declare:

1.      I am an attorney lawfully admitted to practice in this Court and am counsel for Plaintiff in this action. I make the following declaration based on personal knowledge.  If called to testify to the matters set forth herein, I could and would competently testify thereto based on my personal knowledge.

2.      The following describes exhibits filed lodges the follows exhibits in support of Plaintiff's consolidated opposition to the County of San Diego's and Nicolai Ramos's motions for summary judgment.

3.      **Exhibit A** is excerpts from the deposition of Jamel Burt, taken on October 8, 2025.

4.      **Exhibit B** is excerpts from the deposition of Nicolai Ramos, taken on June 12, 2025.

5.      **Exhibit C** is a slow-motion excerpt from Deputy Wilder's body worn camera. Defendants served the source file (CSD000509) on Plaintiff along with their Initial Disclosures.

6.      **Exhibit D** is a San Diego Sheriff's Department photograph of Plaintiff's broken teeth (CSD000482). Defendants provided this document to Plaintiff during discovery.

7.      **Exhibit E** is the Use of Force Supplemental Report by Defendant Nicolai Ramos related to his use of force on Plaintiff on December 18, 2022 (CSD000504-06). Defendants served this document on Plaintiff along with their Initial Disclosures. The highlighted portions on the document were on the original file provided to Plaintiff.

8.      **Exhibit F** is the San Diego County Sheriff's Department Use of Force Statistical Report for the years 2020 to 2021 (CSD004136-46). Defendants provided this document to Plaintiff during discovery.

1                              24-CV-0662-CAB-VET

DECLARATION OF PETER BIBRING IN SUPPORT OF PLAINTIFF'S OPPOSITION
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

9.    **Exhibit G** is the San Diego County Sheriff's Department Use of Force Statistical Report for the years 2021 to 2022 (CSD004147-57). Defendants provided this document to Plaintiff during discovery.

10.    **Exhibit H** is the San Diego County Sheriff's Department Internal Affairs Statistical Report for the years 2020-2021 (CSD00004126-35). Defendants provided this document to Plaintiff during discovery.

11.    **Exhibit I** is the San Diego County Sheriff's Department Internal Affairs Statistical Report for the years 2022-2023 (CSD004158-71). Defendants provided this document to Plaintiff during discovery.

12.    **Exhibit J** is excerpts from the deposition of Plaintiff's police practices expert Roger Clark, taken on May 13, 2026.

13.    On July 5, I accessed the County of San Diego's *Public Records Request Center* website at https://pra.sandiegocounty.gov/, which allows members of the public to review public records requests made by other people and view any documents produced. I accessed request number 24-1543 at https://pra.sandiegocounty.gov/requests/24-1543. That request sought:

> … a csv or excel of: information on civil lawsuits and liability claims that resulted in payments on behalf of the San Diego County Sheriff's Department between Jan. 1, 2014 and the present. Please include all information that is available, such as the date of the settlement, amount of settlement, any incident information such as claimant, and nature of claim (OIS, corrections, excessive force, wrongful death, etc). Please include claims that were settled before cases were filed in the court as well as civil cases that were filed.

A true and correct copy of that request, captured from the County's website, is attached as **Exhibit K**.

14.    The County posted a single PDF file in response to that request, entitled *PRA-NY Times-Damien-SDSO settlements_judgments from 1.1.2014*

2                              24-CV-0662-CAB-VET

*through 7.10.2024 (Report Date 7.10.24).pdf* ("NY Times PRA Response"), a true and correct copy of which is attached as **Exhibit L**.

15.    I converted the NY Times PRA Response PDF file to excel and isolated the entries with the "CAUSE DESC" field listed as "Use of Force." I added the amounts by year and obtained the following:

| Amounts paid by year | |
|---|---|
| 2014 | $ 2,540.00 |
| 2015 | $ 959,287.71 |
| 2016 | $ 2,420,711.29 |
| 2017 | $ 3,000,000.00 |
| 2018 | $ 2,925,350.00 |
| 2019 | $ 10,000.00 |
| 2020 | $ 2,364,822.10 |
| 2021 | $ 470,000.00 |
| 2022 | $ 9,804,250.00 |
| 2023 | $ 12,955,587.00 |
| 2024 | $ 826,950.00 |
| **Total** | **$ 35,739,498.10** |

Over the 10.5 year period covered (from Jan. 1, 2014 to July 1, 2024), the amount above comes out to $3,403,761.72 per year. I also used Excel to count the number of unique entries in the "TITLE" field (which I recognize to be the names of plaintiffs in cases) for the "Use of Force" entries. There were 50 unique names, reflecting 50 plaintiffs paid over the time period.

16.    **Exhibit M** is the San Diego County's Sheriff's Department Use of Force Status Report related to Defendant Nicolai Ramos' use of force on Plaintiff on December 18, 2022 (CSD003562). Defendants provided this document to Plaintiff during discovery.

17.    **Exhibit N** is excerpts from the deposition of Rule 30(b)(6) witness, Lieutenant Ashley Lewis, taken on December 15, 2025.

DECLARATION OF PETER BIBRING IN SUPPORT OF PLAINTIFF'S OPPOSITION
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

18.     **Exhibit O** is the report by San Diego State University Police Department Officer Carrie Hogan related to the incident involving Joshua Strode on June 2, 2017 (CSD003553-59). Defendants provided this document to Plaintiff during discovery.

19.     **Exhibit P** is Officer Carrie Hogan's body worn camera footage related to the incident involving Joshua Strode on June 2, 2017 (CSD003552). Defendants provided this file to Plaintiff during discovery.

20.     **Exhibit Q** is the surveillance footage of Defendant Nicolai Ramos' take down of Joshua Strode on June 2, 2017 (CSD002172). Defendants provided this file to Plaintiff during discovery.

21.     **Exhibit R** is San Diego Sheriff's Department Investigation Report relating to Defendant Nicolai Ramos' take down of Joshua Strode on June 2, 2017 (CSD002017-59). Defendants provided this file to Plaintiff during discovery.

22.     **Exhibit S** is excerpts from the deposition of Rule 30(b)(6) witness, Lieutenant Lon Nguyen, taken on December 19, 2025.

23.     **Exhibit T** is the County of San Diego response to Plaintiff's Interrogatory No. 10. Defendants served this file on Plaintiff during discovery.

24.     **Exhibit U** is the San Diego Sheriff's Department disciplinary file related to Defendant Nicolai Ramos and his take down of Joshua Strode on June 2, 2017 (CSD005795-96).

25.     **Exhibit V** is the Judgment in the case of *Mickail Myles v. County of San Diego, et al*, Case No. 15-cv-01985-JAH-BLM (S.D. Cal.). I retrieved this document from the Southern District of California's PACER system.

26. **Exhibit W** is the Complaint filed in the case of *Miguel Villa v. County of San Diego, et al*, Southern District of California Case No. 20-cv-00537-CAB-NLS. I retrieved this document from the Southern District of California's PACER system.

4                                    24-CV-0662-CAB-VET

DECLARATION OF PETER BIBRING IN SUPPORT OF PLAINTIFF'S OPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed this 13th day of July, 2026, in Los Angeles, California.

/s/ Peter Bibring
PETER BIBRING

DECLARATION OF PETER BIBRING IN SUPPORT OF PLAINTIFF'S OPPOSITION
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,                              ) No. 24-CV-00662-CAB-VET
                                         )
                    Plaintiff,           )
                                         )
v.                                       )
                                         )
NICOLAI RAMOS, in his individual         )
capacity, COUNTY OF SAN DIEGO;           )
MICHAEL ALCARION, in his individual)
capacity; and DOES 1-5,                  )
                                         )
                    Defendants.          )
_____)

VIDEO DEPOSITION OF JAMEL BURT

VOLUME 1, PAGES 1 THROUGH 128

WEDNESDAY, OCTOBER 8, 2025

SAN DIEGO, CALIFORNIA

Reported by:
Kathleen Madden Keenaghan
CSR No. 14577
Job No. 10173500

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,                                ) No. 24-CV-00662-CAB-VET
                                           )
                    Plaintiff,             )
                                           )
v.                                         )
                                           )
NICOLAI RAMOS, in his individual           )
capacity, COUNTY OF SAN DIEGO;             )
MICHAEL ALCARION, in his individual)
capacity; and DOES 1-5,                    )
                                           )
                    Defendants.            )
_____)

VIDEO DEPOSITION OF JAMEL BURT COMMENCING at the hour of 10:12 a.m., on Wednesday, October 8, 2025, taking place at 1600 Pacific Highway, Suite 355, San Diego, California 92101 before Kathleen Madden Keenaghan, Certified Shorthand Reporter No. 14577, in and for the State of California.

Q    -- you were in County --

A    Yes.

Q    County jails?

A    Yes.

Q    And what jails were you in at that time?

A    All of them.

Q    All of them?

A    Yes, I went from downtown to South Bay to George Bailey back downtown to Vista, to George Bailey to prison.

Q    Okay.  Thanks.  Okay.  All right.  Now, we are finally getting to the actual incident itself.  Let me ask you this, do you recall your activities on the date of December 18th, 2022?

A    Yes.

Q    And I'm sorry.  I just kicked the camera.

And you said yes?  I apologize.

A    Yes.

Q    And how did you begin your day?

A    At that casino.  We had gone to the casino sometime on the 17th and -- or it could have been the 18th early in the morning.  It could have been the 18th early in the morning we went to the casino.

Q    And what casino was that?

A    Jamul.

Q    Did you have any luck in the casino that morning?

A    No.

Q    Okay.  All right.  And when you mentioned you were at the casino, was it just you and --

A    Yes.

Q    -- and Perry Lotz?

A    Yes.

Q    Do you go often to the casino with Mr. Lotz?

A    Yes, back then.

Q    What is the nature of your relationship with Mr. Lotz?

A    We are BFFs.

Q    When did you first meet Mr. Lotz?

A    Probably 1996.

Q    And you said back then.  Do you no longer go to the casinos as often?

A    We went for a few months, you know, steady.  After that fell off, we went back to working.

Q    And let's see.  And so at the time of the traffic stop, were you returning from the traffic stop?

A    Yes.

Q    And you are a passenger in a truck; is that right?

A    Yes.

Q    Do you know who's -- who owned the truck?

A    Mr. Lotz and the company, Triple Crown.

Q    What is Triple Crown?

A    It is a car hauling business.

Q    And was Mr. Lotz working for them at the time?

A    Yes.

Q    Do you know how long he worked there?

A    No, actually.  The company was based out of Maryland, and he was living in Maryland prior to us meeting back up in 2020, I believe.

Q    Do you know where Mr. Lotz currently resides?

A    No, I don't.

Q    Do you know if he is in San Diego?

A    Yes.  I saw him last night.

Q    Let's see.  And you were leaving the casino, where were you heading at the time?

A    Home.

Q    Were you heading to your home or Mr. Lots' home?

A    My home is the place we were going first.

Q    All right.  When did you first become aware that you were being stopped for a traffic stop?

A    I heard sirens behind us.  We were at a stoplight, and we started to move forward, and I heard the sirens.  And I looked over at him, and I told him to move over so that they can get by us.

Q    Oh.  So let me -- let me ask you this.  At this point, you did not think the stop was related to your vehicle?

And I just want to confirm here as well.  It says it occurred at 1409, which is military time for 2:09 p.m.  Does that sound right?

A    Yes.

Q    All right.  All right.  If we're going down to -- so let's see -- page 3 here, and it says that the time you are living at 920 Paraiso Avenue.  Are you still living there?

A    Yes.

Q    And that is the same address we talked about earlier that you are living today?

A    Yes.

Q    Okay.  And let's see.  It says here, if you look at the bottom of the page under arrest information, you were arrested for PC 148 which is obstructing or resisting a peace officer; is that right?

A    Yes.  That is what it says.

Q    Okay.  And what was the outcome of that charge?

A    I don't think -- oh, they dropped this.

Q    All right.  Let's move on to page 4 here.  I want to ask you.  It says that they found some -- one of the property items seized down at the bottom there was M30 pills.  Do you recall -- well, let me ask you this.  Were those your pills in the vehicle?

A    Absolutely not.

Q    Do you know who those pills were?

A    Absolutely not.

Q    All right.  Moving along, I'm going to ask you to move to -- flip to Page 6 here.  And I going to ask you some questions about this.  The officer says he observed the vehicle with non-working brake lights.  Let me ask you this, do you know whether the brake lights were working on the truck that day?

A    I absolutely do.

Q    And were they working?

A    Absolutely.

Q    And how do you know they were working?

A    Because we are hands on, and we make sure all the lights are working because we know that this is how they pull us over, with not working lights.  Every day, I check to make sure my license plate is working because I hear that all the time.  We pulled you over for your license plate lights not being on.  So we work on our cars, and we make sure that all of our lights are working.

Q    Okay.  And let's see.  And would you do that with other people's vehicles as well?

A    Yes.

Q    And so, for example, you were a passenger in this vehicle; is that right?

A    Yes.

Q    While I am doing that, same paragraph here, and we

Q    And you believe that at that point you had given them sufficient information to identify you --

A    Absolutely.

Q    -- at that point?

A    Absolutely.

Q    Okay.  And after the officer began moving you towards the patrol vehicle, what were your thoughts at that point?

A    My pants are falling down.

Q    And the officer mentions repeatedly stop flexing and claims you were flexing your body?

A    Right.

Q    Did you understand what he meant by that?

A    Absolutely not.  I was trying to comply with his orders and hold my pants up while I was handcuffed.

Q    Did you express that to him that you were trying to hold all of your pants up?

A    No.  Everything happened too fast for that to happen for me to complain about my pants.

Q    Okay.  And I am on page 9 now.  He also claims that you are pulling your body to the -- to the right.  Do you recall pulling your body one way or the other?

A    Absolutely not.  I do know that I did not pull my body one way or the other to pull away from him.  Like I said, this is not my first time.  I know that is not the way

to handle myself.

Q    Okay.  So let me just clarify, you are not pulling at all?

A    No, sir.

Q    He also believes that you responded to the request by stop flexing and you said shut up, you bitch ass mother effer.

A    Yes.

Q    And you recall making that statement?

A    Yes.

Q    What did you mean by that?

A    He was just so over the top.  I don't like dealing with people like that.  I had not done anything.  So just stop talking to me.  There is no reason to keep escalating the situation with anything.

Q    Yeah.  When you say over the top, what do you mean by that?

A    He was just invasive.  You know what I mean?  I understand you have a job to do if you are asking questions, but he was just trying to intimidate us.  I'm going to throw you in the back of my car.  Why are you threatening me with that?  You know what I mean?  It doesn't make sense to me.  We did not do anything to be thrown in the back of the car or anything like that.

Q    Even throwing a pipe out the window?  You did not

think that?

A    No.

Q    Okay.  And when you say -- let me ask you did it make you angry?

A    Did?

Q    Did the officer's attitude towards you make you angry?

A    Yes.  I was upset.

Q    And next, the officer claims he was putting you up against the vehicle and claims you quickly turned to the right causing him to lose his grasp.  Would you agree with that?

A    No.  Absolutely not.

Q    Okay.  Do you recall turning to the right at all?

A    Absolutely not.

Q    Do you recall looking over your shoulder to try to address them?

A    Absolutely not.  I have been escorted to the police car before, and I was -- I was adapting to him.  He was the one in control moving me this way and that way.  So I just went to where he guided me.

Q    Do you recall him losing his grasp at any point?

A    Absolutely not.

Q    Okay.  And then after, he threw you on the ground; is that right?

A    Yes.

Q    And what parts of your body hit the ground?

A    All of it.  My teeth first.  Then my whole body was on the ground.

Q    Sure.  Okay.  So your teeth first.  Did you land on your shoulder next?

A    You can't -- I was not in that slow-motion frame of mind.  I don't know exactly how it all happened.  But I hit the ground and ran my tongue over my teeth and immediately found out that he had broken teeth out of my mouth.

Q    And do you recall which teeth were broken?

A    Yes.  The front two.

Q    Okay.  Had you ever broken those teeth before?

A    No, sir.

Q    Do you recall what the -- what type of ground you fell on or laid on?

A    It was dirt and sidewalk.

Q    Okay.  And when you said you hit your head, which part or -- which part did your head hit, the dirt to the sidewalk?

A    I'm not sure.  I'm not sure.

Q    Did the deputy fall on top of you?

A    I am not sure of that either.

Q    And did you feel any immediate pain?

A    Absolutely.

Q    And where did you feel the pain?

A    My mouth.

Q    Did you feel pain anywhere else?

A    Not -- well, yes.  There was some pain in my wrist
because of the handcuffs, but that was it at that time.

Q    And when you say because of the handcuffs, were the
handcuffs too tight?

A    Absolutely.

Q    Okay.  And at a certain point in your interaction,
the deputy was -- showed you he was able to put a finger in
between, is that right?

A    Yes.

Q    And when you say immediate pain in your mouth, how
strong was that pain?

A    Ten.

Q    Ten out of ten?

A    Ten out of ten.

Q    Yeah.  Did you bite your tongue at all?

A    Yes.  I think I did.

Q    Was it bleeding at all?

A    Say it again.

Q    Was your mouth bleeding at all?

A    I could not see it.  So I don't know, but I saw
blood out of my mouth in the video.

Q    Yeah.

Q    Yeah.   Yeah.   Was it ever explained to you why you were being detained during this traffic stop?

A    I'm not sure.   No, I'm not sure.

Q    Okay.   And so when you were initially removed from the vehicle, did you ask why you were being placed in handcuffs?

A    No.

Q    And why not?

A    Because this is a normal routine.   This is a normal routine.   We get pulled over and go in cuffs right away. That is just how I am treated.

Q    And has it happened to you before?

A    Absolutely.

Q    Approximately, how many times?

A    I could not count.

Q    Okay.

A    I could not count.   Every time they pull me over.

Q    More than ten?

A    Absolutely.

Q    More than 20?

A    Absolutely.

Q    Really.   More than 30?

A    Probably.   I -- I tell people all the time that I am amazed how some people go through life and they have never felt handcuffs or been in the back of a police car, but I

you, what do you mean by that?

A    I was there dealing with Officer -- Officer Wilder, and he came and tried to take over the investigation.  And he was being more of a nuisance than helping the situation.

Q    Did you feel differently about the approach of Deputy Wilder?

A    Absolutely.  Absolutely.

Q    And what was the difference in your mind?

A    Deputy Wilder was calm and collected and Officer Ramos was not.

Q    I see.  At this point, I will point out it is 5:36 in the video.  You can hear Officer Ramos saying stop flexing.  Stop flexing.  What do you understand to mean by that?

A    I did not understand it mean anything by that because I was walking to the car.  Stop flexing.  I did not want him saying anything to me because he was not making sense in my mind.

Q    And at that point I realize -- we are between 5:36 and 5:44 in the video.  It is a bit chaotic, but do you recall -- what happened when you were approaching the patrol vehicle?

A    Walking to the patrol vehicle, I was holding up of my shorts.  You can see in the video my shorts are falling down around my legs.  So I was trying to hold up my shorts.

When we approached the vehicle, he went to lean me on to the
car, but then spun me on to the ground and planted me face
first on the ground.

Q   And did you feel like you moved at all when he tried
to place you on the hood?

A   I absolutely know I didn't.  I know I didn't.  I did
not move away from the car to have him do that.  Not at all.

Q   Okay.  Let's see.  I'm going to jump back to Exhibit
11.

ATTORNEY IREDALE:  You're on 11.

ATTORNEY HANNA:  I'm on 11.  I think I am on 12.

THE COURT REPORTER:  The next exhibit is 12.

BY ATTORNEY HANNA:

Q   Got it.  So going back to Exhibit 10.  I apologize.
We're going to go to about seven minutes.  And this is when
you were approaching the vehicle.  And so at that point, do
you know what he meant by stop flexing, I told you to stop
flexing?

A   Absolutely not.

Q   Okay.  And we are at about seven minutes here.
He said to stop turning.  It is your testimony today
that you had not turned at all.

A   I am not aware that they did.  Yeah, I don't think I
did.

Q   And at that point, we are at about 7:20.  You say I

Q  Frustrated?

A  Absolutely.

Q  Embarrassed?

A  Absolutely.

Q  What other emotions are you feeling?

A  Shock.  I felt shock, and I felt in danger.

Q  So let me ask you about shock.  When you say shock, do you mean that it was unexpected?

A  Absolutely.  I have not done anything to warrant that.

Q  And when you say danger, what danger did you fear?

A  This man just slammed me on my face for no reason. I did not want to be in his company.  There is no telling what he could have done to me.  I am handcuffed and this man has every advantage.  And he has already demonstrated that he has no care for my life and safety.  I felt I was in danger.

Q  Yeah.  And did he use force against you?

A  He rubbed my face in the ground.  That was it.

Q  And when you say rubbed your face in the ground, was that on the concrete?

A  I'm not sure.

Q  What part of your face was rubbed in the ground?

A  My whole side.  It's on the video.

Q  Oh, yeah.  And so just kind of pausing here.  We're

the rocks and concrete.  So I am sure there was.  I could not go point them out to you right now because it has been three years, but yes, I am sure there was.

Q   And how long did you feel that pain in your face?

A   I actually still feel pain when I rub up my teeth -- when I rub my tongue against my teeth, I can still feel the pain.  So three years.

Q   Yeah.  So you said when you rub your tongue against your teeth.  So where do you feel the pain?  Is it in your teeth?

A   My gums.

Q   Okay.  And how about -- apart from the mouth area because we will -- I want to ask you more questions about the dental stuff, but how about the rest of the stuff?  When did you last feel pain?

A   I would not be able to recollect that.  I don't know.  I would not be able to recollect.

Q   Did it resolve within a few days of the incident?

A   Probably within a week or two of the incident.

Q   And you also mentioned pain in your shoulder; is that right?

A   Yes.

Q   And where was that pain, if you can point it on your shoulder?

A   I'm not sure.  But this is my shoulder.  So

obviously, it was somewhere up here because of the handcuffs.  Because of the handcuffs, I wasn't able to break my fall.  So my shoulder was the second thing to hit the ground after my face.

Q   And I will just point out that generally you're pointing to your shoulder when pointing at it.

A   Right.

Q   Sorry.  I have to say so it is on the record.

A   Right.

Q   Let me ask you this.  Did you -- how long did you experience shoulder pain for?

A   The shoulder pain was probably a little longer, probably another month.

Q   And did you seek any treatment for the shoulder pain?

A   No.

Q   Had you ever hurt your right shoulder before that date?

A   No.  No.

Q   Have you ever hurt your shoulder since the accident?

A   No.

Q   You also mentioned some pain in your ribs.  How long did you experience that rib pain?

A   It was probably a couple of weeks.

Q   And did you seek any treatment for the rib pain?

A    No.

Q    Since, have you had any rib injuries?

A    No.

Q    And then I think the last body part you mentioned was your right foot?

A    Yes.

Q    And let me ask you, did you seek any treatment for your right foot?

A    No.  I told them everything at the hospital, but there was nothing broken or anything.  So that was the extent.

Q    Yeah.  And how long was your right foot injured?

A    My foot was -- I don't know.  I can't tell you exactly how long, but it was some time.

Q    Okay.  And so -- I understand you can't be exact --

A    Right.

Q    But can you tell me --

A    Probably a month or so, a month or so.

Q    Okay.  And have you ever injured your right foot before that date?

A    I'm sure I have.  Playing football or something, I don't know.

Q    And where did you play football?

A    Just playing with the fellas.  Not on a team or anything.

do.  She just fixed the teeth, but the gums and all of that, she can't do anything about that.

Q    Let me ask you, how often does it hurt?  Is it every day?

A    Absolutely.

Q    All the time?

A    All the time.

Q    Does it get worse when you eat?

A    I haven't -- I am, kind of, afraid to bite anything hard, but the cold messes with me.  But I can't bite down on anything, you know, too solid.  I'm scared to eat things that I think might, you know, damage my teeth some more.

Q    Sure.  So what types of foods are you scared to eat?

A    Chicken with bones and, you know, sometimes be eating and get a bit of gristle.  You know what I mean, meats -- meats, basically, meats with bones in them.

Q    And did you enjoy meets with bones in them --

A    Yes, absolutely.

Q    -- before the incident?

A    Absolutely.

Q    What was your favorite meal before the accident?

A    I don't have a favorite meal, but like everybody else I ate pizza, Chinese food, fruits.

Q    Sure.  Just generally -- other than generally meats, are there any other favorite foods that you can no longer

that we have not chatted about?

A   Not that I -- just -- the lisp really sticks with me.  I did not have a lisp before, and I still have it when I speak.  I can hear it myself.  So.

Q   Do you -- sorry.  My apologies.

A   Okay.  Go ahead.

Q   I was going to ask do you feel like you sound different today than you did before the accident?

A   Absolutely.  Absolutely.

Q   And you mentioned that you were self-employed at the time of the incident; is that right?

A   Yes.

Q   Did you miss any work as a result of the incident?

A   I -- I'm not really sure.  I'm not sure.

Q   Sure.  And let me ask, did you have to forgo any projects or anything like that because of the incident?

A   I'm not sure.  I don't remember what we were doing in terms of projects at that time.  I have a lot going on.  I do all kinds of different work.  So I am not sure what projects I had at that time.

Q   Sure.

ATTORNEY HANNA:  And counsel, just to clarify for the record, are you making a loss of income claim in this case?

ATTORNEY IREDALE:  No.

Q    Could we start playing at the beginning of Exhibit 11 please?  Can we stop there?  And it is now at 0:19 seconds.  Did you hear Deputy Wilder say something to the effect of, do you have any weapons on you, man?

A    Yes.

Q    And had you responded to him, if you recall?

A    Yes, I responded.

Q    What did you say?

A    No.

Q    And then thereafter, he asked if you would step out of the car.

A    Yes.

Q    In response to that, what do we see you doing here?

A    Stepping out of the car.

ATTORNEY IREDALE:  Can we play forward from 19 seconds?  Could we stop it right up there?

BY ATTORNEY IREDALE:

Q    I think we heard him say words to the effect of hands behind your back?

A    Yes.

Q    And when he said hands behind the back, what did you do?

A    I put my hands behind my back.

Q    Have you resisted him in any way?

A    No, sir.

Q    And as far as you could tell, was that true from
what you perceived?

A    Absolutely.

ATTORNEY IREDALE:  We are now at one minute.  You
could we go forward.  Can we stop right there?

BY ATTORNEY IREDALE:

Q    Again, there was a question about do you have any
weapons on you.  Did you hear that?

A    No.  I did not hear that again.

Q    Did you hear him say he was going to search?

A    Yes.

Q    Did you admit him to search you?

A    Yes.

Q    Did he put his hands on or about your person to
search for weapons?

A    Yes.

ATTORNEY IREDALE:  Could we go forward from 1:15?
Could we stop right there.  It is now at 1:27.

BY ATTORNEY IREDALE:

Q    And in the interim between 1:15 and 1:27, did you
hear them say okay you can take a seat on the curb?

A    Yes, sir.

Q    Okay.  I will help you out?

A    Yes, sir.

Q    Did he help you to sit out of the car?

A    Yes.

Q    And afterwards, he said okay.  You could take a seat on the curb.  Did you attempt to seat yourself with his assistance on a curb?

A    Yes, sir.

ATTORNEY IREDALE:  Go forward please.  Could we stop right there?

BY ATTORNEY IREDALE:

Q    So you heard Officer Wilder say how was your day going or words to that effect?

A    Yes.

Q    And your response was all right, nothing to brag about?

A    Right.

Q    And so he's being polite and even amiable with you?

A    Yes, sir.

Q    And are you attempting to reciprocate --

A    Yes.

Q    -- that amiability within the limits of being handcuffed on the curb?

A    Yes, sir.

Q    Play forward from 01:30 please.

ATTORNEY IREDALE:  Could we stop right there.  It's -- 1:56.

BY ATTORNEY IREDALE:

Q    You hear Deputy Wilder say are you both from Maryland or words to that effect?

A    Yes.

Q    Did you answer that question?

A    Yes, sir.

Q    What was your response?

A    No.

Q    And is that true?

A    Yes.

Q    Because you're not from Maryland?

A    Yes, sir.

ATTORNEY IREDALE:  Could we play from 01:57, please?  Could be stop right there.

BY ATTORNEY IREDALE:

Q    So it is now 02:42.  Did you hear Deputy Wilder ask if you have ever been arrested in San Diego County before?

A    Yes.

Q    And what was your response?

A    Yes.

Q    And was that true?

A    Yes.

Q    And did Deputy Wilder ask you your name?

A    Yes.

Q    Did you give him your last name?

A    Yes.

Q    Did you give him your first name?

A    Yes.

Q    Did you spell your first name?

A    Yes.

ATTORNEY IREDALE:  Could we go forward from 02:42 please.  Could we stop it right here at 03:49.

BY ATTORNEY IREDALE:

Q    Now, during the interim between the last time we stopped the video and now, have you continued on the video to remain seated on the curb?

A    Yes, sir.

Q    Have you done anything but sit on the curb?

A    No, sir.  Waited for Wilder.

ATTORNEY IREDALE:  Could we go forward from 03:49, please?  Could we stop right there please.  We are stopping at 04:32.

BY ATTORNEY IREDALE:

Q    The conversation between you and another person, who is that other person in this last sequence?

A    There was a conversation between me and another person?

Q    Yes.  In other words, was Deputy --

A    Oh, Deputy Ramos.

Q    So it was Ramos who was asking you about the loss of your ID?

A    Yes.

ATTORNEY IREDALE:  Go forward, please.  Could we stop right there.  It is at 04:49.

BY ATTORNEY IREDALE:

Q    And then Deputy Wilder asks if Burt was your last name?

A    Yes.

Q    Did you respond yes?

A    Yes.

ATTORNEY IREDALE:  Could we stop right there.  It is now 04:56.

BY ATTORNEY IREDALE:

Q    So he asks you -- Deputy Wilder asks you your first name again.

A    Again, yes.

Q    And did you give him your first name, now for the second time?

A    Yes.

Q    And did you spell it again for the second time?

A    Yes.

Q    J-A-M-E-L.

A    Yes.

Q    You continue to see yourself there on the curb?

A    Yes.

ATTORNEY IREDALE:  Again, we are at 04:56.  Can we

play forward please?   Could we stop right there?

BY ATTORNEY IREDALE:

Q   ▮▮▮▮▮▮▮▮   Is that your date of birth?

A   Absolutely.

Q   So you have now given your first name, your last name, and your date of birth?

A   And my address.

Q   You indicated you've lived on the Paraiso.

A   Yes.

Q   How do you spell Paraiso?

A   P-A-R-I-S-O.   Paraiso.

ATTORNEY IREDALE:   All right.   We are now at 05:03 according to the marker.   Can we go forward please?   Stop right there if you would.   We are now at 05:37.

BY ATTORNEY IREDALE:

Q   Now, in this last sequence, we have seen that you were grabbed at some point by Deputy Ramos?

A   Yes.

Q   And it appears that he has your left arm that he is holding?

A   Yes.

Q   Did he pull you up?

A   Yes.

Q   Did he direct you to walk?

A   Yes.

Q    Did you walk at his direction?

A    Yes.

Q    Now, we see at this point, your back is to us in the video?

A    Yes.

Q    And you have your hands handcuffed at this point behind your back?

A    Yes.

Q    And it appears that you have a pair of shorts?

A    Yes, two pairs of shorts.

Q    Two pairs of shorts.  One appears to be, at least on the video, a gray color?

A    It's a faded black.

Q    Faded black.  And they appear to be somewhat below your waist.

A    Yes.

Q    What was happening with those shorts?

A    The shorts were too big, and my belt did not have a hole to put on that loop.  So they were loose like that.  I kept having to pull them up every couple of steps.

Q    Now, did the position of the pair of shorts --

A    Yes.

Q    -- in some way interfere with your ability to take a full stride?

A    Yes, sir.

Q    Were you endeavoring to keep up with Deputy Ramos?

A    Yes.

Q    Were you endeavoring to walk as you are being led back to the patrol car?

A    Yes.  I was trying to keep up my pants from falling all the way to the ground and walk at his pace at the same time.

Q    All right.  You said you have a second pair of shorts?

A    Yes, I am wearing two pair of shorts.

Q    Can you describe the position of the second pair of shorts?

A    The ones closer to my body?

Q    Yes.

A    And the question is?

Q    What was your position, if you know, at this 05:37 on Exhibit 11?

A    Those shorts had a drawstring.  So they were held up more without any prompting from me.

Q    And then did you have a pair of underwear on?

A    Yes, sir.

Q    What kind of underwear?

A    Boxer briefs.

Q    Were the boxer briefs in position at this point?

A    Yes.

Q    And when I say in position, I mean in the regular --

A    Right.

Q    -- the position you wear them?

A    Yes, sir.

Q    What, if anything, were you doing with your fingers and your hands at this point in the video?

A    I was trying to grab -- my shorts were falling to the ground, and I was trying to pull them up with my two index fingers.

Q    Were you trying to resist or hassle or cause problems for Deputy Ramos at this point?

A    No, sir.

ATTORNEY IREDALE:  And can we play forward from -- 05:37.  You can we stop right there please.  Now, it is now 05:44.

BY ATTORNEY IREDALE:

Q    In between 05:37 and 05:44, we have seen something happen that has led to you being placed on the ground.  Do you see that?

A    Thrown on the ground, yes.

Q    Thrown on the ground with your face smashed into the ground?

A    Yes.

Q    Causing the damage that you have already described to us?

REPORTER'S CERTIFICATE

I, Kathleen Madden Keenaghan, a Certified Shorthand Reporter for the State of California, do hereby certify:

That the foregoing transcript of proceedings was taken before me at the time and place set forth; that the testimony and proceedings were reported stenographically by me and later transcribed by computer-aided transcription under my direction and supervision; that the foregoing is a true record of the testimony and proceedings taken at that time.

I further certify that I am in no way interested in the outcome of said action.

I have hereunto subscribed my name this 30th day of October, 2025.

_____

Kathleen Madden Keenaghan

CSR No. 14577

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)

# Exhibit B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,

      Plaintiff,

  vs.

NICOLAI RAMOS, in his individual capacity; COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5,

      Defendants.

_____

CASE NO.
24-CV-0662-CAB-VET

DEPOSITION OF NICOLAI RAMOS

SAN DIEGO, CALIFORNIA

THURSDAY, JUNE 12, 2025

REPORTED BY:
SHARRON K. NISBETT, CSR, RPR
CSR NO. 9839

APPEARANCES:

For Plaintiff:

       IREDALE & YOO, APC
       By:  EUGENE G. IREDALE
       105 West F Street, Fourth Floor
       San Diego, California 92101-6036
       619-233-1525


       JOSEPH C. CRUDO PLC
       BY:  JOSEPH C. CRUDO
       3990 Old Town Avenue, Suite C101
       San Diego, California 92110
       858-622-7280
       Joseph@crudoplc.com


For Defendants:

       COUNTY OF SAN DIEGO
       OFFICE OF COUNTY COUNSEL
       By:  TIMOTHY HANNA and CHRISTOPHER BLAYLOCK
       1600 Pacific Highway, Room 355
       San Diego, California
       619-531-5244
       Timothy.hanna@sdcounty.ca.gov
       Christopher.blaylock@sdcounty.ca.gov


Also Present:  Videographer, Jessica Brodkin Webb



     Deposition of NICOLAI RAMOS taken 1600 Pacific Coast Highway, San Diego, California, on Thursday, June 12, 2025, at 9:30 a.m., before SHARRON K. NISBETT, Certified Shorthand Reporter, in and for the State of California.

at the report.

Q. Help me out.  When you see the report, is it in a different format on a computer screen?

A. Yes, compared to this printed-out version.

Q. Fair enough.

Would it be fair that the information on this, albeit in an different format, is the information that related to the incident that you were involved in inputting onto the computer when you did your report?

