EUGENE G. IREDALE: SBN 75292
PETER BIBRING: SBN 223981
SARAH MUSUMECI: SBN 328306
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221
Attorneys for Plaintiffs

JOSEPH C. CRUDO: SBN 263993
JOSEPH C. CRUDO PLC
3990 Old Town Avenue, Ste. C101
San Diego, CA 92110
Telephone: (858) 622-7280
Fax: (858) 450-9411
Email: joseph@crudoplc.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEL BURT,<br><br>Plaintiff,<br><br>v.<br><br>NICOLAI RAMOS, in his individual capacity, and the COUNTY OF SAN DIEGO,<br><br>Defendants. | CASE NO. 24-CV-0662-CAB-VET<br><br>**DECLARATION OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Hon. Cathy Ann Bencivengo<br><br>Date: July 27, 2025<br>Courtroom: 15A<br><br>**[PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS ORDERED BY COURT]** |



I, Roger Clark, being duly sworn, hereby declare:

1. I have been a police procedures consultant for twenty six (26) years. I have been certified by federal and state courts as an expert in jail and police procedures. I make the following declaration based on personal knowledge. If called to testify to the matters set forth herein, I could and would competently testify thereto based on my personal knowledge.

2. I was retained to analyze and render opinions regarding the December 18, 2022 use of force inflicted on Mr. Jamel Burt by San Diego County Sheriff's Department Deputy Nicolai Ramos. I prepared a Rule 26 report documenting my opinions. A true and correct copy of my Rule 26 Report setting out my findings, the basis for those findings, as well as my qualifications and experience is attached hereto as **Exhibit RC-A**.

3. It is necessary to state that I am not a lawyer or a public official who hears and decides cases brought in court. My opinions rest on the training to every California POST Certified Officer and the reasonable professional standard of care as expressed and required pursuant to the training provided to every certified Law Enforcement Officer, including Deputy Ramos.

4. Pursuant to the requirements of Rule 26, I reviewed the complaint in this action; documents relating to the December 18, 2022 stop of Jamel Burt by Defendant Ramos and Deputy Jacob Wilder, including citations, CLETS info, the patrol log, photographs, and the use of force supplemental report; the body worn camera video of the incident from the camera of Defendant Ramos and Deputy Wilder; San Diego County Sheriff's Office internal investigatory/disciplinary documents related to an incident involving use of force by Defendant Ramos against Joshua Strode on June 2, 2017 and related documents, the deposition transcripts and exhibits of Defendant Ramos, Deputy Wilder, Captain Kyle Bibel, Lieutenant Ashley Lewis and Lieutenant Lon Nguyen; San Diego County Policies

and Training on Use of Force and multiple POST Basic Learning Domains, as set out fully on pages 2 to 3 of my report.

**Summary of Opinions Set Forth in Rule 26 Report**

5.    In my opinion, based on my experience and my review of the aforementioned materials, there was no legitimate basis for Officer Ramos to use any level of force in his interaction with Mr. Burt. There was no valid law enforcement purpose for Ramos' conduct in pushing Mr. Burt and in Ramos' use of force.

6.    There was no justification for Officer Ramos' uses of force, which included pushing Mr. Burt against the patrol car and slamming him into the concrete face first, because Mr. Burt was handcuffed, never assaulted any Deputy and was under the control of Officer Ramos, at all times, during the escort.

7.    In an attempt to justify pushing a handcuffed man and slamming him into the concrete, head first, Officer Ramos proffered a set of facts that is not supported by video evidence. Officer Ramos testified that he believed Mr. Burt flexed in order to escape. This explanation is belied by video evidence and logic – Mr. Burt was handcuffed and was not a risk of flight or assault.

8.    It is also important to note that Mr. Burt sustained head injuries as a result of being thrown head-first into the concrete. Officers are trained that blows to the head can result in serious injury and death, and are not to use blows to the head unless needed to protect life. Mr. Burt was handcuffed, when lifted and slammed to the ground. In my opinion, no deputy's life was in danger; therefore, any blows to Mr. Burt's head were out of policy.

9.    My review of the materials provided support Mr. Burt's allegations that he was never a threat to any Deputy (as supported by video evidence) and was handcuffed and detained. Accordingly, it is uncontested in the record that Mr. Burt was unarmed and non-threatening. As such, no physical force whatsoever was necessary. Deputies are trained that excessive force is defined as force that is not

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

necessary or appropriate. Accordingly, the force inflicted by Deputy Ramos was excessive and in violation of police standards and policy (as trained).

10.   The record supports that Deputy Ramos' grabbing/manhandling Mr. Burt and slamming him to the ground was excessive (i.e., not necessary or appropriate) as trained. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, restraint techniques, and care for individuals taken into custody. The aim of this training is to prevent injuries and/or fatalities, such as occurred in this case (facial injuries). These methods are well-known and proven effective for the safety and welfare of both Deputies and the public. Deputy Ramos utterly failed to follow these standards and their training in this incident.

11.   Deputies are trained regarding excessive force. Mr. Burt was contained and handcuffed and in the presence of two trained, equipped and armored deputies. He was never a credible threat to any deputy. Therefore, no force was necessary or justified (as trained).

12.   Further, Deputy Ramos failed to employ any de-escalation techniques (which he received training to properly implement and were at his disposal) before using force against Mr. Burt. As such, he violated policy and training when he threw Mr. Burt, who was handcuffed, to the ground.

13.   Those de-escalation techniques include tactical communication, crisis intervention, advisements, warnings, verbal persuasion, and other common sense methods.

14.   When Deputy Ramos approached Mr. Burt, he was seated on the sidewalk, handcuffed and in Deputy Wilder's control. He therefore posed no reasonable threat to anyone.

15.   Deputy Ramos therefore failed to avail himself of any of the well-known and effective methods of de-escalation before resorting to use of force.

3                                    24-CV-0662-CAB-VET

16. The force used by Deputy Ramos to throw Mr. Burt to the ground, was excessive, and violated policy and training.

**Policies on Using Force on Handcuffed/Restrained Subjects**

17. The San Diego Sheriff's Department had serious deficiencies in its practices (both espoused and de facto) and policies (or lack of such). SDCSD had no policy on UOF/cautionary measures for handcuffed or restrained persons. The San Diego Sheriff's used no written policy on this most common and recurring issue.

18. Other agencies caution peace officers about the risks of using takedowns or other force against subjects who are handcuffed or otherwise restrained. For example, San Diego Police Department's use of force policy, DP 1.04- Use of Force, states, "Officers should use caution when using a takedown technique on a handcuffed prisoner. There is potential for injury since the prisoner's hands are behind his or her back, and they have no way of breaking his or her fall. If possible, when the person is handcuffed, officers should consider other controlling methods prior to a takedown."

19. The Los Angeles County Sheriff Department ("LASD") use of force policy, 3-10/020.00 - Use of Force Policy (Rev 7/19/2024) includes the following provisions:

> Physical force shall not be used against individuals in restraints, except as proportional, objectively reasonable, and that which reasonably appears necessary to prevent their escape, prevent the destruction of property, or prevent imminent bodily injury to the subject, the Department member, or another person. In these situations, only a proportional amount of force that is objectively reasonable and reasonably appears necessary to control the situation shall be used.

20. LASD's policy on use of force review, *3-10/112.00 - Use of Force Review - Unit Commander Responsibilities*, includes the following:

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In determining if further action or investigation is necessary, the unit commander shall consider whether the reports and witness statements are complete and consistent; there are unexplained injuries to the subject against whom force was used or injuries to the head, eyes, throat, spine, or groin areas; the subject was in mechanical restraints when force was applied; the objective evidence corroborates any allegations of unreasonable force by the subject; whether emergent circumstances required the use of an improvised weapon; and whether authorized tactics, equipment, and devices were used in accordance with Department policies and procedures. There shall be a presumption that further investigation is necessary if a subject sustains unexplained injuries or there is evidence that face, head, or neck strikes were used by Department members (whether by fists, knees, feet, or weapons) against a handcuffed subject.

21. The Santa Clara County Sheriff's Department Custody Manual section 511.8, Force Options, contains the following provisions in a section on "takedowns":

> (h) Takedowns
>
> 1. Description: A takedown is a maneuver where a person is swiftly brought
>
> to the ground from a standing or seated position.
>
> . . .

24-CV-0662-CAB-VET

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

6. Special Instructions:

(a) Fall Risk: Deputies shall recognize the risk of injury to a person in a takedown, particularly when the person is handcuffed or shackled, which limits the person's ability to break their fall.

22. Many other agencies (including Riverside Sheriff's Department, San Bernardino Sheriff's Department, and Orange County Sheriff's Department) list among the factors to consider in determining whether force is appropriate the degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained. This appears to be part of the standard Lexipol policy that is used by more than 95% of law enforcement agencies in California.

23. The complaint in this action points to twelve incidents of alleged excessive force against people who were handcuffed or otherwise restrained. This pattern supports demonstrates a persistent problem with use of excessive force against handcuffed individuals.

24. I reviewed SDCSD use of force policies and training, I understand included all policies and patrol training produced by the County in response to requests for policies and training that expressly addresses the use of force on individuals who are handcuffed or otherwise restrained. Based on my review, neither SDCSD policies nor training contain any express instructions to deputies about takedowns or other uses of force on subjects that are handcuffed or otherwise restrained, or warning that such takedowns pose risks of serious injury or that use of force against individuals who are restrained should be limited except for an instruction that the use chemical agents on handcuffed prisoners must be "carefully weighed" and should not be used on a restrained prisoner who is verbally abusive but not violent, and an instruction that deputies will not use a CED on a restrained suspect/inmate who is under control. The policy does not even point to the extent to which a subject is restrained as a factor to consider in evaluating whether or what

6    24-CV-0662-CAB-VET

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

force is appropriate. SDCSD's policies and training instructions on using force without regard to whether a person is handcuffed or restrained establish a de facto policy that deputies need not consider any risks of using force on individuals who are handcuffed or restrained, and of tolerating the pattern of excessive force against handcuffed or restrained individuals. The absence of any policy is coupled with an absence of any training on this issue to academy participants and employed deputies.

25.    In sum, unlike many other departments, SDCSD use of force policies and training provide no express limitations on use of force against subjects who are handcuffed or otherwise restrained (other than very narrow limits on chemical agents, no warning that takedowns of such subjects pose risks of serious injury or death, and not even any instruction that the degree to which a subject is restrained and unable to pose a threat should factor in whether force should be used or subject to review. Especially in light of a pattern of use of force against restrained individuals, this creates a de facto policy that deputies need not limit use of force against handcuffed individuals.

**Numbers of Out-of-policy Force Determinations**

26.    A review of the Use of Force Statistical Reports attached as exhibits to Lt. Lewis's deposition shows that for the years 2020, 2021, and 2022, the Department had 3454, 3420, and 3492 incidents involving uses of force each year, respectively. The Internal Affairs Statistical Reports show that in those years, SDCSD opened Internal Affairs investigations into 6, 10 and 5 uses of force, respectively, and found only three uses of force out of policy – two in 2020, one in 2021, and none in 2022. Over this three-year period, SDCSD found that deputies used force improperly in only 0.029% of incidents involving a use of force, or about one in 3500 use-of-force incidents. (Because many use-of-force incidents involve multiple uses of force, the percentage of uses of force found out of policy would be even lower.) The number of use-of-force incidents that SDCSD found out of policy

7                         24-CV-0662-CAB-VET

is miniscule and utterly unrealistic. Uses of force by definition do not happen in a carefully controlled fashion, and deputies are human and make errors. For SDCSD to find that in a large, urban law enforcement agency of approximately 2,500 sworn deputies, deputies use force correctly in 99.97% of incidents means either that SDCSD deputies employs angels not people, or that SDCSD as a matter of practice regularly tolerates excessive uses of force.

27.    The depositions describe a procedure of having deputies report force by filing supplemental use of force reports that are supposed to be reviewed by three levels of supervisor, typically the sergeant, lieutenant, and unit commander. The fact that these reports result in such a miniscule number of IA investigations into uses of force (the 6, 10 and 5 investigations opened in the three years above reflects both civilian complaints and internally generated complaints) shows that this routine process for reporting and review of use of force is simply a paper tiger — a bureaucratic exercise designed to provide the illusion of supervision without exercising any meaningful review or restraint on excessive force and fails to investigate wrongdoing.

28.    Most departments do not publish numbers of out-of-policy force determinations, and there are no broad studies of use-of-force adjudication rates to my knowledge. But a sampling of those that do publish the information shows that other agencies find uses of force to be out of policy at vastly higher rates than SDCSD. For example, the Los Angeles Police Department's *2023 Use of Force Year-End Review*[1] shows that department's 8,965 sworn officers used what LAPD

---

[1] Los Angeles Police Department, *2023 Use of Force Year-End Review*, at pp. 99, 245, 263, at https://www.lapdpolicecom.lacity.org/042324/BPC_24-074.pdf. I have not included LAPD's more serious "categorical" uses of force, which includes officer-involved shootings and other deadly force. They are not as comparable to the force used here, but also there are much fewer of them, and LAPD finds shootings out-of-policy at significantly higher rates so that including

8

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

calls "non-categorical" force (force other than shootings, deadly force, or force resulting in hospitalization) about 2,200 times each year in 2020, 2021, and 2022, and that the department adjudicated Non-Categorical Use of Force Tactics Findings (a crucial component of the force analysis) as "Administrative Disapproval" between three and four percent of the time, and reached that finding as to the force itself in 110 findings in 2020, 147 findings in 2021, and 148 findings in 2022. Even adjusting for the greater size of LAPD and focusing solely on the force findings, not the tactics, the department disapproves use of force at about forty times the rate per officer as SDCSD. If we include the tactics found out of policy between three and four percent of the time over that three-year period, LAPD finds uses of force out of policy at more than 100 times the rate of SDCSD.

29.    Sacramento Police Department publishes the results of complaints in annual reports by the Office of Public Safety Accountability.[2] That shows that the department sustained 5 out of 77 use-of-force complaints in 2020, 18 out of 36 in 2021, and 2 out of 49 in 2022. This is in a department of approximately 750 sworn officers. Based on data published that the Sacramento PD provided to the Center for Policing Equity (a reputable research and advisory organization for police), the department had between 106 and 146 reportable use-of-force incidents per year between 2016 and 2019. Even taking the highest number suggests a total of 25 out-of-policy findings in nearly 450 uses of force over a three-year period, more than 5.5% of incidents, and more than 190 times the rate at which SDCSD finds force out of policy.

_____

them would make the differences between LAPD and SDCSD even greater. *See id.* at 159.

[2] See City of Sacramento, Office of Public Safety Accountability, *Annual & Quarterly Reports and Audits/Inspections* at https://www.cityofsacramento.gov/opsa/reports-.

