DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
    CHRISTOPHER M. BLAYLOCK, Supervising Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone:  (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendant County of San Diego and
Nicolai Ramos

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEL BURT,<br><br>    Plaintiff,<br><br>  v.<br><br>NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; and DOES 1-5,<br><br>    Defendants. | No. 24-cv-00662-CAB-VET<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SAN DIEGO AND NICOLAI RAMOS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT ROGER CLARK**<br><br>Hearing Date: July 27, 2026<br>District Judge: Hon. Cathy A. Bencivengo<br>Courtroom: 15A<br><br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

No. 24-cv-00662-CAB-VET

Defendants' Motion to Exclude Opinions and Testimony of Plaintiff's Expert Roger Clark is focused on specific opinions in this case that are improper, beyond his expertise, or reliant on unsound methodology. In his opposition, Plaintiff gives considerable treatment to Mr. Clark's general qualifications in police practices and to the admissibility of testimony regarding police standards of conduct and whether an officer's conduct adhered to that standard. Even if true, it fails to provide the qualifications to opine on statistical comparison, particularly when the comparison reached lacks any hallmarks of reliability. This also fails to justify the specific opinions and testimony at issue that go beyond opining on deviations from standards of conduct to rendering legal conclusions and opinions on credibility. The proponent of the expert testimony bears the burden of proving admissibility by a preponderance of the evidence in accordance with Rule 702. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The opinions and testimony challenged by the instant motion should be excluded because Plaintiff has not and cannot meet this burden.

I.    QUALIFICATIONS AND METHODOLOGY'S IMPACT ON THE WEIGHT OF MR. CLARK'S STATISTICAL ANALYSIS DOES NOT PRECLUDE THE COURT'S EXERCISE OF ITS GATEKEEPING FUNCTION TO DETERMINE RELIABILITY

The fact that Clark's opinion on statistical analysis is framed as experience-based does not transform what is fundamentally a comparative statistical judgment into non-statistical expert testimony. In his Opposition, Plaintiff argues that Defendants' objections to this testimony speak to the weight rather than admissibility of Mr. Clark's testimony on statistical analysis. (Plaintiff's Opposition [ECF No. 91], pp. 9-10.) The mere fact that Defendants can attack the reliability of this testimony at trial does not excuse the Court from exercising its role as a "gatekeeper" to exclude expert testimony that does not meet Rule 702's reliability standards." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-148 (1999). For an expert's opinion to be reliable, it "must be 'based upon sufficient facts or data,' 'the product of reliable principles and methods,' and the expert must 'appl[y] the

///

principles and methods reliably to the facts of the case.' " *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1191–92 (9th Cir. 2007) (quoting Fed. R. Evid. 702).

With respect to Mr. Clark's statistical analysis, the fact that Clark's opinion is framed as experience-based does not transform what is fundamentally a comparative statistical judgment into non-statistical expert testimony immune from scrutiny. Even if a statistician served as an advisor to his thesis at command college, Mr. Clark is admittingly not a statistician himself nor has he had any formal education in statistics. (Exhibit B to Defendants' Motion to Exclude Clark [ECF 82-2], at 77:6-18.) Mr. Clark cannot assist the jury to understand the significance of these statistics without such education, training or experience.

This lack of proper qualifications is evident because his opinion offers none of the hallmarks of reliability that would allow one to draw data-driven conclusions. Mr. Clark's comparative data sample is purely anecdotal- he notes "[t]his is a unique statistic compared to what I have seen in cases I have had." (*Id.* at 77:15-18.) However, statistical analysis is only valuable to the extent the comparison can be weighed. Put differently, the strength of the conclusions drawn depends on the similarity between the populations analyzed- did they have similar demographics, a similar time frame or length of time analyzed, similar sized law enforcement agencies, similar geographic areas, similar number of arrests, etc. However, Mr. Clark admitted that he did not compare the San Diego Sherriff's Office statistics to those of any comparable law enforcement agency. (*Id.* at 78:6-14.) Without such a comparison, his memory of past cases cannot tell us whether there are any similarities between the San Diego Sherriff's Office statistics and the data sets he remembers. Without such a comparison, Defendants are deprived of the opportunity of examining the comparative value of this opinion (i.e. whether the population analyzed by the Sheriff's Office was similar enough to that of the comparative data set to render the opinion credible). Mr. Clark's statistical analysis opinion must be excluded because it failed to apply methodology that would render this opinion reliable.