A. Yes, sir.

Q. The charge of obstruction or resistance of a peace officer, was that an arrest that you effected on Mr. Burt?

A. Yes, sir.

Q. There's another offense listed, which is 11550A, possession of a controlled substance.  That was a charge that was not against Mr. Burt, but against Perry Glenn Lotts, L-o-t-t-s.  Is that fair to say?

A. 11350A?

Q. Yes.

A. Yes, sir.

Q. Could we go to the next page, please?

Before we do actually, forgive me, I should note that the date of the arrest was December 15th, 2022, and the time reflected is 1409, which in military

west in the number one lane on Jamacha Boulevard passed the intersection of Jamacha Boulevard and Sweetwater Road in Spring Valley.

Q. Right.  And you say in your report that you saw a Vehicle Code violation, non-working brake lights; is that right?

A. Yes, sir.

Q. And so you saw the truck at some point slow, but the brake lights didn't turn on?

A. To my recollection, based on the report, yes.

Q. And you didn't just make that up as a pretext for stopping the vehicle?

MR. HANNA:  Objection.  Argumentative.

You can answer.

THE WITNESS:  No, sir, that would be illegal.

BY MR. IREDALE:

Q. Yes, it would.

Now, how long a period of time did you follow the truck before it turned onto Whitestone Road?

MR. HANNA:  Objection.  Vague.

BY MR. IREDALE:

Q. Well, let's break it down.  Do you know the word "how long," or that expression, have you heard that, "how long"?

A. In what context?

NICOLAI RAMOS
JUNE 12, 2025

JOB NO. 1719645

MR. HANNA:  Are we going for time or distance?

MR. IREDALE:  We're going for time.

BY MR. IREDALE:

Q. How long a period of time did you follow the truck before you stopped it?

A. Regarding time, I can't tell you the exact time but per my report if we're talking about distance, it would be approximately three-quarters of a mile.

Q. And am I correct that there's no emergency lane on Jamacha Road in the area that you were following?

A. To my recollection, no.

Q. And forgive me, we often run into this problem, it's the double negative.

So am I correct that there's no emergency vehicle stopping lane on Jamacha Road in the area where you were following?

A. No, there is not.

Q. And then shortly after the truck turned onto Whitestone Road, it stopped there very near to the intersection.  Is that fair?

A. Yes.

Q. Now, you claim that you saw a glass object being thrown out of the passenger window; is that right?

A. Based on my report, yes.

Q. And you say you saw it shatter on the roadway?

NICOLAI RAMOS
JUNE 12, 2025

JOB NO. 1719645

A. Yes.

Q. And I think you told us that you believe that it was contraband of some sort?

A. Yes.

Q. And did you have available a swab so that you could have swabbed the item so that it could be subjected to at least a presumptive test for drugs?

A. So per policy, we're no longer allowed to conduct any type of field tests of any narcotic substance or drug paraphernalia.

Q. In 2022, in December, you couldn't conduct any field tests?

A. No, sir, because fentanyl was coming out and one of our partners overdosed.  So the department put policy in place where we are no longer allowed to do any field tests.

Q. So you didn't take a swab, for instance, and cover the swab and bring it so that it could be sent to a lab to test whether there was a controlled substance?

A. No, sir, that would be a violation of policy.

Q. I see.  And you said that you couldn't actually collect the glass because it was sharp; is that right?

A. So I was trained by our evidence technician that specific sharps aren't supposed to be collected as evidence just based on the hazardous nature.

conducting a criminal investigation so I would need to get his information.

BY MR. IREDALE:

Q. No, it made you angry -- I appreciate you saying you were conducting a criminal investigation, yes. And he said he didn't want to answer and that refusal to answer made you angry, didn't it?

A. Sir, like I said, I was talking to him and conducting a criminal investigation.

Q. I understand. I'm asking you a question. When he said, "No, I don't want to answer that question," did it or did it not make you angry?

A. No, sir, I was not angry.

Q. You were not angry at him at that point?

A. No, sir.

Q. And you didn't try to express anger at him at that point?

A. No, sir.

Q. At one point he asked you to stop yelling in his ear. Do you recall that?

A. If I can look at my report, sir, to see if there's anything documented.

Q. Sure. But just a second. We don't have a dispute, do we? You have a body-worn camera and it shows exactly what the interaction was and it has the

Q. Do you think if his pants were falling down that might cause him to become nervous or embarrassed and tighten his muscles?

A. I wouldn't be able to tell you how Mr. Burt would have felt if his pants were down.

Q. You looked at him, you were able to see his person.  You're a trained observer, are you not?  Right?  You had just observed non-working brake lights from a distance of -- right?

So when you saw him walking, didn't you see his pants slipping down?

A. Well, sir, when I was escorting him, he was directly next to me.  So I wasn't from a far so I wasn't looking necessarily down, to my recollection, at his pants and underwear.

Q. I see.

And so you then knew that he was handcuffed that whole time, right?

A. During the time of the escort, yes, sir.

Q. Yes.  And so at some point, because you say he was flexing his body, you pushed him up against the patrol vehicle; is that right?

A. So per my report, sir, and my recollection, placing him in between -- having the vehicle as an intermediate barrier between myself and him, especially

walking, leading him up there, he was yelling profanities at me.  He didn't want to provide any information.  That was a way to maintain better control of Mr. Burt.

Q. To put -- to put his hand on the patrol car?  Did you think maybe he would be afraid that you were going to bang his head into the car?

MR. HANNA:  Objection.  Calls for speculation.

THE WITNESS:  Yes, I could tell what Mr. Burt was thinking, but my intent was to hold Mr. Burt's body up against the patrol vehicle to limit his mobility if he decided to pull away from me.

BY MR. IREDALE:

Q. Well, he was handcuffed, was he not?  The whole time he was handcuffed.  Had you handcuffed him or had Wilder?

A. I don't recall who handcuffed him, sir.  I just know he was in handcuffs.

Q. Well, he was asked to turn around and submit to handcuffing and he had done that, right?

A. I don't know who gave him instruction, sir, but I do know he was placed in handcuffs.

Q. Yes.  And he was handcuffed the entire time you were dealing with him, right?

A. To my recollection, yes.

A. It's the truth, yes, sir.  He's handcuffed and his legs aren't secured.

Q. And you thought unless you threw him on the ground face first, he was going to run away and get away?  Is that what you thought?

MR. HANNA:  Objection.  Argumentative.

BY MR. IREDALE:

Q. You may answer.

A. Sir, from my report, it was a controlled takedown.

Q. A controlled takedown?  Well, that means you were controlling the takedown, he wasn't in control, was he?

A. It was a controlled takedown, yes.  It was a controlled movement.

Q. You wanted to control him and so you understood that there was a cement sidewalk that was right there right near where his head hit, right?

A. Yeah.  And as far as the controlled takedown, was, yes, taking down to the ground.

Q. Yes.  But his face hit the ground, right?

A. As of my understanding, yes.  As a result of the controlled takedown, yes.

Q. Well, you controlled the takedown so his face would land facedown on the ground, right?

NICOLAI RAMOS                                                    JOB NO. 1719645
JUNE 12, 2025

A. My intent was to get the necessary information to complete my investigation is what my intent and thought process is.

Q. I understand that, but that's not an answer to my question.

MR. IREDALE:  May I ask the court reporter to please read my question back?

(The Reporter read back as requested.)

THE WITNESS:  From my understanding, I believe I have the right to get the necessary information, and if that is a street address to verify the subject's identity, then yes.

BY MR. IREDALE:

Q. So it was your belief that you had the right to compel him to give you that answer?

MR. HANNA:  Objection.  Vague.

THE WITNESS:  Can you please clarify compel?

BY MR. IREDALE:

Q. Yes.  To force him to give you his address.

A. So after a couple times of him not answering, then I moved on to escort Mr. Burt.

Q. Did you believe that he was violating the law by refusing to answer your question as to his address?

A. At that point in time, I didn't believe he was violating the law but I believe that he was delaying

NICOLAI RAMOS
JUNE 12, 2025

JOB NO. 1719645

giving me the rest of the information, potentially not giving me the right identification because I never knew who Mr. Burt was until that time.

Q. So you believe he had no right at that point to say, "No, I decline to answer that question"?

MR. HANNA:  Objection.  Calls for a legal conclusion.

MR. IREDALE:  It calls for his state of mind as to that point, yes.

THE WITNESS:  So my state of mind is, yes, I believe Mr. Burt, who I didn't fully know who he was, needed to identify himself because I was conducting a criminal investigation.

BY MR. IREDALE:

Q. And because he refused to do that, did you take him back to your car?

A. Again, leading up everything to it, as far as him yelling, him refusing, again, that was my attempt to de-escalate the situation and place him in a car to where I could probably talk to him one-on-one.

Q. And so your manner in speaking with him was an attempt to de-escalate the situation, is that your testimony?

A. My actions of assisting him up off the ground and leading up to the car, yes.

NICOLAI RAMOS                                                        JOB NO. 1719645
JUNE 12, 2025

State of California.)
                    ) ss.
County of San Diego )


        I, SHARRON K. NISBETT, a Certified Shorthand

Reporter, License No. 9839, for the State of California,

do hereby certify:

        That the foregoing proceedings were taken

before me at the time and place herein set forth; that

any witnesses in the foregoing proceedings, prior to

testifying, were duly sworn; that a record of the

proceedings was made by me using machine shorthand which

was thereafter transcribed under my direction; that the

foregoing transcript is a true record of the testimony

given.

        Further, that if the foregoing pertains

to the original transcript of a deposition in a Federal

Case, before completion of the proceedings, review of

the transcript [ ] was [ ] was not requested.

        I further certify that I am neither financially

interested in the action, nor a relative or employee of

any attorney of any of the parties.

        In witness whereof, I have subscribed my name.

    Dated: 7/03/25

    _____

            SHARRON K. NISBETT, CSR NO. 9839

# Exhibit D



CSD000482

Exhibit E



# San Diego County Sheriff's Department
## Use of Force Supplemental

| UFO DATE AND TIME 12/18/2022 14:16 | EVENT NUMBER E8247218 | CASE NUMBER 22156316 | DOCUMENT NUMBER 134827 | STATION/FACILITY RSD - Rancho San Diego Station |
|---|---|---|---|---|

**INCIDENT DESCRIPTION / OFFENSES**
A/R (CITED) 11350(A) HS - Lotts, P / 148(A)(1) PC - Burts, J

| SUBJECT'S NAME (LAST, FIRST, MI) Burts, Jamel Mitchell | DATE OF BIRTH ▬▬ | ARRESTED [X] Yes ☐ No | SUPERVISOR PRESENT ☐ Yes [X] No | DATE/TIME SUPERVISOR NOTIFIED 12/18/2022 14:17 |
|---|---|---|---|---|

**REASON(S) FOR USING FORCE:**
- ☐ Necessary to effect an arrest
- ☐ Necessary to prevent a violent forcible felony
- ☐ Delaying Jail Operations
- [X] Necessary to defend self or another
- ☐ Necessary to restrain for subject's safety
- [X] Necessary to prevent escape/evasion
- ☐ Necessary during high-risk incident
- [X] Necessary to effect a lawful detention
- ☐ Necessary during riot

**SUBJECT APPEARED TO BE**
- ☐ Under the influence of alcohol and/or drugs
- ☐ Mentally impaired

NUMBER OF OFFICERS ON SCENE: 2
NUMBER OF OFFICERS USING FORCE: 1

**LEVEL(S) OF RESISTANCE ENCOUNTERED**
- ☐ NONE (subject cooperated/complied)
- [X] PSYCHOLOGICAL INTIMIDATION (non-verbal cues indicating subject's attitude or physical readiness to resist)
- [X] VERBAL NON-COMPLIANCE (subject's expressed unwillingness to comply with the officer's commands)
- ☐ PASSIVE RESISTANCE (represents by a refusal to respond to verbal commands but also offers no form of physical resistance)
- [X] ACTIVE RESISTANCE (pushing, pulling or running away from the officer to avoid control, not attempting to harm the officer)
- [X] ASSAULTIVE BEHAVIOR (physical actions of assault)
- ☐ AGGRAVATED ACTIVE AGGRESSION (potential injury or death)

**LAW ENFORCEMENT TOOL/TECHNIQUE USED TO GAIN COMPLIANCE OR OVERCOME RESISTANCE (CHECK ALL THAT APPLY)**
- [X] Verbal Commands: Stop flexing
- [X] Empty Hand Control
  - ☐ Grab, Push, Pull, or Body Weight
  - [X] Control Hold (Duration: 10 seconds)
  - ☐ Pressure Point (Duration: ) (# of Contacts: )
  - ☐ Strike (Body part used ) (# of Contacts: )
  - [X] Takedown Type: Hands to left arm
  - ☐ Carotid (Rendered Unconscious? ☐ Yes ☐ No) (Duration: )
- [X] Tool/Device/Weapon
  - ☐ OC Agent (Duration: ) (# of Contacts: )
    - ☐ Decontaminated ☐ Yes ☐ No
  - ☐ Cord Cuff Restraint Device (Duration: )
  - ☐ Impact Weapon (# of Contacts: )
  - Type:
  - ☐ Canine (Duration: ) (# of Contacts: )
  - ☐ Vehicle/Forcible Stop
  - [X] Weapon Pointed at Subject (Duration: 2 seconds)
  - Type: CED pointed to upper body
  - ☐ Spit Sock (Duration: )
  - ☐ Pro-Straint Chair
  - ☐ Tactical Shield
  - ☐ WRAP

| Less-Lethal Weapon System | Discharges | Number of | Target |
|---|---|---|---|
| ☐ PepperBall - OC Powder | | | |
| ☐ PepperBall - Water | | | |
| ☐ 37 mm Rifle - Standard | | | |
| ☐ 37 mm Rifle - Low Energy | | | |
| ☐ 40 mm Rifle - Bean Bag | | | |
| ☐ 40 mm Rifle - Sponge | | | |
| ☐ Taser - Probes | | | |
| ☐ Taser - Drive Stuns | | | |
| ☐ Stingball Grenade | | | |
| ☐ Sound/Light device | | | |
| ☐ 12-Gauge Super Sock | | | |
| ☐ Ultron/NOVA Shield | | | |
| ☐ REACT Belt | | | |
| ☐ Firearm ☐ Type: | | | |
| ☐ Other: | | | |

| WAS INITIAL USE OF FORCE EFFECTIVE? ☐ Yes [X] No | WAS ADDITIONAL CONTROL OR FORCE NEEDED? [X] Yes ☐ No |
|---|---|

| SUBJECT INJURED | EXTENT OF TREATMENT | OFFICER(S) INJURED | EXTENT OF TREATMENT |
|---|---|---|---|
| [X] Yes ☐ No | ☐ None [X] Treated at hospital ☐ Treated at scene ☐ Hospitalized ☐ Refused treatment | ☐ Yes [X] No | [X] None ☐ Treated at hospital ☐ Treated at scene ☐ Hospitalized ☐ Refused treatment |

| SUBJECT INJURY DESCRIPTION Chipped front tooth | OFFICER INJURY DESCRIPTION None |
|---|---|

**OTHER FORCE USED/COMMENTS/EQUIPMENT PERFORMANCE:**
None

| SERGEANT | | ARJIS | DATE |
|---|---|---|---|
| LIEUTENANT | | ARJIS | DATE |
| CAPTAIN | | ARJIS | DATE |

MARK FIGURE TO INDICATE CONTACT POINT(S)

CSD000504



## San Diego County Sheriff's Department
### Use of Force Supplemental

### Use of Force Supplemental Instructions

**Lines 1 & 3:** Fill in the blanks.

**Line 2:** If the suspect was committing a crime and force was used to stop or apprehend the subject, document the appropriate penal code. If the UOF occurred in the performance of the officer's duties, document the incident description, i.e. officer transport, officer escort, making arrest, detaining suspect, cell extraction etc.

**Primary Reason for Using Force:** Check appropriate box(s).

**Subject Appeared To Be:** Check if applicable.

**Number of Officers on Scene:** List number of officers present.

**Number of Officers Using Force:** List number of officers that used force.

**Level(s) of Resistance Encountered:** Check appropriate box(s).

**L.E. Tool/Technique Used:** Check appropriate box(s). If known and/or applicable, include duration (approximate length of time) tool/technique was used. If known and/or applicable, include the number of contacts (approximate number of strikes, impacts, etc.) when requested on form.

**Was Initial Use of Force Effective?** If initial force used was effective, check "Yes." If initial force used was ineffective and additional force was necessary, check "No."

**Was Additional Control or Force Needed:** If initial force used was ineffective and additional force was necessary, check "Yes." If initial force used was effective, check "No."

**Target Distance:** If applicable (refers primarily to less lethal weapon systems), approximate distance or provide range (i.e. 7-15 feet, 15-20 yards, etc.) from subject during application of force.

**Subject Injured:** Check "Yes" if medically treated for injury sustained as a possible result of force applied by a officer(s) – does not include previous injuries suffered prior to officer contact. Check "No" if subject was not injured or simply complains of injury/pain suffered as a result of force applied by an officer(s) and refuses medical attention. Any complaints of pain shall be documented in the use of force report narrative (whenever any physical force used by a officer results in a complaint of injury or an injury that necessitates medical treatment of a subject, a supervisor will be notified immediately).

**Extent of Treatment:** Check appropriate box. Check none if subject was evaluated and no treatment was required. Specifically, check "Treated at Scene" if subject was treated at scene by EMS for injuries that may have resulted due to force applied by officer(s). Check "Treated at Hospital" if subject was transported to hospital for treatment of injuries that may have been sustained as an apparent result of force applied by officer(s). Check "Hospitalized" if subject was admitted to the Hospital as a result of injuries that were sustained as a result of force applied by officer(s).

**Officer Injured:** Check appropriate box (see above).

**Extent of Treatment:** Check appropriate box. Check none if officer was evaluated and no treatment was required. Specifically, check "Treated at Scene" if officer was treated at scene by EMS for injuries. Check "Treated at Hospital" if officer was transported to hospital for treatment of injuries. Check "Hospitalized" if officer was admitted to the Hospital as a result of injuries.

**Other Force Used/Comments/Equipment Performance:** This section can be used to document other force options not listed on the form; relevant comments about the incident such as complaints of pain/injury (room permitting) and negative/positive comments regarding equipment performance.

**Mark Figure to Indicate Contact Points:** When applicable, mark the areas on the figure where applied force contacted the subject's body.

**Sergeant:** Sign, list ARJIS number and date reviewed.

**Lieutenant:** Sign, list ARJIS number and date reviewed.

**Captain:** Sign, list ARJIS number and date reviewed.

CSD000505



## n Diego County Sheriff's De rtment
## Officer Report

| CAD Event No. | E8247218 | | Case No | 22156316 | |
| | | | Report No. | 134827 | **1** Page 1 of 1 |

### GENERAL CASE INFORMATION

| Special Studies: | Related Cases: |
|---|---|

| Location, City, State, ZIP: | Occurred On: |
|---|---|
| Whitestone Road / Jamacha Boulevard, Spring Valley, CA 91977 | 12/18/2022 2:16:00 PM (Sunday) |

| Jurisdiction: | Beat: | Call Source: | (and Between) |
|---|---|---|---|
| Rancho San Diego Uninc - RANCHO SAN DIEGO | 633 | | |

### INDIVIDUAL/S

| Name: | Person Code: | Interpreter Language: |
|---|---|---|
| **Burts, Jamel Mitchell** | | |

ALIAS / AKA / NICKNAME / MONIKER

| Home Address, City, State, ZIP: | Res. Country: | County Residence: | Undocumented: |
|---|---|---|---|
| 920 Pariso Avenue Spring Valley, CA 91977 | US - UNITED STATES | R Resident | |

| Race: | Sex: | Date of Birth / Age: | Height: | Weight: | Hair Color: | Eye Color: | Facial Hair: | Complexion: |
|---|---|---|---|---|---|---|---|---|
| B | M | | 5' 9" | 220 lbs | BLK | BRO | 05 - Goatee and Mustache | DRK - Dark |

| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State, ZIP: |
|---|---|---|---|

### CONTACT INFORMATION
### IDENTIFICATION:

| Type: | Number: | State: | Country: |
|---|---|---|---|
| **AFIS - Automated Fingerprint Identification System** | C00031704 | | |
| **CII - CII Number** | 10241293 | | |
| **DLN - Drivers License Number** | A5065014 | CA - California | US - UNITED STATES |
| **FBI - FBI No.** | 14823VA1 | | |

| Attire: | Injury: | Extent Of Treatment: | Violent Crime Circumstances: |
|---|---|---|---|
| | Yes | 3 - Treated at Hospital | |

Subject Injury Description:
**Chipped front tooth**

Officer Injury Description:
**None**

### REPORT NARRATIVE

See NetRMS Case #22156316.1 for narrative

| Reporting Officer: | Division / Organization: | Reviewed By: |
|---|---|---|
| SH0241 - RAMOS, NICOLAI | RSD_PAT / RSD - Rancho San Diego Station | SH2793 - EHRLICH, RYAN |
| Report Date: | Detective Assigned: | Reviewed Date: |
| 12/18/2022 6:43:19 PM | SH3590 - MORALES, JAVIER | 1/4/2023 1:07:48 AM |

NetRMS_CASDOR rtf v11-15-06          Printed By SH6943          Printed: June 19, 2023 - 12:58 PM

CSD000506

# Exhibit F

# SAN DIEGO COUNTY SHERIFF'S DEPARTMENT



## Use of Force Statistical Report 2020-2021

Kelly A. Martinez, Acting Sheriff



CSD004136

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Introduction

Law enforcement agencies across the nation are collecting use of force statistics to review and analyze the reasonableness of force being used by officers. The San Diego County Sheriff's Department is committed to reviewing each use of force incident. The review process requires approval from four different department levels and from multiple perspectives, including training, tactics, policies, procedures, and equipment use. The goal of the thorough review process is to identify problem areas, apply appropriate corrective solutions and make improvements.

Enforcement of the law and the performance of law enforcement duties may require the use of physical force and/or physical restraint. The preservation of order and the observance of the law are best achieved through voluntary compliance rather than force or compulsion. The higher the level of voluntary compliance and cooperation, the less need for force. To that end, the use of force must always be considered secondary to the desirability of voluntary compliance. When the need for the use of force arises, deputies may use objectively reasonable force to effect an arrest, prevent escape, overcome resistance, or in self-defense or defense of others. It is the responsibility of the Department and all sworn personnel to ensure force and restraint are used in a manner that not only provides for public safety, but for officer safety as well.

The Acting Sheriff, in her continuous effort to improve organizational transparency, are making these statistics available to the public on an annual basis. The first part of this report contains the use of force data for the years 2020 and 2021. This collection of data includes the use of all types of force by members of the Department. The Department believes that by providing this information to the public, it will clearly show how infrequently deputies use force when compared to the number of calls for service and deputy-initiated activities.

These findings are published annually and posted to the Department's web site. They are also available for review at the John F. Duffy Administrative Center, 9621 Ridgehaven Court, San Diego, CA 92123.

2

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL                                        CSD004137

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Overall Activity and Use of Force Incidents

Before presenting the use of force data, it is important to understand the mechanism by which a deputy gets involved in a use of force incident. A deputy either responds to a call for service or makes an observation requiring action. Overall Department activity is categorized and tracked as either calls for service or deputy-initiated activity. A call for service is a request from a member of the public or another agency for public safety services. Deputy initiated activity results from a deputy's own initiative or observation and does not require a request from the public or another agency. Deputy initiated activity examples include: *traffic stops, field interviews, or other situations observed by the deputy.*

### Overall Sheriff's Department Activity



The graph below depicts the overall Department activity compared to the number of use of force incidents. The overall activity is a combination of *calls for service* and *deputy-initiated activity.* The overall Department activity does not include the thousands of contacts that occur daily in the Sheriff's Detention Facilities. Deputies regularly perform walkthroughs of the housing modules, talking and interacting with/or monitoring those that are housed in our Detention facilities at least once an hour and/or transport them to and from court or medical visits. These operations are 24 hours a day, every day of the year.

### Total Department Activity vs Use of Force Incidents



*\*The use of force number does not reflect multiple force options that may be utilized within a single use of force incident. Approximately 1% of the total activity resulted in a Use of Force incident in both 2020 and 2021\**

3

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL                                              CSD004138

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

Another aspect to consider is that even though most of the use of force incidents result in an arrest; there are some instances when an arrest is not made. Making an arrest is an activity that is considered to pose a high risk/high frequency of potential harm to the deputy due to the subject's resistance during the encounter.

### Total Arrests vs Arrests with a Use of Force



* Approximately 12% of arrests resulted in a Use of Force in both 2020 and 2021. Please note that the graph above <u>excludes</u> arrests made by the detentions and court services bureaus*

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004139

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Use of Force Data

In 2021, there were **3,420** use of force incidents reported, compared to **3,454** use of force incidents reported in 2020. Overall, there was a **1% decrease** in use of force incidents between 2020 and 2021.

The following table depicts the types of force used by the Sheriff's Department. The table combines the statistical data for the Law Enforcement Bureau, the Detention Services Bureau, and the Court Services Bureau. Please note that the use of force totals may include scenarios when several types of force were utilized during a single incident and on the same suspect.

### *Sheriff's Department Use of Force 2020-2021*

| Type of Force | Times Used | |
|---|---|---|
| | **2020** | **2021** |
| **Use of Force Incidents** | **3,454** | **3,420** |
| **Hands on Control** | 2,086 | 2,025 |
| **Cord Cuff Restraint** | 45 | 33 |
| **Spit Sock** | 391 | 215 |
| **Impact Weapons** | 54 | 41 |
| **Forcible Stop** | 1 | - |
| **Pro-Straint Chair** | 12 | 28 |
| **Tactical Shield** | 146 | 100 |
| ***Ankle Strap** | - | 6 |
| **Wrap Restraint** | 255 | 221 |
| **Less Lethal Deployed** (Excludes CED) | 383 | 255 |
| **Conducted Energy Device (CED)** (Deployed) | 166 | 177 |
| **Weapon Pointed** (Displayed Only) | 1,289 | 1,372 |
| **Lethal Force** | 2 | 3 |
| **Canine** | 22 | 20 |
| **Total Uses** | **4,852** | **4,496** |

There was a 1% decrease in the amount of
Use of Force Incidents reported between
2020 and 2021.

* The Ankle Strap category was added on 10/19/21*

*5*

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004140

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Use of Force by Bureau

The following tables provide a breakdown of the types of force used by each bureau.

### Law Enforcement Services Bureau 2020-2021

The Law Enforcement Services Bureau provides law enforcement services to nine contract cities and the unincorporated areas of San Diego County.

| Type of Force | Times Used | |
|---|---|---|
| | 2020 | 2021 |
| **Use of Force Incidents** | 2,404 | 2,340 |
| Hands on Control | 1,201 | 1,156 |
| Cord Cuff Restraint | 44 | 32 |
| Spit Sock | 160 | 76 |
| Impact Weapons | 24 | 25 |
| Forcible Stop | 1 | - |
| Pro-Straint Chair | - | - |
| Tactical Shield | 3 | - |
| *Ankle Strap | - | 5 |
| Wrap Restraint | 173 | 155 |
| Less Lethal Deployed (Excludes CED) | 140 | 53 |
| Conducted Energy Device (CED) (Deployed) | 104 | 77 |
| Weapon Pointed (Displayed Only) | 1,244 | 1,313 |
| Lethal Force | 2 | 3 |
| Canine | 22 | 20 |
| **Total Uses** | 3,118 | 2,915 |
| There was a 3% decrease in the amount of Use of Force Incidents reported between 2020 and 2021. | | |
| * The Ankle Strap category was added on 10/19/21* | | |

• • •

6

CONFIDENTIAL

CSD004141

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021

### Detention Services Bureau 2020-2021

The Detention Services Bureau operates seven detention facilities providing services to those incarcerated in San Diego County. A significant portion of the use of force totals for the Detentions Bureau occur during the intake process where the arrestees may still be under a state of intoxication or be agitated from the arrest.

| Type of Force | Times Used | |
|---|---|---|
| | 2020 | 2021 |
| Use of Force Incidents | 1,008 | 1,028 |
| Hands on Control | 847 | 824 |
| Cord Cuff Restraint | 1 | 1 |
| Spit Sock | 224 | 134 |
| Impact Weapons | 29 | 16 |
| Forcible Stop | - | - |
| Pro-Straint Chair | 12 | 28 |
| Tactical Shield | 143 | 100 |
| *Ankle Strap | - | 1 |
| Wrap Restraint | 77 | 62 |
| Less Lethal Deployed (Excludes CED) | 242 | 201 |
| Conducted Energy Device (CED) (Deployed) | 61 | 98 |
| Weapon Pointed (Displayed) | 44 | 50 |
| Lethal Force | - | - |
| Canine | - | - |
| Total Uses | 1,680 | 1,515 |

There was an 2% increase in the amount of
Use of Force Incidents reported between
2020 and 2021.

* The Ankle Strap category was added on 10/19/21*

7

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004142

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Court Services Bureau 2020-2021

The Court Services Bureau provides court security services for the seven courthouse facilities operating in San Diego County, as well as the County Administration Center.

| Type of Force | Times Used | |
|---|---|---|
| | 2020 | 2021 |
| Use of Force Incidents | 42 | 52 |
| Hands on Control | 38 | 45 |
| Cord Cuff Restraint | - | - |
| Spit Sock | 7 | 5 |
| Impact Weapons | 1 | - |
| Forcible Stop | - | - |
| Pro-Straint Chair | - | - |
| Tactical Shield | - | - |
| *Ankle Strap | - | 1 |
| Wrap Restraint | 5 | 4 |
| Less Lethal Deployed (Excludes CED) | 1 | 1 |
| Conducted Energy Device (CED) (Deployed) | 1 | 2 |
| Weapon Pointed (Displayed) | 1 | 9 |
| Lethal Force | - | - |
| Canine | - | - |
| **Total Uses** | 54 | 66 |

There was a 24% decrease in the amount of Use of Force Incidents reported between 2020 and 2021.

* The Ankle Strap category was added on 10/19/21*

8

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004143

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Levels of Resistance Encountered

**Psychological Intimidation** refers to a subject's nonverbal cues indicating the subject's attitude, appearance and physical readiness to resist.

**Verbal Non-Compliance** is evidenced by a subject's expressed unwillingness to comply with a deputy's commands.

**Passive Resistance** is represented by a refusal to respond to verbal commands but also offers no form of physical resistance.

**Active Resistance** refers to overt physical actions intended to prevent a deputy's control, but that does not attempt to harm the deputy.

**Assaultive Behavior** is represented by conduct that suggests the potential for human injury. Such behavior may be conveyed through body language, verbal threats and/or physical actions.

**Aggravated Active Aggression** refers to subject actions that will potentially result in serious injury or death to a deputy or any other person.

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004144

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Principles of Control

### Non-physical:

1. **Deputy presence** is the psychological impact of an authority figure.

2. **Verbal direction or redirection** refers to verbiage or commands given by a deputy.

3. **Display of firearm** refers to the drawing and/or pointing of a firearm.

   **Drawing and pointing of a firearm**: Deputies may draw, and point, a firearm when they reasonably believe, based on the totality of the circumstances, that lethal force may be necessary to defend against a threat of death or serious injury to the deputy or to another person; or to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the deputy reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

### Physical:

1. **Less lethal force** refers to forms of force not likely to inflict serious injury. Less severe than intermediate or lethal force. Less lethal force includes:

   **Hands-on control** is used as a means of overcoming resistive or assaultive behavior. Soft hand control may be used to control subjects whose behavior does not demand more severe tactics. Hard hands control, powerful hand or leg strikes, etc., are techniques used to control more assaultive suspects.

   **Less Lethal Control devices** including the use of batons, WRAP, Cord Cuff restraints, etc., when used for restraint, joint locks or come along tactics.

2. **Intermediate force**: refers to forms of force capable of inflicting significant pain and causing serious injury. Intermediate force is less severe than lethal force. Passive or active resistance to arrest alone does not constitute an immediate threat justifying the use of intermediate force. Intermediate force includes:

   **Hard intermediate weapons** including saps, batons, and flashlights when used to deliver strikes.

   **Intermediate munitions** used for long range impact and electronic immobilization devices also fall within the intermediate weapon's category.

*10*

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL                                CSD004145

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

**Chemical agents** may be used when there is an immediate threat to the safety of the deputy or others; AND either:

- the offense committed is sufficiently severe to justify the use of intermediate force or
- the suspect is actively resisting arrest; or
- attempting to flee

**Canines:** when used to arrest or detain a suspect by physically contacting a subject.

**Conducted Energy Devices**

3. <u>Lethal force</u>: refers to <u>any</u> force that creates a substantial risk of causing death or serious bodily injury, including but not limited to, the discharge of a firearm.

*11*

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL                                        CSD004146

Exhibit G

# SAN DIEGO COUNTY SHERIFF'S DEPARTMENT



## Use of Force Statistical Report 2021-2022

Kelly A. Martinez, Sheriff



## Introduction

Law enforcement agencies nationwide are collecting use-of-force statistics to review and analyze the reasonableness of force being used by officers. The San Diego County Sheriff's Department is committed to reviewing each use of force incident. The review process requires approval from four different department levels and multiple perspectives, including training, tactics, policies, procedures, and equipment use. The goal of the thorough review process is to identify problem areas, apply appropriate corrective solutions, and make improvements.

Enforcement of the law and the performance of law enforcement duties may require using physical force and/or physical restraint. The preservation of order and the observance of the law are best achieved through voluntary compliance rather than force or compulsion. The higher the voluntary compliance and cooperation level, the less need for force. To that end, the use of force must always be considered secondary to the desirability of voluntary compliance. When the need for force arises, deputies may use objectively reasonable force to effect an arrest, prevent escape, overcome resistance, or defend others. It is the responsibility of the Department and all sworn personnel to ensure force and restraint are used in a manner that not only provides for public safety but for officer safety as well.

The Sheriff makes these statistics available to the public annually in her continuous effort to improve organizational transparency. The first part of this report contains the use of force data for the years 2021 and 2022. This collection of data includes the use of all types of force by members of the Department. The Department believes that providing this information to the public will clearly show how infrequently deputies use force when compared to the number of calls for service and deputy-initiated activities.

These findings are published annually and posted on the Department's website. They are also available for review at the John F. Duffy Administrative Center, 9621 Ridgehaven Court, San Diego, CA 92123.

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004148

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2021-2022*

## Overall Activity and Use of Force Incidents

Before presenting the use-of-force data, it is essential to understand how a deputy gets involved in a use-of-force incident. A deputy either responds to a call for service or makes an observation requiring action. The overall Department activity is categorized and tracked as either a call for service or deputy-initiated activity. A call for service is a request from a member of the public or another agency for public safety services. Deputy-initiated activity results from a deputy's initiative or observation and does not require a request from the public or another agency. Deputy-initiated activity examples include *traffic stops, field interviews, or other situations the deputy observes.*

### Overall Sheriff's Department Activity



The graph below depicts the overall Department activity compared to the number of use-of-force incidents. The overall activity is a combination of *calls for service* and *deputy-initiated activity*. The overall Department activity does not include the thousands of contacts that occur daily in the Sheriff's Detention Facilities. Deputies regularly perform walkthroughs of the housing modules, talking and interacting with/or monitoring those housed in our Detention facilities at least once an hour and/or transporting them to and from a court or medical visits. These operations are 24 hours a day, every day of the year.