24-CV-0662-CAB-VET

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

30. Outside of California, it is noteworthy that when the Albuquerque Police Department was under federal consent decree, it announced that it had reached a milestone of compliance when 95% of its use-of-force incidents were found to be in policy.[3] City leaders announced that this showed that the Department was reformed and ready to end federal oversight. This benchmark for constitutional policing was 170 times the rate that SDCSD finds force out of policy, and it suggests not that SDCSD deputies are 170 times better than Albuquerque PD officers (when that department had been under federal supervision), but that SDCSD simply does not investigate and adjudicate excessive force appropriately.

31. I am not a statistician, and the comparisons above are not intended to demonstrate precise statistical conclusions. I am, however, an expert on police practices and procedures, and the comparisons unquestionably support my overall view that the rates at which SDCSD conducts formal IA investigations into uses of force and finds uses of force out of policy are astonishingly low — so far below other agencies as to be unique, in my experience. The rates at which SDCSO investigates uses of force and finds them out of policy are so far below what would be expected of a law enforcement agency its size with as many uses of force as SDCSD officers report that the only reasonable conclusion is that the agency simply turns a blind eye and has a practice of failing to investigate and discipline officers for excessive force.

32. From a deputy's perspective, the Department almost never finds uses of force out of policy — only about one each year — so there is almost no risk that using unnecessary force will have any consequence, unless the deputy's use of force is the worst violation in the Department that year.

---

[3] See Press Release, *APD Use of Force within policy 95% of the time,* Albuquerque Police Department (Mar. 1, 2023), at https://www.cabq.gov/police/news/apd-use-of-force-within-policy-95-of-the-time.

10                                                        24-CV-0662-CAB-VET

DECL. OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S CONSOLIDATEDOPPOSITION
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

33. It is clear from my review of the investigation and discipline of Ramos for the incident involving Joshua Strode that the failures in these policies directly resulted in the improper use of force in this case. Deputy Ramos's violent takedown of Strode, and smashing his head into a wall, was clearly excessive force not justified by any perceived threat. But Internal Affairs investigated the use of force and found it within policy, finding fault only with Ramos's communication and issuing a written reprimand – a degree of discipline so minimal it is tantamount to no discipline at all. Indeed, the IA investigator readily acknowledged that Ramos believed he did nothing wrong and found that troubling because Deputy Ramos will behave similarly in the future. But consistent with the Department's policy of tolerating excessive force, neither the investigator nor the supervisors who reviewed the investigation found the force out of policy or imposed any meaningful corrective action — a lamentable failure to correct excessive force that provides clear illustration of the Department's tolerance of physical abuse. This systemic failure to discipline, part of the department's pattern and procedure, which is manifested in the unjustifiable exoneration of Ramos despite clearly excessive and unjustifiable force gave rise directly to Ramos's subsequent violation of Mr. Burt's rights.

34. Deputy Ramos thus used excessive force against a partially handcuffed Strode. SDCSD reviewed the force and deemed it consistent with its policies. Deputy Ramos heard this message clearly and proceeded to use excessive force in a strikingly similar fashion against Jamel Burt. His decision to do so flows directly from SDCSD's policy of tolerating excessive force and its use of force policy that treats takedowns and use of force against restrained individuals as a nonissue.

ii                                            24-CV-0662-CAB-VET

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 12th day of July, 2026, in San Diego, California.

ROGER CLARK

12                                                        24-CV-0662-CAB-VET

Exhibit RC-A

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

April 8, 2026

Eugene G. Iredale, Esq.
Julia Yoo, Esq.
Peter Bibring, Esq.
Iredale & Yoo, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036

**Regarding:    *Jamel Burt, vs. Nicolai Ramos, et al., Case No.:
3:24-cv-00662-CAB-VET.***

Dear Counsel:

Thank you for retaining me to analyze and render opinions regarding the December 18, 2022 use of force (including blows to the head) inflicted on Mr. Jamel Burt (Mr. Burt), by San Diego County Sheriff's  Department (SDCSD) Deputy Nicolai Ramos (Deputy Ramos).  Pursuant to the requirement of Rule 26, I have reviewed the SDCSD reports, video recordings, SDCSD Use of Force policy, and other materials (as listed below) regarding this case provided to me thus far.  Please be advised that if/when any additional information is submitted additional commentary and opinions may be required.

It is necessary to state at the beginning of this report that I do not make credibility determinations in expressing my opinions.  That is, where there are differences in the events proffered by Deputy Ramos and/or other witnesses, versus testimony proffered by Mr. Burt, and/or other witnesses, I do not opine for the trier of fact regarding who are the more believable witnesses.  I consider that the resolution of any such conflicts are within the purview of a jury to decide.

Additionally, it is necessary to state that I am not a lawyer nor a public official who hears and decides cases brought in court.  My opinions rest on the training given to every California POST certified Officer and the reasonable professional standard of care as expressed and required pursuant to the training provided to every certified Law Enforcement Officer, including Deputy Ramos.

**Materials Provided and Reviewed Thus Far:**

1.  Complaint for Damages.

2.  Documents related to the December 18, 2022, stop of Jamel Burt by Defendant Ramos and Deputy Wilder, including citations, CLETS info, patrol log, photographs, and use of force supplemental report CSD000391–482, CSD 504–06.

3.  Body-worn camera video of the December 18, 2022, stop of Jamel Burt from the camera of Defendant Ramos and the camera of Deputy Wilder.

4.  San Diego County Sheriff's Office internal investigatory/disciplinary documents related an incident involving use of force by Deputy Ramos against Joshua Strode on June 2, 2017. CSD001995–2059, CSD002129, CSD005795–5828, including body-worn camera and jail video of the use of force incident.

5.  Deposition Transcripts:
    a.  Deputy Nicolai Ramos (Defendant), June 12, 2025.
    b.  Deputy Jacob Wilder (Witness), with exhibits, September 12, 2025.
    c.  Captain Kyle Bibel, with exhibits, January 8, 2026.
    d.  Lt. Ashley Lewis, 30(b)(6) designee for County of San Diego, with exhibits (including Use of Force Statistical Reports and Internal Affairs Statistical Reports), Dec. 12, 2025.
    e.  Lt. Lon Nguyen, 30(b)(6) designee for County of San Diego, with exhibits, Dec. 19, 2025.

6.  San Diego County Policies & Training
    a.  Policies on Use of Force. CSD-000483–503.
        - Policy 2.49, Use of Force.
        - Policy 6.48, Physical Force.
        - Procedure 10.10, Minimum Training Standards and Requirements for Use of Force Policy
        - Addendum F, Use of Force Guidelines.
    b.  SDCSD IA Manual, CSD005535–54.
    c.  SDCSD Training
        - Laws & current mandates, CS005527
        - CPT 2021-2022 UOF Powerpoint CSD00531
        - UOF and De-escalation Powerpoint 021323, CSD005533
        - Mental Health and Officer-Involved Shootings, CSD005532

7.      POST Basic Learning Domains as Follows:
   a.      #1. "Leadership, Professionalism and Ethics."
   b.      #2: "Criminal Justice System."
   c.      #3: "Principled Policing in the Community."
   d.      #5: "Introduction to Criminal Law."
   e.      #15: "Laws of Arrest."
   f.      #16: "Search and Seizure."
   g.      #20: "Use of Force/Deescalation."
   h.      #21: "Patrol Techniques."
   i.      #22; 'Vehicle Pullovers."
   k.      #23: "Crimes in Progress."
   l.      #33: "Arrest and Control."
   m.       #34: "First Aid, CPR and AED."
   n.      #36: "Information Systems."

## Brief Overview of Events and Commentary

On December 18, 2022, at approximately 2:00 p.m., in San Diego County, San Diego Sheriff's Deputy Defendant Nicolai Ramos ("Ramos") stopped a four-door Ford truck in which Plaintiff Jamel Burt was a passenger.

Ramos approached the truck with his firearm, a Glock 17, unholstered, and handcuffed the driver.

At Ramos' instruction, a second Sheriff's deputy, Deputy Jacob Wilder-Tramell ("Wilder"), handcuffed Mr. Burt and had him sit on the curb. Wilder asked his name, to which Jamel responded that his name was Jamel Burt. Mr. Burt provided Wilder his date of birth and street of residence.



After Ramos then heard Mr. Burt say that he would answer no more questions, Ramos began to speak loudly near Mr. Burt.

When Mr. Burt protested and cursed at Ramos, Ramos grabbed him, pulled him to his feet and forcibly pushed him towards Ramos' patrol car. There was no legitimate basis for Ramos to use any level of force.

The finder of fact will need to determine whether Officer Ramos' purpose was to punish Mr. Burt for refusing to answer, protesting his treatment and for a perceived attitude of disrespect, or what is commonly known as "contempt of cop." There was no valid law enforcement purpose for Ramos' conduct in pushing Mr. Burt and in Ramos' use of force.

Ramos then accused Mr. Burt of "flexing" while handcuffed and repeated, "Stop flexing. Stop flexing! Stop flexing! Stop flexing! Stop flexing! Stop flexing! Stop flexing!" (seven times).

Subsequently, Officer Ramos pushed Mr. Burt into the front passenger quarter panel of a patrol vehicle, grabbed Mr. Burt's right and left side, spun Mr. Burt around while sweeping his legs and slammed him face first into the ground. Mr. Burt's teeth immediately broke after Ramos slammed him, face-first, against the concrete sidewalk.

Based on Officer Ramos' body worn camera, Zulu time tracking, Officer Ramos grabbed Mr. Burt at 22:16:20, escorted Mr. Burt to Officer Ramos' patrol car, and issued seven warnings to "Stop flexing" (BWC evinced that Mr. Burt never pulled away or attempted to pull away from Officer Ramos, so the "Stop flexing" orders appear to be a prelude to Officer Ramos' excessive force). After they reached the patrol car, at Zulu time 22:16:31, Officer Ramos briefly pushed Mr. Burt against the front passenger quarter panel of the patrol car, and at approximately 22:16:32, Officer Ramos grabbed Mr. Burt with both hands, pivoted Mr. Burt's body, swept his legs and slammed Mr. Burt against the ground.

These screen captures are from Officer Wilder's and Officer Ramos' body worn camera recordings.

  

  

After he slammed Mr. Burt's head into the ground (while Mr. Burt was handcuffed), Officer Ramos placed force against Mr. Burt's head and appeared to grind Mr. Burt's face into the cement and dirt.

> Q.    You didn't put your right hand on the back of his head?
> A.    My hand was placed on the back of his head, yes, sir. (Ramos deposition, p. 162.)

  

Because Mr. Burt's hands were handcuffed behind his back, he was unable to break his fall.

It should be noted that Officer Ramos testified that a "controlled take-down" is unpredictable and that he knew Mr. Burt was in handcuffs. It appears that Officer Ramos gave no thought to the consequences of throwing a handcuffed person against the concrete, but was rather beset by rage and acted in anger, erratically and excessively.

> Q.    Well, he was handcuffed, was he not?· The whole time he was handcuffed.· Had you handcuffed him or had Wilder?
> A.    I don't recall who handcuffed him, sir.· I just know he was in handcuffs. (Ramos Deposition, p. 156)
>
> Q.    I see. And so you then knew that he was handcuffed that whole time, right?
> A.  During the time of the escort, yes, sir. (Ramos Deposition, p.154)
>
> Q.  You wanted to control him and so you understood that there was a cement sidewalk that was right there right near where his head hit, right?
> A.  Yeah.· And as far as the controlled takedown, was, yes, taking down to

Page 6 of  27

the ground.

Q.  Yes.· But his face hit the ground, right?

A.  As of my understanding, yes.· As a result of the controlled takedown, yes.

Q.  Well, you controlled the takedown so his face would land face down on the ground, right?

MR. HANNA:   Objection.· Misstates testimony.

A.  As far as controlled takedown, it's not predictable where a subject may land, whether it's on the side of their body, their face, but controlling the person as he's going down mitigates any type of additional injury. (Ramos Deposition, pp.161-162)

After smashing Mr. Burt's face, Ramos then stated he was arresting him for "delaying and obstructing" Ramos in the "performance of his duties."

As a result of Ramos' conduct, Mr. Burt suffered pain to his right ribcage, right shoulder, right foot, and both wrists. Mr. Burt suffered two broken teeth.

Officer Ramos has testified that he received training regarding "proportionality" and the rules, procedures, law and policy around proportional force. In this case, Mr. Burt was handcuffed, never assaulted any Deputy and was under the control of Officer Ramos, at all times, during the escort. Therefore, there is no justification for Officer Ramos' uses of force, which included pushing Mr. Burt against the patrol car and slamming him into the concrete, face first.

Q.  Tell me what your understanding of the word proportional is, proportional level of force, based on your training.

A.  My training, if we're talking about hypothetical, an example would be is if we had an elderly subject, 80 years old, utilizing a baton would be excessive.· So that would be not proportional.

Q.  Now, let's now discuss de-escalation.· Tell me,· were you given training in de-escalation tactics?

A.  To my recollection, yes.

Q.  When?

A.  It varies from the academy to working the jails with my training officer.· We're specifically talking about jails or are we talking about till recently?

Q.  Well, let's talk about first in the training academy, was there a section on de-escalation that you took in the Training Institute at Miramar in 2014, 2015?

A.  I don't recall a specific section, but I do recall them teaching us to try

and de-escalate by first off talking to the subjects and then seeing what their behavior happens after the behavior. (Ramos Deposition, p.76)

In a feeble attempt to justify pushing a handcuffed man and slamming him into the concrete, head first, Officer Ramos proffered a set of facts that is not supported by video evidence. Officer Ramos testified that he believed that Mr. Burt flexed in order to escape. This explanation is belied by video evidence and logic – Mr. Burt was handcuffed and was not a risk of flight or assault.

Q.    Yes.· Why don't you look at page 9?

A.    So going to that -- I wrote, I attempted to de-escalate the situation by telling Burt to stop flexing but he continued yelling, "Shut up, bitch-ass mother-fucker."· I attempted to maintain positive control of Burt by pushing his body up against Deputy Wilder's patrol vehicle.· As I attempted to do, so I felt Burt quickly turn his body to his right, which caused me to temporarily lose the grasp I had over his left arm with my right hand.· Thinking Burt was attempting to escape, I made the decision to take Burt down to the ground.

Q.    All right.· And you thought he was trying to escape, right, with his hands cuffed behind him and you've seen the body-worn camera now, with his hands cuffed behind him and his pants down around his knees, you thought he was going to escape and you had to take him and grind his face into the ground, right?

MR. HANNA:    Objection.· Argumentative.

Q.    Is that right?

A.    And, sir, as I stated in jail I've had people that are in handcuffs and leg chains --

Q.    No, that's not responsive to my question, sir. My question is:· You told me you thought Mr. Burt was going escape.· Are you telling me the truth, you really thought he was going to escape with his hands cuffed behind him?· Is that really the truth, that you needed to bring him down to prevent him from escaping?· Is that your testimony?

A.    Sir, yes -- (Ramos Deposition, pp. 159-160)

Mr. Burt had blood in his mouth. He was diagnosed with shoulder and wrist sprain, a contusion on his chest wall and right foot, and a dental fracture.