///

-2-

## II.    MR. CLARK'S TESTIMONY IS FAR FROM AN OPINION ON "OBJECTIVE STANDARDS OF OFFICER'S CONDUCT"

In his opposition, Plaintiff contends that Mr. Clark "may properly offer testimony, without invading the province of the jury, when he discusses deviations from standard police practices." (Oppo, pp. 11-13.) This may very well be true, but the opinions at issue in the instant motion go beyond discussion of industry standards to invade key provinces of the jury- by suggesting the legal conclusion they are to reach, and which parties' account they must accept as credible.

### A. MR. CLARK'S TESTIMONY ON HIS LEGAL CONCLUSIONS IS NOT HELPFUL TO A JURY

Mr. Clark's testimony and opinions that Deputy Ramos' use of force was "excessive" and "unreasonable" offers improper legal conclusions. While Rule 704(a) permits "embrac[ing] the ultimate issue", it does not permit an expert to simply repackage a legal conclusion by framing it as law enforcement terminology. In his opposition, Plaintiff claims Mr. Clark's opinion that Deputy Ramos employed excessive force "reflects a judgment based on law enforcement training and policy, which is the very framework Mr. Clark relies upon based on his decades of practical experience, and expertise in police practices." (Oppo, p. 12.) However, the central issue with the use of such terminology is not how he reached his opinion, but whether the opinion reached rendered usurps the jury's role.

Contrary to the claim that such terminology is merely a reflection of his expertise, Mr. Clark's use of similar terminology has been routinely excluded for rendering an "impermissible legal conclusion." *Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, F.1 (E.D. Cal. Sept. 16, 2016), emphasis added ("... Mr. Clark's opinion as proffered in his expert report includes an impermissible legal conclusion ('use of lethal force was *unlawful* under the circumstances (as taught by POST)'), which ... will be excluded."); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) (excluding Clark's opinions because "Clark repeatedly opines that the use of force

was 'excessive' or 'unreasonable' under the circumstances."); *Reese v. County of Sacramento*, No. 2:13-cv-00559-GEB-DAD, 2015 WL 6460312 (E.D. Cal. Oct. 26, 2015) ("... Clark may not give his opinion as to whether the deputies' use of" force against [Plaintiff] was "reasonable. Here, 'reasonable' has an eminently significant legal connotation such that Clark's opinion as to the reasonableness of the deputies' use of force constitutes a legal conclusion....").

The relevant distinction is between opining that an officer deviated from departmental policy or training standards — which is permissible — versus opining that the officer used "excessive force" or whether he was "reasonable" — which is the ultimate legal standard the jury must apply under the Fourth Amendment's objective reasonableness test. Mr. Clark's opinions clearly use terminology to provide the latter. Opinions 1-2, 6, and 9 opine that the use of force was "excessive". Opinions 1-3 opine that the use of force was "not necessary or appropriate" or "necessary or justified." (Oppo, pp. 5-6) Mr. Clark's expert report is littered with the same improper terminology. (Exh. A (Clark's Report) to Defendants' Motion to Exclude Roger Clark [ECF No. 82], pp. 7, 13-15, 18.)

Further, Mr. Clark's use of a simplified definition for the term "excessive force" as "force that is not necessary or appropriate" confuses the relevant objective standard that the jury must apply in its determination. Such a term need not be determined by his expertise because it is expressly provided by law on which the jury will be instructed. *Barron v. California*, Case No. 8:17-cv-01275 JVS-KES, 2018 WL 7372072 (excluding Clark's testimony that "overreaction in the use of force is excessive force" because "it may confuse the jury in following the objective standard" of excessive force set forth by *Graham v. Connor*).

### B. MR. CLARK'S TESTIMONY BASED ON PLAINTIFF'S VERSION OF EVENTS IS NOT HELPFUL TO A JURY

Plaintiff's opposition claims that Mr. Clark's factual conclusions derived from his review of body worn camera footage "is *helpful* to the jury because Mr. Clark will be able to explain what specific aspects of video evidence he considered in his analysis, and how,

and how they support his conclusions [sic]." (Plaintiff's Oppo, p. 14.) However, these factual conclusions are not based on body worn camera footage which both sides argue tells a different story. These observations are based on Plaintiff's account of how these events occurred and require one completely dismiss Deputy Ramos' account of those same events.