### Total Department Activity vs. Use of Force Incidents



*The use of force number does not reflect multiple force options utilized within a single use of force incident. Approximately 1% of the total activity resulted in a Use of Force incident in both 2021 and 2022*

3

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL                                              CSD004149

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2021-2022*

Another aspect to consider is that even though most use-of-force incidents result in an arrest; there are some instances when an arrest is not made. Making an arrest poses a high risk/ frequency of potential harm to the deputy due to the subject's resistance during the encounter.

### Total Arrests vs. Arrests with a Use of Force



| 14,728 | 13,508 |
| 1,694 | 1,435 |
| 2021 | 2022 |

■ Arrests    ■ Use of Force with Arrest

*\* Approximately 11% of arrests resulted in a Use of Force in 2022 and 12% in 2021. Please note that the graph above <u>excludes</u> arrests made by the detentions and court services bureaus\**

4

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004150

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2021-2022*

### Use of Force Data

In 2022, 3,482 use-of-force incidents were reported, compared to 3,420 incidents reported in 2021. Overall, there was a 2% increase in the use of force incidents between 2021 and 2022.

The following table depicts the types of force used by the Sheriff's Department. The table combines the statistical data for the Law Enforcement Bureau, the Detention Services Bureau, and the Court Services Bureau. Please note that the use of force totals may include scenarios when several types of force were utilized during a single incident and on the same suspect.

### *Sheriff's Department Use of Force 2021-2022*

| Type of Force | Times Used | |
|---|---|---|
| | 2021 | 2022 |
| Use of Force Incidents | 3,420 | 3,482 |
| Hands-on Control | 2,025 | 2,120 |
| Cord Cuff Restraint | 33 | 30 |
| Spit Sock | 215 | 221 |
| Impact Weapons | 41 | 31 |
| Forcible Stop | - | 1 |
| Pro-Straint Chair | 28 | 16 |
| Tactical Shield | 100 | 130 |
| Ankle Strap | 7 | 69 |
| WRAP Restraint | 221 | 180 |
| Less Lethal Deployed (Excludes CED) | 255 | 264 |
| Conducted Energy Device (CED) (Deployed) | 177 | 199 |
| Weapon Pointed (Displayed Only) | 1,372 | 1,268 |
| Lethal Force | 3 | 4 |
| Canine | 20 | 20 |
| Total Uses | 4,497 | 4,553 |

There was a 2% increase in the amount of Use of Force Incidents reported between 2021 and 2022.

5

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004151

## Use of Force by Bureau

The following tables provide a breakdown of the types of force used by each bureau.

*Law Enforcement Services Bureau 2021-2022*

The Law Enforcement Services Bureau provides law enforcement services to nine contract cities and the unincorporated areas of San Diego County.

| Type of Force | Times Used | |
|---|---|---|
| | 2021 | 2022 |
| Use of Force Incidents | 2,340 | 2,103 |
| Hands-on Control | 1,156 | 1,013 |
| Cord Cuff Restraint | 32 | 28 |
| Spit Sock | 76 | 81 |
| Impact Weapons | 25 | 9 |
| Forcible Stop | - | 1 |
| Pro-Straint Chair | - | - |
| Tactical Shield | - | 1 |
| Ankle Strap | 5 | 6 |
| WRAP Restraint | 155 | 156 |
| Less Lethal Deployed (Excludes CED) | 53 | 70 |
| Conducted Energy Device (CED) (Deployed) | 77 | 60 |
| Weapon Pointed (Displayed Only) | 1,313 | 1,192 |
| Lethal Force | 3 | 3 |
| Canine | 20 | 20 |
| Total Uses | 2,915 | 2,640 |

There was a 10% decrease in the amount of Use of Force Incidents reported between 2021 and 2022.

6

CONFIDENTIAL

CSD004152

## Detention Services Bureau 2021-2022

The Detention Services Bureau operates seven detention facilities providing services to those incarcerated in San Diego County. A significant portion of the use of force totals for the Detentions Bureau occur during the intake process, where the arrestees may still be intoxicated or agitated from the arrest.

| Type of Force | Times Used | |
|---|---|---|
| | 2021 | 2022 |
| Use of Force Incidents | 1,028 | 1,268 |
| Hands-on Control | 824 | 1,000 |
| Cord Cuff Restraint | 1 | 1 |
| Spit Sock | 134 | 131 |
| Impact Weapons | 16 | 22 |
| Forcible Stop | - | - |
| Pro-Straint Chair | 28 | 16 |
| Tactical Shield | 100 | 129 |
| Ankle Strap | 1 | 63 |
| WRAP Restraint | 62 | 16 |
| Less Lethal Deployed (Excludes CED) | 201 | 193 |
| Conducted Energy Device (CED) (Deployed) | 98 | 135 |
| Weapon Pointed (Displayed) | 50 | 71 |
| Lethal Force | - | - |
| Canine | - | - |
| Total Uses | 1,515 | 1,777 |

There was a 23% increase in the amount of
Use of Force Incidents reported between
2021 and 2022.

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004153

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2021-2022*

### Court Services Bureau 2021-2022

The Court Services Bureau provides court security services for the seven courthouse facilities operating in San Diego County and the County Administration Center.

| Type of Force | Times Used | |
|---|---|---|
| | 2021 | 2022 |
| **Use of Force Incidents** | 52 | 111 |
| **Hands-on Control** | 45 | 107 |
| **Cord Cuff Restraint** | - | 1 |
| **Spit Sock** | 5 | 9 |
| **Impact Weapons** | - | - |
| **Forcible Stop** | - | - |
| **Pro-Straint Chair** | - | - |
| **Tactical Shield** | - | - |
| **Ankle Strap** | 1 | - |
| **WRAP Restraint** | 4 | 8 |
| **Less Lethal Deployed** (Excludes CED) | 1 | 1 |
| **Conducted Energy Device (CED)** (Deployed) | 2 | 4 |
| **Weapon Pointed** (Displayed) | 9 | 5 |
| **Lethal Force** | - | 1 |
| **Canine** | - | - |
| **Total Uses** | 67 | 136 |

There was a 113% increase in the amount of Use of Force Incidents reported between 2021 and 2022.

*8*

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004154

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2021-2022*

## Levels of Resistance Encountered

**Psychological Intimidation** refers to a subject's nonverbal cues indicating the subject's attitude, appearance, and physical readiness to resist.

**Verbal Non-Compliance** is evidenced by a subject's expressed unwillingness to comply with a deputy's commands.

**Passive Resistance** is represented by a refusal to respond to verbal commands but also offers no form of physical resistance.

**Active Resistance** refers to overt physical actions intended to prevent a deputy's control but that do not attempt to harm the deputy.

**Assaultive Behavior** is represented by conduct that suggests the potential for human injury. Such behavior may be conveyed through body language, verbal threats, and/or physical actions.

**Aggravated Active Aggression** refers to subject actions that potentially result in serious injury or death to a deputy or any other person.

9

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004155

### Principles of Control

**Non-physical:**

1. **Deputy presence** is the psychological impact of an authority figure.

2. **Verbal direction or redirection** refers to verbiage or commands given by a deputy.

3. **Display of firearm** refers to the drawing and/or pointing of a firearm.

   **Drawing and pointing of a firearm**: Deputies may draw and point a firearm when they reasonably believe, based on the totality of the circumstances, that lethal force may be necessary to defend against a threat of death or serious injury to the deputy or another person; or to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the deputy reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

**Physical:**

1. **Less lethal force** refers to forms of force not likely to inflict serious injury. Less severe than intermediate or lethal force. Less lethal force includes:

   **Hands-on control** is used as a means of overcoming resistive or assaultive behavior. Soft hand control may be used to control subjects whose behavior does not demand more severe tactics. Hard hands control and powerful hand or leg strikes are techniques to control more assaultive suspects.

   **Less Lethal Control devices,** including the use of batons, WRAP, Cord Cuff restraints, etc., when used for restraint, joint locks, or come-along tactics.

2. **Intermediate force**: refers to forms of force capable of inflicting significant pain and causing serious injury. Intermediate force is less severe than lethal force. Passive or active Resistance to arrest alone does not constitute an immediate threat justifying the use of intermediate force. Intermediate force includes:

   **Hard intermediate weapons,** including saps, batons, and flashlights, when used to deliver strikes.

   **Intermediate munitions** used for long-range impact and electronic immobilization devices also fall within the intermediate weapon category.

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004156

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2021-2022*

**Chemical agents** may be used when there is an immediate threat to the safety of the deputy or others, AND either:

- the offense committed is sufficiently severe to justify the use of intermediate force or
- the suspect is actively resisting arrest; or
- attempting to flee

**Canines:** when used to arrest or detain a suspect by physically contacting a subject.

**Conducted Energy Devices**

3. **Lethal force:** refers to <u>any</u> force that creates a substantial risk of causing death or serious bodily injury, including but not limited to the discharge of a firearm.

*11*

Prepared by the San Diego Sheriff's Department
Division of Inspectional Services

CONFIDENTIAL

CSD004157

# Exhibit H

# SAN DIEGO COUNTY SHERIFF'S DEPARTMENT



## Internal Affairs Statistical Report 2020-2021



Anthony C. Ray, Sheriff
Kelly A. Martinez, Undersheriff

CONFIDENTIAL

CSD004126

## Internal Affairs Unit-Statistics

The Internal Affairs Unit receives complaints that are initiated by a member of the community or by the Department. Department initiated investigations are a result of Department personnel alleging a violation of policy or misconduct has been committed by another member of the Department.

The Internal Affairs complaint categories of misconduct are: Unbecoming Conduct, Procedural, and Use of Force.

In those rare instances where the complainant was both the Department and a member of the community, the complainant is listed as the Department.

Internal Affairs **Investigation** dispositions are as follows:

EXONERATED:  Allegation is true but actions were lawful.
NOT SUSTAINED:  Facts revealed do not substantiate the allegation.
RESOLVED:  Case was closed as matter was resolved.
SUSTAINED: A true finding supported by facts.
UNFOUNDED:  Not true.  Actions alleged did not occur.
CLOSED BY CORRESPONDENCE: Complaint correspondence letters are written after complete review of the complaint and all related documents, reports, including Body Worn Camera footage, and it is determined the allegation does not require, or justify, an Internal Affairs investigation.

CONFIDENTIAL

CSD004127

### Internal Affairs Unit Overall Statistics



### *Investigations by Complainant*



3

CONFIDENTIAL

CSD004128

### Internal Affairs Statistics by Bureau

The following tables reflect Internal Affairs statistics by bureau. The Law Enforcement Services Bureau provides law enforcement services to nine contract cities and the unincorporated areas of San Diego County. The Detention Services Bureau operates seven detention facilities providing services to those incarcerated in San Diego County. The Court Services Bureau provides court security services for the seven courthouse facilities operating within San Diego County, as well as the County Administration Center.

*Court Services Bureau by Complainant*



*Detention Services Bureau by Complainant*



4

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

### Human Resources Services Bureau by Complainant



### Law Enforcement Services Bureau by Complainant



CONFIDENTIAL

CSD004130

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

## Internal Affairs Overall Statistics by Type of Misconduct Investigation



*Court Services Bureau by Type of Misconduct Investigation*



*Detention Services Bureau by Type of Misconduct Investigation*



6

CONFIDENTIAL

CSD004131

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021

Human Resources Services Bureau by Type of Misconduct Investigation



Law Enforcement Services Bureau by Type of Misconduct Investigation



7

CSD004132

## Internal Affairs Overall Statistics by Findings



2021 cases – open/ongoing (23)

Open cases are not included in graph.

## Court Services Bureau by Findings



2021 cases - open/ongoing (1)

8

CONFIDENTIAL

CSD004133

## Detention Services Bureau by Findings



*2021 cases - open/ongoing (14)*

## Human Resources Services Bureau by Findings



*2021 cases - open/ongoing (2)*

9

CONFIDENTIAL

CSD004134

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2020-2021*

### Law Enforcement Services Bureau by Findings



*2021 cases - open/ongoing (6)*

### Correspondence/Letter to File



Included in total number of complaints documented in PHI (page 3)

Complaints that do not mention a Sheriff's Dept. employee.

2020 – 38
2021 – 28

10

CONFIDENTIAL

CSD004135

Exhibit I

# SAN DIEGO COUNTY SHERIFF'S DEPARTMENT



## Internal Affairs Unit Statistical Report 2022-2023

Kelly A. Martinez, Sheriff
Richard Williams, Undersheriff



CONFIDENTIAL

CSD004158

## Internal Affairs Unit - Statistics

The Internal Affairs Unit receives complaints that are initiated by a member of the community or by the Department. Department initiated investigations are a result of Department personnel alleging a violation of policy or misconduct has been committed by another member of the Department.

The Internal Affairs complaint categories of misconduct are: Unbecoming Conduct, Procedural, and Use of Force.

In those rare instances where the complainant was both the Department and a member of the community, the complainant is listed as the Department.

Internal Affairs Investigation dispositions are as follows:

EXONERATED:  Allegation is true but actions were lawful.
NOT SUSTAINED:  Facts revealed do not substantiate the allegation.
RESOLVED:  Case was closed as matter was resolved.
SUSTAINED: A true finding supported by facts.
UNFOUNDED:  Not true.  Actions alleged did not occur.
CLOSED BY CORRESPONDENCE: Complaint correspondence letters are written after complete review of the complaint and all related documents, reports, including Body Worn Camera footage, and it is determined the allegation does not require, or justify, an Internal Affairs investigation.

CONFIDENTIAL

CSD004159

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

## Internal Affairs Unit Overall Statistics



2023 total complaints – 827 (3 in research status)

2022 total complaints - 802

## *Investigations by Complainant*



3

CONFIDENTIAL

CSD004160

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

## Internal Affairs Statistics by Bureau

The following tables reflect Internal Affairs statistics by bureau. The Law Enforcement Services Bureau provides law enforcement services to nine contract cities and the unincorporated areas of San Diego County. The Detention Services Bureau operates seven detention facilities providing services to those incarcerated in San Diego County. The Court Services Bureau provides court security services for the seven courthouse facilities operating within San Diego County, as well as the County Administration Center. The Sheriff's Administration includes the Office of the Sheriff, Human Resources Bureau, and Management Services Bureau.

*Court Services Bureau by Complainant*



*Detention Services Bureau by Complainant*



4

CSD004161

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023

Human Resources Services Bureau by Complainant



Office of the Sheriff by Complainant



5

CONFIDENTIAL                                              CSD004162

### Law Enforcement Services Bureau by Complainant



### Management Services Bureau by Complainant



6

CSD004163

## Internal Affairs Overall Statistics by Type of Misconduct Investigation



### Court Services Bureau by Type of Misconduct Investigation



7

CONFIDENTIAL

CSD004164

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

Detention Services Bureau by Type of Misconduct Investigation



Human Resources Services Bureau by Type of Misconduct Investigation



8

CONFIDENTIAL

CSD004165

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

### Management Services Bureau by Type of Misconduct Investigation



### Office of the Sheriff



9

CONFIDENTIAL

CSD004166

*Law Enforcement Services Bureau by Type of Misconduct Investigation*



## Internal Affairs Overall Statistics by Findings



*2023 cases – open/ongoing - 27*
*2022 cases – open/ongoing – 2*

*Open cases are not included in graph.*

10

CSD004167

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

### Court Services Bureau by Findings



*2023 cases - open/ongoing - 1*

### Detention Services Bureau by Findings



*2023 cases - open/ongoing - 14*
*2022 cases – open/ongoing 2*

11

CONFIDENTIAL

CSD004168

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

### Human Resources Services Bureau by Findings



*2023 cases - open/ongoing – 2*

### Management Services Bureau by Findings



12

CONFIDENTIAL

CSD004169

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

### Office of the Sheriff by Findings



### Law Enforcement Services Bureau by Findings



*2023 cases – open/ongoing -10*

13

CONFIDENTIAL

CSD004170

*SAN DIEGO COUNTY SHERIFF'S DEPARTMENT STATISTICAL REPORT 2022-2023*

## Correspondence/Letter to File by Bureau



Complaints that do not involve a Sheriff Department employee.

2023 - *52

2022 - *46

14

CONFIDENTIAL

Exhibit J

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,                             ) No. 24-CV-00662-CAB-VET
                                        )
                    Plaintiff,          )
                                        )
v.                                      )
                                        )
NICOLAI RAMOS, in his individual        )
capacity, COUNTY OF SAN DIEGO;          )
MICHAEL ALCARION, in his individual)
capacity; and DOES 1-5,                 )
                                        )
                    Defendants.         )
_____)


EXPERT VIDEO DEPOSITION

OF ROGER CLARK

VOLUME 1, PAGES 1 THROUGH 88

WEDNESDAY, MAY 13, 2026

SAN DIEGO, CALIFORNIA


Reported by:
Kathleen Madden Keenaghan
CSR No. 14577
Job No. 10190690

```
            IN  THE  UNITED  STATES  DISTRICT  COURT

        FOR  THE  SOUTHERN  DISTRICT  OF  CALIFORNIA


JAMEL BURT,                         )  No.  24-CV-00662-CAB-VET
                                   )
                  Plaintiff,       )
                                   )
v.                                 )
                                   )
NICOLAI RAMOS, in his individual   )
capacity, COUNTY OF SAN DIEGO;     )
MICHAEL ALCARION, in his individual)
capacity; and DOES 1-5,            )
                                   )
                  Defendants.      )
_____   )
```

VIDEO DEPOSITION OF ROGER CLARK COMMENCING at the hour of 10:16 a.m., on Wednesday, May 13, 2026, taking place at 1600 Pacific Highway, Suite 355, San Diego, California 92101 before Kathleen Madden Keenaghan, Certified Shorthand Reporter No. 14577, in and for the State of California.

APPEARANCES

For the Plaintiff:

        BY:  EUGENE IREDALE  (SBN 75292)
        Iredale and Yoo APC
        105 W F Street, Floor 4
        San Diego, California 92101
        Phone: (619) 233-1525
        Fax: (619) 233-3221
        Email: egiredale@iredalelaw.com

Attorneys for Defendant County of San Diego, Michael Alcarion and Nicolai Ramos:

        BY:  TIMOTHY A. HANNA (SBN 310620)
        OFFICE OF COUNTY COUNSEL, COUNTY OF SAN DIEGO
        1600 Pacific Highway, Room 355
        San Diego, California 92101-2469
        Telephone: (619) 904-0151
        E-mail: timothy.hanna@sdcounty.ca.gov

The Videographer:  Tanya Fonseca

other, be aware of what each other's doing and not separate with 2:1:2 rather than -- there should be a better numerical calculus.

Q   I understand.

So would it be correct to say that the issue is not placing one of the individuals who's handcuffed into a patrol vehicle; the issue is the manner in which they conducted this that caused them to separate?

A   Right.  So Ramos has the driver; Wilder has Burt. The best thing is for Ramos to stick with his driver.  Why would he leave that unless he would have felt it?  I am going to insert myself into what Wilder is doing with Burt. Why would you do that?

Q   I understand.

But in this particular instance, the driver and Mr. Burt were seated on the curb speaking with Deputy Wilder, while Deputy Ramos was looking for the meth pipe, and Deputy Ramos comes back.  Are you aware of that?

A   Right.  I am aware of that; you reminded me.  Yeah. He leaves -- he goes down the street and comes back, you're right, and they're together.  And then he takes -- he decides he is going to take Burt after the comment back and forth.  He is going to take Burt to his patrol car -- put him in the patrol car.  And that is a separation.

Q   I understand.  Thank you.

Q    Let me ask you a -- did you see any evidence that Deputy Ramos was aware of that Mr. Burt's pants were falling down?

A    Of course, I did; he's right next to me.  I mean, he would have to be deaf, dumb, and blind not to see it.  You can see it; it's in the video.

Q    Did Mr. Burt ever mention that his pants were falling down prior to the use of force?

A    I can't remember exactly what Burt said, but Ramos is saying stop flexing.  I mean, why would you then continue on walking when the guy's pants are falling down and you're getting -- he says more than what?  A half dozen times, stop flexing.  Well, he's got to look -- instead, he just says it.

Q    Could -- for example, Mr. Burt's movement to pull up his pants, could that be interpreted as flexing or bracing or tensing against an officer's attempted control?

A    So your question implies that there is an attempt to resist control.  Nonetheless, when a person's pants are falling down, it's typical they're going to stop.  It -- it is going to be difficult even to walk with your pants around your ankles.  So it is understood that this would be a common understanding of what is occurring here.  And he would stop, and say okay.  Let's get your pants up.

Q    Absolutely.  And perhaps, I misphrased my question.

I guess my question is, if the officer is unaware that that is occurring, isn't it possible that that type of movement could be interpreted by the officer as active resistance?

A    If I were assessing -- and I did -- this episode, I would not accept that as reasonable because the officer is required by the professional.

Q    And so how would he have become aware?  By looking --

A    Of course.  I mean, I've had -- it would be a conversation between -- if I were Ramos's sergeant, I would say, how is this possible for you not to see it?  I see it. I have watched your body camera.  How can you be so callous in your disregard of what is really going?  What is the motivation here?  I think it speaks to his motivation.

Q    Okay.  I'm actually going to go back to page 4 here. And I have -- another question is -- let's take a look. There is -- at the very last line of page 4, it says -- sorry, the second to last line, it says, Officer Ramos grabbed Mr. Burt with both hands, pivoted Mr. Burt's body, swept his legs and slammed Mr. Burt against the ground.

I want to ask you specifically about pivoting Mr. Burt's body.  Let me ask you this -- let me ask first, how did you reach the conclusion that this is what had occurred?

A    It's in the -- that is my interpretation of the video, what you see.  In both the videos you can see it.  So

BY ATTORNEY HANNA:

Q    This section is a summary of opinions you reached in this case; is that correct?

A    Yes.

Q    And just looking kind of looking at -- it goes to -- it's page 14, 15, 16, 17 and most of 18; is that correct?

A    Yes.

Q    Let me ask you this, on your first opinion here, you note that it's uncontested -- and I wanted to ask you specifically about this.  It's uncontested in the record that Mr. Burt was unarmed and nonthreatening.

When you say nonthreatening -- let me ask you this.  Is it your opinion that -- let me ask you this.  Would you admit that if Deputy Ramos's account of this instance were believed, that Mr. Burt was presenting a threat to officer -- officer safety?

A    I considered Ramos as an explanation of his -- that he felt there was a threat, inadequate and not supported by the videos, and I can tell you, if necessary.  So I was careful to consider, and I put in that he was not threatening and he was not a threat.

Q    Let me ask you this way, is it your opinion that Deputy Ramos did not feel threatened?

A    While I can't climb I his head, I can only say that I did not see any justification for him to feel threatened.

If he did, that would be a subjective fear.  That is not in the profession, that is not allowed in the code.  Everything Ramos does and reacts to, have to be objectively reasonable. That is why I wrote this this way because what I see is no objective reason for him to feel threatened.

Q   Let me ask you this way.  If Deputy Ramos's account of how this events occurred is to be believed, would an objectively reasonable officer standing in his shoes have felt threatened?

A   That is exactly what I said, that would -- you are correct.  He would not -- an objectively reasonable officer would not feel threatened.

Q   Okay.  I just wanted to confirm that is your opinion.  Okay.  Let's see.  Moving on to No. 2 here, one of the factors you mentioned -- and if you actually move to page 15 -- there is a line here that says -- specifically, it says, "The aim of this training is to prevent injuries and/or fatalities".

And I wanted to ask the question, is it your opinion that the aim of training is to avoid -- well, let me ask it this way, is your opinion that any injury resulting from the use of force shows improper -- shows improper training?

A   No.

Q   And so you would agree that some uses of force injuries occurs, as a result of permissible use of force --

employ any de-escalation techniques.  What de-escalation techniques would you -- looking at all the facts and scenarios, what de-escalation techniques should have been employed?

So Ramos has been trained in the requirements of 835A of the penal code, which is extensively covered in learning domain 22, use of force -- named use of force/de-escalation. And there is a chapter on the techniques of de-escalation, which focuses a lot on the methods that you use.

When I trained it to start the conversation, I would explain, you know, we are going to going through this topic, so I want you to consider an image.  So when you are dealing with people that are in a law enforcement capacity, typically, they are not happy.  That's what we do.

I mean, we go to things, and we deal with people in unhappy circumstances.  So when we go or deal with them, it is like a fireman going to a fire to put out the fire with water, not with a can of gasoline.  What Ramos did was he had gallons of gasoline and he just used it because he was provocative, he was challenging, he takes over from a deputy that was doing just fine with Burt.  Handcuffs him the correct way, accommodates -- explains to him what he is going to be doing and why.  Sits him on the curb, and then here comes Ramos.  And that -- so I said was the moment.  So that is my answer.

REPORTER'S CERTIFICATE

I, Kathleen Madden Keenaghan, a Certified Shorthand Reporter for the State of California, do hereby certify:

That the foregoing transcript of proceedings was taken before me at the time and place set forth; that the testimony and proceedings were reported stenographically by me and later transcribed by computer-aided transcription under my direction and supervision; that the foregoing is a true record of the testimony and proceedings taken at that time.

I further certify that I am in no way interested in the outcome of said action.

I have hereunto subscribed my name this 29th day of May, 2026.

_____

Kathleen Madden Keenaghan

CSR No. 14577

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)

# Exhibit K

Skip to main content

County of San Diego

 NextRequest

## Request 24-1543  Closed

5 of 47 with filters active

## Dates

**Received**

July 10, 2024 via web

## Additional information

**Timeframe for records search (if applicable)**
*No data entered*

**Address**
*No data entered*

**APN**
*No data entered*

**Permit Number**
*No data entered*

## Staff assigned

**Departments**

Clerk of the Board of Supervisors (COB)

**Point of contact**
Clerk of the Board

## Request

I am seeking a csv or excel of: information on civil lawsuits and liability claims that resulted in payments on behalf of the San Diego County Sheriff's Department between Jan. 1, 2014 and the present. Please include all information that is available, such as the date of the settlement, amount of settlement, any incident information such as claimant, and nature of claim (OIS, corrections, excessive force, wrongful death, etc). Please include claims that were settled before cases were filed in the court as well as civil cases that were filed.

### Timeline | Documents

 **Request published** Anyone with access to this request

July 29, 2024, 9:36pm

 **Request closed** Anyone with access to this request

Hello,

This is in response to your California Public Records Act request, which the

County of San Diego received on July 10, 2024.

The County of San Diego has identified responsive records, which are now available to you on NextRequest. Please note that 72 hours after you receive this message your request and any released records will become publicly available.

Thank you,

Public Records Act Unit

County of San Diego

July 26, 2024, 1:19pm by Staff

 **Document(s) released**          Anyone with access to this request

PRA-NY Times-Damien-SDSO settlements_judgments from 1.1.2014 through 7.10.2024 (Report Date 7.10.24).pdf

July 26, 2024, 1:18pm by Staff

 **Department assignment**          Anyone with access to this request

Clerk of the Board of Supervisors

July 10, 2024, 3:32pm by the requester

 **Request opened**          Anyone with access to this request

Request received via web

July 10, 2024, 3:32pm by the requester

**Helpful Suggestions**

**Help**

**Privacy**

CIVICPLUS

NextRequest

**Terms**
**County of San Diego**

Exhibit L

| PMT DATE | FILE # | TITLE | AMOUNT | PAYEE/PAYOR | CAUSE DESC |
|---|---|---|---|---|---|
| 05/10/2016 | 160127A | 21st Century Insurance Company | $ 9,449.89 | 21ST CENTURY INSURANCE COMPANY | County Vehicle Code 3 Accident |
| 08/02/2016 | 160312A | 21st Century Insurance Company (Markin) | $ 4,180.57 | 21ST CENTURY INSURANCE COMPANY | County Vehicle v. Vehicle |
| 10/10/2016 | 160312A | 21st Century Insurance Company (Markin) | $ 200.00 | 21ST CENTURY INSURANCE COMPANY | County Vehicle v. Vehicle |
| 07/20/2016 | 160311 | 21st Century Insurance Company (Rasmussen) | $ 1,630.25 | 21ST CENTURY INSURANCE COMPANY | County Vehicle v. Vehicle |
| 08/11/2016 | 160311 | 21st Century Insurance Company (Rasmussen) | $ 38.19 | RASMUSSEN, KELLY | County Vehicle v. Vehicle |
| 02/01/2024 | 20-90001 | A.C. | $ 98,995.99 | THE GILLEON LAW FIRM | Employee Procedure or Conduct |
| 07/10/2023 | 20-90001 | A.C. | $ 100,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 10/11/2023 | 18-90357 | A.H. | $ 250,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 06/23/2020 | 200096 | AAA (Apan) | $ 6,557.22 | INTERINSURANCE EXCHANGE OF THE AUTO CLUB | County Vehicle v. Vehicle |
| 10/28/2020 | 200341B | AAA (Cuevas) | $ 8,913.57 | INTERINSURANCE EXCHANGE OF THE AUTO CLUB | County Vehicle v. Vehicle |
| 04/17/2019 | 190174 | AAA (Martinez B) | $ 4,262.58 | AAA | County Vehicle v. Vehicle |
| 06/23/2020 | 200123 | AAA (Palecki) | $ 12,386.52 | INTERINSURANCE EXCHANGE OF THE AUTO CLUB | County Vehicle v. Vehicle |
| 11/07/2023 | 230700 | AAA (Skinner) | $ 2,874.57 | INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB | County Vehicle v. Vehicle |
| 04/19/2023 | 230244 | AAA (Wegener) | $ 1,611.30 | AAA (WEGENER) | County Vehicle v. Vehicle |
| 01/07/2020 | 18-90202 | ABDI, ABDIRIZAK | $ 20,000.00 | LAW OFFICE OF FRANK S CLOWNEY III | False Arrest/Imprisonment |
| 02/18/2014 | 130436A | Acclaim Resource Partners (Estevez) | $ 789.67 | ACCLAIM RESOURCE PARTNERS | County Vehicle v. Vehicle |

7/26/2024

| 03/20/2014 | 130436A | Acclaim Resource Partners (Estevez) | $ | 72.00 | ACCLAIM RESOURCE PARTNERS | County Vehicle v. Vehicle |
| 02/03/2022 | 210397 | Adams, Makayla | $ | 1,539.39 | ADAMS, MAKAYLA | County Vehicle v. Vehicle |
| 05/22/2019 | 18-90197 | ADAMS-FALLONE, HOLLY | $ | 33,918.00 | BAKER LAW GROUP LLP | Harassment |
| 05/29/2019 | 18-90197 | ADAMS-FALLONE, HOLLY | $ | 41,082.00 | HOLLY FALLONE | Harassment |
| 07/24/2020 | 18-90089 | ADKINS, MARK ROSHAWN (ESTATE OF) | $ | 185,000.00 | SCOTT TRIAL LAWYERS APC | Use of Force |
| 08/01/2014 | 140302 | Agbunag, Beth Michele | $ | 2,242.50 | AGBUNAG, BETH | County Vehicle Code 3 Accident |
| 07/14/2021 | 210249 | Aguirre Guevara, Jose | $ | 1,655.63 | AGUIRRE GUEVARA, JOSE | County Vehicle v. Vehicle |
| 10/20/2015 | 150378 | Akkarakaran, Sony | $ | 2,139.58 | AKKARAKARAN, SONY | Employee Procedure or Conduct |
| 10/09/2017 | 170247A | Alliance United Insurance (Ferra) | $ | 14,146.53 | KEMPER SERVICES GRP AS SUBROGEE OF | Pursuit accident |
| 09/13/2023 | 230520 | Allstate (Alvarez) | $ | 4,438.79 | ALLSTATE NORTHBROOK INDEMNITY CO | County Vehicle v. Vehicle |
| 11/22/2023 | 230713 | Allstate (Bayardo) | $ | 6,582.99 | ALLSTATE NORTHBROOK INDEMNITY CO | County Vehicle v. Vehicle |
| 01/02/2019 | 180479 | Allstate (Benham) | $ | 2,518.11 | ALLSTATE | County Vehicle v. Vehicle |
| 11/01/2022 | 220047A | Allstate (Bey) | $ | 1,570.50 | ALLSTATE (BEY) | County Vehicle v. Vehicle |
| 04/04/2016 | 160131 | Allstate (Boeck) | $ | 946.05 | ALLSTATE | County Vehicle v. Vehicle |
| 05/24/2016 | 160131 | Allstate (Boeck) | $ | 161.66 | BOECK, CARL | County Vehicle v. Vehicle |
| 12/09/2016 | 160533 | Allstate (Hempstead) | $ | 473.04 | ALLSTATE | County Vehicle v. Vehicle |
| 08/04/2020 | 200114 | Allstate (Rosales) | $ | 713.75 | ALLSTATE | County Vehicle v. Vehicle |
| 02/06/2023 | 230068 | Allstate (Rotoni) | $ | 766.72 | ALLSTATE PAYMENT PROCESSING CENTER | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