## POST Force Options

Officers are trained that a subjects' resistance/actions to an arrest coupled with the totality of circumstances will determine the type of force used by peace officers.  The following

Page 8 of  27

chart illustrates how a subject's resistance/actions can correlate to the force applied by an officer. (Listed as Subject's Actions, Description of Resistance and Possible Force Option):

*Cooperative* - Subject offers no resistance:

- Mere professional appearance
- Nonverbal actions
- Verbal requests and commands

*Passive non-compliance* - Does not respond to verbal commands but also offers no physical form of resistance:

- Verbal requests and commands.
- Officers' strength to take physical control, including lifting/carrying.
- Control holds and techniques to direct movement or immobilize a subject.

*Active resistance* - Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally signaling an intention to avoid or prevent being taken into or retained in custody:

- Control holds and techniques to control the subject and situation
- Use of personal weapons in self-defense and to gain advantage over the subject
- Use of devices to secure compliance and ultimately gain control of the situation

*Assaultive* - Aggressive or combative; attempting or threatening to assault the officer or another person:

- Use of devices and/or techniques to secure compliance and ultimately gain control of the situation
- Use of personal body weapons in self-defense and to gain advantage over the subject

*Life-threatening* - Any action likely to result in serious injury or possibly the death of the officer or another person

- Utilizing firearms or any other available weapon or action in defense of self and others

Additionally, POST requires that officers must take into account the *totality of the circumstances* when selecting a reasonable force option. And that they must be aware of and comply with their specific agency policies regarding appropriate force options.

## Constant reevaluation requirement:

"Peace officers must use the force option appropriate for the situation as conditions may change rapidly. Officers must continually reevaluate the subject's action and must be prepared to transition as needed to the appropriate force options." (LD 20: Chapter 2 – Force Options, pages 2-7)

## The Ethical Responsibility Regarding Police Powers:

The POST standard, to which all Officers in California must conform, is clear regarding the use of police powers. The principles are taught at the Basic Academy and are reinforced frequently throughout the academy training process and include these precepts:

Law enforcement are granted two extraordinary powers: the power of arrest and the power to use deadly force.

This authority does not dictated by autocrats; rather it comes from the will and consent of the people who entrust law enforcement to use that power with solemnity. For this reason, it emphasized, over and over, that peace officers do not bestow police powers on themselves–these are powers issued by the will of the people they serve.

## Consequences of Blows/Kicks/Punches to the Vulnerable Parts of the Body:

It is also important to note that Mr. Burt sustained head injuries as a result of being thrown head-first into the concrete. Officers are trained that blows to the head can result in serious injury and death, and are not to use blows to the head unless needed to protect life. Mr. Burt was handcuffed, when slammed to the ground. In my opinion, no deputy's life was in danger; therefore, any blows to Mr. Burt's head were out of policy.

"Punches to the head or face can cause severe injuries to the individual, and additionally carry a high risk of injury to the deputy using such force. Deputies should only use this extremely dangerous level of force where lower force levels are not available or are ineffective, especially when the

Page 10 of  27

individual is already handcuffed and less severe use of force alternatives are available. See *Graham*, 490 U.S. at 396.

Accordingly, I am very concerned at the use of force inflicted on Mr. Burt. As stated above, any use of force must be considered by the "objectively reasonable" standard (as taught by POST). In this regard, it is necessary to include the POST training given to all Deputies to consider the very serious consequences of blows to specific parts of the body and that any intentional strikes to these areas (such as occurred here) must be "objectively reasonable." They are listed as (Learning Domain #33: "Arrest Methods/Defensive Tactics." Use of Impact Weapons, page 7-7.):

- Face,
- Throat,
- Heart,
- Groin,
- Head,
- Neck,
- Spine and
- Kidneys.

**Policies and Practices Related to Use of Force on Force Against Handcuffed Persons**

The San Diego Sheriff's Department had serious deficiencies in its practices (both espoused and de facto) and policies (or lack of such). SDCSD had no policy on UOF/cautionary measures for handcuffed or restrained persons. The San Diego Sheriff's used no written policy on this most common and recurring issue. Other agencies caution peace officers about the risks of using takedowns or other force against subjects who are handcuffed or otherwise restrained.

For example, San Diego Police Department's use of force policy, DP 1.04- Use of Force, states, "Officers should use caution when using a takedown technique on a handcuffed prisoner. There is potential for injury since the prisoner's hands are behind his or her back, and they have no way of breaking his or her fall. If possible, when the person is handcuffed, officers should consider other controlling methods prior to a takedown."

The Los Angeles County Sheriff Department ("LASD") use of force policy, *3-10/020.00 - Use of Force Policy* (Rev 7/19/2024) includes the following provisions:

Physical force shall not be used against individuals in restraints, except as proportional, objectively reasonable, and that which reasonably appears necessary to prevent their escape, prevent the destruction of property, or prevent imminent bodily

injury to the subject, the Department member, or another person. In these situations, only a proportional amount of force that is objectively reasonable and reasonably appears necessary to control the situation shall be used.

LASD's policy on use of force review, *3-10/112.00 - Use of Force Review - Unit Commander Responsibilities*, includes the following:

In determining if further action or investigation is necessary, the unit commander shall consider whether the reports and witness statements are complete and consistent; there are unexplained injuries to the subject against whom force was used or injuries to the head, eyes, throat, spine, or groin areas; the subject was in mechanical restraints when force was applied; the objective evidence corroborates any allegations of unreasonable force by the subject; whether emergent circumstances required the use of an improvised weapon; and whether authorized tactics, equipment, and devices were used in accordance with Department policies and procedures. There shall be a presumption that further investigation is necessary if a subject sustains unexplained injuries or there is evidence that face, head, or neck strikes were used by Department members (whether by fists, knees, feet, or weapons) against a handcuffed subject.

The Santa Clara County Sheriff's Department Custody Manual section 511.8 *Force Options*, contains the following provisions in a section on "takedowns":

(h) Takedowns
1. Description: A takedown is a maneuver where a person is swiftly brought to the ground from a standing or seated position.
…
6. Special Instructions:
 (a) Fall Risk: Deputies shall recognize the risk of injury to a
 person in a takedown, particularly when the person is handcuffed
 or shackled, which limits the person's ability to break their fall.

Many other agencies (including Riverside Sheriff's Department, San Bernardino Sheriff's Department, and Orange County Sheriff's Department) list among the factors to consider in determining whether force is appropriate the degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

The complaint in this action points to twelve incidents of alleged excessive force against people who were handcuffed or otherwise restrained. This pattern supports demonstrates a persistent problem with use of excessive force against handcuffed individuals.

I reviewed SDCSD use of force policies and training, I understand included all policies and

patrol training produced by the County in response to requests for policies and training that expressly addresses the use of force on individuals who are handcuffed or otherwise restrained. Based on my review, neither SDCSD policies nor training contain any express instructions to deputies about takedowns or other uses of force on subjects that are handcuffed or otherwise restrained, or warning that such takedowns pose risks of serious injury or that use of force against individuals who are restrained should be limited except for an instruction that the use chemical agents on handcuffed prisoners must be "carefully weighed" and should not be used on a restrained prisoner who is verbally abusive but not violent, and an instruction that deputies will not use a CED on a restrained suspect/inmate who is under control. The policy does not even point to the extent to which a subject is restrained as a factor to consider in evaluating whether or what force is appropriate. SDCSD's policies and training instructions on using force without regard to whether a person is handcuffed or restrained establish a de facto policy that deputies need not consider any risks of using force on individuals who are handcuffed or restrained, and of tolerating the pattern of excessive force against handcuffed or restrained individuals. The absence of any policy is coupled with an absence of any training on this issue to academy participants and employed deputies.

**Review & Discipline of Deputy Use of Force**

A review of the Use of Force Statistical Reports attached as exhibits to Lt. Lewis's deposition shows that for the years 2020, 2021, and 2022, the Department had 3454, 3420, and 3492 incidents involving uses of force each year, respectively. The Internal Affairs Statistical Reports show that in those years, SDCSD opened Internal Affairs investigations into 6, 10 and 5 uses of force, respectively, and found only three uses of force out of policy – two in 2020, one in 2021, and none in 2022. Over this three year period, SDCSD found that deputies used force improperly in only 0.029% of incidents involving a use of force, or about one in 3500 use of force incidents. (Because many use of force incidents involve multiple uses of force, the percentage of uses of force found out of policy would be even lower.) The number of use of force incidents that SDCSD found out of policy is miniscule and utterly unrealistic. Uses of force by definition do not happen in a carefully controlled fashion, and deputies are human and make errors. For SDCSD to find that in a large, urban law enforcement agency of approximately 2,500 sworn deputies, deputies use force correctly in 99.97% of incidents means either that SDCSD deputies employs angels not people, or that SDCSD as a matter of practice regularly tolerates excessive uses of force..

The depositions describe a procedure of having deputies report force by filing supplemental use of force reports that are supposed to be reviewed by three levels of supervisor, typically the sergeant, lieutenant, and unit commander. The fact that these reports result in such a miniscule number of IA investigations into uses of force (the 6, 10 and 5 investigations opened in the three years above reflects both civilian complaints and internally generated complaints) shows that this routine process for reporting and review of use of force is simply

a paper tiger — a bureaucratic exercise designed to provide the illusion of supervision without exercising any meaningful review or restraint on excessive force and fails to investigate wrongdoing.

Finally, it is clear from my review of the investigation and discipline of Ramos for the incident involving Joshua Strode that the failures in these policies directly resulted in the improper use of force in this case. Deputy Ramos's violent takedown of Strode, and smashing his head into a wall, was clearly excessive force not justified by any perceived threat. But Internal Affairs investigated the use of force and found it within policy, finding fault only with Ramos's communication and issuing a written reprimand – a degree of discipline so minimal it is tantamount to no discipline at all. Indeed, the IA investigator readily acknowledged that Ramos believed he did nothing wrong and found that troubling because Deputy Ramos will behave similarly in the future. But consistent with the Department's policy of tolerating excessive force, neither the investigator nor the supervisors who reviewed the investigation found the force out of policy or imposed any meaningful corrective action — a lamentable failure to correct excessive force that provides clear illustration of the Department's tolerance of physical abuse. This systemic failure to discipline, part of the department's pattern and procedure, which is manifested in the unjustifiable exoneration of Ramos despite clearly excessive and unjustifiable force gave rise directly to Ramos's subsequent violation of Mr. Burt's rights.

Deputy Ramos thus used excessive force against a partially handcuffed Strode. SDCSD reviewed the force and deemed it consistent with its policies. Deputy Ramos heard this message clearly and proceeded to use excessive force in a strikingly similar fashion against Jamel Burt. His decision to do so flows directly from SDCSD's policy of tolerating excessive force and its use of force policy that treats takedowns and use of force against restrained individuals as a nonissue.

**Opinions Thus Far:**

1.  My review of the materials provided support Mr. Burt's allegations that he was never a threat to any Deputy (as supported by video evidence) and was handcuffed and detained.  Accordingly, it is uncontested in the record that Mr. Burt was unarmed and non-threatening.  As such, no physical force whatsoever was necessary. Deputies are trained that excessive force is defined as force that is not necessary or appropriate.  Accordingly, the force inflicted by Deputy Ramos was excessive and in violation of police standards and policy (as trained).

2.  The record supports that Deputy Ramos' grabbing/manhandling Mr. Burt and slamming him to the ground was excessive (i.e., not

necessary or appropriate) as trained. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, restraint techniques, and care for individuals taken into custody. The aim of this training is to prevent injuries and/or fatalities, such as occurred in this case (facial injuries). These methods are well-known and proven effective for the safety and welfare of both Deputies and the public. Deputy Ramos utterly failed to follow these standards and their training in this incident.

3.    Deputies are trained regarding excessive force. Mr. Burt was contained and handcuffed and in the presence of two trained, equipped and armored deputies. He was never a credible threat to any deputy. Therefore, no force was necessary or justified (as trained).

4.    Taking Mr. Burt's set of facts as true (as supported by video evidence) that he was handcuffed, lifted and thrown to the ground, then Deputy Wilder failed in his duty to intervene and/or stop the unnecessary and excessive use of police powers inflicted on Mr. Burt.

**Training Regarding Excessive Force and Duty to Intervene:**

Peace officers are trained that they must recognize the consequences of using unreasonable force, and their legal and ethical responsibilities to intervene if the force being used by another peace officer is inappropriate or unlawful. They are trained that *Unreasonable force occurs when the type, degree, and duration of force employed was not necessary or appropriate*. (Emphasis added.)

"Consequences of unreasonable force:

"Malicious assaults and batteries committed by peace officers constitute unlawful conduct. When the force used is unreasonable, the officer can face criminal and civil liability, and agency disciplinary action.

"In the Penal Code Section 149, there are a number of statutes

Page 15 of  27

that regulate the behavior of peace officers:

"Section 149:  Every officer who is guilty of willful inhumanity or oppression toward any prisoner under his care is punishable by a fine not exceeding four thousand dollars ($4,000) and by removal from office.

"Section 147:  Every public officer who, under color of authority and without lawful necessity, assaults or beats any person, is punishable by a fine not exceeding ten thousand dollars ($10,000) or by an imprisonment in the State prison or in a county jail not exceeding one year or by both fine and imprisonment."  (Learning Domain #20: "Use of Force, Chapter 6.)

5.      Ramos' allegation that Mr. Burt, while handcuffed and encumbered by shorts that were falling down and effectively hobbling him, was preparing to "escape," and therefore Ramos had to use force, is risible.

"Any officer who knowingly files a false report will be guilty of a crime.  (Penal Code Section 118.1)"  (POST Learning Domain #18: "Investigative Report Writing," page 1-4.)

"All reports are to be true, unbiased, and unprejudiced.  These are easy words to say, but sometimes hard to live by.  It is not always easy to know or find out the truth.  Clearly it is the peace officer's moral obligation to seek the truth, lying is wrong. *Truth and public trust cannot be separated.*"  (POST Learning Domain #18: "Investigative Report Writing," pages 1-5.  Emphasis Added.)

"When writing a report, the minimum requirements to accomplish your job ethically and preserve the integrity of the criminal justice system are:

"Never falsify any portion of your report or modify any aspect of the report away from the factual truth.

*"Objectively document every fact (or piece of evidence) known to you that could prove or disprove the event you are reporting.  If you are not sure, include the fact or piece of*

Page 16 of  27

*evidence anyway and qualify it as possible evidence or investigative information.*

"Be clear. A well-written report does not raise questions, it answers them.

"Write your report free of speculation or personal opinions. You are there to gather facts.

"You are responsible for the quality of each report you write. Each report is an opportunity to build or destroy your credibility. Always write precisely what happened to the best of your knowledge. A report determined by a court to be compromised or unethical not only topples your credibility, but your agency's as well – plus it opens the door to challenge every past enforcement action you have performed. Compromising your report is just not worth it and it will raise questions about your effectiveness as a peace officer and may ultimately lead to termination of your employment. *It is your obligation to report incidents just as they occurred; anything else is unethical.*" (POST Learning Domain #1: Chapter 2 - "Professionalism and Ethics in Policing." Emphasis Added.)