In *Lorange v. Univ. of California Los Angeles*, 2:11-CV-10417-SVW-JC, 2012 WL 13114202 (C.D. Cal. July 24, 2012), the Central District Trial Court excluded Mr. Clark's testimony finding "Mr. Clark's opinions are entirely unhelpful to the (large) extent that they assume Plaintiff's version of events is accurate." *Id.* at *2. The Court considered that:

> The jury will hear two very different versions of the pivotal events surrounding Plaintiff's arrest. Plaintiff claims that he was peacefully paying his parking fee when Defendant Washburn essentially grabbed him without provocation and violently threw him up against a wall. Plaintiff claims that he did not resist…Defendants, by contrast, will offer testimony that Plaintiff was both verbally and physically disobedient, that he refused to respond to commands, and made a physically threatening gesture.

*Id.* at *2.

The Court reasoned that Mr. Clark's opinions were unhelpful because "[w]hether or not the force [the law enforcement officer] used to detain Plaintiff was objectively reasonable under the totality of the circumstances will depend almost entirely on whose version of events the jury finds credible." *Id.* at *2.

Like *Lorange*, the determination whether force was excessive in this action will rely almost entirely on whose version of events the jury finds credible. Defendants will argue at trial that Plaintiff was verbally and physically disobedient, and Deputy Ramos dispassionately applied the minimum amount of force necessary to reassert control after Plaintiff spun to face him causing Deputy Ramos to lose his grasp on Plaintiff's arm. Plaintiff intends to argue he was cooperative, he was merely trying to fix his shorts, and that he never caused Deputy Ramos to lose his grasp nor did he turn to face him.

///

-5-

A close review of several of Mr. Clark's opinions show they are actually based not on the body worn camera footage but on Plaintiff's account of events that can only be true if Deputy Ramos' account is not believed. Deputy Ramos will testify that Plaintiff was repeatedly flexing against his efforts to escort him and that force was employed because Plaintiff turned toward him aggressively causing him to lose his grasp. Plaintiff will testify that he was cooperative, non-resistant, non-threatening and the Deputy Ramos never lost his grasp. Both parties will argue the body worn camera footage supports their version of events. Ultimately, the jury will need to determine whose account is more credible, when coupled with other evidence, including the body worn camera footage.

Mr. Clark's opinions at issue were rendered not observations one can make by reviewing the camera footage, but on Plaintiff's account of events. Opinions 1, 3 and 5 conclude that Plaintiff "was never a threat to any deputy", "nonthreatening", "never a credible threat" and "posed no reasonable threat." (Plaintiff's Oppo [ECF No. 91], pp. 5-6) However, the jury could conclude that Plaintiff was a threat if Deputy Ramos' testimony that Plaintiff caused him to lose his grip is believed. Whether it is believed he was a threat must be based on a credibility determination because the body worn camera footage could be interpreted to support either account.

Elsewhere, Mr. Clark makes numerous other factual conclusions: that Deputy Ramos was acting out of anger and rage (Exh. A to Defendants' Motion (Clark's Report) [ECF No. 82-2], p. 6.);  that Plaintiff was under the control of Officer Ramos at all times (*Id.* at p.7.); that Plaintiff was not a risk of flight or assault (*Id.* at p. 8.); that no deputy's life was in danger (*Id.* at p. 10.); or his conclusion that Plaintiff's resistance was not flexing but merely him pulling his shorts up. (*Id.* at p. 16, subdiv.(5).) For each of these conclusions, the jury could would conclude the opposite if Deputy Ramos' account of these events is believed. These conclusions can only be reached if one assumes Plaintiff's account is credible because the body worn camera footage could be interpreted to support either account.

///

Such testimony is not helpful to a jury because Mr. Clark is in no better position than the jury to determine which parties' account of events is to be believed. Put differently, Mr. Clark's opinions are based on his credibility determination, rather than observations made based on any specialized training and experience. Such testimony is not helpful to a jury perfectly capable of making its own credibility determinations.