County of San Diego Sheriff's Department Settlements & Judgments from 1/1/2014 through 7/10/2024

| 03/21/2023 | 220438 | Allstate (Sanchez) | $ | 11,266.85 | ALLSTATE (SANCHEZ) | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 12/17/2020 | 200316B | Allstate (Wahlgren) | $ | 7,575.97 | ALLSTATE INSURANCE | County Vehicle v. Vehicle |
| 08/02/2016 | 160335 | Allstate (Weatherspoon) | $ | 955.69 | ALLSTATE | County Vehicle v. Vehicle |
| 03/19/2020 | 190445 | Allstate (Yakob) | $ | 2,560.50 | ALLSTATE PAYMENT PROCESSING CENTER | County Vehicle v. Vehicle |
| 03/02/2020 | 200062 | Allstate (Zavala) | $ | 1,345.95 | ALLSTATE (ZAVALA) | County Vehicle v. Vehicle |
| 01/28/2014 | 140033 | Allstate Insurance Company (Ingram) | $ | 1,343.75 | ALLSTATE INSURANCE COMPANY | County Vehicle v. Vehicle |
| 02/23/2016 | 150543 | Allstate Insurance Company (Miller) | $ | 5,951.21 | ALLSTATE INSURANCE COMPANY | County Vehicle v. Vehicle |
| 12/08/2022 | 220411 | Alvarado, Oscar | $ | 3,690.36 | ALVARADO, OSCAR | County Vehicle v. Vehicle |
| 06/06/2018 | 180203 | Amador, Emanuel | $ | 5,322.50 | AMADOR, EMANUEL | County Vehicle v. Vehicle |
| 01/09/2014 | 130443 | Amco Insurance Company (Delise) | $ | 5,595.87 | AMCO INSURANCE COMPANY | County Vehicle v. Vehicle |
| 02/20/2020 | 190622A | Anchor General (Baez) | $ | 6,296.10 | ANCHOR GENERAL INSURANCE COMPANY | County Vehicle v. Vehicle |
| 03/11/2014 | 140008 | Anderson, Rozanne Wagner | $ | 2,665.00 | ANDERSON, ROZANNE | Employee Procedure or Conduct |
| 01/04/2023 | 21-90357 | APAN, VANESSA | $ | 9,174.50 | APAN, JAMES AS TRUSTEE FOR AUDREY MURILLO | County Vehicle v. Vehicle |
| 01/04/2023 | 21-90357 | APAN, VANESSA | $ | 1,200.00 | KEERAN KUMAR MD INC | County Vehicle v. Vehicle |
| 01/04/2023 | 21-90357 | APAN, VANESSA | $ | 375.00 | APAN, JAMES AS THE GUARDIAN FOR SOPHIA MURILLO | County Vehicle v. Vehicle |
| 12/28/2022 | 21-90357 | APAN, VANESSA | $ | 40,000.00 | MOVA LAW GROUP APLC | County Vehicle v. Vehicle |
| 12/28/2022 | 21-90357 | APAN, VANESSA | $ | 4,375.00 | MOVA LAW GROUP APLC | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

| 12/28/2022 | 21-90357 | APAN, VANESSA | $ | 2,000.00 | MDRS SPINE & SPORT INC | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 12/28/2022 | 21-90357 | APAN, VANESSA | $ | 700.00 | MAX MRIMAGING INC | County Vehicle v. Vehicle |
| 12/28/2022 | 21-90357 | APAN, VANESSA | $ | 125.00 | MOVA LAW GROUP APLC | County Vehicle v. Vehicle |
| 12/28/2022 | 21-90357 | APAN, VANESSA | $ | 50.50 | MOVA LAW GROUP APLC | County Vehicle v. Vehicle |
| 06/20/2024 | 23-90435 | ARMENDARIZ, PRECIOUS | $ | 19,689.00 | LAW OFFICE OF STEVE HOFFMAN APC | False Arrest/Imprisonment |
| 06/21/2024 | 23-90435 | ARMENDARIZ, PRECIOUS | $ | 12,750.00 | ARMENDARIZ, PRECIOUS | False Arrest/Imprisonment |
| 03/17/2020 | 190242A | Arnold, Nicole | $ | 56,500.00 | BECKERMAN ANDERSON, APC CLIENT | County Vehicle v. Vehicle |
| 07/16/2019 | 190242A | Arnold, Nicole | $ | 881.49 | ARNOLD, NICOLE | County Vehicle v. Vehicle |
| 01/12/2023 | 220481 | Arrazola, Myriam | $ | 11,993.84 | ARRAZOLA, MYRIAM | County Vehicle v. Vehicle |
| 08/01/2023 | 21-90025 | ASTORGA, TYLER | $ | 18,587.00 | THE PRIDE LAW FIRM | Use of Force |
| 10/03/2022 | 21-90025 | ASTORGA, TYLER | $ | 50,000.00 | THE PRIDE LAW FIRM | Use of Force |
| 09/10/2020 | 200284 | Atlas Financial Holdings (Jimenez) | $ | 1,513.82 | ATLAS FINANCIAL HOLDINGS | County Vehicle v. Vehicle |
| 03/12/2021 | 20-90258 | AUSTIN, RONALD | $ | 3,300.00 | LAW OFFICE OF BRENT BORCHERT | Other Non-PI, Non-PD |
| 06/27/2017 | 150287 | Auten, Floyd | $ | 50,000.00 | MORRIS LAW FIRM APC | County Vehicle v. Vehicle |
| 01/03/2017 | 160552A | Automobile Club of California (Agerbeek) | $ | 6,519.86 | AUTOMOBILE CLUB OF SO CALIFORNIA | County Vehicle v. Vehicle |
| 09/11/2018 | 180320 | Automobile Club of Southern California (Gamble) | $ | 2,617.57 | AUTOMOBILE CLUB OF SO CA | County Vehicle v. Vehicle |
| 05/19/2015 | 150216 | Automobile Club of Southern California (Miller) | $ | 836.20 | AUTOMOBILE CLUB OF SOUTHERN CA | County Vehicle v. Vehicle |
| 05/04/2017 | 170202 | Automobile Club of Southern California (Sanders) | $ | 10,500.78 | AUTOMOBILE CLUB OF SOUTHERN CA | County Vehicle v. Vehicle |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| | | | | | |
|---|---|---|---|---|---|
| 06/09/2015 | 150191 | Automobile Club of Southern California (Weaver) | $ 1,499.67 | INTERINSURANCE EXCHANGE OF THE | County Vehicle v. Vehicle |
| 02/05/2014 | 130498 | Automobile Club of Southern California (Young) | $ 275.76 | AUTOMOBILE CLUB OF SOUTHERN CA | County Vehicle v. Vehicle |
| 04/09/2024 | 240184 | Avelar Portillo, Hipolito | $ 1,698.85 | AVELAR PORTILLO, HIPOLITO & AVELAR, ELMIRA | County Vehicle v. Vehicle |
| 01/26/2015 | 150033 | Avocado Homeowner's Associates | $ 4,087.82 | AVOCADO HOMEOWNER'S ASSOC | County Vehicle v. Fixed Object/Other |
| 08/28/2019 | 18-90494 | AXELLA INSURANCE COMPANY | $ 15,000.00 | LEACH & MCGREEVY, LLP IN TRUST | County Vehicle v. Vehicle |
| 07/26/2016 | 16-90060 | B.E.S.D., A MINOR | $ 99,999.00 | RUTMAN, KEITH H – | Use of Force |
| 04/04/2016 | 150489 | Baay, John Montiel Jr. | $ 1,985.00 | BAAY, JOHN JR | County Vehicle v. Vehicle |
| 09/10/2015 | 15-90177 | BACON, BRETT | $ 25,000.00 | MARRINAN, MICHAEL R | Use of Force |
| 09/13/2023 | 21-90251 | BAEZ, ANA LUISA | $ 65,087.32 | ROGERS BELTRAN LLP | County Vehicle v. Vehicle |
| 06/26/2017 | 16-90122 | BAILEY, JENNIFER | $ 40,000.00 | HIGGS, FLETCHER & MACK LLP | Employee Misconduct-Viol Civ Rts Nonjail |
| 02/11/2020 | 190609 | Bajet, James | $ 352.50 | ENTERPRISE RENT-A-CAR | County Vehicle v. Vehicle |
| 11/23/2015 | 150184 | Baker, Jessika | $ 2,021.72 | CA JOINT POWERS INS AUTHORITY | County Vehicle v. Vehicle |
| 02/16/2017 | 170069 | Balfe, Patricia Lynn | $ 2,500.00 | BALFE, PATRICIA | County Vehicle v. Vehicle |
| 03/22/2019 | 190121 | Barajas, Yolanda | $ 1,009.39 | BARAJAS, YOLANDA | County Vehicle v. Vehicle |
| 09/16/2020 | 200255 | Barnes, Olga | $ 1,000.00 | BARNES, OLGA | County Vehicle v. Vehicle |
| 02/01/2016 | 150535 | Barnes, Steven | $ 1,058.51 | BARNES, STEVEN | Animal Related, Other |
| 04/24/2018 | 170471 | Battista, Lindsay | $ 23,500.00 | ESTEFANOS LAW APC | County Vehicle v. Vehicle |
| 10/04/2022 | 220311 | Beer, Ari | $ 386.00 | BEER, ARI | Towing Related |
| 02/16/2024 | 240044 | Bella Terra Apartments | $ 1,950.00 | BELLA TERRA APARTMENTS | Use of Force |

County of San Diego Sheriff's Department Settlements or Judgments from 1/1/2014 through 7/10/2024

| | | | | | |
|---|---|---|---|---|---|
| 03/07/2024 | 230462 | Benson, Peter | $ 750.00 | BENSON, PETER E. | Employee Procedure or Conduct |
| 09/15/2016 | 16-90294 | BERNARD, PATRICK | $ 50,000.00 | SEMNAR & HARTMAN LLP | Use of Force |
| 08/01/2023 | 220047 | Bey, Orondi | $ 2,784.38 | AMINPOUR & ASSOCIATES AND ORONDI BEY | County Vehicle v. Vehicle |
| 08/01/2023 | 220047 | Bey, Orondi | $ 215.62 | THE RAWLINGS CO LLC | County Vehicle v. Vehicle |
| 07/28/2020 | 190626 | Bigler, Jacqueline | $ 19,000.00 | LAW OFFICES OF C BRADLEY HALLEN | County Vehicle v. Vehicle |
| 06/23/2022 | 21-90032 | BILS, KATHLEEN (ESTATE OF NICHOLAS BILS) | $ 5,100,000.00 | IREDALE & YOO APC | Use of Force |
| 06/23/2022 | 21-90032 | BILS, KATHLEEN (ESTATE OF NICHOLAS BILS) | $ 3,000,000.00 | THE COCHRAN FIRM CALIFORNIA | Use of Force |
| 09/21/2021 | 210296 | Bird, Christopher | $ 653.99 | BIRD, CHRISTOPHER | Employee Procedure or Conduct |
| 07/15/2016 | 160264 | Blackman, Larry Joseph | $ 475.00 | BLACKMAN, LARRY JOSEPH | Towing Related |
| 04/22/2020 | 19-90322 | BLOCKER, DONNA | $ 6,000.00 | THIERCOF, FRANCES | County Vehicle v. Vehicle |
| 10/08/2021 | 19-90322 | BLOCKER, DONNA | $ 650,000.00 | HARRIS PERSONAL INJURY LAWYERS INC | County Vehicle v. Vehicle |
| 10/08/2021 | 19-90322 | BLOCKER, DONNA | $ 250,000.00 | METLIFE ASSIGNMENT COMPANY, INC | County Vehicle v. Vehicle |
| 06/18/2018 | 180204 | Bobadilla, Rogelio | $ 2,026.71 | BOBADILLA, ROGELIO | County Vehicle v. Vehicle |
| 02/16/2018 | 17-90007 | BOECK, JOSEPHINE | $ 40,000.00 | LAW OFFICE OF ROBERT J PECORA | County Vehicle v. Vehicle |
| 04/15/2014 | 12-90233 | BOLDEN, ANTHONY | $ 500.00 | WILLIAMS, TYRA | Jail, Use of Force |
| 10/24/2014 | 140387 | Bonal, Claudia | $ 7,883.37 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
| 10/01/2018 | 15-90554 | BRANCH, ROBERT | $ 72,200.00 | PACIFIC LIFE & ANNUITY SERVICES INC | Civil Rights or Employment |
| 10/01/2018 | 15-90554 | BRANCH, ROBERT | $ 64,800.00 | THE PRIDE LAW FIRM | Civil Rights or Employment |

Office of County Counsel

7/26/2024

| | | | | | |
|---|---|---|---|---|---|
| 04/27/2017 | 160292 | Bried, James Michael | $ 400.00 | BRIED, JAMES | County Vehicle v. Fixed Object/Other |
| 02/20/2020 | 200010A | Brink, Tiffany | $ 700.00 | BRINK, TIFFANY | County Vehicle v. Vehicle |
| 04/08/2015 | 12-90300 | BRUMMETT, SHAUNDA | $ 2,965,000.00 | MORRIS LAW FIRM APC | Jail, Lack of Medical Care |
| 04/08/2015 | 12-90300 | BRUMMETT, SHAUNDA | $ 230,000.00 | AGUIRRE & SEVERSON LLP | Jail, Lack of Medical Care |
| 07/06/2017 | 160229A | Bryant, Regina Lakisha | $ 4,500.00 | BRYANT, REGINA | County Vehicle v. Vehicle |
| 05/06/2015 | 150145 | Budget Rent A Car | $ 1,861.86 | BUDGET RENT A CAR | County Vehicle v. Vehicle |
| 10/05/2021 | 210055 | Bullock, Dina | $ 1,951.82 | BULLOCK, DINA | Illegal Search or Seizure |
| 07/23/2014 | 140261 | Burton, Susan Marie | $ 2,540.00 | BURTON, SUSAN | Use of Force |
| 12/20/2016 | 15-90172 | BUSH, ROGER | $ 225,000.00 | WARREN & BURSTEIN | Illegal Search or Seizure |
| 01/25/2019 | 180460A | C & M Motors Inc. | $ 7,276.42 | C & M MOTORS INC | E'EE DRIVING RENTAL CAR |
| 12/21/2018 | 180460 | C & M Motors Inc. | $ 2,530.35 | C & M MOTORS INC | E'EE DRIVING RENTAL CAR |
| 02/01/2023 | 22-90181 | C.J.T. (A MINOR) | $ 63,161.94 | PACIFIC LIFE & ANNUITY SERVICES INC | Jail, Lack of Medical Care |
| 02/02/2023 | 22-90181 | C.J.T. (A MINOR) | $ 36,838.06 | PAOLI & PURDY, PC | Jail, Lack of Medical Care |
| 11/17/2020 | 18-90158 | C.M. | $ 375,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 05/03/2018 | 18-90147 | C.P. | $ 262,000.00 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 10/25/2018 | 18-90147 | C.P. | $ 20,755.70 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 09/24/2014 | 140345 | Cabello, Rosalio G. | $ 5,500.00 | LESLIE, SEAN F | Employee Procedure or Conduct |
| 05/12/2015 | 14-90600 | CALCAGNO, AARON | $ 150,000.00 | IREDALE & YOO APC | Jail, False Imprisonment |
| 06/23/2015 | 150271 | California Vistas Homeowners Association | $ 2,200.00 | CA VISTAS HOMEOWNERS ASSOC | County Vehicle v. Fixed Object/Other |

| 10/07/2014 | 140455 | Camacho, Jorge Dean | $ | 1,530.49 | CAMACHO, JORGE DEAN | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 08/13/2014 | 09-90406 | CAMERON, MICHELLE | $ | 93,403.28 | LAW OFFICES OF ALEX SCHEINGROSS | False Arrest/Imprisonment |
| 08/13/2014 | 09-90406 | CAMERON, MICHELLE | $ | 86,596.72 | CAMERON, MICHELLE | False Arrest/Imprisonment |
| 03/24/2017 | 170113 | Campbell, Kathryn | $ | 60.00 | CAMPBELL, KATHRYN | Towing Related |
| 02/07/2022 | 210288 | Caongca, Sheila | $ | 8,000.00 | LAW OFFICE OF H SAMMY RIHAN APC | County Vehicle v. Vehicle |
| 10/04/2021 | 210288 | Caongca, Sheila | $ | 3,287.13 | CAONGCA, RICO | County Vehicle v. Vehicle |
| 01/31/2020 | 19-90221 | CARO, LEOBARDO | $ | 105,000.00 | WARREN & BURSTEIN | Use of Force |
| 02/27/2023 | 19-90172 | CARR, WILLIAM | $ | 196,500.00 | LAW OFFICES OF JOSEPH M. MCMULLEN | Use of Force |
| 01/14/2016 | 14-90034 | CARROLL, ABONILICO LAMAR | $ | 5,000.00 | SINGLETON LAW FIRM APC | Jail, Use of Force |
| 05/14/2015 | 150202 | Carter, Laurie Jane | $ | 1,941.46 | CARTER, LAURIE | County Vehicle v. Vehicle |
| 06/25/2015 | 150202 | Carter, Laurie Jane | $ | 267.53 | CARTER, LAURIE | County Vehicle v. Vehicle |
| 11/29/2018 | 180414 | Carver, Justin Travis Lee | $ | 195.00 | CARVER, JUSTIN | Employee Procedure or Conduct |
| 01/08/2019 | 180525 | Castillo-Valdivia, Jose Eduardo | $ | 1,718.52 | CASTILLO-VALDIVIA, JOSE | County Vehicle v. Vehicle |
| 04/30/2020 | 190545B | Castrellon, Maria | $ | 800.00 | CASTRELLON, MARIA | County Vehicle v. Vehicle |
| 03/11/2021 | 20-90186 | CASTRO IV, JESUS | $ | 15,000.00 | GOLDFADEN LAW FBO JESUS CASTRO IV | County Vehicle v. Vehicle |
| 10/09/2019 | 190354A | Castro IV, Jesus | $ | 4,967.13 | CASTRO, JESUS IV | County Vehicle v. Vehicle |
| 01/26/2015 | 140551 | Castro, Denisse | $ | 7,153.88 | FARMERS INSURANCE COMPANY | County Vehicle v. Vehicle |
| 05/02/2017 | 170152 | Castro, Roberta Maria | $ | 250.00 | CASTRO, ROBERTA MARIA | Towing Related |
| 02/18/2021 | 210003 | Caulfield, Declan | $ | 352.00 | CAULFIELD, DECLAN | Towing Related |
| 12/11/2019 | 190534 | Cerney, Bradley | $ | 1,200.00 | CERNEY, BRADLEY | Employee Procedure or Conduct |

| 09/22/2015 | 12-90435 | CERVANTES, DENISE | $ | 5,000.00 | CERVANTES, DENISE | Use of Force |
|---|---|---|---|---|---|---|
| 07/26/2023 | 230354 | Chavez, Alexis | $ | 1,500.00 | CHAVEZ, ALEXIS | County Vehicle v. Vehicle |
| 01/29/2015 | 14-90129 | CHAVIRA, ISMAEL J. | $ | 40,000.00 | MARRINAN, MICHAEL R | Use of Force |
| 02/01/2018 | 170594 | Cipres, Antonio H. | $ | 432.00 | CIPRES, ANTONIO | Lost Property or Evidence |
| 07/05/2016 | 160065 | City of Carlsbad | $ | 42,181.42 | CITY OF CARLSBAD | Pursuit accident |
| 01/28/2014 | 140007 | City of Garden Grove | $ | 553.22 | CITY OF GARDEN GROVE | County Vehicle Involved Accident |
| 01/13/2015 | 140406A | City of Poway | $ | 7,183.55 | CA JOINT POWERS INSURANCE AUTHORITY | County Vehicle v. Vehicle |
| 07/28/2015 | 150322 | City of San Diego | $ | 1,491.80 | CITY OF SAN DIEGO | County Vehicle v. Vehicle |
| 09/02/2020 | 200256 | City of San Diego | $ | 1,477.60 | CITY OF SAN DIEGO | County Vehicle v. Vehicle |
| 02/10/2017 | 160546A | Claims Resource Services | $ | 7,045.62 | AAA | County Vehicle v. Vehicle |
| 09/06/2017 | 170445 | Claims Resource Services | $ | 5,350.56 | AAA | County Vehicle v. Vehicle |
| 09/21/2017 | 170218 | Claims Resource Services (Baines) | $ | 421.62 | AAA | County Vehicle v. Vehicle |
| 01/05/2018 | 170543 | Claims Resource Services (Gilltrejo) | $ | 924.64 | AAA | County Vehicle v. Vehicle |
| 07/08/2014 | 140303 | Claims Resource Services (Sanfilippo) | $ | 1,485.51 | AAA | County Vehicle v. Vehicle |
| 11/21/2022 | 20-90302 | CLINES, PATRICE | $ | 75,000.00 | BRODY MCBRIDE LAW CLIENT TRUST ACCOUNT | Jail Related Incidents |
| 04/08/2021 | 17-90324 | COLLINS, DAVID | $ | 2,863,605.00 | VAAGE, ROBERT F IOLTA TRUST F/B/O DAVID COLLINS | Jail, Lack of Medical Care |
| 07/01/2021 | 17-90324 | COLLINS, DAVID | $ | 4,221,847.50 | VAAGE, ROBERT F IOLTA TRUST F/B/O DAVID COLLINS | Jail, Lack of Medical Care |
| 04/19/2016 | 160103 | Comfort Systems USA, Inc. | $ | 2,645.10 | TRAVELERS PROPERTY CASUALTY | County Vehicle v. Vehicle |

County of San Diego Sheriff's Department Settlement and Judgments from 1/1/2014 through 7/10/2024

| | | | | | |
|---|---|---|---|---|---|
| 10/28/2020 | 200341 | Connect Property and Casualty (Burrows/Perry) | $ 4,012.30 | CONNECT PROPERTY AND CASUALTY | County Vehicle v. Vehicle |
| 03/28/2023 | 230107 | Connolly, Matthew | $ 799.00 | CONNOLLY, MATTHEW | Lost Property or Evidence |
| 01/30/2014 | 140021 | Constante, Mario | $ 1,367.45 | CONSTANTE, MARIO | County Vehicle v. Vehicle |
| 01/02/2019 | 180411 | Corral, Elizabeth | $ 1,600.00 | CORRAL, ELIZABETH | County Vehicle v. Vehicle |
| 02/04/2020 | 190614 | Cosio, Jeovanni | $ 1,936.90 | COSIO, JEOVANNI | County Vehicle v. Vehicle |
| 02/09/2021 | 200431 | Covarrubias, Damian | $ 425.00 | COVARRUBIAS, DAMIAN | Towing Related |
| 12/09/2014 | 140448 | Creer, D'Mitri Allan | $ 1,974.77 | ESURANCE | County Vehicle v. Vehicle |
| 04/12/2021 | 20-90319 | CRUZ TORRES, MARIA DEL ROSARIO | $ 12,000.00 | LAW OFFICES OF GEORGE ARVANITIS | County Vehicle v. Vehicle |
| 11/13/2020 | 19-90334 | CRUZ, ARLET | $ 15,000.00 | CRUZ, ARLET & GOMEZ ASUNCION | Jail, Suicide |
| 04/11/2018 | 170490 | Cruz, Maria | $ 3,500.00 | LAW OFFICE OF TIMOTHY J KECK | County Vehicle v. Vehicle |
| 04/18/2018 | 170490 | Cruz, Maria | $ 3,000.00 | LAW OFFICE OF TIMOTHY J KECK | County Vehicle v. Vehicle |
| 06/03/2014 | 130470 | Cruz, Pablo | $ 12,000.00 | LAW OFFICES OF DAVID P KASHANI | County Vehicle v. Vehicle |
| 07/06/2022 | 22-90067 | CUEVAS, REYNA | $ 27,427.41 | BARTLETT LAW OFFICES, APLC | County Vehicle v. Vehicle |
| 07/06/2022 | 22-90067 | CUEVAS, REYNA | $ 4,572.59 | THE RAWLINGS CO LLC | County Vehicle v. Vehicle |
| 01/06/2016 | 150231 | Cutrone, Angela | $ 1,800.38 | STATE FARM MUTUAL AUTO INS CO | County Vehicle v. Vehicle |
| 12/04/2017 | 17-90022 | CUTRONE, ANGELA | $ 25,000.00 | COAST LAW GROUP LLP | County Vehicle v. Vehicle |
| 06/30/2023 | 18-90152 | D.A. | $ 1,250,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 07/06/2022 | 18-90159 | D.F. | $ 80,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |

Office of County Counsel

7/26/2024

County of San Diego Sheriff's Department Settlements & Judgments from 1/1/2014 through 7/10/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/24/2018 | 18-90150 | D.N. | $ | 254,000.00 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 10/25/2018 | 18-90150 | D.N. | $ | 10,440.30 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 02/27/2024 | 23-90217 | D.S. | $ | 825,000.00 | LAW OFFICES OF DALE K GALIPO, CLIENT TRUST ACCOUNT | Use of Force |
| 09/12/2023 | 19-90377 | D.W., A MINOR | $ | 131,755.99 | LAW OFFICES OF DALE K GALIPO | Law Enforcement-shooting |
| 09/12/2023 | 19-90377 | D.W., A MINOR | $ | 49,122.00 | METLIFE ASSIGNMENT COMPANY, INC | Law Enforcement-shooting |
| 09/13/2023 | 19-90377 | D.W., A MINOR | $ | 49,122.01 | METLIFE ASSIGNMENT COMPANY, INC | Law Enforcement-shooting |
| 03/14/2022 | 19-90178 | DAIGLE, GWEN | $ | 400,000.00 | LAW OFFICE OF JERRY L STEERING | Jail Related Incidents |
| 09/11/2014 | 14-90126 | D'ANGELO, FRANK | $ | 2,000.00 | D'ANGELO, LUIGIA | Jail Related Incidents |
| 07/20/2016 | 14-90288 | DANNEBAUM, DUSTIN | $ | 50,000.00 | GILLILAND & BURGESS | Jail, Use of Force |
| 12/16/2014 | 140566 | David, Lindsay Christine | $ | 1,409.73 | JANG-BUSBY, TRAVIS | County Vehicle v. Vehicle |
| 12/18/2014 | 140566 | David, Lindsay Christine | $ | 500.00 | DAVID, LINDSAY C | County Vehicle v. Vehicle |
| 06/02/2015 | 150149 | Davidson, Eilene T. | $ | 7,500.00 | DAVIDSON, EILENE | Law Enforcement-shooting |
| 08/22/2019 | 18-90367 | DAVIS, KELLY | $ | 15,000.00 | BRIGGS LAW CORPORATION | Other/Miscellaneous |
| 05/13/2021 | 19-90300 | DAVIS, TAMMY | $ | 30,644.39 | APPLEGATE, DOUGLAS | Jail Related Incidents |
| 08/13/2021 | 19-90300 | DAVIS, TAMMY | $ | 36,300.00 | DEPARTMENT OF HEALTH CARE SERVICES | Jail Related Incidents |
| 08/13/2021 | 19-90300 | DAVIS, TAMMY | $ | 33,055.61 | APPLEGATE, DOUGLAS | Jail Related Incidents |
| 04/19/2018 | 13-90474 | DAWSON, CHRISTINE | $ | 10,000.00 | BROWN, WILLIAM J III | Civil Rights or Employment |
| 02/08/2022 | 220014 | Dawson, John | $ | 3,378.36 | DAWSON, JOHN M | County Vehicle v. Vehicle |
| 08/20/2020 | 18-90132 | DELEON, THOMAS | $ | 144,048.22 | THE ESTATE OF THOMAS M DELEON III, THROUGH THE CONSERVATORS | Use of Force |
| 08/20/2020 | 18-90132 | DELEON, THOMAS | $ | 105,951.78 | CLINE, APC | Use of Force |
| 05/14/2018 | 170453 | Dellerman, Rachel | $ | 65,000.00 | GERAGOS & GERAGOS APC | Employee Procedure or Conduct |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 12/13/2016 | 160540 | Demers, Noreen Felicia | $ | 454.37 | DEMERS, NOREEN | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 12/01/2015 | 150426 | Denton, Richard Arthur | $ | 1,456.42 | DENTON, RICHARD ARTHUR | County Vehicle v. Vehicle |
| 09/05/2014 | 140172 | Depew, Brianna | $ | 550.00 | DEPEW, BRIANNA | Employee Procedure or Conduct |
| 07/29/2020 | 200094 | Deppe, Haley | $ | 874.26 | DEPPE, HALEY MARIE | Towing Related |
| 05/05/2022 | 220145 | DeWitt, Edward | $ | 1,863.48 | DEWITT, EDWARD | County Vehicle v. Vehicle |
| 05/21/2018 | 180075 | Diaz, Roberto | $ | 2,081.79 | DIAZ, ROBERTO | County Vehicle v. Vehicle |
| 08/06/2018 | 180135 | Dimas, Dawne D. | $ | 1,128.00 | DIMAS, DAWNE | Employee Procedure or Conduct |
| 02/07/2023 | 230023 | Ditchey Geiger (AAA) | $ | 5,450.18 | DITCHEY GEIGER, LLC | County Vehicle v. Vehicle |
| 07/26/2023 | 230355 | Dodds, Jeffrey | $ | 3,000.00 | DODDS, JEFFREY | Employee Procedure or Conduct |
| 03/11/2020 | 18-90380 | DOE, JANE V FISCHER | $ | 350,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 05/19/2020 | 19-90242 | DOE, JANE V FISCHER | $ | 225,000.00 | GILLILAND & GILLILAND, APC | Employee Procedure or Conduct |
| 04/05/2017 | 15-90348 | DONAHUE, BRIAN | $ | 95,000.00 | RUTMAN, KEITH H - | Civil Rights or Employment |
| 07/25/2022 | 220213 | Dorbayan, Thomas | $ | 515.78 | DORBAYAN, THOMAS | Employee Procedure or Conduct |
| 06/21/2018 | 180070 | Dreyer, Scott Robert | $ | 1,000.00 | USAA | County Vehicle v. Fixed Object/Other |
| 12/30/2014 | 13-90467 | DRUMMONDS, GARY | $ | 150.00 | DRUMMONDS, GARY | Jail, Violation of Civil Rights |
| 10/30/2014 | 140391 | Dudley, Eugene Gale | $ | 676.56 | MAPFRE INSURANCE | County Vehicle v. Vehicle |
| 07/26/2023 | 230413 | Duenes, Luis | $ | 500.00 | DUENES, LUIS | Employee Procedure or Conduct |
| 03/28/2017 | 14-90287 | DUNN, ROBIN | $ | 5,000.00 | LAW OFFICE OF SANDRA PAYNE HAGOOD | Jail, Use of Force |

Office of County Counsel

7/26/2024

County of San Diego Sheriff's Department Settlements & Judgments from 1/1/2014 through 7/10/2024

| 07/15/2014 | 140214 | Eaton, Sanoe Lake | $ | 2,447.71 | EATON, SANOE | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 02/06/2018 | 180029 | Efird, Christopher Samuel | $ | 12,500.00 | EFIRD, CHRISTOPHER | County Vehicle v. Vehicle |
| 03/21/2017 | 160477 | Eghtesadi, Jacqueline | $ | 7,779.00 | EGHTESADI, JACQUELINE | County Vehicle v. Vehicle |
| 02/19/2015 | 140587A | Electric Insurance Company | $ | 1,500.31 | ELECTRIC INSURANCE CO | County Vehicle v. Vehicle |
| 03/05/2015 | 140587A | Electric Insurance Company | $ | 3,647.12 | ELECTRIC INSURANCE CO | County Vehicle v. Vehicle |
| 03/17/2015 | 140587A | Electric Insurance Company | $ | 409.37 | ELECTRIC INSURANCE CO | County Vehicle v. Vehicle |
| 08/23/2018 | 180298 | Espaniola, Leolani | $ | 845.00 | ESPANIOLA, LEOLANI | Employee Procedure or Conduct |
| 02/21/2023 | 220423 | Espino, Omar | $ | 326.00 | ESPINO, OMAR | Towing Related |
| 07/17/2017 | 170094A | Estrada, David | $ | 1,250.00 | LAW OFFICE OF WM LIONEL HALSEY | County Vehicle v. Vehicle |
| 02/09/2021 | 18-90062 | FALSETTO, WENDY | $ | 350,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 04/20/2021 | 18-90062 | FALSETTO, WENDY | $ | 69,861.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 05/06/2021 | 18-90062 | FALSETTO, WENDY | $ | 1,535.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 04/08/2014 | 130346 | Farmers (Barry) | $ | 150.00 | FARMERS | County Vehicle v. Vehicle |
| 03/08/2016 | 160099 | Farmers (Callaway) | $ | 2,236.73 | FARMERS INSURANCE EXCHANGE | County Vehicle v. Vehicle |
| 09/02/2015 | 150353 | Farmers Insurance Company (Chadwell) | $ | 2,222.99 | FARMERS INSURANCE COMPANY | County Vehicle v. Vehicle |
| 10/28/2016 | 160470 | Farmers Insurance Company (Geiss) | $ | 1,901.58 | FARMERS INSURANCE | County Vehicle v. Vehicle |
| 03/28/2019 | 190138 | Farmers Insurance Company (Mayeda) | $ | 1,972.65 | FARMERS INSURANCE COMPANY | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

County of San Diego Sheriff's Department Settlements or Judgments from 1/1/2014 through 7/10/2024

| 02/10/2017 | 170046 | Farmers Insurance Company (Oliver) | $ | 917.70 | FARMERS INSURANCE COMPANY | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 10/14/2020 | 200197 | Farrand, Todd | $ | 48.99 | FARRAND, TODD ANTHONY | Lost Property or Evidence |
| 12/01/2022 | 220357 | Feher, Anton | $ | 500.00 | FEHER, ANTON | Employee Procedure or Conduct |
| 09/28/2022 | 22-90142 | FELDMAN, CORY | $ | 9,000.00 | CARL M LEWIS INC | Use of Force |
| 05/11/2015 | 140297 | Fick, Emily Maria | $ | 25,000.00 | GUERENA, SPENCER | County Vehicle v. Vehicle |
| 11/09/2022 | 220400A | Filomeno, Salvador | $ | 1,468.34 | DITCHEY GEIGER, LLC | County Vehicle v. Vehicle |
| 08/28/2017 | 170328 | Fincher, Rachelle | $ | 9,000.00 | MARRINAN, MICHAEL R | Employee Procedure or Conduct |
| 10/11/2018 | 18-90104 | FISHER, CHRISTOPHER | $ | 1,500.00 | THE LAW OFFICES OF RICHARD A HIGGINS | Jail, Lack of Medical Care |
| 06/19/2015 | 14-90371 | FLEMING, RICHARD | $ | 15,000.00 | LAW OFFICES OF NORMAN M FINKELSTEIN | Jail, Lack of Medical Care |
| 08/01/2018 | 170076A | Flores, Chris | $ | 8,000.00 | AMINPOUR & ASSOCIATES | County Vehicle v. Vehicle |
| 08/01/2018 | 170076A | Flores, Chris | $ | 500.00 | THE RAWLINGS CO LLC | County Vehicle v. Vehicle |
| 05/06/2014 | 140174 | Flores, Jose A. | $ | 836.19 | ALLSTATE INSURANCE COMPANY | County Vehicle v. Vehicle |
| 01/14/2014 | 130519 | Flores, Miguel | $ | 7,971.88 | FLORES, MIGUEL | County Vehicle v. Vehicle |
| 05/12/2022 | 210444 | Fontanini, Steve | $ | 20,000.00 | DENNING MOORES APC CLIENT TRUST ACCOUNT | Harassment |
| 01/22/2016 | 150379 | Forsythe, Cynthia | $ | 1,876.40 | MERCURY INSURANCE COMPANY | County Vehicle Code 3 Accident |
| 07/13/2016 | 160288 | Francis, Erica Breana | $ | 1,087.73 | FRANCIS, ERICA | County Vehicle v. Vehicle |
| 03/13/2023 | 21-90343 | FROST, KRISTINA | $ | 275,000.00 | BRODY MCBRIDE LAW CLIENT TRUST ACCOUNT | Jail Related Incidents |

| 08/04/2021 | 20-90145 | FUKUSHIMA, JOLENE | $ | 45,000.00 | LAW OFFICES OF BARRY PASTERNACK | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 08/01/2018 | 180306 | Fukushima, Jolene Ann | $ | 1,256.83 | FUKUSHIMA, JOLENE | County Vehicle v. Vehicle |
| 09/04/2018 | 180306 | Fukushima, Jolene Ann | $ | 914.15 | BOB STALL CHEVROLET | County Vehicle v. Vehicle |
| 09/11/2018 | 180306 | Fukushima, Jolene Ann | $ | 452.39 | ENTERPRISE RENT-A-CAR | County Vehicle v. Vehicle |
| 12/18/2023 | 230323 | Gabany, Chad | $ | 13,500.00 | RUTMAN, KEITH H – | County Vehicle v. Bicycle |
| 08/20/2015 | 150347 | Garcia, Virgil | $ | 2,075.00 | GARCIA, VIRGIL | County Vehicle v. Vehicle |
| 06/07/2016 | 160039 | Gardner, Alan | $ | 3,034.40 | GARDNER, ALAN | County Vehicle v. Vehicle |
| 04/17/2023 | 19-90211 | GAROT, COLLEEN | $ | 2,869,552.00 | PACIFIC LIFE & ANNUITY SERVICES INC | Jail, Lack of Medical Care |
| 04/17/2023 | 19-90211 | GAROT, COLLEEN | $ | 2,747,801.92 | PRUDENTIAL ASSIGNED SETTLEMENT | Jail, Lack of Medical Care |
| 04/17/2023 | 19-90211 | GAROT, COLLEEN | $ | 1,390,796.64 | METLIFE ASSIGNMENT COMPANY, INC | Jail, Lack of Medical Care |
| 04/28/2023 | 19-90211 | GAROT, COLLEEN | $ | 2,016,849.44 | LAW OFFICE OF STEVE HOFFMAN APC | Jail, Lack of Medical Care |
| 02/21/2017 | 170094 | Garrison Property & Casualty Insurance Company (Estrada) | $ | 2,554.17 | USAA | County Vehicle v. Vehicle |
| 04/26/2017 | 170094 | Garrison Property & Casualty Insurance Company (Estrada) | $ | 207.57 | USAA | County Vehicle v. Vehicle |
| 04/24/2017 | 160546B | Gastelum, Cindy Ann | $ | 1,796.50 | GASTELUM, CINDY | County Vehicle v. Vehicle |
| 05/12/2017 | 160546B | Gastelum, Cindy Ann | $ | 346.49 | CALIBER COLLISION CENTER | County Vehicle v. Vehicle |
| 05/16/2017 | 160546B | Gastelum, Cindy Ann | $ | 380.04 | ENTERPRISE RENT-A-CAR | County Vehicle v. Vehicle |
| 07/10/2018 | 180028A | Gastelum, Gregory Ralph | $ | 8,796.43 | GASTELUM, GREGORY | County Vehicle v. Fixed Object/Other |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 05/23/2018 | 180025A | Geico | $ | 2,989.78 | GEICO | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 08/02/2021 | 210267 | GEICO (Alvarado) | $ | 3,683.41 | GEICO (ALVARADO) | County Vehicle v. Vehicle |
| 08/12/2020 | 190609A | GEICO (Bajet) | $ | 3,965.51 | GEICO (BAJET) | County Vehicle v. Vehicle |
| 11/02/2020 | 200255A | Geico (Barnes) | $ | 1,768.90 | GEICO (BARNES) | County Vehicle v. Vehicle |
| 02/20/2020 | 200010 | Geico (Brink) | $ | 1,731.22 | GEICO | County Vehicle v. Vehicle |
| 03/03/2017 | 170107 | Geico (Chapman) | $ | 3,743.53 | GEICO GENERAL INS CO | County Vehicle v. Vehicle |
| 05/10/2018 | 180172 | Geico (Costell) | $ | 403.39 | GEICO | County Vehicle v. Vehicle |
| 08/21/2014 | 140382 | Geico (Falletta) | $ | 935.93 | GEICO | County Vehicle v. Vehicle |
| 10/10/2014 | 140382 | Geico (Falletta) | $ | 649.60 | GEICO | County Vehicle v. Vehicle |
| 04/08/2016 | 160144 | Geico (Grant) | $ | 2,157.04 | GEICO | County Vehicle v. Vehicle |
| 08/04/2016 | 160334 | Geico (Hughes) | $ | 1,827.16 | GOVERNMENT EMPLOYEES INSURANCE CO | County Vehicle v. Vehicle |
| 03/20/2023 | 230049 | GEICO (Ivanova) | $ | 10,821.74 | GEICO | County Vehicle v. Vehicle |
| 07/27/2022 | 220016A | GEICO (Lares) | $ | 8,569.05 | GEICO (LARES) | County Vehicle v. Vehicle |
| 12/21/2020 | 200373A | GEICO (Marcelli) | $ | 677.65 | GEICO | County Vehicle v. Vehicle |
| 12/03/2018 | 180453A | Geico (Reddy) | $ | 9,178.04 | GEICO | County Vehicle v. Vehicle |
| 10/22/2019 | 190408A | GEICO (Rodericks) | $ | 3,878.89 | GEICO (RODERICKS) | County Vehicle v. Vehicle |
| 05/13/2021 | 210031A | GEICO (Wright) | $ | 3,950.11 | GEICO | County Vehicle v. Vehicle |