6.   Deputy Ramos failed to employ any de-escalation techniques (which he received training to properly implement and were at his disposal) before using force against Mr. Burt. As such, he violated policy and training when he threw Mr. Burt, who was handcuffed, to the ground.

- Those de-escalation techniques include "tactical communication, crisis intervention, advisements, warnings, verbal persuasion, and other common sense methods." (Ex. 32, Ch. 10 at 3.)
- When Deputy Ramos approached Mr. Burt, he was seated on the sidewalk, handcuffed and in Deputy Wilder's control. He therefore posed no reasonable threat to anyone.
- Deputy Ramos therefore failed to avail himself of any of the well-known and effective methods of de-escalation before resorting to use of force.

7.      The force used by Deputy Ramos to throw Mr. Burt to the ground, was excessive, and violated policy and training.

8.      The force used by Deputy Ramos to strike Mr. Burt's face into the pavement was excessive and unnecessary.

9.      The SDCSD did not in any way discipline Deputy Wilder for his failure to intervene against Deputy Ramos's use of force against Mr. Burt, and did not in any way discipline Deputy Ramos for his excessive use of force against Mr. Burt.

Unlike many other departments, SDCSD use of force policies and training provide no express limitations on use of force against subjects who are handcuffed or otherwise restrained (other than very narrow limits on chemical agents, no warning that takedowns of such subjects pose risks of serious injury or death, and not even any instruction that the degree to which a subject is restrained and unable to pose a threat should factor in whether force should be used or subject to review. Especially in light of a pattern of use of force against restrained individuals, this creates a de facto policy that deputies need not limit use of force against handcuffed individuals.

10.     SDCSD finds only about one in 3500 uses of force to be out of policy. It is simply unrealistic that such a miniscule number accurately reflects the number of cases where deputies use excessive force, and the statistics show that SDCSD tolerates excessive force and that their process of reviewing force through supplemental reports is effectively a sham that provides no meaningful oversight.

11.     SDCSD's lamentable failure to discipline Deputy Ramos for his obviously excessive force in the Strode case provides a clear demonstration of the department's policy of tolerating physical abuse by deputies and communicated that policy clearly to Deputy Ramos, causing him to use strikingly excessive force in a strikingly similar fashion against Mr. Burt.

**My Qualifications To Review This Case:**

My opinions are based in part on my training, professional experience and education.  I

am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD). I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5, 1988). The POST Command College was a Masters level two-year course of study requiring a thesis, in Police Administration, with the diploma awarded by the California Department of Justice (and not the California University system).

During the course of my service with the department, I had a wide range of duties. Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail). I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units. I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers. Those cases included possible complaints relating to both misdemeanor and felony crimes. They frequently required follow up investigations and interviews before the exact nature of the case could be determined. As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later.

During that time, I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator. At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance. This process gave me an expertise in the POST Basic curriculum. I also supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals. I held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption. The majority of our cases were homicide cases, including the murder of police officers. Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy busts, and reverse stings. We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations. These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations. In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 2,600 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents. From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous. Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension. This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department. These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Florida, Illinois, Iowa, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and Wisconsin. I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury. I have also submitted written opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New York, Oregon, Kentucky, and Wyoming Federal and State Courts. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project,

National Lawyers Guild Convention, in New Orleans, Louisiana.  I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons."  On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert."  On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons.  I was selected (January 24, 2020) to present on the topic of: "Use of force litigation under California's negligence standard and the impact of AB 392" at the National Police Accountability Project held at Loyola Law, Los Angeles, California.  On February 18, 2020, and on March 10, 2021, and on October 27, 2023.  I lectured (at invitation and request) at the University of California - Irvine, School of Law, Civil Rights Litigation Clinic.  On February 26, 2025, I lectured (at invitation and request) at the California Western School of Law regarding Detective Investigations.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas).  As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden.  The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in *Burns v. City of Redwood City*, 737 F.Supp.2d.1047.  I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007).  The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008).  The *Torres* case was appealed to the U.S. Supreme Court and returned for trial.  I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.* (E.D. Wis Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in significant policy changes within the MPD.  My opinions supported argument in the Ninth Circuit case: *A. D., a Minor; J. E., a Minor; Sue Casey, Plaintiffs-Appellees, v. State of California Highway Patrol, Defendant, and Stephen Markgraf.*, No. 09-16460, D.C. No. 3:07-cv-05483-SI (9th Circuit, Published Opinion).  My opinions supported

argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1102 (9th Cir. 2014). The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867 (9th Cir. 2011), and *(Baton use) Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective, in *AD v. California Highway Patrol*, 712 F. 3d 446 (9th Cir. 2013). The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in *Bishop et al. v. Arcuri et al.*, 674 F.3d 456 (5th Cir. 2012). The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). I was the expert in the Ninth Circuit opinion regarding the allegations proffered by police officers and their use/display of firearms against civilians in *Green v. City and County of San Francisco*, 751 F. 3d 1039 (9th Cir. 2014). Most recently, I was the expert in an important Ninth Circuit opinion regarding the allegations proffered by police officers and their use of lethal force against unarmed persons in *Jennifer Cruz, et al., v. City of Anaheim, et al.*, 765 F.3d 1076 (9th Cir. 2014). I was the expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in *Estate of Manuel Diaz, v. City of Anaheim*, et al., No. 14-55644. My opinion is quoted in the Ninth Circuit opinion regarding the use of lethal force in *A.K.H. a minor, et al, v. City of Tustin, et al.*, No. 14-55184. My opinions supported argument in the Ninth Circuit case: *Estate of Angel Lopez, et al., v. Kristopher Michael Walb*, No. 14-57007 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Estate of Shakina Ortega, et al., v. City of San Diego, et al.* No. 14-56824 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Jerry Newmaker, et al., v. City of Fortuna, et al.* No. 14-15098 (for publication). My opinions supported argument in the Ninth Circuit Case: *Tonya E. Shirar, v. Miguel Guerrero, et al.* regarding use of lethal force and "suicide by cop," No. 15-55029 (not for publication). My opinions supported argument in the Ninth Circuit Case *Angel Mendez; Jennifer Lynn Garcia, v County of Los Angeles, et al.,* Nos. 13-56686, and 13-57072 (for publication) and which was settled before the U.S. Supreme Court, No. 16-369, regarding the use of officer(s) pre-shooting conduct resulting in lethal force and searches. This case was cited by the U.S. Supreme Court in *The Estate of Barns, Deceased v. Felix et al,* No. 23-1239 regarding officer(s) pre-shooting conduct resulting in lethal force. My opinions supported argument in the Ninth Circuit case: *Chien Van Bui, et al, v City and County of San Francisco, et al*, No. 14-16585 (not for publication), regarding the use of lethal force. My opinions supported argument in the Sixth Circuit opinion, Case No. 16-

<strong>Page 23 of 27</strong>

5322, *Carey Woodcock v. City of Bowling Green, et al,* Originating Case No. 1:13-cv-00124 regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. No. 14-17388 (for publication), *Johnathan Jones, et al v. Las Vegas Metropolitan Police Department, et al,* Originating Case No. 2:12-cv-01636- regarding the use of lethal force and Taser weapons. My opinions supported argument in the Ninth Circuit opinion, Case No. 16-15606 (for publication), *Christian Longoria, et al v. Pinal County, et al,* Originating Case No. 2:15-cv-00043, PHX SRB, regarding the use of lethal force after a vehicle pursuit. My opinions supported argument in the Ninth Circuit case: *S. B. v. County of San Diego,* 864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding issues of qualified immunity. My opinions supported argument in the Tenth Circuit case: *Russell Tenorio v. Brian Pitzer,* Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of qualified immunity and use of deadly force. I participated as a retained expert in the USDC Fifth District case, *Stephen McCollum et al., v. Texas Department of Criminal Justice, et al.,* Case No.3:12-CV-02037 regarding in-custody hyperthermia deaths. My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 17-55116 (for publication), *Susan Mellen, et al v. Marcella Winn, et al,* D.C. Case No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit Case *Richard Vos; Jenelle Bernacchi, v City of Newport Beach, et al.,* Nos. 16-56791 (for publication) and which was settled by the Supreme Court, No. 16-56791, regarding the use of lethal force and mental illness. My opinions (and quoted by name) supported argument in the Ninth Circuit Case *S.R. Nehad, et al. v. Browder, et al.*, No. 18-55035 (for publication) regarding the use of lethal force and custom and practice. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-55930 (not for publication), *Estate of Kevin Brown, et al. v. Michael Lambert, et al.*, D.C. No. 3:15-cv-01583-DMS-WVG, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 15-56339 (for publication), *Shane Horton, by his Guardian Ad, Litem Yvonne Horton, v. City of Santa Maria; Santa Maria Police Department; Andrew Brice*, D.C. Case No. 2:14-cv-06135-SJO-PJW, and *Jonathan Michael Castro v. County of Los Angeles, et al,* D.C. Case No. CV 10-5425 DSF (JEMx), 833 F.3d 1060 (9th Cir. 2016) (en banc), regarding jail standards, in-custody suicidal prisoners and qualified immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-56270 (not for publication), *James Soler v. County of San Diego, et al.,* D.C. No. 3:14-cv-02470-MMA-RBB, regarding required verification of persons taken into custody pursuant to a warrant of arrest. My opinions supported argument in the Ninth Circuit opinion, Case No. 18-17404 (for publication) *Tan Lam, v. City of Los Banos, et al.* D.C. No. 2:15-cv-00531-MCE-KJN, regarding the use of lethal force. My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 19-56035 (for publication), *Tiffany Tabares, et al v. City of Huntington Beach, et al*, D.C. Case No. 8:18-cv-00821, JLS-JDE, regarding use of force and subjects suffering mental illness. I

**Page 24 of  27**

was retained as consultant regarding the October 15, 2019 Law Enforcement Activity Related Death (including positional asphyxia) of Mr. Angel Zapata-Hernandez by San Diego Metropolitan Transit System (MTS) Code Compliance Officers. My consultations included recommendations and resulted in significant changes in policy and training by the MTS. I was a retained expert in the Temporary Restraining Order restricting the use of kinetic weapons during demonstrations issued April 19, 2021 in *Black Lives Matter v. City of Los Angeles, et al*, Case No.: CV 20-5027 CBM (Asx).. My opinions supported argument in the Ninth Circuit opinion, Case No. 20-16351 (not for publication), *Terrance Amons, et al., v. Dillon Tindall et al.* D.C. No. 4:19-cv-00301 KAW regarding use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. 20-56254, D.C. No.2:19-cv-05370-CAS-JC (for publication), *Paulette Smith, individually and as Successor in Interest to Albert Dorsey, deceased, v. Edward Agdeppa, and City of Los Angeles, et al.*, regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. 21-16709 (for publication), *Jose Murguia for himself and for the Estates of Mason and Maddox Murguia, v. Heather Langdon, et al.* D.C. No. 4:19-cv-00942 DAD-RAM regarding "State-created danger." My opinions supported argument in the Ninth Circuit opinion, Case No. 20-15651, D.C. No.2: 17-cv-02776 - JCM-NJK (for publication), *Rudy Rivera, v. Corrections Corporation of America*, regarding false imprisonment and callous disregard. My opinions supported argument in the Ninth Circuit opinion, Case No. 19-56462, D.C. No.5: 18-cv-00762 - DMG-SP (for publication - Declined Review by the Supreme Court), *Estate of Clemente Najera Aguirre; J.S.;Y.S., v. County of Riverside; Dan Ponder* regarding the inflection of lethal force. My opinions supported argument in the Ninth Circuit opinion, *SB v. County of San Diego*, 864 F. 3d 1010 - Court of Appeals, 9th Circuit, 2017. My opinions supported argument in the Ninth Circuit opinion, Case No. 23-15356, D.C. No.2: 21-cv-00099 - JJT (for publication), *Krish Singh, v. City of Phoenix, Brittany Smith-Peterson, et al.,* regarding Qualified Immunity/Excessive Force. My opinions supported argument in the Ninth Circuit opinion, Case No. 22-16495, D.C. 5:20-cv-07429-NC (for publication), *Rosalina Calonge, v. City of San Jose, Edward Carboni, et al.,* regarding Deadly Force/Qualified Immunity.

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006). The California Supreme Court drew in part from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al. v. County of San Diego et al.*, 57 Cal.4th 622 (2013). I was quoted by the California Appellate Court (Second Appellate District, Division Three) and the California Supreme Court in *B.B., a Minor, etc., et al., v. County of Los Angeles, et al., Case No. B264946 Super. Ct. Nos. TC027341, TC027438, BC505918* regarding positional asphyxia issues.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of

Page 25 of  27

Administration by United States Attorney General, the Honorable Edwin Meese III, for my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography).  On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical five-year effort to bring this law into effect.  California Penal Code Section 311.11 is required training for all Law Enforcement Officers in California and taught extensively in the POST Basic Learning Domain #9: "Crimes Against Children", pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of Tamir Rice by City of Cleveland police officers.  In March, 2016 I was requested by the Delaware Attorney General to review and provide my opinions regarding the shooting death of Jeremy McDole.  The AG report was published May 12, 2016.  I provided a written Opinion for New Mexico AG regarding the shooting Death of Teresa Anaya that included requested training opinions.  I have also consulted with, and provided written opinions at the request of the U.S. Attorney (New York), the Santa Clara County District Attorney, and the San Francisco District Attorney.  On June 16, 2021, I was selected by the Los Angeles County District Attorney as a member of FACCT - an independent team assigned to re-examine fatal use of force incidents by law enforcement officers and recommend further action when appropriate.  On November 7, 2021, I was an Honoree of the 2021 National Lawyers Guild of Los Angeles at their annual Awards Gala as a recognized defender of Constitutional Rights.  I was the retained Use of Force consultant regarding the May 28, 2010 homicide of Mr. Anastacio Rojas (USDC Case No. 11-CV-0522-L NLS) and which was taken under formal consideration by the Inter-American Commission on Human Rights (an international human rights tribunal) on November 2022.

During my service on the LASD, I became aware of the existence of Deputy Gangs and in particular the "Vikings" Deputy Gang at Lynwood Station (LV-25)."  Since 1980 I wrote significant in-house memorandums regarding the existence of Deputy Gangs and the harm they caused within the LASD.  My first trial testimony as a consultant (1994) regarding Deputy gangs after my retirement was: *Thomas v. County of Los Angeles, 2:90-cv-05217* wherein I testified in Federal Court as an expert on Deputy Gangs.  My consistent 30 year participation (with others) on this issue has now evolved in LASD Policy 3-01/050.82 - *Prohibition - Law Enforcement Gangs and Hate Groups* as defined and supported in Penal Code sections 13670(a)(2), 13670(b), 422.55, 13680(d) and 13680(e), 13670(b), 13682(a), 13682(b). 13670(b), 13510.9(a)(2), 13510.8, 13670(c), etc.