III.    MR. CLARK CANNOT OFFER AN OPINION BASED ON INADMISSIBLE CHARACTER EVIDENCE

Plaintiff cannot use the *Strode* incident or 12 unanalyzed complaints to demonstrate that Deputy Ramos had a propensity for violence. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Even if prior acts may be relevant to a *Monell* cause of action where they show a systemic practice or pattern of behavior, they are not relevant here where Mr. Clark only has knowledge of the substance of one prior bad act. Unless he can show such a pattern, it should be excluded as improper character evidence.

Courts have recognized in § 1983 actions that evidence of other misconduct against the defendant may be used for purposes other than character evidence, for example to show bias or a pattern or practice of unprofessional behavior. *Jones v. Pitchford*, 119CV00396DADHBK, 2021 WL 2954634, at *3 (E.D. Cal. June 25, 2021) However, a single failure to discipline is insufficient to make out a claim for *Monell* liability. *Wallace v. City of Santa Rosa*, 2013 WL 4675354 at *2 (N.D. Cal. Aug. 30, 2013), citations omitted.

Mr. Clark cannot shoehorn in impermissible character evidence by painting it as evidence of causation under the *Monell* claim. Plaintiff admits Mr. Clark's testimony regarding the *Strode* incident is used "not to establish systemic failure, but to show causation….that 'the failure in these policies directly resulted in the improper use of force in this case.'" (Plaintiff's Opposition [ECF No. 91] at p.13; see also Exh. A to Defendants' Motion ("Clark's Report") [ECF 82-1] at p. 14 ("Deputy Ramos heard this message clearly and proceeded to use excessive force in a strikingly similar fashion against Jamel Burt."))

-7-

However, Mr. Clark reaches this opinion based on a single prior incident- clearly not enough to establish a pattern or practice of unprofessional behavior. In the absence of evidence of a pattern or practice, this cannot show that a systemic failure to discipline encouraged the behavior in this instance- it can only be truly seen as an attempt to prejudice the jury against Deputy Ramos.

This unfair prejudice is equally apparent in his reliance on twelve other cases in which misconduct was alleged against Deputy Ramos. To be valid, Mr. Clark must opine that they were similar to the underlying incident and went undisciplined by the law enforcement agency. *Davis v. Clearlake Police Dep't,* 2008 WL 4104344 at *8 (N.D. Cal. Sept. 3, 2008) (concluding that evidence that five prior lawsuits were filed against the municipal defendant did not raise a triable fact regarding *Monell* liability where plaintiffs did not provide evidence of the outcome of the lawsuits or any other details) Plaintiff admits Mr. Clark has no familiarity with the underlying subject matter of these cases beyond that excessive force was alleged. (Plaintiff's Opposition [ECF No. 91] at p.13.) Mr. Clark cannot testify these cases exhibit a pattern of failure to discipline when he cannot even detail what the claims were, let alone whether they exhibited the same type of behavior, and whether the failure to discipline that behavior contributed to this incident.

IV.    HEAD STRIKE TESTIMONY IS UNDULY PREJUDICIAL, EVEN IF MINIMALLY RELEVANT

Mr. Clark's opinion on officer training regarding intentional head strikes is of marginal relevance and risks confusing the jury by suggesting a level of deliberate targeting that is not supported by the record. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

It is undisputed that the force at issue is a takedown maneuver rather than a deliberate blow to the head. Even if Deputy Ramos knew throwing Plaintiff to the ground meant he might hit his head, testimony about training on head-strike risks frames the incident in a

-8-

manner that does not accurately characterize what occurred. This may unfairly prejudice Defendants by implying a more culpable form of intentional conduct. The Court should limit this opinion to the specific type of force at issue rather than permit Clark to testify broadly about training on intentional head strikes.

## V.    CONCLUSION

Mr. Clark's opinions and testimony at issue in the instant motion must be excluded to the extent it was rendered either on topics on which he is not qualified or relies on unsound methodology. It must be excluded where it renders improper opinions as to legal conclusions or personal observations, and it must be excluded where it reaches an opinion on systemic practices based on a single prior incident.

DATED: July 20, 2026          DAMON M. BROWN, County Counsel


By:___*/s/ Timothy A. Hanna*_____
        TIMOTHY A. HANNA, Senior Deputy
        CHRISTOPHER M. BLAYLOCK, Senior Deputy
        Attorneys for Defendant County of San Diego, and
        Nicolai Ramos

-9-