7/26/2024

County of San Diego Sheriff's Department Settlement and Judgments from 1/1/2014 through 7/10/2024

| Date | Case # | Name | Amount | Payee | Category |
|---|---|---|---|---|---|
| 12/01/2015 | 150438 | Genstel, Brian | $ 1,877.06 | AAA | County Vehicle v. Vehicle |
| 06/01/2017 | 170158 | Gladerinejat, Cheyonne | $ 800.00 | GHADERI-NEJAT, HAMID R | Employee Procedure or Conduct |
| 02/13/2014 | 12-90568 | GOCHMANOSKY, NICOLE | $ 165,000.00 | IREDALE & YOO APC | Civil Rights or Employment |
| 12/13/2018 | 16-90112 | GODINEZ, ALMA | $ 2,500,000.00 | LAW OFFICE OF TODD W BURNS | Use of Force |
| 12/18/2018 | 180482 | Goldberg, Brian Jay | $ 440.00 | GOLDBERG, BRIAN | Towing Related |
| 01/25/2022 | 210472 | Gomes, Juan Manuel | $ 363.00 | GOMES, JUAN MANUEL | Towing Related |
| 07/29/2020 | 200141 | Gomez, Luis | $ 500.00 | GOMEZ, LUIS A | County Vehicle v. Vehicle |
| 05/23/2014 | 140188 | Gonzalez, Jose Manuel | $ 1,198.00 | GONZALEZ, JOSE MANUEL | County Vehicle v. Vehicle |
| 01/17/2023 | 22-90261 | GONZALEZ, MARIA E. | $ 519.00 | BRODY MCBRIDE LAW CLIENT TRUST ACCOUNT | Jail, Lack of Medical Care |
| 04/20/2021 | 18-90285 | GOOLSBY, THOMAS | $ 5,100.00 | GOOLSBY, THOMAS | Jail, Violation of Civil Rights |
| 04/12/2018 | 180042 | Gordon, Jeffrey | $ 4,736.63 | GORDON, JEFFREY | County Vehicle v. Vehicle |
| 12/10/2018 | 180042 | Gordon, Jeffrey | $ 20,000.00 | ARENDSEN CANE MOLNAR LLP | County Vehicle v. Vehicle |
| 06/14/2022 | 220152 | Gorgis, Rani | $ 66.00 | GORGIS, RANI | Employee Procedure or Conduct |
| 01/03/2017 | 160546 | Goykhman, Debra Ellen | $ 221.87 | GOYKHMAN, DEBRA | County Vehicle v. Vehicle |
| 06/01/2023 | 230138 | Gray, Jeffrey | $ 2,600.00 | GRAY, JEFFREY | Lost Property or Evidence |
| 03/11/2023 | 19-90117 | GREER, FRANKIE | $ 2,000,000.00 | MUTUAL OF OMAHA STRUCTURED SETTLEMENT COMPANY | Jail, Lack of Medical Care |
| 03/11/2023 | 19-90117 | GREER, FRANKIE | $ 1,000,000.00 | PRUDENTIAL ASSIGNED SETTLEMENT | Jail, Lack of Medical Care |
| 03/28/2023 | 19-90117 | GREER, FRANKIE | $ 4,750,000.00 | IREDALE & YOO APC | Jail, Lack of Medical Care |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 06/21/2017 | 170294 | Gregory, Jennifer | $ | 289.40 | GREGORY, JENNIFER | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 10/14/2020 | 200257 | Grenda, Paul | $ | 2,827.27 | GRENDA, PAUL ADAM | County Vehicle v. Vehicle |
| 10/13/2022 | 220332 | Guerrero, Juan | $ | 693.48 | GUERRERO, JUAN | General Negligence (Injury/PD) |
| 11/20/2017 | 170477 | Guillen, Ivana | $ | 1,117.91 | GUILLEN, IVANA | County Vehicle v. Vehicle |
| 07/14/2021 | 210208 | Gulotta, Robert | $ | 333.00 | GULOTTA, ROBERT | Employee Procedure or Conduct |
| 04/07/2022 | 19-90130 | GUSTINE, BRENT | $ | 110,828.69 | PLC LAW GROUP APC | Jail Related Incidents |
| 04/07/2022 | 19-90130 | GUSTINE, BRENT | $ | 7,901.73 | DEPARTMENT OF HEALTH CARE SERVICES | Jail Related Incidents |
| 04/07/2022 | 19-90130 | GUSTINE, BRENT | $ | 6,269.58 | THE RAWLINGS CO LLC | Jail Related Incidents |
| 03/10/2016 | 160026 | Gutierrez Garcia, Gabriel Omar | $ | 348.20 | GABRIEL GUTIERREZ GARCIA | Employee Procedure or Conduct |
| 10/11/2023 | 230556 | Gutierrez, Ignacio | $ | 673.68 | IGNACIO J. GUTIERREZ | Employee Procedure or Conduct |
| 04/04/2017 | 170140 | Guzman, Salvador Junior | $ | 3,303.12 | GUZMAN, SALVADOR | County Vehicle v. Vehicle |
| 07/14/2021 | 210199 | Haeg, Susan | $ | 397.00 | HAEG, SUSAN M | Employee Procedure or Conduct |
| 03/20/2024 | 240086 | Hanover (Begg) | $ | 4,509.99 | HANOVER INSURANCE | County Vehicle v. Vehicle |
| 06/11/2020 | 200084 | Harbour, James | $ | 1,156.00 | HARBOUR, JAMES WESLEY | County Vehicle v. Fixed Object/Other |
| 01/22/2019 | 180498 | Harrington, Meghan Sue | $ | 283.00 | HARRINGTON, MEGHAN | Towing Related |
| 08/09/2021 | 20-90221 | HARSHBARGER, RICHARD | $ | 15,000.00 | LAW OFFICES OF ALTON F KUPERMAN AND RICHARD HARSHBARGER | County Vehicle v. Motorcycle/Scooter |
| 03/12/2015 | 14-90070 | HENDERSON, ROSS ALAN | $ | 450,000.00 | LAW OFFICES OF THOMAS LEARY APC | County Vehicle v. Vehicle |
| 06/12/2024 | 240349 | Hernandez, Erik | $ | 1,448.72 | HERNANDEZ, ERIK F | Employee Procedure or Conduct |
| 07/22/2019 | 190297 | Hernandez, Maria | $ | 3,123.98 | FIX AUTO LEMON GROVE, INC | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| | | | | | |
|---|---|---|---|---|---|
| 08/09/2019 | 190297 | Hernandez, Maria | $ 863.11 | ENTERPRISE RENT-A-CAR | County Vehicle v. Vehicle |
| 08/22/2019 | 19-90103 | HERNANDEZ, SAMANTHA | $ 6,900.00 | HERNANDEZ, SAMANTHA | County Vehicle v. Vehicle |
| 08/22/2019 | 19-90103 | HERNANDEZ, SAMANTHA | $ 600.00 | PLANDOR, CARMEN | County Vehicle v. Vehicle |
| 09/15/2016 | 160342 | Hernandez, Tony | $ 2,164.66 | HERNANDEZ, TONY | County Vehicle v. Vehicle |
| 10/14/2016 | 160342 | Hernandez, Tony | $ 497.08 | HERNANDEZ, TONY | County Vehicle v. Vehicle |
| 02/26/2020 | 200002 | Herrerra, Israel | $ 2,000.00 | HERRERA, ISRAEL | County Vehicle v. Vehicle |
| 10/19/2022 | 22-90275 | HERSHMAN, RYAN | $ 1,000.00 | COOLMAN, ALEX N | Other/Miscellaneous |
| 10/24/2023 | 230583 | Hikel, Lily | $ 1,820.00 | HIKEL, LILLY R. | General Negligence (Injury/PD) |
| 06/05/2024 | 22-90362 | HODGE, LESLIE | $ 5,000.00 | LAW OFFICE OF DANIEL REUTSKIY PC | County Vehicle v. Vehicle |
| 09/13/2023 | 230539 | Holland, Lawrence | $ 6,215.99 | HOLLAND, LAWRENCE | County Vehicle v. Fixed Object/Other |
| 03/03/2014 | 130521 | Holmes, Tarel D. | $ 870.00 | HOLMES, TAREL | Jail, Booking Related Property Loss |
| 10/25/2016 | 160397 | Hoolihan, Gregory M. | $ 900.00 | HOOLIHAN, GREGORY | County Vehicle v. Fixed Object/Other |
| 04/13/2023 | 21-90070 | HORTON, MICHELLE | $ 250,000.00 | SINGLETON SCHREIBER LLP | Use of Force |
| 04/19/2023 | 220501 | Hummel, Evelyn | $ 4,605.58 | EL DORADO COLLISION CENTER | County Vehicle v. Vehicle |
| 11/13/2023 | 21-90250 | HURLEY, DELANE | $ 57,000.00 | MARRINAN, MICHAEL R | Use of Force |
| 07/26/2018 | 180167 | Ibarrafuentes, Juan | $ 1,271.42 | JUAN IBARRA FUENTES | County Vehicle v. Vehicle |
| 02/11/2021 | 210041 | Infinity (Cayetano) | $ 3,796.05 | INFINITY | Pursuit accident |
| 05/12/2017 | 170166 | Infinity (Paniagua) | $ 993.04 | PANIAGUA, EARICA | County Vehicle v. Vehicle |
| 05/29/2019 | 190244 | Ingrassia, Dominick | $ 500.00 | DOMINICK INGRASSIA | County Vehicle v. Fixed Object/Other |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 11/06/2019 | 190478 | Interinsurance Exchange of the Auto Club (Chewning) | $ | 15,000.00 | INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 06/13/2019 | 190242 | Interinsurance Exchange of the Auto Club (Taylor) | $ | 10,369.05 | INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB | County Vehicle v. Vehicle |
| 07/08/2019 | 190242 | Interinsurance Exchange of the Auto Club (Taylor) | $ | 270.00 | INTERINSURANCE EXCHANGE OF THE AUTOMOBILE | County Vehicle v. Vehicle |
| 01/29/2024 | 240008 | Interinsurance Exchange of the Automobile Club (Ramos) | $ | 2,307.46 | INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB | County Vehicle v. Vehicle |
| 11/22/2019 | 19-90121 | JACKSON, ERNEST | $ | 4,000.00 | IREDALE & YOO APC | Jail, Violation of Civil Rights |
| 12/09/2021 | 210419A | Jackson, Larry | $ | 1,295.84 | JACKSON, LARRY L | County Vehicle v. Vehicle |
| 12/09/2021 | 210419A | Jackson, Larry | $ | 700.00 | RICHARDS, JESSICA | County Vehicle v. Vehicle |
| 12/09/2021 | 210419A | Jackson, Larry | $ | 400.00 | JACKSON, LARRY L | County Vehicle v. Vehicle |
| 06/25/2018 | 18-90024 | JACOBS, ERIC | $ | 150,000.00 | HARRIS PERSONAL INJURY LAWYERS INC | Animal - Dog Bite, Vicious Animal |
| 06/11/2015 | 150210 | James, Justin | $ | 200.00 | JAMES, JUSTIN | Employee Procedure or Conduct |
| 05/06/2021 | 210064 | Jamul Casino | $ | 16,908.25 | JAMUL CASINO | County Vehicle v. Fixed Object/Other |
| 01/12/2021 | 19-90252 | JARAMILLO, CESAR | $ | 50,000.00 | MORRIS LAW FIRM APC | Employee Misconduct-Viol Civ Rts Nonjail |
| 09/04/2019 | 18-90051 | JEFFRIES, MELISSA | $ | 300,000.00 | JEFFRIES, MELISSA | County Vehicle v. Vehicle |
| 02/13/2014 | 13-90025 | JENNINGS, STEPHANIE | $ | 1,000.00 | SINGLETON LAW FIRM APC | Jail, Lack of Medical Care |
| 08/01/2016 | 15-90538 | JIMENEZ, JOVAN | $ | 500,000.00 | LAW OFFICE OF JERRY L STEERING | Use of Force |
| 11/04/2015 | 150294 | Johnson, Aaron | $ | 20,000.00 | JOHNSON, AARON A | Jail Related Incidents |
| 03/04/2016 | 14-90150 | JOHNSON, MORGEN | $ | 766,000.00 | MARRINAN, MICHAEL R | Use of Force |
| 03/04/2016 | 14-90150 | JOHNSON, MORGEN | $ | 600,000.00 | MARRINAN, MICHAEL R | Use of Force |
| 01/22/2016 | 150518 | Johnson, Sandra Darlene | $ | 265.33 | JOHNSON, SANDRA | Employee Procedure or Conduct |

Office of County Counsel

7/26/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 03/27/2015 | 13-90597 | JONES, BRUCE | $ | 1,250.00 | JONES, BRUCE | Jail, Violation of Civil Rights |
| 08/01/2023 | 21-90071 | JONES, TERRY LEROY | $ | 250,000.00 | BRODY MCBRIDE LAW CLIENT TRUST ACCOUNT | Other/Miscellaneous |
| 05/07/2018 | 17-90409 | JONES, TIMOTHY | $ | 2,000.00 | LAW OFFICE OF WM LIONEL HALSEY | Jail, Lack of Medical Care |
| 10/03/2022 | 210119 | Judicial Council of CA | $ | 81,959.80 | JUDICIAL COUNCIL OF CALIFORNIA | Asbestos |
| 03/13/2023 | 18-90153 | K.H. | $ | 750,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 02/13/2023 | 15-90606 | K.J.P., A MINOR | $ | 9,600,000.00 | SINGLETON SCHREIBER LLP | Use of Force |
| 02/13/2023 | 15-90606 | K.J.P., A MINOR | $ | 2,400,000.00 | PACIFIC LIFE & ANNUITY SERVICES INC | Use of Force |
| 09/02/2020 | 17-90406 | K.P. | $ | 316,250.00 | GREENE BROILLET & WHEELER, LLP | Employee Procedure or Conduct |
| 09/02/2020 | 17-90406 | K.P. | $ | 150,000.00 | MUTUAL OF OMAHA STRUCTURED SETTLEMENT COMPANY | Employee Procedure or Conduct |
| 01/23/2015 | 14-90488 | KARRAS, DIMITRIOS | $ | 20.00 | KARRAS, DIMITRIOS | Civil Rights or Employment |
| 01/26/2015 | 14-90488 | KARRAS, DIMITRIOS | $ | 23,750.00 | THE MCMILLAN LAW FIRM APC | Civil Rights or Employment |
| 10/27/2015 | 150330 | Katzdorn, Miriam | $ | 3,061.50 | ALLSTATE | County Vehicle v. Vehicle |
| 03/08/2019 | 190089 | Keenan, Michael Thomas | $ | 575.89 | KEENAN, MICHAEL | County Vehicle v. Vehicle |
| 11/09/2022 | 220400 | Kemper (Martinez) | $ | 1,004.18 | KEMPER (MARTINEZ) | County Vehicle v. Vehicle |
| 11/01/2015 | 150287A | Kemper Insurance Company | $ | 20,099.58 | KEMPER SERVICES GROUP AS SUBROGEE | County Vehicle v. Vehicle |
| 04/28/2020 | 15-90628 | KENDRICK, CYNTHIA | $ | 160,000.00 | SINGLETON LAW FIRM APC | Law Enforcement-shooting |
| 08/11/2016 | 160287 | Kennedy, Laurel Anne | $ | 755.00 | KENNEDY, LAUREL | Towing Related |
| 07/17/2017 | 170305 | Ki's Kitchen, Inc. | $ | 3,036.12 | KI'S KITCHEN INC | County Vehicle v. Vehicle |
| 03/23/2022 | 220061 | Kline, Dillon | $ | 1,001.05 | KLINE, DILLON | Jail, Booking Related Property Loss |

Office of County Counsel

7/26/2024

| 06/08/2022 | 220143 | Klingebiel, Thomas | $ | 997.20 | THOMAS KLINGEBIEL | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 05/05/2015 | 150073 | Kolczynski, Sue Ellen | $ | 6,388.61 | TOYOTA CARLSBAD | County Vehicle v. Vehicle |
| 06/02/2015 | 150073 | Kolczynski, Sue Ellen | $ | 1,637.92 | TOYOTA CARLSBAD | County Vehicle v. Vehicle |
| 02/22/2022 | 210106 | Kopf, Joseph | $ | 8,175.78 | KOPF, JOSEPH C | County Vehicle v. Vehicle |
| 02/22/2022 | 210106 | Kopf, Joseph | $ | 520.00 | KOPF, JOSEPH C | County Vehicle v. Vehicle |
| 11/09/2022 | 220332A | Korgie, Deborah | $ | 260.00 | KORGIE, DEBORAH | General Negligence (Injury/PD) |
| 05/16/2019 | 19-90032 | KPBS | $ | 17,700.00 | SHEPPARD, MULLIN , RICHTER & HAMPTON | Other/Miscellaneous |
| 03/17/2015 | 150105 | Krajewski, Elizabeth | $ | 1,080.10 | KRAJEWSKI, ELIZABETH | County Vehicle v. Vehicle |
| 04/16/2015 | 150105 | Krajewski, Elizabeth | $ | 239.75 | KRAJEWSKI, ELIZABETH | County Vehicle v. Vehicle |
| 08/01/2018 | 170076B | Kulmack, Michael | $ | 8,404.73 | AMINPOUR & ASSOCIATES | County Vehicle v. Vehicle |
| 08/01/2018 | 170076B | Kulmack, Michael | $ | 95.27 | DEPT OF HEALTH CARE SERVICES | County Vehicle v. Vehicle |
| 02/09/2021 | 18-90148 | L.R. | $ | 450,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 04/20/2021 | 18-90148 | L.R. | $ | 70,579.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 05/06/2021 | 18-90148 | L.R. | $ | 1,535.55 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 02/26/2014 | 140042 | Lachapelle, Kevin | $ | 4,499.19 | CALIFORNIA CASUALTY | County Vehicle v. Vehicle |
| 10/10/2016 | 160426 | Lacy, James Jefferson | $ | 428.70 | LACY, JAMES | Towing Related |
| 01/07/2015 | 12-90149 | LACY, LEE | $ | 250,000.00 | IREDALE & YOO APC | Use of Force |
| 10/07/2021 | 18-90275 | LAFOY, LOUISE | $ | 60,000.00 | LOUISE LAFOY | Harassment |
| 11/10/2021 | 18-90275 | LAFOY, LOUISE | $ | 567,862.94 | HAEGGQUIST & ECK, LLP | Harassment |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 11/13/2020 | 200293 | Lanez, Andrew | $ | 881.95 | LANEZ, ANDREW | Employee Procedure or Conduct |
|---|---|---|---|---|---|---|
| 03/06/2014 | 120223B | Langford, Alee | $ | 20,195.58 | SEDGWICK CMS | County Vehicle v. Vehicle |
| 04/05/2023 | 220016 | Lares, Denise | $ | 15,000.00 | LAW OFFICE OF ALBERT LE PC | County Vehicle v. Vehicle |
| 11/19/2021 | 19-90024 | LEAL RUIZ, VERONICA | $ | 115,000.00 | GILLEON LAW FIRM | Use of Force |
| 06/14/2022 | 220188 | Leal, Veronica | $ | 615.00 | LEAL, VERONICA L | County Vehicle v. Vehicle |
| 09/19/2022 | 220273 | Leavitt, Robert A. | $ | 3,678.24 | LEAVITT, ROBERT A | County Vehicle v. Vehicle |
| 07/01/2021 | 210182 | Lee, Steven | $ | 3,178.84 | TRAVELERS CLAIMS HARTFORD | County Vehicle v. Vehicle |
| 05/17/2022 | 220151 | Liberty Mutual (Dobrino) | $ | 5,560.06 | LIBERTY MUTUAL (DOBRINO) | County Vehicle v. Vehicle |
| 08/14/2019 | 190387 | Liberty Mutual (Kirkendall) | $ | 948.28 | LIBERTY MUTUAL (KIRKENDALL) | County Vehicle v. Vehicle |
| 11/06/2019 | 190440 | Liberty Mutual (Peterson) | $ | 17,776.85 | LIBERTY MUTUAL | County Vehicle v. Vehicle |
| 09/02/2015 | 150360 | Liberty Mutual Insurance Company (Williams) | $ | 1,229.15 | LIBERTY MUTUAL INSURANCE CO | County Vehicle v. Vehicle |
| 11/05/2020 | 200367 | Liska, Heidi | $ | 1,132.82 | LISKA, HEIDI | County Vehicle v. Vehicle |
| 10/14/2016 | 160399 | Lloyd, Everett James | $ | 1,049.90 | LLOYD, EVERETT | County Vehicle v. Vehicle |
| 01/28/2014 | 130165 | Lopez, Erubey | $ | 4,000.00 | ERUBEY LOPEZ & RAYMOND BUENDIA | Jail Related Incidents |
| 05/02/2024 | 230686 | Lopez, Jose | $ | 14,300.75 | GEICO GENERAL INS CO A/S/O JOSE S. LOPEZ | County Vehicle v. Vehicle |
| 09/01/2022 | 220202 | Lopez, Jose Angel | $ | 929.48 | LOPEZ, JOSE A. | Employee Procedure or Conduct |
| 09/04/2018 | 180338 | Lopez, Juan M. | $ | 7,000.00 | LOPEZ, JUAN M | County Vehicle v. Vehicle |
| 09/04/2018 | 180338 | Lopez, Juan M. | $ | 1,500.00 | LOPEZ, JUAN M | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

| 09/05/2019 | 17-90186 | LOVELASS, JONATHAN | $ | 10,000.00 | LOVELASS, JONATHAN | Use of Force |
|---|---|---|---|---|---|---|
| 05/09/2016 | 15-90097 | LOWE, BRANDON | $ | 11,500.00 | LOWE, BRANDON | Jail, Violation of Civil Rights |
| 10/28/2014 | 13-90428 | LUBSEN, LORRIE | $ | 80,000.00 | LAW OFFICE OF WM LIONEL HALSEY | Jail, Suicide |
| 08/09/2018 | 16-90546 | LUQUE-VILLANUEVA, BERNARDO | $ | 150,000.00 | LAW OFFICE OF JERRY L STEERING | Use of Force |
| 07/24/2023 | 220047B | Lynch, Dalenesha | $ | 2,664.56 | AMINPOUR & ASSOCIATES AND LYNCH, DALENESHA | County Vehicle v. Vehicle |
| 09/13/2023 | 220047B | Lynch, Dalenesha | $ | 335.44 | THE RAWLINGS CO LLC | County Vehicle v. Vehicle |
| 07/10/2023 | 18-90157 | M.Y. | $ | 325,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 05/29/2019 | 190195 | Macfarlane, Jack | $ | 754.24 | TOBY MACFARLANE | Lost Property or Evidence |
| 05/01/2016 | 160181 | Mackey, Carla Marie | $ | 741.70 | MACKEY, CARLA | County Vehicle v. Vehicle |
| 08/31/2021 | 200323A | Magana, Manuel | $ | 5,000.00 | GOLPER, SUILLIVAN & RIVERA TRUST ACCOUNT | County Vehicle v. Vehicle |
| 08/31/2021 | 200323B | Magana, Sofia | $ | 5,000.00 | GOLPER, SUILLIVAN & RIVERA TRUST ACCOUNT | County Vehicle v. Vehicle |
| 06/22/2023 | 230273 | Mahbouli, Abdelwahid | $ | 584.00 | MAHBOULI, ABDELWAHID | Towing Related |
| 10/09/2019 | 190383 | Maiatico, Patricia | $ | 1,579.99 | MAIATICO, PATRICIA | Lost Property or Evidence |
| 08/21/2014 | 140337 | Manning, Shirley R. | $ | 3,000.00 | MANNING, SHIRLEY | County Vehicle v. Vehicle |
| 02/11/2021 | 200395 | Mansueto, Robert | $ | 500.00 | MANSUETO, ROBERT F. DDS | Jail, Booking Related Property Loss |
| 02/14/2017 | 15-90571 | MARAGLINO, DOROTHY | $ | 2,500.00 | MARAGLINO, DOROTHY | Jail, Violation of Civil Rights |
| 11/02/2020 | 200373 | Marcelli, Pascale | $ | 500.00 | MARCELLI, PASCALE | County Vehicle v. Vehicle |
| 02/10/2022 | 210481A | Marenty, Sergio | $ | 8,353.57 | MARENTY, SERGIO | Employee Procedure or Conduct |
| 08/03/2015 | 150286 | Martinez, Aaron | $ | 2,196.92 | SAN MARCOS COLLISION CENTER | County Vehicle v. Vehicle |

County of San Diego Sheriff's Department Settlements of Judgments from 1/1/2014 through 7/10/2024

| Date | Case No. | Name | | Amount | Payee | Category |
|---|---|---|---|---|---|---|
| 01/07/2016 | 14-90208 | MARTINEZ, ANTONIO | $ | 404,712.29 | SWITZER LAW OFFICE | Use of Force |
| 12/28/2015 | 14-90208 | MARTINEZ, ANTONIO | $ | 595,287.71 | BHG STRUCTURED SETTLEMENTS INC | Use of Force |
| 10/12/2021 | 19-90111 | MARTINEZ, BREANA | $ | 65,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 01/07/2015 | 13-90174 | MARTINEZ, JESUSA | $ | 250,000.00 | WINET PATRICK GAYER CREIGHTON & HANES | County Vehicle v. Pedestrian |
| 06/08/2022 | 220182 | Martinez, Juan | $ | 3,205.76 | JUAN MARTINEZ | County Vehicle v. Vehicle |
| 03/24/2020 | 19-90048 | MARUN, JAMES | $ | 50,000.00 | LAW OFFICE OF STEVE HOFFMAN AND | Use of Force |
| 06/18/2020 | 190545A | Mata. Alejandro | $ | 2,500.00 | MATA, ALEJANDRO AND | County Vehicle v. Vehicle |
| 02/04/2020 | 18-90429 | MAYS, CHRISTOPHER | $ | 699,854.35 | DE SANTIS LAW CENTER, APC | County Vehicle v. Vehicle |
| 02/04/2020 | 18-90429 | MAYS, CHRISTOPHER | $ | 145.65 | DEPARTMENT OF HEALTH CARE SERVICES | County Vehicle v. Vehicle |
| 09/19/2018 | 170525 | Mays, Kalie | $ | 300.00 | FRANK DE SANTIS ESQ | County Vehicle v. Vehicle |
| 09/19/2018 | 170525 | Mays, Kalie | $ | 300.00 | FRANK DE SANTIS ESQ | County Vehicle v. Vehicle |
| 11/13/2017 | 170525 | Mays, Kalie | $ | 825.00 | COUNTYWIDE TOWING | County Vehicle v. Vehicle |
| 11/14/2017 | 170525 | Mays, Kalie | $ | 2,200.00 | MAYS, CHRISTOPHER | County Vehicle v. Vehicle |
| 11/17/2017 | 170525 | Mays, Kalie | $ | 288.99 | MAYS, CHRISTOPHER | County Vehicle v. Vehicle |
| 11/02/2021 | 20-90219 | MCCORMICK, DIANNE | $ | 60,000.00 | RUTMAN, KEITH H – | Use of Force |
| 10/19/2022 | 220337 | McCracken, Andrew | $ | 765.00 | MCCRACKEN, ANDREW | Towing Related |
| 07/14/2021 | 210201 | McDowell, Ilze | $ | 1,049.98 | MCDOWELL, ILZE | Lost Property or Evidence |
| 10/29/2015 | 150447 | McGregor, Ryan | $ | 3,534.38 | MCGREGOR, RYAN | County Vehicle v. Vehicle |
| 09/17/2018 | 180278 | McHorney, Reynil | $ | 1,957.88 | MCHORNEY, REYNIL | County Vehicle v. Vehicle |
| 03/12/2021 | 20-90224 | MCMAHON, JOHN | $ | 1,000.00 | LAW OFFICE OF BRENT BORCHERT | Other Non-PI, Non-PD |