My most direct trial testimony regarding the Americans With Disabilities (ADA) rights and requirements (as trained by POST) was *Marina Borawick, v. City of Los Angeles, et al.  Case No. 2:17-cv-02036 BRO-JC*, on March 30, 2023.  There have been others,

including in written Rule 26 Reports.

Additionally, a number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants, and a number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs. I own each, along with the download software. I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices. I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage. Two published examples are *Lee v. Nashville*, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007). My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in *William Mears, et al., v. City of Los Angeles, et al,* USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in *Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al,* USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW, and on November 1, 2018 in *Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS*, and on March 1, 2024 in *The State of Texas v, Deputy James Johnson and and Deputy Zachary Camden Judicial District Court Travis County (Texas) Case No.: DPS 09990017*. There are many others.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed April 9, 2026, at Santee, CA.

_____
Roger A. Clark

# Exhibit A

**ROGER A. CLARK**

*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present.................................................................. **31 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 2650 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003........................................................................ **9 years**

I substitute teach at all levels in the school district (elementary to high school).  As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993.................................**27 years 4 months**

**Note:** In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn and 3,000 civilian personnel and a daily County Jail inmate population of 23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

**1.  Field Operations Region I**
    **NORSAT**                          11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and arrest major (career) criminal offenders.  This unit was designed as a multijurisdictional effort for the cities in the northern region of Los Angeles County.  The command consisted of four (4) Sergeants, seventeen (17) Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3) civilian employees.  The 1992 budget set at $1.5 million.  The arrest rate averaged 500 career criminal arrests per year with a 97% conviction rate and no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

**2.      Executive Offices**
    **Reserve Forces Bureau**      05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

volunteers, and 450 law enforcement explorer scouts.  The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

- Total restructure of the Academy training process for reserve Deputies.
- Implementation of upgrade programs to move lower level reserves to level I status.
- Departmental Reserve Certification procedures.
- Annual leadership seminar.
- The Reserve News, a nationally recognized police magazine.
- Computerization of the Bureau.

**3.    Field Operations Region I**
**Crescenta Valley Station**    04/01/80 to 05/01/84  **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

- **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
- **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
- **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
- **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

- Negotiation of an enhanced city contract (at a savings to the City).
- Formation of a volunteer community support group.
- Development and implementation of an integrated community emergency response plan.
- High School undercover narcotics operation.
- Restructure of the Station Detective Bureau.
- The annual station picnic, which was effective in boosting station morale.

4.    **Custody Division**
      **Central Jail**                04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of California, with a daily inmate population of seven thousand (7,000), an assigned staff of six hundred (600), and two hundred (200) civilian personnel. My service at this command was equally divided into two major assignments:

• Training and Logistics Lieutenant (04/01/79 to 04/01/8).
• Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

• "Hot Fire" Training program, which is now a State (POST) mandated training module for all custody personnel throughout California.
• The "Defend in Place" fire safety operational plan for jail facilities.
• New fire safety specifications for jail bedding and mattresses.
• The development of fire safe jail mattress material.
• The development of a facility emergency response plan.
• The computerization of training, timekeeping, and scheduling for the facility (800 sworn and 200 civilian personnel).
• "Spouse day at CJ"--A program for spouses of employees.

**Service as a Sergeant (6 Years, 4 Months):**

5.    **Administrative Division**
      **Federal Surplus Property**    01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my previous assignment (Emergency Operations Bureau). The unit provides millions of dollars in free federal excess and surplus food and property from clothing to heavy equipment and aircraft to the department each year. I am very proud of this contribution to the Department.

During this time I remained staff (Personnel Sergeant) of the Emergency Operations Bureau. This was simply a technical (paper) transfer.

6.    **Patrol Division**
      **Emergency Operations**    02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the

-4-

activities of the Department's planning    unit with emergency operations planning and preparation.  I was assigned as the Personnel and Logistics Sergeant.

Significant contributions while assigned at this command are:

•       Formation of a new County Emergency Operations Center.
•       Participation in the 1974 Federal earthquake studies of Los Angeles County.
•       Development of the Department's specialized Field Command Post equipment.
•       Development of the Department's Field Booking Team.
•       Collateral assignment to the Patrol School

**7.**      **Patrol Division**
         **Civil Defense Bureau**      12/01/73 to 02/01/74   **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.

**8.**      **Patrol Division**
         **San Dimas Station**      12/12/72 to 12/01/73   **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.

**9.**      **Technical Serviced Division**
         **Communications Bureau**    12/01/71 to 12/12/72   **12 months**

I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.

**Service as a Deputy (6 Years, 0 Months):**

**10.**      **Patrol Division**
         **San Dimas Station**
         **Detective Bureau**        01/01/70 to 12/01/71   **23 months**

-5-

I served as a Station Detective assigned to the evening watch. I handled the first response to all crimes requiring investigations. I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

11.    **Patrol Division**
       **San Dimas Station Patrol**    01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy, Patrol, and Traffic.

12.    **Technical Services Division**
       **Transportation Bureau**    11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.

13.    **Custody Division**
       **Central Jail**            05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.

14.    **Administrative Division**
       **Academy**                01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.

15.    **Custody Division**
       **Central Jail**            12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.

## DEGREES AND CERTIFICATION

-6-

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

# Exhibit B

# Roger A. Clark
## Police Procedures Consultant, Inc.
10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

April 8, 2026

Eugene G. Iredale, Esq.
Julia Yoo, Esq.
Peter Bibring, Esq.
Iredale & Yoo, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036

***Regarding:    Jamel Burt, vs. Nicolai Ramos, et al., Case No.: 3:24-cv-00662-CAB-VET.***

Dear Counsel:

My Fee Schedule is as follows:
- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $4,000.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account.  Payment is due upon receipt of the invoice.

There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

*Roger A. Clark*
Roger A. Clark

Page 1 of  1

# Exhibit C

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  **rclark9314@aol.com**

**UPDATED LIST OF SWORN TESTIMONY FOR RULE 26**

**April 7, 2022 to April 7, 2026**
(Revised April 8, 2026)

**Deposition:**  April 7, 2022  Jeanne Llera (Gomez), et al. v. Las Vegas Metropolitan Police Department, et al. Nevada Case No. 2:20-cv-01589 RFB-BNW.

**Deposition**:  April 8, 2022  V.V., et al.  v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:**  April 11, 2022.  Edgar Sanchez vs. City of San Jose, Christopher Weber, Melissa Villasenor, et al., Case No.: 20-CV-05919-JD.-cv-10758

**Deposition:**  April 11, 2022.  Clark, et. al. v. City of Sacramento, et al.  Case No: 2:19-cv-00171-JAM (JDP).

**Deposition:**  April 12, 2022.  Annie Lee Oliver, Jeremy Wright, and Jeremy Wright as Personal Representative of the Estate of Michael Benford v. Pemiscot County; Tommy Greenwell, Individually and in His Official Capacity; et al. Case No. 19-CV-00137 (SNLJ).

**Deposition:**  April 13, 2022.  March 1, 2022.  Lourdes Vaughan (Richard Posadas Deceased) et al.  v. City of Arvin, et al.  Case No.: 1:20-CV-00473-NONE-JLT

**Trial:**  April 15, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior Court, (Contra Costa County) Case No.: MSC20-01316.

**Deposition:**  April 19, 2022.  Estate of Eric Esteban Briceno, Deceased, et al, v. County of Los Angeles, et al. Case No.: 2:21-cv-01388-SB-E

**Deposition:**  April 20, 2022.  Breya A Barello, vs. County of Los Angeles, Alex Saldana, Edward Gonsalves, et al., Case No.: 2:21-cv-01909-FMO-AGR.

**Deposition:**  April 22, 2022.  Nathan Schneider v. County of Sacramento, et al.  Case No.: 2:20-cv-00383 TLN-EFB.

**Deposition:**  April 28, 2022.  2318.  Anthony Echevarria, v. City of Santa Monica, et al.  Case

No.: 2:21-CV-05603 SVW-AGR.

**Deposition:**  April 29, 2022.  Jose Luis Rodriguez, Jr. v. City of Salinas, Et Al. (Kile, Pritt, Neff).  Case #: Monterey County Superior Court 20CV001293.

**Deposition:**  May 2, 2022. Deandre Bolden, v. Contra Costa County, et al.  Case No.: 3:20-CV-04254 SK.

**Deposition:**  May 9, 2022.  William Wynne, Administrator of the Estate of Andrew Lenetis, vs. Town of East Hartford, Officer Kevin Beeman, and Officer Kwanza Clayton, Case No.: 3:20-cv-01834.

**Deposition:**  May 17, 2022.  Cindy Wagner vs. Shasta County, Shasta County Sheriff's Department, et al., Case No.: 2:20-CV-000403-JAM-DMC.

**Deposition:**  May 24, 2022  Maria Elena Vazquez, et al. v. City of San Jose, et al.  Case No.: 5:19-cv-08441-EJD.

**Trial:**  May 25, 2022.  Araceli Flores (Juan Barillas), v. City of Los Angeles, et al.  Case No. 2:18-cv-09936.

**Trial:**  June 1 & 2, 2022.  The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Deposition:**  June 3, 2022.  Rosalina Calonge vs. City of San Jose, a Municipal Public Entity; Edward Carboni, et al., Case No.: 20-CV-07429 NC.

**Deposition:**  June 9, 2022.  R.E., et al.  v. State of California, et al.; Case No. 2:21-cv-06072-SB-KS.

**Deposition:**  June 14, 2022.  Charles Hayes v. Las Vegas Metropolitan Police Department, Case No.:. 2:20-cv-02048-KJD-BNW.

**Trial:**  June 16 &17, 2022.  Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-01605-NC.

**Deposition:**  June 20, 2022.  Greg Banks, and Alexis Avalos, vs. Michael Mortimer; Ryan White; City of Antioch; Dawnmarie Delucchi, et al, Case No.: 4:18-cv-07931-HSG.

**Trial:** July 14, 2022. V.V., et al. v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:** July 19, 2022: Israel Hernandez and Jully Romero, vs. City of Los Angeles, OfficerJames Welch, Detective Jose Chavez, el al., Case No.: 2:19-cv-00441.

**Trial:** July 28, & 29, 2022: Jennifer Landeros, Individually and as Successor in Interest to Daniel Landeros, et al., v. City of Elk Grove, et al. Case No.: 2:17-cv-02598-KJM-CKD.

**Trial:** August 4, 2022. State of Texas v. Russell Butler, Burnet County, (Texas) District Court Case No.: DA-19-0029

**Deposition:** August 8, 2022. Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK.

**Deposition:** August 17, 2022. John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Deposition:** August 18, 2022. I.C.E. Agent Demetrik Herd, v. County of San Bernardino, et al. Case No. 5:20-CV-02335-JWH-KKX.

**Deposition:** August 19, 2022. Deposition #2335. Benjamin Montemayor, v. City of Los Angeles, et al. Case No.: 2:21-cv-03124 CBM (ASx) (Related to Case No. 2:20-cv-05027-CBM (Asx).

**Deposition:** August 22, 2022. Cole Wilkins v. Wesley VanDiver and Joseph Morrison.; Case No. 8:20-cv-02417-JSL (DFMx)

**Deposition:** August 23, 2022. Mario Carrasco, v. Glendora Police Department, et al. Case No.: 2:21-cv-05965-MWF-AS.

**Deposition:** August 25, 2022. Vega-Colon v. City of Wethersfield, et al. Case No: 3:21-cv-00175 (KAD).

**Disciplinary** Hearing: September 7, 2022.  Hillsborough County (Florida) Sheriff's Department v. Deputy Kirby Lavallee Case No.: 1208-036

**Deposition:** September 15, 2022. Kinberly Perez, et al. v. County of Sacramento, et al. Case No.: 2:21-cv-00356-TLN-JDP

**Deposition:** September 20, 2022. S.C.D.P.,(Brian Statler, Jr. Deceased), et all. v. City of Inglewood, et al. Case No.: 2:19-cv-10712-DMG-MRW.

**Deposition:** September 21, 2022. Vangv. City of Sacramento, et al.;Case No.:2:19-cv-00374-JAM-JDP

**Deposition:** September 22, 2022. Kelly Lorenz and Alykhan Popat v. Superior Court of San Bernardino, et al. Case No. 5:22-cv-00143-PA-JPR

**Deposition**: September 23, 2022. Gary Salzman, et al., vs. County of Los Angeles, et al., Case No.: 21-CV-4604-PA-SK.

**Trial:** October 12, 2022. Kimberly Marroquin, vs. Unidentified LAPD Officer (Dimaggio Rico); Captain Richard Paul Stabile; City of Los Angeles, et al., Case No.: 2:21-cv-07607-RGK-JEM.

**Trial:** October 14, 2022, and October 19, 2022. Vangv. City of Sacramento, et al.;Case No.:2:19-cv-00374-JAM-JDP

**Trial:** October 18, 2022. Diane Lang (Donnell Lang) v. City of Redding, et al, Superior Court (Shasta County) Case No. 193947.

**Deposition:** October 20, 2022. Michael George Tater and Kyla Skye Staniskis (Shannon Michelle Tater deceased), v. City of Huntington Beach, et al. , et al. Case No.: 8:20-cv-01772 Case No. 8:20-cv-01772-MEMF-JDEx.

**Deposition:** October 26, 2022. Cyrus Greene, vs. Bay Area Rapid Transit, a Municipal Corporation; P. Chehal (#684), Individually; T. Matthews (#716) Individually, et al., Case No.: 4:21-cv-00113-DMR.

**Deposition:** October 28, 2022. Nicholas Ramirez, v. City of San Jose, et al., Case No.:5:21-CV-08127-VKD

**Deposition:**  November 3, 2022.  Akaysia Pearson, et al. v. Otto Aragon, et al., Case No. 3:20-05726-CRB

**Deposition:** November 9, 2022. John Bien, Vs. City of Fresno, Brad Oliver, et al., Case No.:1:20-CV-01159-AWI-BAM.

**Deposition:**  November 11, 2022.  Hector Hernandez, et al. v. City of Fullerton, et al. Case No.: 8:20-cv-01747-CJC-JDE

**Trial:** November30, 2022 and December 1, 2022.  People v. Ricky Butler, 2022.  San Bernardino County (California) Superior Court DA Case No. 2017-00-0042929.

**Deposition:**  December 19, 2022.  Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:**  December 22, 2022.  Joseph L. Garces vs. City of Santa Paula, a municipal entity, Officer Chris Rivera; Case No.: 2:21-cv-06730.

**Deposition:**  December 23, 2022.  City of Santa Ana, et al. v. Orange County Association for

Mental Health DBA Mental Health Association of Orange County, et al., Case No. 30-2020-01124174-CU-MC-CJC.