Office of County Counsel

7/26/2024

| | | | | | |
|---|---|---|---|---|---|
| 08/20/2015 | 150317 | McManus, John H. | $ 795.00 | MCMANUS, JOHN | County Vehicle v. Fixed Object/Other |
| 05/25/2017 | 170012 | Meader, Erin | $ 3,225.30 | AAA | County Vehicle Code 3 Accident |
| 12/03/2018 | 180452 | Medina, Everado | $ 1,486.29 | MEDINA, EVERADO | County Vehicle v. Vehicle |
| 04/28/2015 | 150015 | Mejia, Yolanda | $ 1,400.00 | MEJIA, YOLANDA | County Vehicle v. Vehicle |
| 08/10/2018 | 160356 | Mendelsohn, Cheryl | $ 185,500.00 | SWITZER LAW OFFICE | County Vehicle v. Vehicle |
| 09/20/2021 | 210281 | Mendez, Robert | $ 3,417.08 | MENDEZ, ROBERT | County Vehicle v. Vehicle |
| 07/08/2014 | 140288 | Mendoza, Christopher Marroquin | $ 19,500.00 | MENDOZA, CHRISTOPHER | Jail, Use of Force |
| 08/01/2014 | 140288 | Mendoza, Christopher Marroquin | $ 499.27 | Sheriff Commissary | Jail, Use of Force |
| 07/07/2022 | 220225 | Mendoza, Lisa Jo | $ 960.00 | MENDOZA, LISA JO | County Vehicle v. Bicycle |
| 10/17/2018 | 17-90355 | MENDOZA, PHILLIP JESSE | $ 50,000.00 | E LEE LAW GROUP PC | Use of Force |
| 03/16/2018 | 18-90018 | MENDOZA, ROMEY | $ 3,000.00 | BEURY, DONALD D | Towing Related |
| 12/09/2020 | 200259 | Mercury (Acosta) | $ 14,510.54 | MERCURY INSURANCE | County Vehicle v. Vehicle |
| 10/27/2022 | 220283 | Mercury (Dickson) | $ 3,267.29 | MERCURY (DICKSON) | Employee Procedure or Conduct |
| 04/26/2022 | 220039 | Mercury (Fonseca) | $ 822.51 | MERCURY INSURANCE GROUP | County Vehicle v. Vehicle |
| 10/22/2019 | 190045B | Mercury Insurance (Blocker) | $ 36,847.84 | MERCURY INSURANCE CO. (BLOCKER) | County Vehicle v. Vehicle |
| 08/27/2018 | 180251 | Mercury Insurance Company (Rodriguez) | $ 14,920.66 | MERCURY INSURANCE COMPANY | County Vehicle v. Vehicle |
| 03/24/2017 | 170045 | Mercury Insurance Group (Wright) | $ 1,862.37 | MERCURY INSURANCE COMPANY | County Vehicle v. Vehicle |
| 04/06/2015 | 14-90585 | MESSER, JAMES | $ 7,500.00 | LAW OFFICE OF TODD T CARDIFF | Civil Rights or Employment |
| 01/06/2020 | 190551 | MetLife (Rizo) | $ 1,551.12 | METLIFE AUTO & HOME | County Vehicle v. Vehicle |

| 08/03/2017 | 170233 | Meyers, Larry | $ | 3,413.56 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 05/24/2023 | 230243 | Michael, Diane | $ | 5,439.44 | DITCHEY GEIGER, LLC (AAA) | County Vehicle v. Vehicle |
| 07/05/2016 | 160281 | Michel, Francisco Javier | $ | 1,399.00 | AIRPORT CAR RENTAL | County Vehicle v. Vehicle |
| 04/11/2024 | 240138 | Mid-Century Insurance Co. (Avelar) | $ | 9,825.06 | MID-CENTURY INSURANCE CO | County Vehicle v. Vehicle |
| 02/16/2021 | 18-90244 | MILLER, MELISSA | $ | 5,000.00 | CHIVINSKI LAW FIRM APC CLIENT TRUST ACCOUNT | County Vehicle v. Vehicle |
| 10/22/2021 | 210340 | Miller, Trista | $ | 414.00 | MILLER, TRISTA | Towing Related |
| 03/12/2021 | 210034 | Mintle, Ronald | $ | 210.00 | MINTLE, RONALD | Employee Procedure or Conduct |
| 06/10/2021 | 210160 | Molina, Christopher | $ | 1,302.39 | MOLINA, CHRISTOPHER | Employee Procedure or Conduct |
| 01/18/2018 | 15-90597 | MOORE, LUCAS | $ | 75,000.00 | SEMNAR & HARTMAN LLP | Use of Force |
| 03/05/2015 | 150019 | Morales, Freddy | $ | 494.47 | MORALES, FREDDY | Employee Procedure or Conduct |
| 05/25/2017 | 170192 | Moreland, Channing Marie | $ | 335.00 | MORELAND, CHANNING | Towing Related |
| 06/01/2016 | 160220 | Morgan, Jill | $ | 95.27 | HIGH LAND EAST MOBILE HOME & RV PARK | County Vehicle v. Vehicle |
| 12/13/2021 | 17-90250 | MORIARTY, MICHELLE | $ | 2,950,000.00 | MORRIS LAW FIRM APC | Jail, Suicide |
| 02/09/2016 | 150544 | Morris, Ray Steven | $ | 278.59 | MORRIS, RAY S | Employee Procedure or Conduct |
| 07/21/2014 | 140251 | Morris, Theodore | $ | 2,500.00 | MORRIS, THEODORE | Jail, Booking Related Property Loss |
| 05/14/2014 | 11-90475 | MORROW, RONALD L. | $ | 7,500.00 | THE BURCHETT LAW FIRM PC | Jail, Medical Malpractice |
| 07/01/2020 | 200120 | Moser, Kenneth | $ | 51.90 | MOSER, KENNETH JAMES | Employee Procedure or Conduct |
| 03/15/2022 | 220017 | Muehe, Michael | $ | 5,382.35 | MUEHE, MICHAEL | County Vehicle v. Vehicle |
| 03/17/2017 | 160171 | Munoz, Jessie Daniel | $ | 7,500.00 | D'EGIDIO LICARI TOWNSEND & SHAH APC | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 06/10/2016 | 160171 | Munoz, Jessie Daniel | $ | 771.01 | MUNOZ, JESSIE DANIEL | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 11/19/2015 | 140495A | Murphy, Michael | $ | 17,500.00 | GOLPER, SULLIVAN & RIVERA | County Vehicle v. Vehicle |
| 06/30/2023 | 18-90358 | N.G. | $ | 1,115,206.99 | GILLEON LAW FIRM APC | Illegal Search or Seizure |
| 10/22/2021 | 20-90216 | NAJARRO, JAIME R. | $ | 225,000.00 | MARRINAN, MICHAEL R | Use of Force |
| 04/18/2024 | 240197 | Najera, Dylan | $ | 1,022.00 | NAJERA, DYLAN | Employee Procedure or Conduct |
| 01/11/2018 | 15-90143 | NAPIER, CHARLES | $ | 41,125.00 | QUIROZ, LILLINOI | Law Enforcement-shooting |
| 01/11/2018 | 15-90143 | NAPIER, CHARLES | $ | 36,375.00 | LUCERO LAW PC | Law Enforcement-shooting |
| 10/04/2019 | 15-90143 | NAPIER, CHARLES | $ | 41,125.00 | MARTINEZ, LILLINOI | Law Enforcement-shooting |
| 01/09/2024 | 230354A | National General (Chavez) | $ | 10,063.05 | NATIONAL GENERAL INSURANCE | County Vehicle v. Vehicle |
| 07/01/2021 | 210184 | Nationwide (Barrett) | $ | 9,257.25 | NATIONWIDE INSURANCE | County Vehicle v. Vehicle |
| 06/22/2023 | 230169 | Nationwide (Robinson) | $ | 4,735.83 | NATIONWIDE INSURANCE | County Vehicle v. Vehicle |
| 04/06/2022 | 220058 | Nationwide (Siemers) | $ | 4,082.10 | NATIONWIDE (SIEMERS) | County Vehicle v. Vehicle |
| 02/07/2014 | 140064 | Nelson, Cathryn Edna | $ | 500.00 | NELSON, CATHRYN | County Vehicle v. Vehicle |
| 03/06/2014 | 140064 | Nelson, Cathryn Edna | $ | 847.36 | FARMERS INSURANCE | County Vehicle v. Vehicle |
| 05/03/2022 | 15-90156 | NeSMITH, CHASSIDY | $ | 250,000.00 | MORRIS LAW FIRM APC | Jail, Suicide |
| 03/03/2020 | 18-90412 | NEVILLE, EDWARD | $ | 20,000.00 | LAW OFFICE OF JERRY L STEERING | Use of Force |
| 07/25/2017 | 170348 | Nishiguchi, Shuhei | $ | 1,500.00 | NISHIGUCHI, SHUHEI | Pursuit accident |
| 08/15/2017 | 170348 | Nishiguchi, Shuhei | $ | 5,500.00 | NISHIGUCHI, SHUHEI | Pursuit accident |
| 02/07/2019 | 16-90365 | NISHIMOTO, ROCHELLE | $ | 595,000.00 | MORRIS LAW FIRM APC | Jail, Suicide |
| 03/10/2015 | 150068 | Nudo, Kristen Kay | $ | 1,936.40 | NUDO, KRISTEN | Animal Related, Other |
| 05/01/2018 | 16-90276 | NUNEZ, RUBEN [ESTATE OF] | $ | 975,000.00 | IREDALE & YOO APC | Jail, Medical Malpractice |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| 05/01/2018 | 16-90276 | NUNEZ, RUBEN [ESTATE OF] | $ | 25,000.00 | IREDALE & YOO APC | Jail, Medical Malpractice |
|---|---|---|---|---|---|---|
| 10/23/2018 | 180284 | Nunez-Vargas, Jose Antonio | $ | 3,018.71 | ALLSTATE | County Vehicle v. Vehicle |
| 06/07/2024 | 21-90347 | OCHOA, FRANCISCO VALENZUELA | $ | 650,000.00 | ADAMSON AHDOOT LLP | County Vehicle v. Vehicle |
| 04/22/2020 | 190313 | O'Connor, Natalie | $ | 25,000.00 | DEON GOLDSCHMIDT ATTORNEYS, APC, | County Vehicle Code 3 Accident |
| 09/04/2019 | 190165B | Oelsen, Lynn | $ | 3,395.83 | OELSEN, LYNN CAROL | County Vehicle v. Vehicle |
| 06/10/2020 | 19-90205 | OLIVER, SKY | $ | 164,391.00 | MARRINAN, MICHAEL R | Use of Force |
| 07/07/2020 | 19-90205 | OLIVER, SKY | $ | 90,431.10 | THE DEPARTMENT OF HEALTH CARE SERVICES | Use of Force |
| 07/24/2014 | 13-90278 | OREY, JENNIFER LYNN | $ | 600,000.00 | ARDALAN & ASSOCIATES PLC | Law Enforcement-shooting |
| 07/28/2014 | 13-90278 | OREY, JENNIFER LYNN | $ | 400,000.00 | PACIFIC LIFE & ANNUITY SERVICES INC | Law Enforcement-shooting |
| 05/09/2023 | 22-90153 | OVCHARENKO, PAVLO | $ | 7,500.00 | LAW OFFICES OF MARK V CARUANA | County Vehicle v. Vehicle |
| 05/03/2018 | 18-90149 | P.B. | $ | 150,000.00 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 10/25/2018 | 18-90149 | P.B. | $ | 26,682.60 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 12/17/2020 | 18-90155 | P.S. | $ | 460,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 03/23/2017 | 170097 | Padilla, Jayne Rose | $ | 347.00 | PADILLA, JAYNE | Towing Related |
| 01/23/2018 | 180028 | Padre Dam Municipal Water District | $ | 5,843.19 | PADRE DAM MUNICIPAL WATER DISTRICT | County Vehicle v. Fixed Object/Other |
| 04/28/2021 | 20-90071 | PALACIOS, MARIA | $ | 1,000,000.00 | SINGLETON SCHEIBER MCKENZIE & SCOTT LLP | Jail, Suicide |
| 06/16/2017 | 170268 | Pantoja, Giovani | $ | 1,870.80 | PANTOJA, GIOVANI | County Vehicle v. Vehicle |
| 09/10/2020 | 200221 | Paoli, James | $ | 998.53 | PAOLI, JAMES | County Vehicle v. Vehicle |

| | | | | | |
|---|---|---|---|---|---|
| 01/13/2015 | 140495 | Parau, Vasile | $ 4,978.43 | AMERICAN FAMILY INSURANCE | County Vehicle v. Vehicle |
| 07/29/2015 | 11-90383 | PARENTEAU, JENNIFER | $ 25,000.00 | DARAL B MAZZARELLA APC | Illegal Search or Seizure |
| 02/01/2019 | 180359A | Parker-Jackson, Justin Robert | $ 250.00 | PARKER-JACKSON, JUSTIN | County Vehicle v. Vehicle |
| 09/01/2015 | 150348 | Parkview San Marcos II, LP | $ 2,500.00 | PARKVIEW SAN MARCOS II, LP | County Vehicle v. Fixed Object/Other |
| 01/23/2014 | 130485 | Patel, Bhavikkumar | $ 1,509.64 | PATEL, BHAVIKKUMAR | County Vehicle v. Vehicle |
| 04/17/2014 | 130485 | Patel, Bhavikkumar | $ 250.00 | PATEL, BHAVIKKUMAR | County Vehicle v. Vehicle |
| 11/15/2019 | 190478A | Paterno, Tony | $ 4,756.10 | PATERNO, TONY | County Vehicle v. Vehicle |
| 09/29/2016 | 160398 | Pauma Valley Community Services District | $ 483.09 | PAUMA VALLEY COMMUNITY SERV DISTRICT | County Vehicle v. Fixed Object/Other |
| 06/23/2015 | 12-90570 | PEGUERO, RAPHAEL | $ 50,000.00 | LAW OFFICE OF BURTON W GUETZ | County Vehicle Involved Accident |
| 10/22/2019 | 190438 | Penton, Scott | $ 305.02 | PENTON, SCOTT | County Vehicle v. Fixed Object/Other |
| 08/01/2017 | 170035 | Peters, Adrian Jerome | $ 6,000.00 | PETERS, ADRIAN | Pursuit accident |
| 08/17/2016 | 160305 | Pettus, Jennifer Diane | $ 377.00 | PETTUS, JENNIFER | Towing Related |
| 05/20/2019 | 190110 | Pfeiffer, Joann Marie | $ 585.68 | JOANN MARIE PFEIFFER | County Vehicle v. Vehicle |
| 01/07/2022 | 210193 | Pfeiffer, Paloma | $ 857.11 | PFIEFER, PALOMA | County Vehicle v. Vehicle |
| 10/03/2022 | 210193 | Pfeiffer, Paloma | $ 14,000.00 | PFEIFFER, PALOMA | County Vehicle v. Vehicle |
| 01/10/2023 | 21-90274 | PHILLIPS ABU, SHYNITA | $ 60,000.00 | LAW OFFICES OF JOSEPH M. MCMULLEN | Use of Force |
| 05/08/2019 | 190212 | Phillips, Christopher Ray | $ 4,273.44 | PROGRESSIVE | County Vehicle v. Vehicle |
| 06/04/2019 | 190212 | Phillips, Christopher Ray | $ 1,485.54 | CHRISTOPHER PHILLIPS | County Vehicle v. Vehicle |
| 03/23/2017 | 170087 | Pipes-Slingsby, Sandra Janette | $ 295.00 | PIPES-SLINGSBY, SANDRA | Towing Related |

7/26/2024

County of San Diego Sheriff's Department Settlements or Judgments from 1/1/2014 through 7/10/2024

| | | | | | |
|---|---|---|---|---|---|
| 09/15/2017 | 16-90098 | PITT, ROBERT | $ 220,000.00 | LAW OFFICE OF JERRY L STEERING | False Arrest/Imprisonment |
| 07/12/2022 | 220196 | Pogosian, Jack | $ 937.81 | POGOSIAN, JACK H | Employee Procedure or Conduct |
| 12/06/2022 | 21-90066 | POGUE, TINA | $ 65,000.00 | LESSEM, NEWSTAT & TOOSON LLP | Use of Force |
| 07/05/2016 | 150307A | Pontbriand, Tessa & Michael | $ 750.00 | PONTBRIAND, TESSA | County Vehicle v. Vehicle |
| 07/05/2016 | 150307A | Pontbriand, Tessa & Michael | $ 750.00 | PONTBRIAND, MICHAEL | County Vehicle v. Vehicle |
| 03/04/2014 | 140031 | Prato, Joseph Anthony | $ 500.00 | PRATO, JOSEPH | County Vehicle v. Vehicle |
| 03/04/2014 | 140031 | Prato, Joseph Anthony | $ 52.50 | USAA | County Vehicle v. Vehicle |
| 04/03/2014 | 140031 | Prato, Joseph Anthony | $ 140.40 | USAA | County Vehicle v. Vehicle |
| 10/12/2015 | 14-90479 | PRISON LEGAL NEWS | $ 405,000.00 | ROSEN BIEN GALVAN & GRUNFELD LLP | Jail, Violation of Civil Rights |
| 07/02/2024 | 230162 | Progressive (Addonizio) | $ 1,960.55 | UNITED FINANCIAL CASUALTY CO A/S/O ADDONIZIO, ALEJANDRA | County Vehicle v. Vehicle |
| 02/04/2020 | 190313A | Progressive (O'Connor) | $ 8,797.45 | PROGRESSIVE | County Vehicle v. Vehicle |
| 02/22/2022 | 210450 | Progressive (Schenck) | $ 2,255.23 | PROGRESSIVE SELECT INSURANCE COMPANY | County Vehicle v. Vehicle |
| 03/23/2017 | 170041 | Progressive (Trepte) | $ 2,820.49 | UNITED FINANCIAL CASUALTY CO | County Vehicle v. Vehicle |
| 03/23/2017 | 170041 | Progressive (Trepte) | $ 201.61 | TREPTE, ALETIA | County Vehicle v. Vehicle |
| 05/12/2015 | 150208 | Pullman, Lucas | $ 950.63 | PULLMAN, LUCAS | County Vehicle v. Vehicle |
| 06/09/2015 | 150208 | Pullman, Lucas | $ 685.99 | PULLMAN, LUCAS | County Vehicle v. Vehicle |
| 07/30/2015 | 150277 | Quezada, Ana | $ 2,903.71 | QUEZADA, ANA | County Vehicle v. Vehicle |
| 10/19/2020 | 200243 | Quintana, Paul | $ 3,967.00 | QUINTANA, PAUL | Animal Related, Other |

Office of County Counsel

7/26/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 03/22/2018 | 180068 | Rahmatulla, Josephine Valdez | $ | 89.24 | RAHMATULLA, JOSEPHINE | Employee Procedure or Conduct |
| 07/07/2016 | 15-90040 | RAISER, AARON | $ | 1,500.00 | RAISER, AARON | Employee Procedure or Conduct |
| 01/05/2023 | 220323 | Ramos, Celina Marie | $ | 2,996.69 | RAMOS, CELINA MARIE | County Vehicle v. Vehicle |
| 08/25/2015 | 150340 | Rayner, Joan Winifred | $ | 747.89 | USAA | County Vehicle v. Vehicle |
| 10/13/2016 | 160444 | Renteria, Juan | $ | 969.38 | RENTERIA, JUAN | County Vehicle v. Vehicle |
| 03/14/2023 | 230108 | Reyes, Armando | $ | 404.87 | REYES, ARMANDO | Lost Property or Evidence |
| 09/13/2023 | 230531 | Reyes, James | $ | 5,197.70 | REYES, JAMES | County Vehicle v. Pedestrian |
| 04/27/2017 | 170178 | Richwine, Brian Lee | $ | 2,793.52 | RICHWINE, BRIAN | County Vehicle v. Vehicle |
| 05/16/2017 | 170178 | Richwine, Brian Lee | $ | 413.12 | RICHWINE, BRIAN | County Vehicle v. Vehicle |
| 03/26/2020 | 200014 | Rising, Kyle | $ | 306.00 | RISING, KYLE AUSTIN | Towing Related |
| 09/30/2019 | 190354 | Rivera-Arevalo, Martina | $ | 14,372.47 | AREVALO, FRANCISCO | County Vehicle v. Vehicle |
| 01/17/2024 | 230750 | Rizvi, Zehra | $ | 337.82 | RIZVI, ZEHRA | Employee Procedure or Conduct |
| 07/09/2015 | 150290 | Robe, Stacy Ann | $ | 1,117.81 | ROBE, STACY | County Vehicle v. Vehicle |
| 11/17/2015 | 15-90054 | ROBERTSON, MICHAEL | $ | 12,468.00 | BOYLAN, PAUL NICHOLAS | Other/Miscellaneous |
| 09/04/2019 | 190408 | Rodericks, Tyler | $ | 500.00 | RODERICKS, TYLER | County Vehicle v. Vehicle |
| 09/14/2017 | 170421 | Rodriguez, Claudia Guadalupe | $ | 4,000.00 | RODRIGUEZ, CLAUDIA GUADALUPE | County Vehicle v. Vehicle |
| 08/15/2021 | 210031B | Rodriguez, Gerardo | $ | 3,451.76 | RODRIGUEZ, GERARDO | County Vehicle v. Vehicle |
| 08/18/2021 | 210031 | Rodriguez, Gerardo | $ | 17,400.00 | AMINPOUR & ASSOCIATES AND RODRIGUEZ, GERARDO | County Vehicle v. Vehicle |

| 01/11/2023 | 20-90032 | RODRIGUEZ, JESUS CIRILO | $ | 300,000.00 | BRODY MCBRIDE LAW CLIENT TRUST ACCOUNT | Use of Force |
|---|---|---|---|---|---|---|
| 05/11/2015 | 14-90305 | ROGERS, CYNTHIA | $ | 22,500.00 | LARABEE GIENAPP APC | Discrimination - Employment |
| 03/21/2016 | 150307 | Rogoway, Jessica | $ | 562.48 | ROGOWAY, JESSICA | County Vehicle v. Vehicle |
| 07/08/2016 | 150307 | Rogoway, Jessica | $ | 10,000.00 | LAW OFFICES OF YORK & POKORNY | County Vehicle v. Vehicle |
| 12/07/2017 | 170548 | Ronald McDonald House Charities of San Diego | $ | 1,209.00 | RONALD MCDONALD HOUSE CHARITIES | County Vehicle v. Vehicle |
| 07/05/2022 | 19-90353 | ROSALES, DOLORES | $ | 1,350,000.00 | ARIAS, JESUS EDUARDO | Use of Force |
| 09/09/2021 | 210273 | Rowe, Madelyn | $ | 400.00 | ROWE, MADELYN | Employee Procedure or Conduct |
| 07/05/2016 | 160207 | Rozell, Brenna Louise | $ | 2,165.30 | PLOTKIN, BARRY M | County Vehicle v. Vehicle |
| 05/17/2018 | 180128 | Ruetsche, Markus | $ | 346.25 | RUETSCHE, MARKUS | Towing Related |
| 05/27/2021 | 210155 | Ruiz, Monica | $ | 170.00 | RUIZ, MONICA R. | Lost Property or Evidence |
| 10/17/2016 | 160312 | Russo, Christine | $ | 1,327.70 | RUSSO, CHRISTINE | County Vehicle v. Vehicle |
| 10/19/2016 | 160312 | Russo, Christine | $ | 179.98 | RUSSO, CHRISTINE | County Vehicle v. Vehicle |
| 10/21/2016 | 160312 | Russo, Christine | $ | 254.33 | ENTERPRISE RENT-A-CAR COMPANY | County Vehicle v. Vehicle |
| 05/01/2024 | 240232 | Ryan, William | $ | 700.38 | GRAND TRADITION INC | Employee Procedure or Conduct |
| 04/05/2018 | 14-90033 | S. B., A MINOR | $ | 150,000.00 | THE COCHRAN FIRM CALIFORNIA | Use of Force |
| 12/02/2020 | 17-90340 | S.A.C., A MINOR | $ | 722,709.00 | METLIFE ASSIGNMENT COMPANY, INC | Use of Force |
| 12/07/2020 | 17-90340 | S.A.C., A MINOR | $ | 357,256.00 | GUIZAR, HENDERSON, & CARRAZCO, L.L.P | Use of Force |
| 12/09/2020 | 17-90340 | S.A.C., A MINOR | $ | 270,035.00 | LAW OFFICES OF DALE K GALIPO | Use of Force |
| 12/21/2020 | 17-90340 | S.A.C., A MINOR | $ | 150,000.00 | LAW OFFICES OF FRANCISCO J ALDANA | Use of Force |
| 10/27/2020 | 18-90156 | S.H. | $ | 490,000.00 | WINER, BURRITT & SCOTT, LLP | Employee Procedure or Conduct |

County of San Diego Sheriff's Department Settlements of Judgments from 1/1/2014 through 7/10/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 03/10/2022 | 20-90159 | SAADAT, VALENCIA | $ | 7,500.00 | SAADAT, VALENCIA | County Vehicle v. Vehicle |
| 01/22/2016 | 160032 | Sadsad, Leticia M. | $ | 1,129.84 | SADSAD, LETICIA | County Vehicle v. Vehicle |
| 03/26/2024 | 230541 | Safeco Insurance (Mohamud) | $ | 19,853.41 | SAFECO INS | County Vehicle v. Vehicle |
| 02/08/2022 | 210481 | Salazar, Giordy | $ | 552.48 | SALAZAR, GIORDY J | Employee Procedure or Conduct |
| 09/21/2017 | 170247B | Salgado de Gomez, Victoria | $ | 5,500.00 | SALGADO DE GOMEZ, VICTORIA | Pursuit accident |
| 06/10/2016 | 160247 | Salvatierra, Michael Antone | $ | 932.15 | SALVATIERRA, MICHAEL | County Vehicle v. Vehicle |
| 08/17/2016 | 160247 | Salvatierra, Michael Antone | $ | 402.83 | SALVATIERRA, MICHAEL | County Vehicle v. Vehicle |
| 11/02/2021 | 210318 | San Diego Community College District | $ | 1,505.80 | SAN DIEGO COMMUNITY COLLEGE DISTRICT | County Vehicle v. Fixed Object/Other |
| 04/04/2017 | 170111 | San Diego Gas & Electric | $ | 11,248.70 | SDG&E | County Vehicle v. Fixed Object/Other |
| 10/04/2017 | 170365 | San Diego Metropolitan Transit System | $ | 11,885.50 | METROPOLITAN TRANSIT SYSTEM | County Vehicle Code 3 Accident |
| 01/16/2014 | 130470A | San Diego Rent-A-Car | $ | 2,819.96 | SAN DIEGO RENT-A-CAR | County Vehicle v. Vehicle |
| 01/15/2016 | 150521 | Sanada, Lindsay Marie | $ | 2,836.09 | SANADA, LINDSAY | County Vehicle v. Vehicle |
| 04/11/2018 | 180105 | Sanchez, Elvira | $ | 950.00 | SANCHEZ, ELVIRA | County Vehicle v. Vehicle |
| 12/21/2022 | 21-90309 | SANCHEZ, OSCAR | $ | 80,000.00 | BRODY MCBRIDE LAW CLIENT TRUST ACCOUNT | Jail, Use of Force |
| 11/28/2016 | 160468 | Sanchez, Steven | $ | 405.00 | SANCHEZ, STEVEN | Towing Related |
| 11/28/2018 | 17-90376 | SANDOVAL, ISRAEL DUARTE | $ | 200,000.00 | LALEZARY LAW FIRM LLP | Animal - Dog Bite, Vicious Animal |
| 03/09/2018 | 170247 | Santana Alcantara, Delvys Idael | $ | 4,500.00 | AZIMI LAW FIRM | Pursuit accident |
| 04/20/2021 | 19-90289 | SANTILLAN, ANDREW | $ | 70,000.00 | MORRIS LAW FIRM APC | Use of Force |
| 04/20/2017 | 170146 | Santos-Reyes, Maudelia | $ | 10,059.97 | SANTOS-REYES, MAUDELIA | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 04/06/2015 | 14-90153 | SAPOHA, LYUDMYLA | $ | 5,000.00 | GOMEZ LAW GROUP PC | False Arrest/Imprisonment |
| 04/18/2018 | 180093 | Schoenwald, Evan Timothy | $ | 400.00 | SCHOENWALD, EVAN | Towing Related |
| 01/22/2019 | 190003 | Schultz, Brian | $ | 595.30 | SCHULTZ, BRIAN | County Vehicle v. Vehicle |
| 02/20/2019 | 190003 | Schultz, Brian | $ | 1,099.33 | AAA | County Vehicle v. Vehicle |
| 01/03/2017 | 160576 | Scott, Christy Lynne | $ | 3,212.72 | SCOTT, CHRISTY | County Vehicle v. Vehicle |
| 02/12/2020 | 190529 | Scrivnor, David | $ | 900.00 | SCRIVNOR, DAVID H | False Arrest/Imprisonment |
| 01/14/2020 | 190384 | Segina, Louis | $ | 300.76 | SEGINA, LOUIS C | County Vehicle v. Vehicle |
| 04/24/2023 | 220438A | Segura, Alfonso | $ | 6,000.00 | WILLIAM C. HALSEY | County Vehicle v. Vehicle |
| 01/19/2018 | 170599 | Segura, Maria Francesca | $ | 976.11 | SEGURA, MARIA | Animal Related, Other |
| 08/04/2023 | 22-90132 | SEGURA, ZEELEE | $ | 60,000.00 | DREHER LAW FIRM CLIENT TRUST ACCOUNT | Use of Force |
| 11/26/2018 | 180459 | Shepherd, Steven Ray | $ | 2,618.94 | SHEPHERD, STEVEN | County Vehicle v. Vehicle |
| 02/01/2016 | 150128 | Shine, Debra Ann | $ | 1,453.80 | SHINE, DEBRA | County Vehicle v. Vehicle |
| 04/09/2015 | 150128 | Shine, Debra Ann | $ | 792.11 | SHINE, DEBRA | County Vehicle v. Vehicle |
| 10/02/2017 | 16-90560 | SHINE, DEBRA ANN | $ | 55,000.00 | CZ&R LLP | County Vehicle v. Vehicle |
| 11/19/2015 | 150128 | Shine, Debra Ann | $ | 792.11 | SHINE, DEBRA | County Vehicle v. Vehicle |
| 04/25/2023 | 230110 | Shun, Sharon | $ | 863.00 | SHUN, SHARON L | Dangerous Condition-Premises |
| 07/17/2017 | 170336 | Silina, Alina | $ | 663.52 | SILINA, ALINA | County Vehicle v. Vehicle |
| 04/15/2021 | 18-90422 | SILVA, PAUL (ESTATE OF) | $ | 2,488,000.00 | FRANTZ LAW GROUP APLC | Jail, Use of Force |
| 04/15/2021 | 18-90422 | SILVA, PAUL (ESTATE OF) | $ | 800,000.00 | METLIFE ASSIGNMENT COMPANY, INC | Jail, Use of Force |
| 04/15/2021 | 18-90422 | SILVA, PAUL (ESTATE OF) | $ | 200,000.00 | METLIFE ASSIGNMENT COMPANY, INC | Jail, Use of Force |

Office of County Counsel

7/26/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 03/01/2016 | 160052 | Silverado de Vista Apartments | $ | 4,975.66 | SILVERADO DE VISTA APTS | County Vehicle v. Fixed Object/Other |
| 10/20/2021 | 210356 | Slayton, Tara | $ | 201.16 | FANITA MEADOWS | Employee Procedure or Conduct |
| 06/26/2017 | 12-90263 | SLOWIKOWSKA, ROBERTA | $ | 75,000.00 | MARRINAN, MICHAEL R | Illegal Search or Seizure |
| 07/17/2017 | 170253 | Smith, Andre | $ | 525.00 | SMITH, ANDRE | Towing Related |
| 09/25/2018 | 180387 | Smith, Ashley Lynn | $ | 1,711.30 | SMITH, ASHLEY | County Vehicle v. Vehicle |
| 09/20/2016 | 160394 | Smith, Kenneth | $ | 972.98 | SMITH, KENNETH | County Vehicle v. Vehicle |
| 09/29/2016 | 160394 | Smith, Kenneth | $ | 160.00 | ROADONE | County Vehicle v. Vehicle |
| 12/16/2016 | 160552 | Smyth, Sharon Marie | $ | 490.30 | SMYTH, SHARON | County Vehicle v. Vehicle |
| 05/11/2022 | 21-90346 | SOARES, RICHARD | $ | 60,000.00 | LAW OFFICE OF GREG PEACOCK CLIENT TRUST ACCT | Use of Force |
| 11/18/2020 | 14-90512 | SOLER, JAMES | $ | 750,000.00 | LAW OFFICE OF TODD W BURNS | Employee Misconduct-Viol Civ Rts Nonjail |
| 10/29/2014 | 140447 | Soriano, Cristina | $ | 1,109.13 | SORIANO, CRISTINA | County Vehicle v. Vehicle |
| 01/09/2024 | 240020 | Soriano, Rocio | $ | 249.65 | ROCIO SORIANO | County Vehicle v. Vehicle |
| 04/19/2016 | 160169 | Sosaya, Ramon Augustin | $ | 356.07 | SOSAYA, RAMON | County Vehicle v. Vehicle |
| 06/01/2016 | 160169 | Sosaya, Ramon Augustin | $ | 1,241.76 | AAA | County Vehicle v. Vehicle |
| 06/02/2015 | 150148 | Soto, Andrea Crystal | $ | 78.99 | SOTO, ANDREA | Employee Procedure or Conduct |
| 11/18/2014 | 140524 | Stack, William Joseph | $ | 1,678.85 | STACK, WILLIAM | County Vehicle v. Vehicle |
| 06/26/2017 | 170232 | Stankiewicz, Kimberly Marie | $ | 825.00 | STANKIEWICZ, KIMBERLY | Employee Procedure or Conduct |
| 06/02/2015 | 13-90175 | STANLEY, DOUGLAS RAY | $ | 55,000.00 | RUPP JOHNSTON & LLOYD LLP | County Vehicle v. Vehicle |

| 02/07/2023 | 230030 | State Farm (Fuentes) | $ | 1,533.95 | STATE FARM | County Vehicle v. Vehicle |
|---|---|---|---|---|---|---|
| 02/14/2024 | 230786 | State Farm (Guatemala) | $ | 1,124.61 | STATE FARM INSURANCE A/S/O JOHANA GUATEMALA | County Vehicle v. Vehicle |
| 08/06/2019 | 190360 | State Farm (Villaroel) | $ | 1,365.86 | STATE FARM (VILLAROEL) | County Vehicle v. Vehicle |
| 07/08/2019 | 190303 | State Farm Insurance (Eyerman) | $ | 1,784.42 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
| 10/12/2016 | 160228A | State Farm Insurance Company | $ | 11,135.33 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
| 07/05/2016 | 160065A | State Farm Insurance Company (Acosta) | $ | 7,436.22 | STATE FARM MUTUAL AUTO INS CO | Pursuit accident |
| 04/20/2018 | 180143 | State Farm Insurance Company (Duffie) | $ | 2,987.76 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
| 02/04/2016 | 160050 | State Farm Insurance Company (Harel) | $ | 3,542.50 | STATE FARM MUTUAL AUTO INS CO | County Vehicle v. Vehicle |
| 03/24/2016 | 160050 | State Farm Insurance Company (Harel) | $ | 233.02 | HAREL, GUERSHON | County Vehicle v. Vehicle |
| 02/23/2016 | 160016A | State Farm Insurance Company (Jones) | $ | 6,100.98 | STATE FARM MUTUAL AUTO INS CO | County Vehicle v. Vehicle |
| 03/15/2018 | 180011 | State Farm Insurance Company (Kauma) | $ | 6,199.79 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
| 12/16/2016 | 160096A | State Farm Insurance Company (Parker) | $ | 4,798.14 | STATE FARM INSURANCE COMPANY | County Vehicle v. Vehicle |
| 04/15/2020 | 17-90131 | STEINMEIER, SUZANNE | $ | 6,500.00 | DONALD W. COOK CLIENT TRUST ACCOUNT | Animal Related, Other |
| 04/29/2014 | 140158 | Stempien, Mitchell Ryan | $ | 245.00 | TRITON ENTERPRISES | Employee Procedure or Conduct |
| 09/04/2019 | 190413 | Stephen, Brian | $ | 1,202.46 | STEPHEN, BRIAN | County Vehicle v. Vehicle |
| 10/16/2018 | 180416 | Sterling, Marla Marie | $ | 246.56 | STERLING, MARLA | County Vehicle v. Vehicle |
| 09/11/2018 | 180368 | Stetson, Mary Louise | $ | 916.69 | STETSON, MARY | County Vehicle v. Vehicle |

| | | | | | |
|---|---|---|---|---|---|
| 09/10/2019 | 190401 | Stevens, Connor | $ 1,837.36 | STEVENS, CONNOR MYLES | County Vehicle v. Vehicle |
| 09/13/2023 | 230471 | Stone, Donovan | $ 2,406.05 | SUTHERLAND ENTERPRISES INC | County Vehicle v. Vehicle |
| 12/09/2020 | 200359 | Stratton, Jennifer | $ 759.90 | STRATTON, JENNIFER | Rock From Cnty Veh. |
| 03/13/2019 | 18-90199 | STRODE, JOSHUA | $ 130,708.23 | SINGLETON LAW FIRM APC | Jail, Use of Force |
| 03/28/2023 | 18-90207 | STROUD, WILLARD, JR. | $ 13,500.00 | STROUD, WILLARD | Use of Force |
| 09/16/2022 | 20-90079 | SUAREZ, TANYA | $ 4,350,000.00 | PHG LAW GROUP IOLTA | Jail Related Incidents |
| 06/09/2017 | 15-90467 | SWEIS, SAMIR | $ 10,000.00 | SWEIS, SAMIR | Jail, Violation of Civil Rights |
| 10/18/2017 | 16-90182 | SYBRANDT, JUSTIN | $ 15,000.00 | RUTMAN, KEITH H – | False Arrest/Imprisonment |
| 08/11/2017 | 170356 | Sykes, Johnny Michael | $ 377.00 | SYKES, JOHNNY | Towing Related |
| 04/18/2023 | 18-90359 | T.D. | $ 1,200,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 03/13/2023 | 18-90154 | T.M. | $ 300,000.00 | GILLEON LAW FIRM APC | Employee Procedure or Conduct |
| 05/24/2018 | 18-90151 | T.S. | $ 240,000.00 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 10/25/2018 | 18-90151 | T.S. | $ 22,513.65 | GILLEON LAW FIRM | Employee Procedure or Conduct |
| 09/02/2020 | 200188A | Tallaksen, Eric | $ 3,100.00 | TALLAKSEN, ERIC | County Vehicle v. Vehicle |
| 10/22/2020 | 200265 | Tavakoli, Ali | $ 6,830.00 | MARINA LANDSCAPE, INC | County Vehicle v. Fixed Object/Other |
| 07/07/2022 | 220142 | The Cincinnati Insurance Company (Rueff) | $ 3,735.99 | THE CINCINNATI INSURANCE COMPANY | County Vehicle v. Vehicle |
| 09/13/2023 | 230485 | The Engravers Gallery | $ 194.82 | THE ENGRAVERS GALLERY,INC | Employee Procedure or Conduct |
| 05/11/2016 | 150522 | The Hartford (Harrington) | $ 729.06 | HARTFORD UNDERWRITERS INSURANCE CO | County Vehicle v. Vehicle |
| 03/24/2020 | 15-90531 | THOMAS, JONATHAN | $ 200,000.00 | MORRIS LAW FIRM APC | Jail, Lack of Medical Care |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/22/2014 | 140042A | Thomas, Lisa Lavette | $ | 2,002.69 | USAA | County Vehicle v. Vehicle |
| 04/21/2021 | 200117 | Thorup, Valeena | $ | 16,000.00 | MISSION LEGAL CENTER | County Vehicle v. Pedestrian |
| 03/28/2023 | 230136 | Timbol, Louie | $ | 999.00 | TIMBOL, LOUIE | General Negligence (Injury/PD) |
| 05/06/2024 | 240280 | Toma, Marvin | $ | 35.00 | TOMA, MARVIN N. | Employee Procedure or Conduct |
| 01/29/2018 | 180034 | Tomlin, Zachariah Robert | $ | 872.00 | TOMLIN, ZACHARIAH | County Vehicle v. Vehicle |
| 03/23/2017 | 15-90307 | TORRES, MARCIAL | $ | 1,950,000.00 | IREDALE & YOO APC | Use of Force |
| 03/23/2017 | 15-90307 | TORRES, MARCIAL | $ | 1,050,000.00 | LIBERTY LIFE ASSURANCE COMPANY | Use of Force |
| 12/18/2015 | 14-90433 | TOWNSEND, LEO | $ | 90,000.00 | SINGLETON LAW FIRM APC | Jail, Use of Force |
| 03/26/2020 | 200054 | Trask, William | $ | 375.00 | TRASK, WILLIAM VIRGIL | Employee Procedure or Conduct |
| 09/05/2014 | 140297A | Travelers (Fick) | $ | 19,743.58 | TRAVELERS CLAIMS HARTFORD | County Vehicle v. Vehicle |
| 10/12/2017 | 170423 | Travelers (Troth) | $ | 1,767.73 | TRAVELERS COMMERCIAL INSURANCE CO | County Vehicle v. Vehicle |
| 04/18/2023 | 21-90090 | TRAYLOR, DE'VON | $ | 7,500.00 | DUNN DESANTIS WALT & KENDRICK LLP | County Vehicle v. Vehicle |
| 08/18/2021 | 210285 | Trostad, Michelle | $ | 500.00 | MICHELLE TROSTAD | Pursuit accident |
| 09/06/2022 | 22-90194 | TUCK, ROY | $ | 250.00 | TUCK, ROY | Use of Force |
| 03/22/2016 | 160112 | Turkle, Charles Allen | $ | 2,399.34 | TURKLE, CHARLES | County Vehicle v. Vehicle |
| 09/02/2020 | 200266 | United Financial Casualty (Miller) | $ | 1,231.92 | UNITED FINANCIAL CASUALTY AS SUBROGEE OF | County Vehicle v. Vehicle |
| 11/10/2021 | 210419 | United Financial Casualty Co. (Richards) | $ | 1,450.81 | UNITED FINANCIAL CASUALTY CO (RICHARDS) | County Vehicle v. Vehicle |
| 03/01/2016 | 140249A | United Financial Casualty Company | $ | 598.12 | UNITED FINANCIAL CASUALTY COMPANY | County Vehicle v. Vehicle |
| 07/28/2014 | 140249A | United Financial Casualty Company | $ | 4,801.71 | UNITED FINANCIAL CASUALTY CO | County Vehicle v. Vehicle |