**Deposition:**  December 28, 2022.  Scottlynn Moorman, (Minor), v. City of San Bernardino, et al.  Case No. CIVDS1818724

**Deposition:**  December 30, 2022.  Bryanna Berry v City of San Jose Officer Lindsay Parodi (4426), CASE NO.: 5:21-cv-8436

**Deposition:**  January 4, 2023.  Cecilia Vargas, et al. v. County of San Bernardino, et al. Case No.: 5:20-cv-02646-JGB-KK.

**Deposition:**  January 10, 2023. Estate of Oral W. Nunis, et al v. City of Chula Vista, et al. Case No.: 3:21-cv-01627-AJB-DEB

**Deposition:**  January 12, 2023.  Estate of Nicholas Burgos, et al. v. County of Los Angels, et al.  Case No. : 2:21-cv-05566.

**Deposition:**  January 19, 2023.  Myles Ramsey, v. City of Santa Ana, Peter Beaumarchais, Jeremy Reguerin, Ronald Sandoval, Christopher; Shynn, and Peter Thai.  Case N.: 8:21-cv-00825-JLS-KES.

**Deposition:**  January 20, 2023.  Abbie Gray, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC6869939

**Deposition:**  February 1 2023.  Ayana Maroney, vs. County of Riverside, Deputy Mark Rodriguez, Deputy David Ruiz; et al., Case No: 5:21-cv-00497-JGB (SPx).

**Deposition:**  February 6, 2023.  Irina Rusanovskaya, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. 20STCV33203

**Deposition:**  February 9, 2023,  David Cordero, v. City and County of San Francisco, et al.  Case No.: 3;19-cv-01834.

**Deposition:**  February 13, 2023.  Ignacio Escalante, v. County of Los Angeles, et al.  Superior Court (Los Angeles County) Case No.: 19STCV29783.

**Deposition**:  February 15, 2023.  Edwin Williams, v. County of San Bernardino, et al.  Superior Court (San Bernardino County), Case No. CIVDS1600447

**Deposition:**  February 16, 2023.  Julie Fernandez, v. City of Los Angeles; et al., Case No.: 2:20-cv-07306.

**Deposition:**  February 17, 2023.  David Baxter, v. City of Hemet, et al..  Case No.: 5:21-cv-

01331-JWH(SPx)

**Deposition:**  February 22, 2023.  Kyle Peterson v. County of Los Angeles, et al.  Case no: 2:21-cv-05510-JAK-ADS.

**Deposition:**  February 23, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition:**  February 24, 2023.  Maria Teresa Gonzalez, (Eloy Maris Gonzalez Jr., Deceased) v. County of Stanislaus, et al.     Case No: 1:21-cv-01091 DAD-HBK

**Deposition:**  March 9, 2023.  Eric Reason, et al v. Sergeant Virgal Thomas, and City of Richmond, et al.  Case No.: 2:20-cv-1900 WBS-JDP

**Deposition:**  March 14, 2023.  Charles Hayes v. Kern County et al.  Case No.: 1:19-cv-01722 BAK

**Trial:**  March 22, 2023 and March 23, 2023,  Irina Rusanovskaya, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. 20STCV33203.

**Trial:**  March 30, 2023.  Marina Borawick, v. City of  Los Angeles, et al.  Case No. 2:17-cv-02036 BRO-JC

**Trial:**  April 19, 2023.  D.T., a Minor by and Through His Guardian Tanika Tyler  vs. San Diego Metropolitan Transit Services, et al., Case No.: 3:19-cv-1523-LAB-AHG.

**Trial:**  April 21, 2023 & April 24, 2023.  The Estate of Clemente Najera-Aguirre, et al, vs. County of Riverside, et al.  Case No.: 5:18-cv-00762-DMG-SP.

**Trial**:  April 24, 2023.  Christian Pineda, vs. City of Los Angeles; Chief Michel Moore; Colton Haney, and Stephen McClean, Case No.: 2:21-cv-06470-CBM-ASx.

**Deposition:**  May 3, 2023.  The Estate of Jose Alfredo Castro Gutierrez, et al.  v. The City of San Diego, et al.  Case No:. 21-cv-01292  H-BGS

**Deposition:**  May 9, 2023.  Jeremy James Cotten, et al, v. City of Los Angeles et al. Superior Court Case No.: Case No.: 19STCV40052

**Deposition:**  May 11, 2023.  Nicole Hook, and Jonson Tyler Hook, v. City of Redding, et al.  Case No.: 2:20-cv-02365- MCE-DMC.

**Deposition:**  May 15, 2023: Gabrielle Bynum, v. Cit of Los Angeles, et al., Case No.: 2:21-cv-4453 JPR

**Trial:** May 16, 2023 Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:** May 17, 2023 Ashley Blackmon, v. City of Beverly Hills, et al.  Case No.: 2:21-CV-08381

**Deposition:** June 8, 2023, Audery G., et al, v. City of Lafayette, et al.  Case No.:  3:21-cv-03545 WHO.

**Deposition:** June 8, 2023 Jolie Savage v. City of Whittier, et al.  USDC CASE NO. CV21-08067 VAP (PD).

**Deposition:** June 9, 2023.  Alma L. Figueroa De Magdaleno, et al., vs. County of Riverside, et al., Case No.: 5:21-cv-02027-JGB-SHK

**Deposition:** June 14, 2023.  Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** June 19, 2023.  2464.  Ernest Simon, Jr., an Individual,v. City of Los Angeles, et al.Case No.: 2:22-cv-01775 SSS-GJS.

**Trial:** June 22, 2023.  A.G.1., a Minor (Raymond, Gonzalez) et al. v. City of Fresno, et al.  Case No. 1:16-CV-01914 JO-SAB

**Deposition:** June 26, 2023.  Matthew Wilson and L.M., individually and as a successor-interest to Decedent, Joshua Barnes, by and through her Guardian ad Litem Tilde Barnes vs. California Highway Patrol Officers Kevin Domby; Sean Deise and Jose Ortega, et al., Case No.: 21-CV-03824-M.C.

**Deposition:** June 27, 2023.  Kyle Johnson vs. City of San Jose; San Jose Police Department Officer James Adgar, et al., Case No. 5:21-cv-01849-BLF.

**Deposition:** June 30, 2023.  Robert W. Hirsh v. California Commerce Club, Inc., et al. U.S.D.C. Case No. 2:22-cv-05701-MCS-AS.

**Deposition:** July 6, 2023.  Calvin Rush Annd Jayme Rush, v. City of Fairfield, Officers Zachary Sandoval and Dustin Joseph.  Case No.: 2:20-CV-01966-WBS-KJN.

**Deposition:** July 11, 2023.  Bashar Zeidan vs. City of Richmond; Case No. 3:21-cv-04010-TLT.

**Deposition:** July 17, 2023.  Tracy Pachote, et al., vs. County of Contra Costa, et al. 3:21-cv-04097-SK.

**Deposition:** July 19, 2023.  Gloria Black-Meadows, (Lashanda Anderson Deceased) et al, vs. Deptford Township, et al.  Case No.: 1:20-cv-06951.

**Deposition:** July 21, 2023.  Angelina Atabekova-Michaelidis and Vardoui Michaelidou; (Melkon Michaelidis deceased), vs. City of Los Angeles, et al.  Case No.: 2:22-cv-05620 - MCS-MAAx.

**Deposition:** July 22, 2023.  Pamela Reny Monk, v.  Matthew Diller, Amal Pal, Brad Gorby, Shawn Murphy, Matthew Mcnulty, Los Angeles Police Department, et al.  Case No. BC660220

**Deposition:** July 26, 2023.  Jeanette Ayala-Rios, vs. California Highway Patrol, Officers Jordan W. Richardson, Michael W. Richardson, Ubaldo Ferreira, Matthew Barawed, Brent R. Logar, et al., Case No.: 4:22-cv-02550HSG.

**Deposition:** July 27, 2023.  Maria Elena Garcia, et al. vs. City of Farmersville, et al. Case No. 1:21-cv-00482-JLT-EPG

**Deposition:** August 1, 2023.  Mary Ellen Lennox, (Jordan Zenka, deceases(, v. City of Sacramento, et al,  Case No.: 2:21-CV-02075-TLN-KJN

**Trial:** August 3 & 4, 2023.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Trial:** August 9 & 10, 2023.  Desabian Wilson, Edwin (Edwin Williams deceased). v. San Bernardino County, et al.  Superior Court Case No.: CIVDS1600447.

**Deposition:** August 14, 2023.  Foucha Coner, v. City of Sacramento, et al.  Superior Court Case No.: 34-2020-00285118

**Deposition:** August 18, 2023.  Braydon Lee Esqueda, vs. County of San Bernardino; Wynn Srisutasanavong and Cory Vigil, et al., Case No.: 5:20-cv-01743-MWF-SHK

**Deposition:** August 22, 2023.  Deovante L. Guy, by and through the Guardian Ad Litem for Deovante L. Guy, Quintasia Walker vs. Matthew Lorenzen; Annie Brady, et al., Case No.

**Deposition:** August 25, 2023.  Nathan Rocky Glover, v. City of Los Angeles, et al.  Case No.: CV21-09915 FWS (ASx).

**Deposition:** August 29, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: - 20STCV34657.

**Trial:**  August 30, 2023.  Winston Durrell Settrini, v. City of San Diego, et al.  Case No.: 20-cv-02273 CAB-BGS.

**Deposition:**  September 11, 2023.  Richard Payne, Janchai Payne, K.P. a minor, v, City of Los Angeles, et al.  Case No.: 2:17-cv-09044 (Ksx)

**Deposition:**  September 12, 2023.  Ellen Williams, also known as Ellen Girma, an individual, v. City of Pleasanton, et al.  Case No.: 3:20-cv-08720 WHO

**Deposition:**  September 13, 2023.  Art Hernandez, Alfred Gonzalez, Benjamin Zaredini, David Casas, Louis Granados, Mario Contreras, Oscar Escobedo, Ariela Lemus, et al. v. County of Loa Angeles, Los Angeles County Sheriff's Department (LASD), et al. Case No.: 19STCV33158.

**Deposition:**  September 18, 2023.  Emily Garcia and C.G. et al. vs. City of Tustin, Estella Silva, et al., Case No.: 8:22-cv-00131.

**Trial:**  September 19, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: -20STCV34657.

**Deposition:**  October 2, 2023.  Estate of David Angel Villalobos Valdovinos,  by its successor in interest Eve Samantha Arriaga, et al., vs. Ryan Gonsalves, the United States of America, et al., Case No.: 22-cv-0315-L-AHG.

**Deposition:**  October 5, 2023.  Arnold Day, v. Kenneth Boudreau, William Foley, Jude Evans, Michael Kill, Dan Mcweeny, James Brennan, Anthony Watson, Marty Radtke, City of Chicago, and Unidentified Employees of the City of Chicago . Case No.: 19-cv-07286.

**Deposition:**  October 11, 2023.  Matthew D. Rifat, and Tracy M. Rifat, v. Dave Jones; David Steele; et al.  Case No.: 21-CV-1667-L-KSC.

**Deposition**:  October 18, 2023.  Brenda Allen vs. State of California, Department of Corrections and Rehabilitation, Corrections Officer O. Barraza, Corrections Officer V. Veloz, Corrections Officer M. Roque, Sergeant Amaya, et al., Case No.: 5:22-CV-01288-RGK-PLA.

**Trial:**  October 20, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition**:  October 23, 2023.  Deshawn M. Wright, v. City of San Bernardino, et al  Case No.: 5:22-cv-001327-GW-(JCx).

**Trial:**  October 27, 2023.  John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Trial:** November 1, 2023. Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** November 3, 2023. Jose Gutierrez, v. County of Los Angeles, et al. Case No.: 2:21-cv-08223 FMO-PLKA

**Trial:** November 6, 2023. Francisco Rodriguez, v. Los Angeles Dodgers, et al. Superior Court, (Los Angeles County) BC714498

**Deposition:** November 7, 2023. Jimmy Southern, (Jeremy Southern deceased), v. City of Sacramento, et al. Case No.: 2:20-CV-01765 - MCE-AC

**Deposition:** November 14, 2023. Blanca & Brian Mendoza v. City of Hanford, et al. Case No.: 1:21-cv-00721 JLT-BAM

**Deposition:** November 15, 2023. Ricardo Martinez, v. County of Orange, et al. Superior Court Case No.: 30-2021-01208196 CU-NP- NJC.

**Deposition:** November 30, 2023. Dora Galinda, et al., vs. City and County of San Francisco, et al., Case No.: 3:21-cv-08133-JSC.

**Deposition:** December 5, 2023. Deonta Jackson, Plaintiff, vs. City of Los Angeles; Victor Morales #96038, individually, and as a Peace Officer; et al., Case No.: 2:22-cv-06523.

**Deposition:** December 8, 2023. Maria Segura, et al. v. City of San Bernardino, et al. Case No.: 5:22-cv-00277-JGB-SP.

**Deposition:** December 11, 2023. Kendrick Sampson v. City of Los Angeles, et al. Case No.: 2:22-cv-03346 JAK-ADS

**Deposition:** December 22, 2023. Carlos Towns, & Barsha Knox, v. County of Los Angeles, rt al. Case No.: 2:23-cv-01635-MEMF-PD.

**Deposition:** January 2, 2024. Daniel Cohen vs. Los Angeles County, et al., Case No.: CV15-3376 RSWL AGR.

**Deposition:** January 3, 2024. Xavier Lopez, v. City of Riverside, et al. Case No.: 5:21-cv-02140 ODW.

**Deposition:** January 5, 2024. Maribel Murillo v. City of Los Angeles, et al., USCD Case No. 2:22-cv-03188 DMG (Skx).

**Deposition:** January 9, 2024. Ronnie Parham v. City of West Covina, Officer N. Robles,

Officer C. Gonzalez, Officer A. Hernandez and Officer M. Munoz.  Case No.: 2:21-cv-09114.

**Deposition:**  January 11, 2024.  Slade Douglas, v. City of Las Angeles, et al.  Case No. 2:20-cv-07439-FMO(PDx.

**Deposition:**  January 12, 2024.  Jessica Romero and Brian Roserio, v. Los Angeles County, et al. Case No.: 2:21-cv-03972-FLA-JEM.

**Deposition**:  January 15, 2024.  Jessica Woodward, Vishal Singh, Scott Taylor, and Erik Boyd,, et al. vs. City of Los Angeles, et al. USDC C.D. Cal., Case No. 2:22-cv-01306 GW-JEM.

**Deposition:**  January 16, 2024.  Edwin Vasquez, v. City of Los Angeles, et al.  Case No.: 2:22-cv-04661 DSF-MRW.

**Deposition:**  January 19, 2024.  Daniel Antunez v. LA Dodgers, LLC, et al.  Case No.: 19STCV13057.

**Hearing:**  January 22, 2024 and January 22, 2024.  Douglas Ray Stankewitz, Petitioner, On Habeas Corpus, Fresno County Superior Court Case No.: 21CRWR685993.