County of San Diego Sheriff's Department Settlements and Judgments from 1/1/2014 through 7/10/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 04/05/2017 | 170167 | United Services Automobile Association (Willingmyer) | $ | 736.94 | USAA | County Vehicle v. Vehicle |
| 02/07/2017 | 160356A | USAA | $ | 23,261.78 | USAA | County Vehicle v. Vehicle |
| 09/21/2018 | 180384 | USAA (Alexander) | $ | 1,226.98 | USAA | County Vehicle v. Vehicle |
| 01/05/2017 | 160506 | USAA (Alviar, Angelie) | $ | 2,406.69 | USAA | County Vehicle v. Vehicle |
| 07/14/2020 | 190626A | USAA (Bigler) | $ | 2,623.75 | USAA | County Vehicle v. Vehicle |
| 02/23/2021 | 210049 | USAA (Gnewuch) | $ | 3,023.34 | USAA GENERAL INDEMNITY COMPANY | County Vehicle v. Vehicle |
| 03/25/2021 | 210049 | USAA (Gnewuch) | $ | 176.99 | USAA GENERAL INDEMNITY COMPANY | County Vehicle v. Vehicle |
| 04/15/2019 | 190139 | USAA (Hightower) | $ | 825.90 | USAA | County Vehicle v. Vehicle |
| 04/12/2016 | 160146 | USAA (Hunsaker) | $ | 871.12 | USAA | County Vehicle v. Vehicle |
| 03/14/2023 | 230166 | USAA (Lorenzo Sanchez) | $ | 3,657.60 | USAA (LORENZO SANCHEZ) | County Vehicle v. Vehicle |
| 03/29/2016 | 160128 | USAA (Omarah) | $ | 728.48 | USAA | County Vehicle v. Vehicle |
| 08/10/2023 | 230017 | USAA (Parker) | $ | 8,515.37 | CSM ASO USAA GENERAL INDEMNITY CO | County Vehicle v. Vehicle |
| 07/24/2023 | 230375 | USAA (Rubio) | $ | 10,099.34 | CLERKIN, SINCLAIR & MAHFOUZ, LLP | County Vehicle v. Vehicle |
| 02/09/2021 | 200460 | USAA (Salas) | $ | 5,405.45 | USAA | County Vehicle v. Vehicle |
| 06/01/2023 | 230147 | USAA (Sanchez) | $ | 3,657.60 | CSM ASO/USAA | County Vehicle v. Vehicle |
| 12/14/2018 | 180496 | USAA (Schapp) | $ | 2,174.33 | USAA | County Vehicle v. Vehicle |
| 05/24/2023 | 230259 | USAA (Spikes) | $ | 3,073.57 | USAA (SPIKES) | County Vehicle v. Vehicle |

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/24/2023 | 230114A | USAA (Thornton) | $ | 525.53 | USAA (THORNTON) | County Vehicle v. Vehicle |
| 06/11/2020 | 200093 | USAA (West) | $ | 863.60 | USAA | County Vehicle v. Vehicle |
| 03/19/2020 | 190565 | Valdez Lopez, Lucia | $ | 1,071.32 | VALDEZ LOPEZ, LUCIA | Employee Procedure or Conduct |
| 03/25/2014 | 13-90228 | VALDEZ, STEPHEN R. | $ | 400,000.00 | MOSTOWTT, DARRYL J | County Vehicle v. Vehicle |
| 04/21/2017 | 170124 | Valentine, Garth Wolfgang | $ | 650.00 | VALENTINE, GARTH | Towing Related |
| 10/28/2020 | 200188 | Valenzuela-Ochoa, Francisco | $ | 6,194.50 | AGUILAR, EDMUNDO | County Vehicle v. Vehicle |
| 09/11/2019 | 190358 | Van Dorssen, Maaike | $ | 888.97 | VAN DORSSEN, MAAIKE LAUREN | Employee Procedure or Conduct |
| 09/19/2017 | 170392 | Van Ness, Krisanda | $ | 495.00 | VAN NESS, KRISANDRA | Towing Related |
| 06/29/2017 | 170317 | Van Tuyl, Karen | $ | 1,008.00 | KAREN VAN TUYL | County Vehicle v. Vehicle |
| 09/13/2021 | 210300 | Vargas, Christina | $ | 300.65 | VARGAS, CHRISTINA | Employee Procedure or Conduct |
| 03/19/2024 | 240040 | Vasquez, Jose | $ | 3,200.00 | VASQUEZ, JOSE A. | County Vehicle v. Vehicle |
| 03/26/2019 | 190109 | Venegas, Blas Dominguez | $ | 5,220.12 | VENEGAS, BLAS DOMINGUEZ | County Vehicle v. Vehicle |
| 08/31/2021 | 200323 | Victoria, Maria | $ | 45,000.00 | GOLPER, SUILLIVAN & RIVERA | County Vehicle v. Vehicle |
| 09/09/2016 | 14-90447 | VICTORIANNE, BERNARD [ESTATE OF] | $ | 2,300,000.00 | IREDALE & YOO APC | Jail, Lack of Medical Care |
| 04/21/2021 | 20-90081 | VILLA, MIGUEL | $ | 199,000.00 | IREDALE & YOO APC | Jail, Use of Force |
| 01/30/2019 | 190006 | Villegas Chavez, Saul | $ | 3,250.00 | SAUL VILLEGAS CHAVEZ | County Vehicle v. Vehicle |
| 02/20/2019 | 180519 | Vinzon, Reynaldo Cabuco | $ | 972.35 | REYNALDO CABUCO VINZON | County Vehicle v. Vehicle |
| 09/03/2014 | 140414 | Vista Park Villas | $ | 3,010.63 | VISTA PARK VILLAS | County Vehicle v. Fixed Object/Other |

| | | | | | |
|---|---|---|---|---|---|
| 07/23/2020 | 200186 | Viveros, Carlos | $ 1,147.33 | VIVEROS, CARLOS | County Vehicle v. Vehicle |
| 07/28/2020 | 200186 | Viveros, Carlos | $ 150.00 | INTERINSURANCE EXCHANGE OF THE AUTO CLUB | County Vehicle v. Vehicle |
| 10/30/2020 | 200186 | Viveros, Carlos | $ 12,635.00 | VIVEROS, CARLOS | County Vehicle v. Vehicle |
| 11/17/2020 | 200186 | Viveros, Carlos | $ 4,665.00 | NOLL, PATRICK T | County Vehicle v. Vehicle |
| 10/03/2022 | 20-90043 | VUZ, ASHLEY R. | $ 7,500.00 | MUNGER TOLLES & OLSON, LLP | Jail, Lack of Medical Care |
| 05/13/2014 | 13-90184 | WADE, PAULINE | $ 387,500.00 | AMINPOUR & ASSOCIATES | County Vehicle v. Vehicle |
| 04/20/2021 | 200316A | Wahlgren, Suzanne & Warren | $ 15,000.00 | WAHLGREN, SUZANNE & WARREN | County Vehicle v. Vehicle |
| 01/14/2014 | 130491 | Walker, Alma Diane | $ 6,235.00 | WALKER, ALMA | County Vehicle v. Motorcycle/Scooter |
| 11/06/2014 | 130491 | Walker, Alma Diane | $ 250,000.00 | PACIFIC LIFE & ANNUITY SERVICES INC | County Vehicle v. Motorcycle/Scooter |
| 11/06/2014 | 130491 | Walker, Alma Diane | $ 1,621.94 | DEPT OF HEALTH CARE SERVICES | County Vehicle v. Motorcycle/Scooter |
| 11/18/2014 | 130491 | Walker, Alma Diane | $ 198,378.06 | MARC D MABILE APLC | County Vehicle v. Motorcycle/Scooter |
| 12/18/2019 | 190521 | Walker, Shon | $ 600.00 | WALKER, SHON | Employee Procedure or Conduct |
| 01/13/2020 | 18-90439 | WARD, SHARON | $ 5,000.00 | WARD, SHARON c/o MICHAEL A. KAPLAN ESQ. | Employee Procedure or Conduct |
| 01/04/2022 | 210469 | Warner, Therese | $ 425.00 | WARNER, THERESE | County Vehicle v. Vehicle |
| 11/07/2017 | 170504 | Watanabe, Aaron | $ 1,305.60 | USAA | County Vehicle v. Vehicle |
| 11/07/2017 | 170504 | Watanabe, Aaron | $ 378.00 | WATANABE, AARON | County Vehicle v. Vehicle |
| 11/17/2022 | 220226 | Watkins, Marquis | $ 3,985.85 | UNITED FINANCIAL CASUALTY COMPANY | County Vehicle v. Vehicle |

Office of County Counsel

7/26/2024

| | | | | | | |
|---|---|---|---|---|---|---|
| 02/07/2017 | 160477A | Wawanesa | $ | 8,632.41 | WAWANESA GENERAL INS CO | County Vehicle v. Vehicle |
| 04/09/2019 | 190110A | Wawanesa | $ | 2,309.21 | WAWANESA | County Vehicle v. Vehicle |
| 10/22/2021 | 210388 | Wawanesa (Binsfield) | $ | 1,541.21 | WAWANESA | Employee Procedure or Conduct |
| 03/07/2017 | 170066 | Wawanesa (Corwin) | $ | 889.22 | WAWANESA GENERAL INS CO | County Vehicle v. Vehicle |
| 03/19/2014 | 140063 | Wawanesa (Gulla) | $ | 1,189.24 | WAWANESA GENERAL INS | County Vehicle v. Vehicle |
| 05/08/2019 | 190167 | Wawanesa (Hernandez) | $ | 6,157.77 | WAWANESA GENERAL INSURANCE CO | County Vehicle v. Vehicle |
| 02/06/2023 | 220434 | Wawanesa (Pugh) | $ | 147.50 | WAWANESA (PUGH) | County Vehicle v. Vehicle |
| 12/15/2022 | 220434 | Wawanesa (Pugh) | $ | 2,517.16 | WAWANESA (PUGH) | County Vehicle v. Vehicle |
| 04/19/2023 | 230249 | Wawanesa (Tang) | $ | 1,680.51 | WAWANESA (TANG) | County Vehicle v. Pedestrian |
| 05/05/2017 | 150191B | Weaver, Nancy Gail | $ | 23,500.00 | WEAVER, NANCY GAIL | County Vehicle v. Vehicle |
| 05/05/2017 | 150191A | Weaver, Richard Stephen | $ | 23,000.00 | WEAVER, RICHARD STEPHEN | County Vehicle v. Vehicle |
| 11/16/2017 | 16-90085 | WEISS, NICOLE | $ | 90,000.00 | FARRIS, LAURA J | Civil Rights or Employment |
| 11/15/2023 | 230695 | Wheeler, Nina | $ | 2,854.31 | NINA WHEELER | Employee Procedure or Conduct |
| 10/06/2015 | 15-90291 | WHITAKER, DEVIN | $ | 9,000.00 | SINGLETON LAW FIRM APC | Use of Force |
| 10/13/2022 | 220373 | White, Carla | $ | 3,171.48 | WHITE, CARLA | County Vehicle v. Vehicle |
| 05/29/2014 | 140167 | White, Kelly Michelle | $ | 697.00 | WHITE, KELLY | Towing Related |
| 11/12/2015 | 150446 | Wilber & Associates (Hunter) | $ | 7,119.40 | USAA | County Vehicle v. Vehicle |
| 06/08/2017 | 170250 | Wilber & Associates (Roach) | $ | 2,570.85 | USAA | County Vehicle v. Vehicle |

County of San Diego Sheriff's Department Settlement and Judgments from 1/1/2014 through 7/10/2024

| | | | | | |
|---|---|---|---|---|---|
| 06/11/2015 | 150248 | Wilber & Associates (Tinner) | $ 7,567.43 | USAA | County Vehicle v. Vehicle |
| 06/23/2015 | 150248 | Wilber & Associates (Tinner) | $ 1,676.29 | USAA | County Vehicle v. Vehicle |
| 09/28/2020 | 200303 | Wilensky, Harvey | $ 4,978.61 | WILENSKY, HARVEY | County Vehicle v. Vehicle |
| 06/10/2019 | 190191 | Willis, Floyd | $ 4,951.74 | USAA AS SUBROGEE OF FLOYD V WILLIS SR | Dangerous Condition-Premises |
| 04/03/2018 | 180108 | Willis, Teresa | $ 4,400.00 | WILLIS, TERESA | County Vehicle v. Vehicle |
| 02/20/2019 | 180431 | Wilson, Joseph Deshawn | $ 10,648.84 | USAA | County Vehicle v. Vehicle |
| 07/19/2018 | 17-90252 | WILSON, TEDDY LEROY, JR. | $ 350.00 | WILSON, TEDDY L | Use of Force |
| 02/23/2021 | 210026 | Witt, Taylor | $ 357.00 | WITT, TAYLOR | Towing Related |
| 09/01/2015 | 13-90564 | WOODALL, SHAWN | $ 25,000.00 | LAW OFFICES OF ROBERT C RYAN | Jail, Lack of Medical Care |
| 02/05/2020 | 190590 | Woods, Barri | $ 2,162.12 | WOODS, BARRI | County Equipment, Use or Maintenance |
| 03/15/2021 | 17-90417 | WOODWARD, BESSIE | $ 211,938.92 | LAW OFFICES OF JOSEPH M. MCMULLEN | Jail Related Incidents |
| 03/15/2021 | 17-90417 | WOODWARD, BESSIE | $ 188,061.08 | LAW OFFICE OF THOMAS E. ROBERTSON | Jail Related Incidents |
| 08/03/2022 | 21-90140 | WOOLSEY, ERIC | $ 130,000.00 | THE PRIDE LAW FIRM | Use of Force |
| 11/28/2016 | 160378 | Wu, Jimmy | $ 643.20 | WU, JIMMY | County Vehicle v. Vehicle |
| 03/17/2015 | 13-90058 | WYNN, OFELIA | $ 35,000.00 | BAYUK & ASSOCIATES INC | Use of Force |
| 10/13/2020 | 190474 | Yakob, Daniel & Jasmine | $ 8,500.00 | BATTA FULKERSON LLP | County Vehicle v. Vehicle |
| 10/13/2020 | 190474 | Yakob, Daniel & Jasmine | $ 2,000.00 | BATTA FULKERSON LLP AND YAKOB, DANIEL | County Vehicle v. Vehicle |
| 04/19/2019 | 190126 | Yakuta, Daniel | $ 439.50 | DANIEL YAKUTA | Towing Related |
| 10/09/2018 | 180359 | Yavanian, Holly Joy | $ 1,280.56 | YAVANIAN, HOLLY | County Vehicle v. Vehicle |
| 06/14/2022 | 21-90038 | YOUNG, JOE | $ 40,000.00 | POLEK, FRANK J CLIENT TRUST ACCOUNT | Use of Force |
| 01/07/2014 | 130451 | Zapata, Jose Galvan J. | $ 377.57 | JOSE GALVAN ZAPATA | County Vehicle v. Vehicle |

| 05/06/2021 | 210121 | Zdon, Norma | $ | 618.00 | ZDON, NORMA | Towing Related |
| --- | --- | --- | --- | --- | --- | --- |

# Exhibit M



# SAN DIEGO COUNTY SHERIFF'S DEPARTMENT
## Use of Force Review: Status Report



| CURRENT STATUS | |
|---|---|
| 🟨 PENDING REVIEW | 🟥 RETURNED |

| Previously _reviewed_ OR _returned_ at the following level... |
|---|
| **\* Lieutenant**    **\*\* Captain**    **\*\*\* DIS** |

| | SERGEANT | LIEUTENANT | | CAPTAIN | | DIS | |
|---|---|---|---|---|---|---|---|
| **Case No.** | **Status** | **Reviewer** | **Reviewed/ Returned** | **Reviewer** | **Reviewed/ Returned** | **Reviewer** | **Reviewed/ Returned** |

**Rancho San Diego Station - RANCHO SAN DIEGO PATROL**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 22156316 | Approved | Reviewed By: SH6485 - PERKINS, DAVID | 1/4/2023 3:16:28 PM | Reviewed By: SH2517-T - GLISSON, MATTHEW | 1/17/2023 1:26:27 PM | Reviewed By: SH2611 - SPACH, JOHN | 1/18/2023 10:25:45 AM |

---

- View on a daily basis to monitor cases reviewed/returned/pending review on the **Use of Force Review** page in NetRMS.
- A 'PENDING REVIEW' Sergeant Status means the case has **not** been revised or it has an unapproved or new .1 Case/UOF/Officer Report.
- Cases returned on the Use of Force Review page will reappear on it once a Case, Officer, UOF Report has been _manually_ unapproved, revised, and reapproved in NetRMS.
- The Controlling Org. listed under the first Use of Force Report added to the case determines which organization has ownership of it.

**Incident Range** (_Based on 1st UOF added to case_)**:**
<NULL> to 7/16/2025 11:59:59 PM
**Executed On:**
7/16/2025 10:20:01 AM
**Page 1 of 1**

<span style="color:red">CONFIDENTIAL</span>

CSD003562

# Exhibit N

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,
                                          )
                    PLAINTIFF,            )
                                          )
          vs.                             )   Case No. 24-CV-0662
                                          )              CAB-VET
NICOLAI RAMOS, IN HIS INDIVIDUAL    )
CAPACITY; COUNTY OF SAN DIEGO;      )
MICHAEL ALCARION, IN HIS            )
INDIVIDUAL CAPACITY; AND DOES 1-5.  )
                                          )
                    DEFENDANTS.           )
_____)

VIDEOTAPED DEPOSITION OF LT. ASHLEY LEWIS 30(b)(6)

SAN DIEGO, CALIFORNIA

DECEMBER 15, 2025

REPORTED BY:  LORENA BARRON, CSR NO. 12058

JOB NO. 2196046

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,                              )
                                         )
              PLAINTIFF,                 )
                                         )
         vs.                             )   Case No. 24-CV-0662
                                         )         CAB-VET
NICOLAI RAMOS, IN HIS INDIVIDUAL         )
CAPACITY; COUNTY OF SAN DIEGO;           )
MICHAEL ALCARION, IN HIS                 )
INDIVIDUAL CAPACITY; AND DOES 1-5.       )
                                         )
              DEFENDANTS.                )
_____)

        Videotaped Deposition of LT. ASHLEY LEWIS, taken

on behalf of Plaintiff, at 105 West F Street,

Fourth Floor, San Diego, California, commencing at

10:11 a.m., Monday, December 15, 2025, before Lorena

Barron, CSR. No. 12058.

JOB NO. 2196046

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

IREDALE & YOO, APC
BY:   EUGENE IREDALE, ESQ.
105 WEST F STREET
FOURTH FLOOR
SAN DIEGO, CALIFORNIA  92101
619.233.1525
egiredale@iredalelaw.com


FOR DEFENDANTS COUNTY OF SAN DIEGO AND NICOLAI RAMOS:

OFFICE OF THE COUNTY COUNSEL
BY: TIMOTHY HANNA, ESQ.
1600 PACIFIC HIGHWAY
ROOM 355
SAN DIEGO, CALIFORNIA  92101
619.531.5244
Timothy.Hanna@sdcounty.ca.gov




ALSO PRESENT:

MATEO TORRES, VIDEOGRAPHER

Q    Let me ask you about that.

With respect to policies, is there a particular policy with respect to the use of force as to someone who is restrained, that is to say handcuffed or otherwise incapacitated?

A    "Incapacitated"?

Q    When I say "incapacitated," meaning they are unable to move.  They've been handcuffed or chained.

A    I'm not sure I understand your question because being handcuffed does not mean you're incapacitated.

Q    That's right.  They're two different things. So let's just talk about handcuffing.

A    Okay.

Q    Any policy with respect to -- to the use of force on persons who are handcuffed?

A    A specific policy?  No.

Q    Yes.

Any training that you know on the use of force on people who are handcuffed?

A    When it comes to training, yes.

Q    Tell me what training was -- and let me focus on a particular time period, if I could.

Let me talk about five years before December of 2022, that period of time.  If I could focus on that.

Q    And at the college?

A    Yes.

Q    What have you taught there?  The same?

A    The same thing, yes.

Q    And the students that you teach at the college, are they persons who are interested in a police career as a general matter?

A    Most of them are either in the process or are security guards, firefighters.  They -- they take a class that's required per -- per their agency.

Q    Correct.

Now, let -- let me go back to the training on handcuffing.

Could you tell me, in the academy, is there basic training on what is the appropriate manner in which to handcuff a person?

A    Yes.  The basic training of how to apply handcuffs.

Q    Could you briefly describe to me what steps there are in properly handcuffing someone who is going to be placed under arrest?

A    So we -- we talk about a variety of things. We talk about, first, compliant handcuffing, uh, where that person shows no signs of resistance.  Uh, we show how to properly place the handcuffs.  We usually show

LT. ASHLEY LEWIS - 30(B)(6)                                JOB NO. 2196046
DECEMBER 15, 2025

them on what part of the wrist.  We show, uh, the best way to apply those handcuffs, uh, depending on the situation and the circumstances.  So we go from compliant handcuffing to handcuffing someone who is, perhaps, resisting.  And then we also go over handcuffing as it pertains to that person standing, sitting down, um, prone on the ground, maybe lying on their stomach, sideways, just different ways to handcuff.

Q    In that regard, is there any training given on how to avoid making the handcuffs so tight that they may cause nerve damage or cut off circulation?

A    We go over the proper placement of the handcuffs and adjusting them correctly, yes.

Q    Tell me what that involves.

What specifically do you recall being taught when you were in the academy?

A    The same thing I teach today, which is if -- you take the handcuffs, you listen to the clicks that the handcuff makes.  One of the easiest ways to check for tightness is to see if when you move the handcuffs -- usually -- what was taught to me and what I teach is if the skin of that person is, like, being -- shaven with the handcuffs, it's usually too tight, and they may need to be adjusted.

talking about.  That training specifically for those years, if I remember correctly, were on escorting someone.  I believe it was also on -- compliant handcuffing and a different way to handcuff someone who is compliant, and also handcuffing, I believe, after -- after a take down, if -- if I remember correctly.

Q   And may I ask, was there any written document associated with that training that you shared with me?

A   Yes.  So anything that is -- is trained by the training division for CPT, there is a -- they would call it a training guideline.  It -- it has to be approved by POST for us to -- to teach it.

Q   So it would be submitted to POST for their review then returned and given the -- and (indiscernible) that you will be permitted to?

A   Correct.

Q   Now, understanding that some time has passed, could you tell me what that training of employed deputies was concerning escorting handcuffed people during that time?

A   So -- so it wasn't escorting handcuffed people.  It was escorting someone who was unhandcuffed.

Q   I see.

Was there any training on how to guide or escort persons who were cuffed?

A    Not that I recall.

Q    All right.  Such as, for instance, is there a typical training at any point on how the deputy can escort a cuffed person to ensure that the person doesn't run away but also that the person does not fall or trip because they're unable to swing their arms or otherwise balance themselves?

MR. HANNA:  Let me just object, compound.

MR. IREDALE:  Compound?

MR. HANNA:  Yeah.

MR. IREDALE:  I think that's a good objection. Let me rephrase.

MR. HANNA:  Yeah.

BY MR. IREDALE:

Q    Any thing -- any training on how to escort someone who has already been handcuffed to keep them from falling?

A    In the academy, yes.

Q    Tell me what that is.

A    So we go over -- after the person is handcuffed, ensuring that you control that person the entire time, unless, of course, they're in the patrol car, um, we speak about, um, what to do if the person attempts to run or turn to face you, perhaps to fight. And we teach different techniques to go over those

LT. ASHLEY LEWIS - 30(B)(6)                                                    JOB NO. 2196046
DECEMBER 15, 2025

different situations.

Q    Good.  Let me talk about that.

Now, is this something you yourself have taught?

A    Yes.

Q    Let's say that there is a handcuffed person -- well, could you tell me what you teach about -- you said "I think keeping control of the person," or words to that effect?

A    Yes.

Q    How is the person who is handcuffed to be kept control of?  What do you teach?

A    We teach that they should always have at least one hand on that person in some form or fashion.  So if they're walking with them, you know, you can hold them by the bicep, the forearm, but you have to have actual hands-on control of that person.  You should not just allow them to walk through because they're handcuffed.

Q    Anything concerning taking care so that the person in their handcuffed state does not stumble or trip?

A    I think I understand your question.

Specifically when it comes to falling or tripping?

Q    Yes.  Let -- let me -- let me -- let me focus.

Sometimes when somebody is handcuffed, the officer would need to convey that person from one place to another while the person is handcuffed, fair?

A    Fair.

Q    And is there anything that's taught as to how that should be done in a manner, not only that's safe for the officer but safe for the person who has their hands behind them and maybe walking on an uneven surface?

A    I don't -- I don't believe it's -- and -- and maybe it's just the way you're describing it.  It's not -- it's not taught in the way that you're describing it.

Q    Now, you said you also were involved in teaching what to do if somebody who is handcuff tries to escape?

A    Yes.

Q    What do you teach?

A    So we teach that if the person is trying to run from you, if you can, depending on the circumstances and where you're at, uh, and also depending on the totality of the circumstances -- so if there's one deputy versus two deputies, if the person's larger than you, taller than you, there are many factors to consider.  But ultimately, if there is a wall or a

LT. ASHLEY LEWIS - 30(B)(6)                                          JOB NO. 2196046
DECEMBER 15, 2025

patrol car, to try to use that wall or patrol car to press their body against to try to reestablish some control.

Q    And any particular techniques that you teach other than use the wall or patrol car and some weight to try to reestablish control?

A    That's the first step.

Q    What's the next?

A    The next step would be to just try to hold on to that person.  You may go from one hand to two hands at that point.  And, again, depending on the circumstances, if you're allowed to try to get additional assistance to control that person.

Q    Any specific cautions that you're familiar within the teaching by the SDSO to the deputies?  If the person is handcuffed, don't use excessive force on them, they're not really in a position to defend themselves?

A    I'm not sure what you're asking.

Q    Yes.

Are any of the deputies ever cautioned, "Don't beat a person who is cuffed or otherwise restrained"?

A    I wouldn't characterize it that way.  I -- I think we're -- we teach what may or may not happen if someone is handcuffed and the considerations that you need to take.

A    Is that page 4?

Q    I believe it is, yes.  That's the graphic form.

And then if you want to see it broken down into categories, it has the same data on the following page.

A    Yes.  So this is total arrests versus total -- versus arrests with the use of force.

That's what you're referring to?

Q    No.  Total uses of force.

MR. HANNA:  I believe he's referring to total use of force by the sheriff's department for 2020.

THE WITNESS:  Yeah.  4,852 for 2020.

BY MR. IREDALE:

Q    And referring to the internal affairs' statistical report for the same period, could you tell me how many IA investigations of the use of force took place in 2020?  Let me refer you, if I could, to page 6 of that document, which is Exhibit --

A    I'm sorry.  I need to correct that.  I was looking at the wrong number.

Q    That's all right.

A    For 2020, there was 3,454.

Q    Reportable uses of force?

A    Yes, sir.

Q    Now, of those 3,454 reportable uses of force, could you tell me, based on your review of Exhibit 9, the total number of use of force internal affairs investigations that took place in 2020?

A    In 2020, there were six.

Q    And now, let me ask you for 2021.

If you could tell me the total number of uses of force which the department reported in its statistics for 2021.

A    3,420.

Q    And based on Exhibit 9, could you tell me, in that same year, how many of those uses of force were subjected to an internal affairs investigation?

A    Ten.

Q    Thank you so much.

MR. HANNA:  We'll actually -- can we give those to the court reporter?

BY MR. IREDALE:

Q    Now, I need to go to one of the subjects that is set forth in Exhibit 1 --

A    Okay.

Q    -- a list of things upon which you've been designated as a witness.

A    Okay.

Q    Any trends, patterns, or analyses of the use

right now.

Q    And my question now to you is this -- don't take it amiss, but I need to ask -- did you speak to anybody in internal affairs to see if you could obtain a further breakdown of the excessive force investigations?

A    No.

Q    Did you reach out to see if there was any internal documentation that made a separate analysis of the types of excessive force that were involved in internal affairs investigation for the same period?

MR. HANNA:  I'm just going to object to the extent it calls for attorney-client privilege.

But other than what we discussed.

THE WITNESS:  No.

BY MR. IREDALE:

Q    All right.  Then you were also, uh, asked to testify about any review investigation into the use of force by Deputy Nicolai Ramos on Plaintiff Jamel Burt on December 18, 2022, related to the issue in this complaint, including findings made, discipline issues were corrected, or other action taken.

Let me stop right there.

Was there any internal affairs investigation of the conduct of Deputy Ramos for the events that took place on that date?

A    Not that I'm aware of, no.

Q    So are you able to speak to that subject at all?

A    Yes.

Q    All right.  Then tell me what you did to learn about that subject.

A    As it pertains to the discip- -- in the investigation?

Q    Yes.

A    Uh, as far as I can see is -- is he wrote a use of force report that's required, and that it went through the, uh, chain of command as it does with every use of force.

Q    And no further inquiry by internal affairs was undertaken?

A    Not that I saw, no.

Q    Let me ask this.

Is there any department policy of which you were aware regarding, uh, whether internal affairs will conduct an investigation based on the filing of a lawsuit alleging excessive force?

A    Repeat the question again.

Q    Sure.  Let me do this.  I'm going to have it read back to you.

A    Okay.

STATE OF CALIFORNIA    )
                       :   ss.
COUNTY OF SAN DIEGO    )

         I, Lorena Barron, a Certified Shorthand Reporter

of the State of California, do hereby;

         That the foregoing proceedings were taken

before me at the time and place herein set forth; that

any witness in the foregoing proceedings, prior to

testifying, were administered an oath, that a record

of the proceedings was made by me using machine

shorthand which was thereafter transcribed under my

direction; that the foregoing transcript is a true

record of the testimony given.

         Further, that if the foregoing pertains to

the original transcript of the deposition in a Federal

case, before completion of the proceedings, review of

the transcript [X] was or [ ] was not requested.

         I further certify I am neither financially

interested in the action nor a relative or employee of

any attorney or any party to this action.


         In witness whereof, I have hereunto set my

hand this 9th day of January, 2026.


                    _Lorena Barron_____
                    LORENA BARRON
                    CSR No. 12058

Exhibit O

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

Exhibit R

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

Exhibit S

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,                          )Case No. 24-CV-0662-
                                     )CAB-VET
        Plaintiff,                   )
                                     )
    v.                               )
                                     )
NICOLAI RAMOS, in his individual     )
capacity; COUNTY OF SAN DIEGO;       )
MICHAEL ALCARION, in his             )
individual capacity; and DOES 1-5,   )
                                     )
        Defendants.                  )
_____)

VIDEOTAPED DEPOSITION OF LT. LON NGUYEN - 30(b)(6)

December 19, 2025

10:31 a.m.

**CONTAINS CONFIDENTIAL EXHIBITS**

REPORTED BY:  SOLOMON RODGERS JR CSR No. 14948

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMEL BURT,                          )Case No. 24-CV-0662-
                                     )CAB-VET
        Plaintiff,                   )
                                     )
    v.                               )
                                     )
NICOLAI RAMOS, in his individual     )
capacity; COUNTY OF SAN DIEGO;       )
MICHAEL ALCARION, in his             )
individual capacity; and DOES 1-5,   )
                                     )
        Defendants.                  )
_____)

Videotaped deposition of LIEUTENANT LON NGUYEN,

taken on behalf of Plaintiff, commencing at 10:31 a.m.,

Thursday, September 25, 2025, before SOLOMON RODGERS JR,

CSR No. 14948.

APPEARANCES OF COUNSEL:

For Plaintiff:

        LAW OFFICE OF PETER BIBRING
        BY:   PETER BIBRING
        ATTORNEY AT LAW
        2210 W SUNSET BLVD #203
        LOS ANGELES, CALIFORNIA 90026
        213.471.2022
        PETER@BIBRINGLAW.COM


For Defendants:

        SAN DIEGO COUNTY ATTORNEY'S OFFICE
        BY:   TIMOTHY HANNA
        ATTORNEY AT LAW
        1600 PACIFIC HWY, RM 355
        SAN DIEGO, CALIFORNIA 92101
        619.531.4860
        TIMOTHY.HANNA@SDCOUNTY.CA.GOV


Also Present:

Benjamin Ziccardi - Videographer

A    I don't think there's anything specific. If I recall, when I became a supervisor, I just took a generic supervisor's course.  So I mean, there were two aspects.  It was like, a post-supervisor's course and it was the department supervisor's course.

Q    So just to make sure I'm clear, as far as you're aware, there's no specific policy, training, or guidelines on what a sergeant's review of a use of force should entail, correct?

A    I don't -- there is guidance on the Division of Inspectional Services' website; and, I think, it's actually the back part of the SO-120 form.  And it goes through, you know, specific -- like how to fill out that -- that form.  So, you know, that can be a reference for supervisors to ensure that they are ensuring that that form is filled out accurately.

Q    So there is guidance on how to fill out this supplemental form.

Is that guidance specific to sergeants, or is that for deputies filling it out?

A    That's anyone filling it out.  That's anyone filling out the form.

Q    So as far as you're aware, there's no

specific policy, guidelines, or training on what a sergeant's review of a use of force should entail, correct?

MR. HANNA:  Objection.  Misstates testimony.

You can answer.

THE WITNESS:  I don't -- I don't recall any specific training that I can -- I don't recall any training.

BY MR. BIBRING:

Q    Any policies or guidelines?