**Deposition:**  January 29, 2024.  Matthew Stewart, v. City of Los Angeles, et al.  Case No.: 2:22-cv-04922.

**Deposition:**  January 31, 2024.  Ricardo Dennis Cordova v. Deputy Sheriff Aaron Clark, Lake County, et al; Case No.: 4:18-cv-00367-JSW.

**Deposition:**  February 2, 2024.  Anastasia Martinez v. County of Los Angeles, et al. USDC CASE NO. CV22-06589 DSF (MAR).

**Deposition**:  February 8, 2024.  Estate of Rosendo Olivio vs. City of Los Angeles, USDC Case Number: 2:23-cv-01516-FMO-E.

**Deposition:**  February 13, 2024.  Michael Deleon, v. City of ;Los Angeles, Detective Jose Martinez, et al.  Case No.: 2:22-cv-06315 AB-MA.

**Deposition:**  February 15, 2024.  Adrian Abelar, v. County of Los Angeles, Los Angeles County Sheriffs Department, Deputy Yen Liu, et al.  Case No.: 2:23-cv-01606R GK (MRWx).

**Trial:**  February 21, 2024.  Daniel Antunez v. LA Dodgers, LLC, et al.  Case No.: 19STCV13057.

**Trial:**  March 1, 2024.  The State of Texas v, Deputy James Johnson and Deputy Zachary Camden Judicial District Court Travis County (Texas) Case No.: DPS 09990017

**Trial:**  March 13, 2024.  Daniel Cohen, v. Los Angeles County, et al.  Case No: 2:15-CV-03576 JAK

**Deposition:**  March 14, 2024.   Frank Benavente and Nicole Ventress v. City of Ontario and Albert Alvarado, Case No.: 5:23-cv-00266-SSS-KK.

**Deposition:**  March 25, 2024.  Cristina Ramirez Fonua; B.E.R., et al. v.  City of Hayward, Kyle Martinez, et al.  Case No.: 3:21-cv-03644 RS.

**Trial**:  April 22, 2024. Scottlynn Moorman, (Minor), v. City of San Bernardino, et al.  Case No. CIVDS1818724.

**Trial:**  April 24, 2024.  Estate of Oral W. Nunis, et al v. City of Chula Vista, et al.  Case 3:21-cv-01627-AJB-DEB.

**Deposition:**  April 25, 2024.  Melina Abdullah v. City of Los Angeles, et al.  Superior Court Case No.: 21STCV34800.

**Trial**:  April 30, 2024.  DeShaun Johnson. v.  Officer Ryan Morning.  Case No: 21-cv-00879.

**Trial:**  May 1, 2024.  Kelly Jones (Michael Townsend Deceased), v. City of Portland.  Case No.: 22CV05575 (Oregon).

**Deposition**:  May 9, 2024.  Frances Enyart, (William Enyart, Deceased), v. County of San Bernardino, et al., Case No.: 5:23-cv-00540-RGK-KK.

**Deposition:**  May 10, 2024.  Sergeant Frederick Villalpando,v. State of California, et. al.. Superior Court Case No.: CVDS2018655.

**Deposition:**  May 13, 2024.  Juvenal Nunez, v. County of Los Angeles, et al.  Case No.: 2:23-cv-04409- MCS (PVCx).

**Trial:**  May 17, 2024.  Melina Abdullah v. City of Los Angeles, et al.  Superior Court Case No.: 21STCV34800

**Deposition:**  May 20, 2024.  Esteban Hernandez, v, City of Rialto, et al.  Case No. 5:22-cv-01807

**Deposition:**  May 21, 2024.  Christina Cardenas, v. California Department of Corrections, et al. Case No.: BCV-20-101420.

**Trial**:  May 22, 2024.  Frances Enyart, (William Enyart, Deceased), v. County of San Bernardino, et al., Case No.: 5:23-cv-00540-RGK-KK.

**Hearing:**  May 28, 2024.  Sergeant Frederick Villalpando, v. State of California, et. al.  Case No.: CVDS2018655.  (San Bernardino County)

**Trial:**  May 29, 2024. .  Shana Anglin; Christopher Dean Ebersole, and minors Elijiah Makar and Rozlynn Makar, through their Guardian Ad Litem Shana Anglin, vs. Patrice Loraine Burton; Alex Villanueva, in his official capacity as Sheriff of Los Angeles County, et al., Case No.: 21STCV17381.

**Deposition:** May 31, 2024.  Mari Ann Sartor and Roy Eugene Jackson, individually, and as successors in interest to Jay J. Jackson, vs. County of Riverside; Robert Carrasco; et al., Case No.: 5:22-cv 01410 JGB (Spx).

**Deposition:**  June 3, 2024.  Jonathan Peltz and Kathleen Gallagher, v. City of Los Angeles, et al. Case No.: 2:22-cv-03106-MWF-AGR

**Deposition:**  June 4, 2024.  McKinley Kekona, Jr. v. City of San Diego, Officer Allen (#7372), and DOES 1 through 10, inclusive, Case No. 3:22-cv-00745-MMA-WVG

**Deposition:**  June 7, 2024Phillip Brooks, v. City of Palm Phillip Brooks,  Case No.: 5:12-cv-00745 JGB-SP:

**Deposition**:  June 14, 2024.  Vincent Bryant, et al. v. City of Berkeley, et al.; Case No.: 3:21-cv-08169-AGT.

**Trial:**  June 18, 2024,.  Lawrence, et al. v. Las Vegas Metropolitan Police Department, et al. (USDC Case No. 2:16-cv-03039-JCM-NJK)

**Deposition:**  June 24, 2024.  Joseph Frias vs. County of San Diego, et al., Case No: 3:22-cv-00675-JO-AHG.

**Deposition:**  June 25, 2024.  Danielle Houston, v, City of Fairfield, et. al,.  Case No.: 2:22-cv-01045 JAM DB.

**Deposition:**  July 1, 2024.  Adrian Aldaco, v. Los Angeles Police Department, et al. Case No.: 2:23-cv-03585 HDV-AGR.

**Deposition:**  July 5, 2024.  Alexander Torres, v. County of Los Angeles, et al.  Case No.: 2:22-cv-07450 MWF-MAR.

**Trial:**  July 15, 2024.  Jessica Romero and Brian Roserio, v. Los Angeles County, et al., Case No.: 2:21-cv-03972-FLA-JEM.

**Deposition:**  July 19, 2024.  Edgar Solis, v. County of Riverside; State of California, et al. Case No.: 23-cv-00515 HDV-JPR

**Deposition:**  July 21, 2024,  Maritza Padilla, et al, v. California Highway Patrol et al.  Case No.: 22STCV00661.

**Deposition:**  July 24, 2024.  David Zuniga, v. City of Los Angeles, et al., Case No.: 2:22-cv-03665-CBM-AS.

**Deposition:**  July 30, 2024.  Michael Shoar and Cindy Shoar, v. Orange County, et al.  Superior Court (Orange County) Case No.:·30-2019-01061107.

**Deposition:**  July 31, 2024.  Gerald LaMont Pitts, v California Highway Patrol (CHP), et al. Case No: 2:20-cv-01243 WBS-JDP

**Deposition:**  August 2, 2024  Therese l. Lesher, v. City of Anderson, et al.  Case No.: 2:21-cv-00386-WBS-DMC

**Deposition:**  August 19, 2024.  Ricky Butler vs. County of San Bernardino, et al.  Case No.: 5:23-cv-02147RGK-E

**Deposition:**  August 20, 2024,  Arash Eteghaei and Mitra Zade, v, County of Almeda, et al. Case No.: 4:22-cv-04298 KAW

**Deposition:**  August 21, 2024.  A.H. and H.H, (Shane Holland, deceased), et al. v. County of San Bernardino, et al.  Case No.: 5:23-cv-01028 JGB-SHK.

**Deposition:**  August 23, 2024, and August 28, 2024.  Christina Astorga (Khan, et al.) v. City of Los Angeles, et al.,  C.D. Cal. Case No. 21-CV-03289-CAS (MARx)

**Deposition:**  August 26, 2024.  Bruno Mattar Lima, v. City of Los Angeles, et al.  Case No.: 21STCV26150.

**Deposition:**  August 30, 2024, Juan Oseguera, v. City of Hayward, Officer J. Lutzinger et al. Case No.: Case No;: 3:23-cv-00621 - SK

**Deposition:**  September 3, 2024.  The Estate of Omar Moreno Arroyo, et al. v. The County of San Diego, et al. Case No: 21-cv-01956-RBM-SBC.

**Deposition**:  September 5, 2024.  Derek Stenson (Joshua Sarrett deceased) v. Jacob Leenstra and King County et al.  Case No.:  2:23-cv-01316 (Washington).

**Deposition:**  September 6, 2024.  Salvador Garcia, et al. v. County of Los Angeles, et al.  Los Angeles County Superior Court Case No 20STCV00967.

**Trial:**  September 11, 2024.  Anyka Harris, et al. v. City of Tulare, et al.  Superior Court Case No.: VCU299232.

**Deposition:**  September 13, 2024.  William Schell Morton v. County of San Bernardino, et al.  Case No.: 5:21-cv-00052 JGB-SHK.

**Deposition:**  September 16, 2024.  Juan Laspada and Rebecca Rodriguez, v. City of Antioch and Antioch Police Officers, et al.  Case No.23-cv-01955-JSC.

**Trial:**  September 18, 2024.  2632.  People v. Alfredo Armando Morales.  Superior Court, (San Bernardino County).  Case No.:16CR-004762.

**Deposition:**  September 25, 2024.  Samuel D. Castro, v. City of Whittier, et al.  Case No.: Case No.: 2:2023-cv-03424-DSF-RAO.

**Trial:**  October 7, 2024.  David Zuniga, v. City of Los Angeles, et al., Case No.: 2:22-cv-03665-CBM-AS.

**Trial**:  October 10, 2024.  Estate of Tyler S. Rushing, Scott K. Rushing, and Paula L. Rushing, vs. AG Private Protection, Inc.; Edgar Sanchez, City of Chico Police Department, et al., Case No. 2:18-cv-01692-MCE-AC

**Deposition:**  October 14, 2024.  William Martin and Michael Martin, vs. Miami-Dade County (Florida), et al.  Case No.: 20-CV-22107-MGC

**Deposition:**  October 15, 2024.  Mariela Valadez, (Cristopher Valadez deceased), et al. v. City of Rialto, et al.  Case No.: CIVSB2200927.

**Trial:**  October 17, 2024.  Michael Shoar and Cindy Shoar, v. Orange County, et al.  Superior Court (Orange County)  Case No.:·30-2019-01061107.

**Deposition:**  October 18, 2024.  Shawn Brye, v. City of Stockton, et al.  Case No.: 2:23-CV-00343 KJM-KJN

**Trial:**  October 22, 2024:  Paxton Williams, v. Des Moines, et al.  USDC Case No. 4:22-cv-240 SBJ.

**Deposition:**  October 28, 2024. Julio Jimenez Lopez and Yesenia Cruz Cruz vs. City of San Rafael; San Rafael Police Department; Daisy Mazariegos; and Brandon Nail.  Case No. 3:23-cv-03652-VC.

**Deposition:**  October 29, 2024.  Sarah Aragon, v. City of Los Angeles, et al.  Case No.: 2:23-cv-09522 DDP (JPRx).

**Trial:**  November 7, 2024.  Gerald LaMont Pitts, v California Highway Patrol (CHP), et al. Case No: 2:20-cv-01243 WBS-JDP

**Deposition:**  November 8, 2024.  Ari Gold and Liza Gold v. California Highway Patrol, et al.Case No.: 5:23-cv-03414-CRJ.

**Deposition:**  November 14, 2024.  Michael Goulding, (Jana Goulding, Deceased), et al, v. City of Placentia, Officer Larrissa Perez, et al. Case No.: 8:23-cv-02332-JWH-KES

**Deposition:**  November 15, 2024,  Helen Abascal vs. County of Los Angeles, et al.  Case No.: 2:23-cv-05246 HDV (Jcx).

**Deposition:**  November 19, 2024.  Jay Campos (Joshua Campos, deceased), et al. v. , County of Orange, et al.  Case No.: 8:23-cv-00072 JVS (JDEx).

**Deposition:**  November 20, 2024. Estate of Richard Ward, and Kristy Ward Stamp, v. Pueblo County, et al. (Colorado).  Case No.: 23-cv-00473-CNS-MBD

**Trial:**  December 4, 2024.  Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK

**Deposition:**  December 7, 2024.  Felix Tellez, v. County of Riverside, et al.  Case No. 5:23-CV-00755-WLH-SHK

**Deposition:**  December 9, 2024.  Bueno-Zaragoza et al. v. Lynch et al.  Case No. 2:21-CV-02294-TLN-JDP

**Deposition:**  December 10, 2024.  Veronica Gonzalez and Juan Luis Duran v. City of Tustin, et. al. Case No;: 8:23:-cv-01274 FWS (ADSX)

**Deposition:**  December 11, 2024.  Therese l. Lesher, v. City of Anderson, et al. Case No.: 2:21-cv-00386-WBS-DMC.

**Deposition:**  December 17, 2024.  The Estate of Richard Risher, Jr., et al. v. City of Los Angeles, et al. Court Case No. 5:17-cv-00995-MWF-KK

**Deposition:**  January 6, 2025.  Monica Valdez, vs. City of Whittier; Officer Gamino; Officer Corona; Officer Baltazar; Officer Estrada, et al., Case No.: 2:23-cv-04668-SPG-KS.

**Deposition:**  January 7, 2025.  D.E., a Minor, by and through his Guardian Ad Litem, Brittany Dominguez, v. Los Angeles Police Department, et al.

**Trial:**  January 10, 2025.  Kyle Johnson vs. City of San Jose; San Jose Police Department Officer James Adgar, et al., Case No. 5:21-cv-01849-BLF.

**Deposition:**  January 16, 2025.  Jacy Houseton and Damon Barnes, v. County of Los Angeles, Deputy Trevor Kirk.  Case No.: 2:23-cv-06887-SVW-MRW

**Deposition**:  January 20, 2025,  Todderick Randall, v. County of San Bernardino, et al.  Case No. 5:24-cv-00086-SSS-SP

**Deposition:**  January 23, 2025.  Allen Dekeyser vs. Milwaukee Police Officer Leon Burns, et al, Case No.: 2:24-cv-00231.

**Deposition:**  February 1, 2025.  Brian Howell v. County of Kern, et al.  Superior Court (Kern County) Case No. BCV-20-103043.

**Trial:**  February 5, 2025.  United States of America, v. Trevor James Kirk.  Case No.: 2:24-CR-527-SVW

**Trial:**  February 6, 2025.  The Estate of Richard Risher, Jr., et al. v. City of Los Angeles, et al. Court Case No. 5:17-cv-00995-MWF-KK

**Deposition:**  February 13, 2025, Nicholas Schwab (Alivia Schwab, deceased), v. Morris Police Officer Nicholas Pampinella, et al., Case No.: 1:23-cv-16607.