A    Well, I mean, supervisors are required to -- I believe that that is a part of a sergeant's, you know, required duties.  They're required to approve reports.  They are required to give these items the detail and the attention that they deserve.

MR. BIBRING:  Can you read back, I think not my last question, but the one immediately before?

(The Court Reporter read back the question requested.)

BY MR. BIBRING:

Q    Is that correct?

A    I don't recall.  To the best of my

recollection, I don't recall any specific training, per se, on supervisors' use of force review.

Q    Okay.  Are there any specific policies or guidelines on supervisors' use of force review so far as you're aware?

A    I don't recall.

Q    You mentioned earlier that there are some exceptions for this review process where there maybe a different -- you gave an example of officer-involved shootings where homicide conducts an investigation, and situations where an officer is injured where they may not be required to make a report.

Are there any other exceptions to this use of force reporting requirement that you're aware of?

A    Those are the only ones that I recall at this time.

Q    When a sergeant conducts this review of a use of force, is that review documented in any way?

A    So it -- when they sign the report, sign off electrically on the report, you know, that would signify that, you know, extensively, that they have signed off on it and they have done a review.  I think on our program, on our report

the investigation, correct?

A    Generally, yes.

Q    Is there somebody else who might?

A    Yes.  So if the allegation involves a lieutenant or higher, we could bring -- that may require us to bring in an investigator that's -- there still would be an internal affairs sergeant, but it may require us to include somebody at the captain level.

Q    Are there any other circumstances, other than a subject at the rank of lieutenant or higher, that would be investigated by somebody other than an internal affairs sergeant if it's an internal affairs investigation?

A    I don't believe so.

Q    And what does the investigation entail?

A    So the internal affairs investigation, it entails, you know, you're reviewing all crime reports, all officer reports; reviewing, you know, any types of CAD logs, or documents that can be, you know, dispatch log, it could be sergeant's log, it could be various records.  You know, they could request emails, they could request phone, they could request CCTV, a number of those items.  It includes identifying, you know, witnesses,

interviewing them, you know, possibly interviewing, you know, subject matter experts; things like that. And it includes peer review by other IA sergeants, and then review by the unit lieutenant; things like that.

Q    Okay.  And you said, "subject interviews," yes?

A    Correct.

Q    Okay.  And those would be conducted by the IA sergeants?

A    Correct.

Q    And the assigned IA sergeant, they also memorialize their investigation and, kind of, summarize the evidence that they have collected in an investigative report?

A    Yes.

Q    And they make -- do they make recommended findings?

A    They make findings, but they don't make recommendations in terms of discipline or anything like that.

Q    So they will make a finding on whether something was -- a deputy conduct was within the law and policy or not?

A    Correct.

Q    Have you ever done that?  Have you ever sent something back for additional investigation?

A    I have not.

Q    So the report that they submit, is that how the findings on whether something is in or out of policy are memorialized?

A    In the report?

Q    Yeah.

A    Yes.  There is a page that says -- it reviews the allegations and then it articulates the findings based on each of those policies.

Q    And then you review the report and see if you agree with those findings?

A    I don't.  So I don't question their -- so I don't dictate or question their findings.  If I believe that -- if I were to believe that their articulation does not support their finding, or I don't believe that it would support their finding, then I would recommend "Hey, like, you should probably beef this up a little bit."  But I'm not going to tell them to change their findings.

Q    Okay.  Does anyone review the report after you review it?

A    Yes.

Q    Who?

A     So it will go to the accused deputy or officer.  It will go to their person in their command, and it is usually their second-level supervisor.  And the second-level supervisor will review the investigation for the purposes of imposing discipline.  If there's a sustained finding, for purposes of imposing discipline.

Q     By "second-level supervisor," you mean two ranks up?

A     Yes.  So if it's a deputy, it would be a lieutenant.

Q     So -- okay.  The lieutenant over the deputy makes the decision in the first instance about discipline based on any sustained findings, correct?

A     Correct.

Q     If the lieutenant doesn't agree with the findings in some way, what happens?

A     So if the lieutenant -- excuse me.  If the lieutenant doesn't agree with the findings, then, you know, that is a part of the discipline process.  They are assigned as the recommendation and rationale officer.  We call it the "R&R officer."  So they will review, like you said, the report, and if they object, or they say, like --

LT. LON NGUYEN - 30(B)(6)                                    JOB NO. 2262444
DECEMBER 19, 2025

let's say they were sustained for, like, three things, and the lieutenant is like, "I don't agree with two of these things."  So the lieutenant in their recommendation and rationale can overturn findings by the investigating sergeant.  They just have to write in their representation and rationale why they, like, why they are overturning these things, and their reason, and provide articulation as to why.

Q    Does anyone review their -- sorry.  What you -- you used a term for that document.  What was it?  The "rationale and reasons"?

A    Recommendation and rationale.

Q    Recommendation and rationale.  And is that the name of the document that they produce?

A    Yes.

Q    Okay.  Does anyone review the lieutenant's recommendation and rationale?

A    Yes.

Q    Who?

A    It's usually the captain.  And then if -- if it is discipline -- I believe if it's formal discipline.  So a written reprimand or higher, I believe, that will be reviewed all the way up to the sheriff.

Q   The sheriff reviews every written reprimand?

A   Formal discipline.  So all formal discipline.

Q   Is that --

A   Including the sheriff will review.

Q   Including written reprimands?

A   I believe so.  I believe that is the case.

Q   Now if -- from what you said a moment ago, it sounds like if the lieutenant thinks one of the allegations that -- for example, is sustained should not have been sustained, they can effectively overrule that finding as long as they justify that in their recommendation and rationale; is that correct?

A   Yes.

Q   Can they go the other way; and if there's a finding that is not sustained, can they overrule that and say, "I'm going to sustain this finding and issue discipline"?

A   Yes.

Q   The -- you said that all of these disciplines are reviewed all the way up to the sheriff.  At any point up the chain, can the

LT. LON NGUYEN - 30(B)(6)                                    JOB NO. 2262444
DECEMBER 19, 2025

reviewer overrule the findings?

A    Yes.  Both ways, like you said.

Q    Okay.  Do reviewers have their own recommendation and rationale documents where they memorialize their decision?

A    So if someone at any level does decide to change it, they should be producing a document that explains their reasoning why.  I don't recall the name of the document, but it's, generally, they just submit it and they just stack it on top and it continues to go up the chain.

Q    Is that -- are those documents all part of the investigative file?

A    It's all a part of the discipline file.

Q    The discipline file?

A    The discipline file.

Q    Okay.  Where does -- where in the process does the discipline file start?  And where does the -- because all the subject interviews, and body worn camera, and all that, that's all part of the investigative file, correct?

A    Um-hmm.

Q    And the findings on whether things are a policy violation by the IA sergeant, that's part of the investigative file, correct?

LT. LON NGUYEN - 30(B)(6)                                          JOB NO. 2262444
DECEMBER 19, 2025

A    I believe they can, yes.

Q    Is there a review process after the Skelly hearing?

A    It would be, maybe, civil service.

Q    By which you mean, an appeal to the civil service commission by a member?

A    Yes.

Q    The review process that you described a few minutes ago for formal discipline that goes all the way up to the sheriff, where does that happen in relation to the Skelly hearing?  Or perhaps, I should say, when does that happen in relation to the Skelly hearing?  Is it before or after?

A    The Skelly happens -- so the sheriff is the final authority.  So the sheriff would decide on, you know, the final discipline after -- after the Skelly happened, because the sheriff would be presented, you know, the findings from the Skelly officer.  And the sheriff would be the final authority on discipline.

Q    So the fist time the sheriff looks at discipline is after the Skelly hearing; is that correct?

A    Well, if there's no Skelly hearing, then the sheriff would obviously review it.

LT. LON NGUYEN - 30(B)(6)                                              JOB NO. 2262444
DECEMBER 19, 2025

Q    Okay.  So the sheriff --

A    If they waive Skelly.

Q    Right.  So -- okay.  If they don't -- if the officer doesn't appeal the imposition of discipline, the sheriff still reviews it; it still goes up the chain all the way to the sheriff for any formal discipline, correct?

A    Correct.

Q    But if they do seek a Skelly hearing, the sheriff does not review it until after that Skelly hearing is complete?

A    Correct.

Q    Okay.  What documentation is created from the Skelly hearing?

A    So there is a -- so, I guess you could say it's similar to an R&R, but it's basically a report from the Skelly officer that -- and they prepare a report, you know, on this date at this time, I met with the accused and their representative, and then I had the opportunity to review these -- before the hearing, I reviewed all these documents.  So they do prepare a report.

Q    And when you say, "R&R," you mean the recommendation and reasoning that you referred to earlier?

I, SOLOMON RODGERS JR, CSR No. 14948, do hereby declare:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure and the deposition is a true record of the testimony given by the witness.

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to text under my direction.

__X___    That the witness was requested to review the transcript and make any changes to the transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

_____    Signature is Waived

_____    The changes made by the witness are appended to the transcript.

_____    No request was made that the transcript be reviewed pursuant to Section 30(e)of the Federal Rules of Civil Procedure.

I further declare that I have no interest in the event or the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Witness my hand this 6th day of January, 2026.

_____
SOLOMON RODGERS JR, CSR #14948

Exhibit T

DAVID J. SMITH, Acting County Counsel (SBN 185643)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
    CHRISTOPHER M. BLAYLOCK, Senior Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone:  (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendant County of San Diego, Michael Alcarion and Nicolai Ramos

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMEL BURT, | No. 24-cv-00662-CAB-VET |
| Plaintiff, | **DEFENDANT COUNTY OF SAN DIEGO'S *THIRD SUPPLEMENTAL* RESPONSES TO PLAINTIFF JAMEL BURT'S SPECIAL INTERROGATORIES, [SET ONE]** |
| v. | |
| NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5, | Hon. Cathy A. Bencivengo Courtroom 15A |
| Defendants. | |

PROPOUNDING PARTY:    PLAINTIFF JAMEL BURT

RESPONDING PARTY:    DEFENDANT COUNTY OF SAN DIEGO

SET NO.:    ONE (1)

**PRELIMINARY STATEMENT**

Defendant County of San Diego ("Responding Party") anticipates that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions. Responding Party reserves the right to rely on such additional discovery, investigation, legal research and analysis to make such additions,

- 1 -

No. 24-cv-00662-CAB-VET

changes, and variations to these responses as warranted thereby. These responses are made in a good faith effort to supply as much information and specification as is presently known, but shall not prejudice Responding Party in relation to further discovery, research, or analysis.

Each response herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of or statements contained herein were made by a witness testifying at trial, all such objections being expressly reserved.

No incidental or implied admissions are intended by the responses made herein. The fact that Responding Party has answered or objected to any request is not an admission of the existence of any facts set forth or assumed by such request.

## GENERAL OBJECTIONS

A. Responding Party objects to all requests that attempt to require Responding Party to provide information not within its possession, custody, or control, or not within the possession, custody, or control of any of its representatives, employees, agents, or attorneys.

B. The absence of an objection that a request is irrelevant is not intended to be a waiver of that objection and Responding Party reserves the right to object on relevancy grounds at any stage of these proceedings.

C. Where Responding Party objects to a request, a subsequent response to the request shall not constitute a waiver of the objection. Furthermore, the failure to restate a general objection in response to a specific request does not waive the general objection.

D. Responding Party has responded to the requests to the extent of its current knowledge and available information. However, Responding Party's discovery and investigation in preparation for trial of this matter has not been completed as of the date of these responses, and therefore Responding Party does not purport to state anything more than the information presently known to or discovered by it. Responding Party specifically ///

- 2 -

No. 24-cv-00662-CAB-VET

reserves the right to supplement, modify, or amend its responses or to present additional information at a later date.

E.    Due to the fact that there are thousands of County-affiliated employees and officers, and dozens of County-affiliated departments and agencies, and some or all of their information or records may be privileged and confidential by law, each of the following responses is (except if otherwise specifically stated) limited to non-privileged, non-confidential matter known or reasonably available to the individual responding parties, and to non-privileged, non-confidential matter contained in any relevant records of Responding Party. Unless privileged and confidential matter has been expressly called for in the discovery requests, these responses assume that no such matter is being sought.  Failure in these responses to invoke privilege and confidentiality with specificity in response to general discovery requests is not intended as waiver of any applicable privilege or confidentiality.

Referring and expressly incorporating each of these general objections, Responding Party responds as follows:

## RESPONSE TO INTERROGATORIES

**SPECIAL INTERROGATORY NO. 10:**

For the period from January 1, 2020, to December 31, 2022, state the number of complaints alleging excessive force by DEPUTIES:

(a) received by the SHERIFF'S DEPARTMENT.

(b) that involved a use of force, or alleged use of force, on a subject who was handcuffed or otherwise restrained;

(c) for which the SHERIFF'S DEPARTMENT opened an investigation.

(d) in which the SHERIFF'S DEPARTMENT found that a DEPUTY used improper or excessive force.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Objection. Responding Party objects that the request is overbroad and not proportional to the needs of the case in light of the factors set forth in Federal Rules of

- 3 -

No. 24-cv-00662-CAB-VET

Civil Procedure, rule 26(b)(1). Specifically, Responding Party objects to the extent this request calls for information relevant to Plaintiff's *Monell* and supervisory liability claims which are not yet at issue. Responding Party further objects to the extent this requested discovery is not important to resolving the issues presently in contention. Further, Responding Party objects to the extent the burden and expense of obtaining these records vastly outweighs its likely benefit considering the time and resources it would take to obtain the requested information.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Objection. Responding Party objects that the request is overbroad and not proportional to the needs of the case in light of the factors set forth in Federal Rules of Civil Procedure, rule 26(b)(1). Further, Responding Party objects to the extent the burden and expense of obtaining these records vastly outweighs its likely benefit considering the time and resources it would take to obtain the requested information.

Subject to and without waiving these objections, Responding Party responds as follows: The answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Responding Party exercises its option to specify the records that must be reviewed.

Responding Party directs Propounding Party to those records produced concurrently with its response to Plaintiff's Request for Production, Set Three and identified as Bates Nos.:

- CSD 004085-004094;
- CSD 004106-004125; and
- CSD 004136-4157.

///

///

///

No. 24-cv-00662-CAB-VET

**SECOND SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Objection. Responding Party objects that the request is overbroad and not proportional to the needs of the case in light of the factors set forth in Federal Rules of Civil Procedure, rule 26(b)(1). Further, Responding Party objects to the extent the burden and expense of obtaining these records vastly outweighs its likely benefit considering the time and resources it would take to obtain the requested information.

Subject to and without waiving these objections, Responding Party responds as follows: The answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Responding Party exercises its option to specify the records that must be reviewed.

Responding Party directs Propounding Party to those records produced with its response to Plaintiff's Request for Production, Set Three and identified as Bates Nos.:

- CSD003563-003719; 003746-003780; 003797-004008; 004021-004067;004085-004094; 004106-004125; 004136-4157; 004172-005520; 005521-005525: 1/1/2020-12/31/22 Use of Force Claims

Responding Party further responds as follows:

(a) 38;

(b) 9;

(c) 8; and

(d) 3.

DATED: January 15, 2026                    DAVID J. SMITH, Acting County Counsel

By: ___/s/ Timothy A. Hanna_____
TIMOTHY A. HANNA, Senior Deputy
CHRISTOPHER M. BLAYLOCK, Senior Deputy
Attorneys for Defendant County of San Diego,
Michael Alcarion and Nicolai Ramos

- 5 -

**VERIFICATION TO FOLLOW**

Exhibit U

REDACTED

REDACTED

# Exhibit V

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKAIL MYLES, an individual, | Case No. 3:15-cv-01985-JAH-BLM |
| Plaintiff, | **JUDGMENT** |
| v. | |
| COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual, | |
| Defendants. | |

**Decision by Jury**. This action came to trial or hearing by a jury duly selected and empaneled before this Court. The issues have been tried and heard and a unanimous verdict having been rendered by said jury on October 11, 2022,

**IT IS HEREBY ORDERED AND ADJUDGED**:

Judgment is entered in favor of Plaintiff as follows:

## Section I

## Excessive Force

A.    Do you find by a preponderance of the evidence that Deputy Banks' use of the police canine on Mr. Myles was in violation of the Fourth Amendment and a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes:  X      No:_____

1                                                          Case No. 3:15-cv-01985-JAH-BLM

B. Do you find by a preponderance of the evidence that Deputy Banks' use of physical force on Mr. Myles was in violation of the Fourth Amendment and a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes: X    No:_____

C. Do you find by a preponderance of the evidence that Deputy Banks' actions resulted in the false imprisonment of Mr. Myles in violation of the Fourth Amendment and a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes: X    No:_____

## Section II

### Liability of the County of San Diego

D. Do you find by a preponderance of the evidence that Plaintiff Myles proved his 1983 Claim against the County of San Diego that an unlawful official policy, practice or custom was a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes: X    No:_____

E. Do you find by a preponderance of the evidence that Plaintiff Myles proved his 1983 Claim against the County of San Diego that a failure to train was a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes: X    No:_____

F. Do you find by a preponderance of the evidence that Plaintiff Myles proved his 1983 Claim against the County of San Diego based on ratification and was a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes: X    No:_____

**Section III**

**Interference with Civil Rights (Bane Act)**

Do you find by a preponderance of the evidence that Deputy Banks was in Violation of California Civil Code 52.1 and caused Plaintiff's injury as defined in the Court's Instructions?

Yes: X     No:_____

**Section IV**

**Negligence**

G.     Do you find by a preponderance of the evidence that Deputy Banks was negligent with regard to Mr. Myles?

Yes: X     No:_____

H.     Do you find by a preponderance of the evidence that the County of San Diego was negligent with regard to Deputy Banks?

Yes: X     No:_____

I.     Do you find by a preponderance of the evidence that the negligence of Deputy Banks and/or the County of San Diego was a cause of Plaintiff's injuries as defined in the Court's Instructions?

Yes: X     No:_____

J.     Do you find by a preponderance of the evidence that Mr. Myles was negligent?

Yes:____     No:  X

K.     Was Mr. Myles was negligent in causing his injury?

Yes:____     No:  X

Damages

        Past non-economic loss:        $  800,000.00

        Future non-economic loss:      $4,200,000.00

DATED:  October 11, 2022

_____
THE HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

Case No. 3:15-cv-01985-JAH-BLM

# Exhibit W

EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
GRACE JUN: SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221
Attorneys for Plaintiff Miguel Villa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MIGUEL VILLA,

      Plaintiff,

v.

COUNTY OF SAN DIEGO, RUDY
PERAZA in his individual capacity,
and DOES 1-100

      Defendants.

CASE NO.   **'20CV0537 CAB NLS**

**COMPLAINT**

**(1)  Excessive Force (42 U.S.C. §1983)**
**(2)  *Monell* (42 U.S.C. §1983)**
**(3)  Assault**
**(4)  Battery**
**(5)  Negligence**
**(6)  Intentional Infliction of Emotional Distress**
**(7)  Violation of Cal. Civ. Code §52.1 (Bane Act)**

**JURY TRIAL DEMANDED**

COMES NOW, MIGUEL VILLA, by his attorneys of record, to allege and complain as follows:

## I.   INTRODUCTION

On March 14, 2019, Miguel Villa was brought into the Central Jail for booking. Defendant Rudy Peraza punched and beat Mr. Villa while Mr. Villa was in restraints. Peraza bent Mr. Villa's fingers. Mr. Villa had posed no threat to anyone when Peraza attacked him. Peraza had earlier attacked another inmate who was also in restraints by pulling the inmate by this chain and tasering him.

## II.   JURISDICTION AND PARTIES

1.      Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343(3) and (4), *et. seq.*

2.      Venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiffs' claims occurred in San Diego, California, within the Southern District.

3.      At all times relevant to this complaint, decedent Miguel Villa was an individual residing in San Diego County, California.

4.      Plaintiff has properly complied with the California Tort Claims Act. Plaintiffs' claims were submitted on September 4, 2019. The County of San Diego acknowledged receipt of Mr. Villa's claim on September 13, 2019, but failed to issue a subsequent letter.  The claim is deemed to be denied by operation of law.

5.      Defendant County of San Diego is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County of San Diego operates and manages the San Diego Central Jail, and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the Central Jail, and its respective employees and/or agents.

6.      Plaintiffs are truly ignorant of the true names and capacities of Does 1 through 100, inclusive, and/or is truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

7.      These defendants were agents, servants and employees of each other of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants and each of the defendants had approved or ratified the actions

- 2

of the other defendants thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

### III. FACTS

8. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

9. On March 14, 2019, Miguel Villa was brought into the Central Jail for booking.

10. Defendant Rudy Peraza was a Sheriff's deputy working at the Jail.

11. Peraza punched and beat Mr. Villa while Mr. Villa was in restraints.

12. Peraza bent Mr. Villa's fingers.

13. Mr. Villa had posed no threat to anyone when Peraza attacked him.

14. Mr. Villa was unarmed and helpless.

15. No other deputy intervened to help when Peraza attacked him.

16. Prior to this attack on Mr. Villa, Defendant Rudy Peraza had attacked another inmate without any justification.

17. In December of 2018, Peraza attacked an inmate named Anthony Bolden. Peraza tasered Mr. Bolden and attempted to pull Mr. Bolden by his metal waist chain through a tray slot. At the time of this attack, Mr. Bolden was in chains, in his cell, presenting no threat to Peraza or anyone else.

18. Defendant County was aware of the following cases where deputies were alleged to have used excessive force, but took no action:

a. In *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), where deputies were summoned for a welfare check and used excessive force on a man.

b. In *Kendrick v. County of San Diego*, 2018 WL 1316618, case no. 15-cv-2615-GPC (AGS), deputies shot and killed a suicidal man.

c. In *Maxwell v. County of San Diego*, 708 F.3d 1075 (2013), a Sheriff's

- 3

deputy shot his wife in the jaw with his service pistol and responding deputies prevented the ambulance holding the wife from leaving, which delayed her medical care and led to her death.

d. In *S.B. v. County of San Diego*, 864 F.3d 1010, 1014 (2017), the Ninth Circuit held a jury could conclude that deputies' used unreasonable force when they shot and killed a mentally ill man.

e. In *Mendoza v. County of San Diego*, No. 17CV1349 W (NLS), 2018 WL 1185230, at *1 (S.D. Cal. Mar. 7, 2018), a deputy drove his patrol car into plaintiff, throwing plaintiff in the air.

f. In *Estate of Tommy Tucker v. County of San Diego*, 11-CV-0356-JLS-WVG (S.D. Cal. 2011), decedent Tommy Tucker was a mentally ill inmate in the San Diego Central Jail who was given conflicting commands by deputies during lockdown. After Tommy complied with one deputy's command, three deputies sprayed Tommy with OC spray; one applied a carotid hold on Tommy from behind; five deputies rushed at Tommy, "swarming" him; and then all deputies piled on top of him to apply mechanical restraints. One deputy applied a "spit sock" over Tommy's head, which was wet from the OC spray, as he lay face down in a prone position. Tommy Tucker suffered anoxic encephalopathy (brain death) due to prolonged hypoxia and cardiac arrest.

g. In *A.B. v. County of San Diego*, case no. 18-CV-01541-MMA-LL (S.D. Cal. 2018), on October 14, 2017, Sheriff's deputies approached Kristopher Birtcher, a mentally impaired man. Deputies repeatedly Tased Mr. Birtcher; struck and beat him; forced him to lay prone on the ground, face down, in restraints as multiples deputies pressed down on him; used a spit sock to cover his face; and ultimately killed Mr. Birtcher.

h. In *Washington v. County of San Diego*, 02-CV-0143-LAB-JMA (S.D. Cal. 2002), Marshawn Washington, an inmate by George Bailey, was killed by

- 4

deputies.  Mr. Washington had complained regarding a deputy's conduct. Deputies placed a spit sock over Mr. Washington's head; attempted to force him in a "Pro-straint Chair"; one deputy applied a carotid restraint hold to Mr. Washington's neck; and then deputies placed Mr. Washington face down on the ground and hog-tied him.  Mr. Washington was forced on his belly with his wrists and ankles cuffed together behind his back.  He said he could not breathe.  Witnesses heard him choke and gag.  Mr. Washington eventually suffocated to death.

i.  In *Marcial Torres v. County of San Diego*, case no. 15-CV-01151-CAB-BLM (S.D. Cal. 2015), a Sheriff's deputy repeatedly tased Marcial Torres who was unarmed. After repeated Tases, Marcial Torres lay face down on the ground in handcuffs.  He stopped breathing and turned blue in the face. No deputy attempted to render any aid to Mr. Torres.  Based on the records and testimony of Vista Fire Department paramedics, Mr. Torres had been without a pulse anywhere from 12 to 20 minutes.  Because of the length of time Mr. Torres had gone without a pulse, his body had shut down.  Oxygen had stopped circulating to his brain, causing an anoxic brain injury.  While comatose in the hospital, doctors amputated Mr. Torres' legs and fingers due to sepsis.  While Mr. Torres regained consciousness, the anoxic brain injury affected his cognitive function.   The County settled with plaintiff for $3,000,000.

j.  In *Jimenez v. County of San Diego*, case no. 15-cv-02299-L-JLB, the County settled a claim of excessive force for $500,000 when a deputy beat a man while he was handcuffed.

k.  In *Pitt v. County of San Diego*, Case No. 3:16-cv-00515, the County settled a false arrest claim for $220,000 settlement for false arrest.

l.  In *Bush v. County of San Diego*, Case No. 15-cv-00686-L-JMA (S.D. Cal. 2016) the County settled this case for $225,000 after deputies shot the family

- 5

dog and plaintiffs established liability by winning a motion for summary judgment.

m. In *Johnson v. County of San Diego*, Case No. 14-cv-616-LAB (S.D. Cal. Feb. 1, 2016), a unanimous jury awarded total damages of $600,000 in an excessive force and false arrest case.

n. In *Antonio Martinez v. County of San Diego*, 37-2014-00013656-CU-CR-NC, in 2012, the County settled an excessive force case for $1,000,000 after a San Diego County Sheriff's deputy beat and wrongfully detained a man with down syndrome.

o. In *Silva v. County of San Diego*, 18-cv-02282-L-MSB, deputies beat, Tased and squeezed the life out of a mentally ill patient who had committed no crimes. Deputies killed Mr. Silva, who was experiencing a psychotic break as a result of the Jail refusing to provide Mr. Silva any medical care including any medication.

p. In *Narciso v. County of San Diego*, 20-CV-0116-L-MSB, the plaintiff who was mentally impaired had both of her arms broken by deputies. The plaintiff had committed no crimes. The sheriffs had been called to provide help for her own safety because Plaintiff was running out into traffic. At the time deputies broke her arms in November 27, 2018, Ms. Narciso was in handcuffs and presented no threat to anyone.

19. Despite the specific awareness of the deficiency of their policies, Defendant County of San Diego and its officials continued to maintain the following unconstitutional customs, practices, and policies:

a. Using excessive force, including deadly force on unarmed person who do not pose a risk of imminent death or serious bodily injury to others;

b. Providing inadequate training regarding the use of force, including deadly force;

- 6

c.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by County Sheriff's deputies, including the misconduct of the Defendant-deputy in this case;

d.  Announcing that unjustified uses of force are "within policy," even when they are later determined in court to be unconstitutional;

e.  Even where in-custody deaths are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the deputies involved;

f.  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of in-custody deaths, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in the beating of unarmed, nonviolent, compliant, and/or potentially mentally impaired people.

20.    San Diego County officials were aware of the systemic problems with preventable deaths related to the use of force by Sheriff's deputies, and other misconduct by Sheriff's employees and staff, including medical staff, but took no action to prevent further Constitutional violations.

## IV.  FIRST CAUSE OF ACTION
### Excessive Force and Failure to Intercede (42 U.S.C. §1983)
### [By Miguel Villa Against Defendants Peraza and Does]

21.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

22.    Defendants committed wrongful acts which proximately caused Miguel Villa great bodily injury.

23.    Defendant Peraza punched and beat Mr. Villa while Mr. Villa was in restraints.

24.    Peraza bent Mr. Villa's fingers.

25.    Mr. Villa had posed no threat to anyone when Peraza attacked him.

- 7

26. Mr. Villa was unarmed and helpless.

27. No other deputy intervened to help when Peraza attacked him.

28. As a direct and proximate result of the unlawful acts, and recklessness described above, Mr. Villa suffered great bodily injuries. He is entitled to general, compensatory, and punitive damages in an amount to be proven at trial.

## V. SECOND CAUSE OF ACTION
### *Monell* (42 U.S.C. §1983)
**[By Miguel Villa Against Defendant County of San Diego]**

29. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

30. At all times herein mentioned, the County, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff and others similarly situated, including the right to be free from excessive force, maintained, enforced, tolerated, ratified, permitted, acquiesced to, promulgated, and applied, among others, the following policies, practices and customs:

    a. Failing to adequately train, supervise, and control deputies in uses of force, particularly regarding handling vulnerable, impaired, and/or incapacitated individuals;

    b. Failing to set up systems to prevent abuse by deputies including the failure to properly investigate timely and, when appropriate, discipline officers' use of force;

    c. Failing to terminate or otherwise discipline deputies who abuse their authority;

    d. Failing to arrest deputies who commit crimes while on patrol and referring them for prosecution;

    e. Condoning and encouraging deputies in the belief that they can violate the rights of persons such as Plaintiff with impunity, on video recordings, knowing that their criminal and thuggish conduct will not

adversely affect their opportunities for retention, promotion, and other employment benefits; and

f.  Encouraging deputies to treat people such as Plaintiff as criminals rather than detainees.

g.  The foregoing list is illustrative and not exhaustive.

31.    The County's practice and custom of failing to properly hire, train, supervise, monitor, discipline, counsel, transfer, and control deputy sheriffs, the code of silence, and the encouragement of unreasonable detentions and wrongful arrests are interrelated and exacerbate the effects on each other to institutionalize police lying and immunize officers from discipline.

32.    Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants by municipal supervisors and policymakers further establishes that these acts were part of a widespread municipal policy, practice and custom.

33.    The County was specifically aware that in December of 2018, this Defendant, Peraza, had unreasonably and maliciously attacked Anthony Bolden. Peraza tasered Mr. Bolden and attempted to pull Mr. Bolden by his metal waist chain through a tray slot.  At the time of this attack, Mr. Bolden was in chains, in his cell, presenting no threat to Peraza or anyone else.  Despite the County's awareness of Peraza's prior use of unreasonable and excessive force against a restrained detainee, County officials took no action to supervise, counsel, discipline, or further train Defendant Peraza.

34.    The aforementioned policies, practices and customs, separately and together, proximately caused injury to Plaintiff because Defendant Peraza knew that his misconduct, even though recorded, would go unchallenged by supervisors and fellow officers. These interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendants to commit the wrongful acts

- 9

against Plaintiff and therefore acted as a moving force and were, separately and together, direct and proximate causes of the constitutional deprivation and injuries to Plaintiff.

35. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## VI. THIRD CAUSE OF ACTION
### Assault
### [By Miguel Villa against Defendant Peraza and County of San Diego]

36. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

37. Defendant Peraza assaulted Plaintiff without justification or probable cause.

38. The County is responsible for the acts of its employees and agents, including Defendant Peraza, under the theory of *respondeat superior*.

39. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## VII. FOURTH CAUSE OF ACTION
### Battery
### [By Miguel Villa against Defendant Peraza and County of San Diego]

40. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

41. Defendant Peraza battered Plaintiff without justification or probable cause.

42. The County is responsible for the acts of its employees and agents, including Defendant Peraza, under the theory of *respondeat superior*.

43. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## VIII. FIFTH CAUSE OF ACTION
### (Negligence)
### [By Miguel Villa against All Defendants]

- 10

44.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

45.    Defendants had a duty to Mr. Villa to act with ordinary care and prudence so as not to cause harm or injury to him.

46.    Defendant Peraza improperly, negligently, wrongfully, and recklessly used excessive and unreasonable force against Mr. Villa.  Doe Defendants improperly, negligently, wrongfully, and recklessly failed to intercede when Peraza attacked Mr. Villa when they had opportunity to do so.

47.    The officers should have known that Peraza's use of excessive force would cause Mr. Villa to suffer great bodily harm and emotional distress.

48.    By engaging in the acts alleged herein, Defendants failed to act with ordinary care and breached their duty of care owed to Miguel Villa.

49.    The County is responsible for the acts of their employees and agents under the theory of *respondeat superior*.

50.    Plaintiff is informed and believes that Defendants County maintained policies, practices and procedures that allowed for and encouraged the denial of care which ultimately caused the great bodily injury of Mr. Villa.  These policies, practices and procedures include without limitation Defendants' training procedures and practices with respect to supervision of the officers and policies and procedures with regard to the use of force.

51.    By engaging in the acts alleged herein, all Defendants failed to act with ordinary care and breached their duty of care owed to plaintiff.

52.    As a direct and proximate result of the Defendants' negligent conduct as herein described, Miguel Villa suffered physically and mentally in the amount to be determined at the time of trial.

53.    As a further proximate result of the Defendants' negligent conduct, Mr. Villa sustained great bodily injury.

- 11

54.    As a further proximate result of the Defendants' negligent conduct, Plaintiff has suffered great emotional and mental harm in the amount to be determined at the time of trial.

55.    The conduct of the individual Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 et seq. and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

## IX.  SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### [By Miguel Villa against All Defendants]

56.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

57.    Defendants intended to cause Miguel Villa emotional distress, and acted with reckless disregard of the probability he would suffer emotional distress.

58.    The conduct of Peraza that caused Mr. Villa's physical injuries constitutes extreme and outrageous conduct.  By engaging in these acts as alleged herein, Peraza and Does acted willfully and/or in reckless disregard of the probability of causing Mr. Villa to suffer emotional distress.

59.    The actions of Peraza in punching a helpless man in handcuffs and Does in allowing the force to occur amount to extreme and outrageous conduct that exceeds all bounds tolerated by a civilized society.

60.    The actions of these defendants were a substantial factor in causing Mr. Villa severe emotional distress.

61.    The County is responsible for the acts of its employees and agents, including Defendant Peraza, under the theory of *respondeat superior*.

62.    As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged herein.

## X.   SEVENTH CAUSE OF ACTION

### Violation of Cal. Civ. Code § 52.1
### [By Miguel Villa against All Defendants]

63.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

64.    Defendant Peraza and DOES 1-100 interfered by threats, intimidation, or coercion, with the exercise or enjoyment by Miguel Villa of rights secured by the Constitution or laws of the United States.

65.    The Fourth and Fourteenth Amendments to the U.S. Constitution, and Article I, section 13 of the California Constitution, guarantee (a) an individual's right to be free from excessive force.

66.    California Civil Code section 43 confers a right to be secure in one's bodily integrity from assault and excessive force.  By engaging in the acts alleged above, Defendants denied those rights to Plaintiff, thus giving rise to claims for damages pursuant to California Civil Code section 52.1.

67.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

68.    In conducting himself as alleged herein, Defendants were acting within the course and scope of their employment with Defendant County. Thus, the County is responsible for Defendants' actions.

69.    In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

- 13

**WHEREFORE**, Plaintiff prays as follows:

1.   For general and special damages according to proof at the time of trial;

2.   For attorneys' fees and costs of suit and interest incurred herein;

3.   For punitive damages; and

4.   Any other relief this court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rues of Civil Procedure and the Seventh Amendment to the Constitution, Plaintiff hereby demands a jury trial of this action.

Respectfully Submitted,

**IREDALE AND YOO, APC**

Dated:  March 20, 2020

s/ *Julia Yoo*
EUGENE IREDALE
JULIA YOO
GRACE JUN
Attorneys for Plaintiff
MIGUEL VILLA

- 14