**Deposition:**  February 14, 2025.  Armando Munoz v. City of Costa Mesa, et al. Case No. 8:23-cv-01959-JWH-ADS

**Trial:** February 20, 2025 & February 24, 2025.  Edgar Solis, v. County of Riverside; State of California, et al. Case No.: 23-cv-00515 HDV-JPR

**Trial:**  February 21, 2025.  Maritza Padilla, et al, v. California Highway Patrol et al.  Case No.: 22STCV00661.

**Deposition:**  February 25, 2025.  Leonides Enriquez, v. City of Long Beach, et al.  Case No.: 2:23-cv-06464-ODW-AJR

**Deposition:** March 11, 2025, and March 14, 2025.  L.C., et al. v. State of California, et al., case No. 5:22-cv-00949-KK-SHK, & Botten, et al. v. State of California, et al., case no.5:23-cv-00257-KK-SHK

**Trial:** March 12, 2025.  Jay Campos, et al. County of Orange, et al.  Case No.: 8:23-cv-00072-WLH-JDE

**Deposition:** March 27, 2025.  Jaylen Fisher vs. Officer Grady Kissee #3102 Individually and in the capacity as a Columbus Police Officer, The City of Columbus, Ohio, Columbus Police Department, et al. Case No.: 2:24-cv-00906.

**Trial:** April 9, 2025.  Rosalina Calonge vs. City of San Jose, a Municipal Public Entity; Edward Carboni, et al., Case No.: 20-CV-07429 NC.

**Deposition**:  April 10, 2025.  Johnathan Cain, v. County of San Bernardino, et al.  Case No.: 5:24-cv-01682-KK-SHK.

**Deposition:** April 15, 2025.  S.L., a minor (Johnny Ray Llamas deceased), et al. v County of Riverside, et al.  Case: No.: 5:24-cv-00249-CAS-SP.

**Trial**:  April 17 & 18, 2025.  Helen Abascal vs. County of Los Angeles, et al.  Case No.: 2:23-cv-05246 HDV (Jcx).

**Deposition:** April 23, 2025.  Gwendolyn Adams, individually, and as successor in interest to D'son Woods, deceased; and Glenn Tyler Bolden, an individual, v. California Department of Corrections and Rehabilitation, a public entity, Michael William Becker, an individual, and DOES 1 through 50, inclusive.  Case No.:  CIVDS 1831184.

**Deposition:** April 24, 2025.  Gabriela Stephanie Barrios, v. Antelope Valley Chevrolet, Inc., Los Angeles Sheriff's Department, Detective Michael Gelardo, et al.  Case 2:23-cv-10476-AB-JC.

**Deposition:** April 29, 2025.  A.C., C.C. (Charles Chivrell deceased), vs. City of Arcata, Brian Hoffman, et al. Case No.: 4:22-cv-04804-HSG.  And  Estate of Charles Chivrell, et al. v. City of Arcata, State of California, California Highway Patrol (CHP), et al., Case No. 4:22-cv-00019-HSG.

**Trial:** May 7, 2025.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Deposition**:  May 8, 2025.  Paulette Smith (Albert R. Dorsey), v. City of Los Angeles, et al. Case No. 2:19-cv-05370 CAS-JC

**Deposition:** May 9, 2025.  Cuauhtemoc Lugo, vs. City of Los Angeles; Officer Carlos; Officer De Haro; Sergeant Johnson, Sergeant Kiefer, et al., Case No.: 2:24-cv-05496-RGK-E.

**Deposition**:  May 10, 2025.  Myesha Lopez, et al. v. County of Los Angeles, et al.  Case No.: 5:21-cv-00290 MEWF-SHK.

**Trial:**  May 13, 2025.  Gwendolyn Adams, et al. v. California Department of Corrections and Rehabilitation, a public entity, Michael William Becker, an individual, et al.  Case No.:  CIVDS 1831184.

**Deposition:**  May 14, 2025.  Samuel Rosas, v. Robert Glenn, et al.  Case No. 3:23-CV-04913-SK

**Deposition:**  May 15, 2025.  Vanessa Sanchez.: et al. v. County of Los Angeles, et al.  Case No.: 2:22-cv-00603-JAK-JEM

**Deposition:**  May 16, 2025.  S.L., a minor, (Luna) by and through her guardian ad litem, Patricia Guevara, v. City of Los Angeles et al.  Case No.: 2:24-cv-00679 MRA-AGR

**Deposition:**  May 19, 2025.  Sharon Sanders ,(Chris Smith deceased), v. North Las Vegas , et al.  Case No.: 2:24-cv-00845-CDS-NJK

**Trial:**  May 20, & 21, 2025.  Liza Gold, individually and as successor in interest to Ari Gold, v. California Highway Patrol, Christopher Weaver, Kristi Cho.

**Trial:**  May 22, 2025.  Leonides Enriquez, v. City of Long Beach, et al.  Case No.: 2:23-cv-06464-ODW-AJR.

**Deposition:**  May 28, 2025.  Ryan Garnow, v. Multi-County (Ohio) Correctional Center, et al.  Case No.: 3:23-cv-00743-JGC

**Deposition:**  May 29, 2025.  Lance Downes-Covington, et al, v. Las Vegas Metropolitan Police Department, et al.  Case No.: 2:20-cv-01790-CDS-DJA

**Deposition:**  May 30, 2025.  Isaac Anthony Romero vs. Riverside County Sheriff's Department, et al. USDC Case Number: 5:24-CV-192-JGB-SHK

**Deposition:**  June 4, 2025.  Andrew Gomes vs. California Highway Patrol, et al. USDC Case Number: 2:24-cv-00213-DSF-BFM

**Deposition:**  June 13, 2025.  E.V. and X.V., (Daniel Luis Valdivia deceased), et al, v. City of Covina, et al.  Case No.: 5:23-cv-01562

**Deposition:**  June 16, 2025.  Estate of Oscar Leon Sanchez, v. City of Los Angeles et al.  Case No.: 23STCV11956

**Deposition:**  June 17, 2025.  Estate of Richard Matus, et al,. v. County of Riverside, et al.  Case No.: 5:23-cv-00506-MEMF- SP.

**Trial:**  July 1, 2025. People v. Jonathan Rodriguez (Juvenile).  Case No.: EL1234A

**Trial:**  July 2, 2025.  David Baxter, v. City of Hemet, et al..  Case No.: 5:21-cv-01331-JWH(SPx)

**Deposition:**  July 8, 2025.  Kisana Carroll, and T.R., v. City of Stockton, et al.  Case No.: 2:23-cv-00194-DAD-DB

**Deposition**:  July 14, 2025.  Tynesha Dixon, & Ladonya Irvin, v. City of Los Angeles, et al. Case No.: 23STCV01320.

**Trial**.  July 15, 2025.  Estate of Oscar Leon Sanchez, v. City of Los Angeles et al.  Case No.: 23STCV11956.

**Deposition.**  July 22, 2025.  Estate of Michael Vasquez, v. County of Riverside, et al.  Case No. 5:23-cv-00988-JGB-KK.

**Deposition.**  July 24, 2025.  Joseph LaRocca, v. City of Los Angeles, et al.  Case No.: 24CVST07744.

**Deposition.**  July 25, 2025.  Estate of Miguel Chavez et al, v Santa Ana Police Department, et al. Case No.: 8:24-cv-1899 FWS-ADS

**Deposition:**  August 1, 2025.  Tawanda Chandler, in her capacity as the Personal Representative of the Estate of Christopher Lee, Plaintiff, vs. Tuscaloosa County, Alabama, et al., Case No.: 7:23-cv-01174-LSC.

**Deposition**   August 18, 2025.  Jane Doe v. County of Los Angeles, et al. Case No. 2:24-cv-08649-SPG(SKx)

**Deposition:**  August 24, 2025.  Shamika Collier, et al, v. County of Los Angeles, et al,  Case No.: 2:20-cv-02748-ODW-PVC

**Deposition:**  September 9, 2025.  Christopher Sean Mohan, v. City of Placentia, et al.  Case No.: 8:24-cv-01105-SB‒KES

**Trial:**  September 19, 2025 & September 23, 2025.  People v. San Rafael Police Officer Brandon Carl Nail,  Superior Court, (Marin County) Case No.: CR0000077.

**Trial**:  September 26, 2025  Paulette Smith (Albert R. Dorsey), v. City of Los Angeles, et al. Case No. 2:19-cv-05370 CAS-JC

**Deposition:**  October 1, 2025.  Taneysha Carter, vs. Officer Drew Lawrence, in his individual

capacity, City of Mesa, a municipality, el al., Case No.: 2:24-CV-00670-PHX-MTL.

**Trial:**  October 9, 2025.  Mari Ann Sartor and Roy Eugene Jackson, individually, and as successors in interest to Jay J. Jackson, vs. County of Riverside; Robert Carrasco; et al., Case No.: 5:22-cv 01410 JGB (Spx).

**Deposition:**  October 10, 2025.  Estate of Joseph Tracy, IV, et al. v. City of Hemet, et al.  Case No.: 5:23-cv-2641-JGB-DTB.

**Deposition:**  October 20, 2025.  Eric Wayne Poemoceah, v. Morton County, North Dakota, et al.  Case No.: 1:20-cv-00053-DMT-ARS.

**Deposition:**  October 21, 2025.  Estate of Christian Escobedo, et al, v. City of Los Angeles, et al.  Case No.: 19STCV43741.

**Deposition:**  October 27, 2025.  Barbara Ann Schild, et al, City of Mesa, a municipality; Officer Michael Smith and Officer Gilberto Ulises Vargas, et al., Case No.: CV-23-02715-PHX-JJT

**Deposition:**  October 28, 2025.  Eric Nelson, et al, v. City of Fairfield, et al. Case No.: 2:22-cv-01619-DJC-DB

**Deposition:**  November 4, 2025.  Pablo Vera, an individual vs. City of Los Angeles, and Officer Alexander Alvarez, 2:21-cv-05719-TJH-PVC.

**Deposition:**  November 7, 2025.  Typrice Freeman, v. Julian Mata, Brandon Moreland, Tony Romero jr., Josh Guerry, County of San Bernardino.  Case No.: 5:22

**Deposition:**  November 12, 2025.  Henry Barnhill v. City of Hemet et al.  Case No.: 5:23-cv-00589 JGB-SB.

**Deposition:**  November 13, 2025.  Juan Gonzalez, v. City of Fontana, et al.  Case No.: CIVSB2111692.

**Deposition:**   November 17, 2025.  Cynthia Martinez; et al., v. County of Los Angles, et al.  Case No.: 2:20-cv-01063-JWH-MRW

**Deposition:**  November 20, 2025.  Joshua Hatfield, v. City of Los Angeles, et al.  Case No.: 2:24-cv-5076-SRM-AGR

**Deposition:**  November 21, 2025.  Roxann Robinson, as the mother and successor-in-interest to Ronell Thomas, deceased, v. County of San Bernardino, et al.  Case No.: 5:24-cv-01540 PA (Spx).

**Deposition:**  November 25, 2025.  Brandon Henderson, v. City of Los Angeles, Officer Anthony

Soriano, and Officer Marco Munoz, et al. Case 2:24-cv-10938-MEMF-E.

**Deposition:** December 1, 2025.  Sky Miller, v. County of Los Angeles, Deputy Arthur. Evans, and Sergeant Vince  Durante et al.  Case No.: 2:24-cv-09169-GW-AGR

**Deosition:**  December 2, 2025.  Drew Foy, v. City of Los Angeles, et al.  Case No.: 2:24cv-09247 AH-AJRX.

**Trial:**  December 5, 2025 & December 8, 2025.  Longina Perez Monroy, et al. v. County of Riverside, et al.  Case No.: 5:21-cv-01278-SVW-KK.

**Trial:**  December 15, 2025 Estate of Christian Escobedo, et al, v. City of Los Angeles, et al. Case No.: 19STCV43741.

**Deposition:**  December 16, 2025.  Anastasia Martinez, v. County of County of Los Angeles, Deputy Danny Banuelos, et al.  Case No.: 2:22-cv-06589 DSF (AFM).

**Trial:**  December 17, 2025 & December 18, 2025.  Slade Douglas, v. City of Los Angeles, et al.  Case No. :2:20-cv-07439-FMO (Pdx).

**Deposition:**  December 22, 2025.  Estate of Rocky Romer, et al. v. County of San Bernardino, et al.  Case No.: 5:24-cv-00777-KK-DTB

**Deposition:**  December 23, 2025.  Martha Leticia Castañon Garcia, et al, (Omar Reyes deceased) v. City of San Francisco, et al.  Case No.: 4:24-cv-00058-VC.

**Trial:**  January 8, 2026.  John Paul Johnson, v. City of Santa Rosa, et al.  Case No.: 3:23-cv-02478-JSC

**Trial:** January 15, 2026.  Shamika Collier, et al, v. County of Los Angeles, et al,  Case No.: 2:20-cv-02748-ODW-PVC

**Deposition:** January 19, 2026,  Tamara Garcia, et al., vs. City of Casa Grande, a municipality; Officer Stephen Knauber, et al., Case No.: S1100CV201900375.

**Deposition:**  January 20, 2026.  Boston Moreland, v. City of Los Angeles; Marco Rolon, et al., Case No.: 2:24-cv-7728-CBM.

**Deposition:**  January 26, 2026.  Ernest Maea, v. California Department of Corrections and Rehabilitation (CDCR), et al.  Case No.: 1:22-cv-00362 AWI-HBK

**Deposition:**  January 27, Estate of James Evans, et al, v. Los Angeles County Sheriff's Department, et al.  Case No.: 2:24-cv-09198-SRM-JC

**Deposition:** February 3, 2026.  Amanda Chavez, v. City of San Jose, et al.  Case No.: 5:24-cv-06378-NC.

**Deposition:** February 19, 2026.  M.M. , a minor, et al., v. Los Angeles County Sheriff's Department, et al.  Case No. 2:23-CV-08329-CAS (MARx)

**Deposition:** February 23, 2026.  Bianca Valenzuela, v. City of Rialto, et al.  Case No.: 5:23-cv-00897

**Deposition:** March 6, 2026.  Estate of Jess Flores, et al. v. County of Riverside, et al.  Case No.: 24-cv-01933-KK-SHK

**Deposition:** March 23, 2026,  Birch Wellington Pender,·v, County of Los Angeles, et al.  Case No.: 23STCV04360.

**Deposition:** March 25, 2026.  Tyler Tull. v. California Highway Patrol, et al.  Case No.: 2:24-at-00768 DAD-SCR.

**Deposition:** April 6, 2026.  Clinton Cellona, v. County of Santa Barbara, Deputy Cameron Hossli, et al.  Case No. 25-CV-1503

**Deposition:** April 7, 2026.  Jane Doe, et al, v. Riverside County, et al   Superior Court (Riverside County) Case No.: CVRI2205313.