DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
    CHRISTOPHER M. BLAYLOCK, Supervising Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone:  (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendant County of San Diego and
Nicolai Ramos

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEL BURT,<br><br>    Plaintiff,<br><br>  v.<br><br>NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; and DOES 1-5,<br><br>    Defendants. | No. 24-cv-00662-CAB-VET<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: July 27, 2026<br>District Judge: Hon. Cathy A. Bencivengo<br>Courtroom: 15A<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

No. 24-cv-00662-CAB-VET

In Plaintiff's opposition to the County's Motion for Summary Judgment, it is apparent that his *Monell* claim is a house of cards without the evidence to provide a foundation for his sweeping claims. In this claim, Plaintiff relies on statistical analysis that on close review is insufficient to demonstrate a lapse in the County's process for investigating and disciplining use of force. He relies on settlements and matters that are dissimilar from the instant action, either factually or in disposition, that cannot demonstrate a patten or practice of unconstitutional uses of force. Further, he relies on a single past instance of prior conduct that cannot, standing alone, demonstrate the repeated frequency of misconduct necessary to establish *Monell* liability.

I.    STATISTICAL ANALYSIS DOES NOT DEMONSTRATE A DEFACTO PRACTICE OF TOLERATING EXCESSIVE FORCE AGAINST RESTRAINED INDIVIDUALS

A low-rate of out-of-policy use of force does not establish a defacto policy of tolerating excessive force- it is equally consistent with a well-trained department whose officers used force appropriately. In his opposition, Plaintiff claims *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985) and *Hocking v. City of Roseville*, No. CIVS060316RRBEFB, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008) are distinguishable because they involved comparing sustained complaints to the total number of complaints received whereas here the comparison is between total number of uses of force and sustained findings of improper use of force. (Plaintiff's Opposition [ECF No. 94] at p. 28.) However, the fundamental issue for both *Strauss* and *Hocking* courts was not the percentage of claims sustained but that Plaintiff could not detail why the underlying complaints had sufficient merit to be considered a reliable indicator of a defacto policy. "Statistics of unsustained complaints of excessive force and other police misconduct, without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983." *Hocking v. City of Roseville*, No. Civ. S-06-0316 RRB EFB, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008); see also *Strauss v. City of Chicago*, 760 F.2d 765, 768–769 (7th Cir. 1985) (noting that "the number of complaints

filed, without more, indicates nothing" because people "may file a complaint for many reasons or for no reason at all.")

Unlike *Strauss* and *Hocking* which were limited to complaints received, Plaintiff relies on every use of force in his argument. It stands to reason that the percentage of total uses of force to sustained findings would be significantly less than the percentage of complaints received to sustained findings. A properly trained and disciplined law enforcement agency should be expected to have only a small subset of uses of force that receive complaints, a smaller number of which merit investigation, and an even smaller subset of which involve a finding that force did not adhere to department policy. Put differently, a low out-of-policy rate measured against total incidents is not inherently suspect; it may reflect that deputies are well-trained and use force appropriately in the overwhelming majority of encounters.

Further, Plaintiff has no evidentiary basis for claiming "the rates at which the Department finds force out of policy is shockingly low" because he cannot say how or why those uses of force were improper. (Plaintiff's Opposition [ECF No. 94] at p. 28.)  Plaintiff "need[s] to identify what made the use of force in other matters illegal and show that a *similar illegality was involved in [his] case*." *See Whiting v. City of San Jose*, No. 21- CV-05248-VKD, 2022 WL 2714968, at *5 (N.D. Cal. July 13, 2022) (discussing the use of statistical evidence in the context of *Monell* liability) (emphasis added). However, Plaintiff admittingly only "compares the low number of out-of-policy determinations to the total number of uses of force." (Plaintiff's Opposition [ECF No. 94] at p. 29.) Put differently, Plaintiff cannot establish how many of the total numbers of uses of force required an investigation or received a complaint, how many complaints were dropped or factually impossible, how many were subject to a complete investigation and found meritless, how many were challenged in a court of law or the outcome of any judicial determination. He cannot establish what percentage of those uses of force involved the same illegality-excessive force against a restrained individual- that he purports is the County's defacto policy. Plaintiff should not be allowed to present this as evidence of deliberate indifference

-2-

when he cannot demonstrate why these statistics show the Sheriff's Office was deliberately indifferent to uses of force.

Finally, Plaintiff's comparison figures from LAPD, Sacramento PD, and Albuquerque PD are not accompanied by evidence that those departments use identical definitions, reporting standards, or review methodologies, rendering the comparisons unreliable. Without controlling those variables, the statistical disparity proves nothing about the adequacy of Sheriff's Offices review process.

Based on all of these factors, Plaintiff cannot establish a Monell custom or practice through his statistical analysis.

II.    THE FILING OF LAWSUITS AND SETTLEMENT OF LAWSUITS ARE NOT EVIDENCE OF WRONGDOING

In his opposition, Plaintiff claims the fact that the number of lawsuits and the County's decision to settle many of those lawsuits is evidence of a defacto Unconstitional policy. (Plaintiff's Opposition [ECF No. 94] at pp. 30-35.)

The evidence code expressly states that settlement cannot be used as evidence of fault. Fed. R. Evid. 408 (prohibiting evidence of settlement to prove validity of claim). "Unlike a jury verdict, a settlement [] does not constitute a finding of liability or an admission of misconduct. Liability and misconduct should not be inferred from a settlement." *Minor v. Cnty. of Los Angeles*, EDCV1501346VAPSPX, 2015 WL 13711269, at *3 (C.D. Cal. Sept. 23, 2015) (holding allegations regarding settlements were not relevant to a *Monell* claim). Put differently, the County's decision to settle cases alleging excessive force is not evidence that those claims had merit and cannot demonstrate notice of a defacto unconstitutional pattern or practice.

Similarly, the mere fact that similar lawsuits have been filed against it alleging excessive force is not evidence that the County has an unconstitutional policy. "[T]he mere fact that such lawsuits were filed does not support the existence of a policy, custom, or practice" of unconstitutional conduct. (*Gillam v. City of Vallego*, No. 214CV2217KJMKJNPS, 2016 WL 4059184, at *7 (E.D. Cal. 2016), *report and*

*recommendation adopted*, 2016 WL 4041508; *Solis v. City of Sunnyvale*, No. 20-CV-03912-NC, 2020 WL 7353698, at *6 (N.D. Cal. 2020) ("[T]he mere existence of lawsuits against the City does not adequately show that the City adopted a custom of condoning excessive force.")

Plaintiff's opposition discusses at length the County's decision to resolve many of its excessive force claims and the amount of money it has spent on settlement. (Plaintiff's Opposition [ECF No. 94] at p. 30.) Speaking generally about how much has been spent to resolve excessive force cases tells us nothing about whether there was a policy that contributed to this incident. First, it is not specific to the type of use of force applied. Second, it cannot be evidence of liability or even an acknowledgment of liability. There are many reasons why a municipal entity may decide to resolve a case rather than take it all the way to jury verdict that do not indicate unconstitutional practices such as avoiding costly and protracted litigation, particularly where attorneys' fees are the most considerable damage at issue.

Plaintiff's opposition also gives considerable treatment to purported factual similarities of those matters to the instant action, particularly those involving "subjects who were handcuffed and restrained." (Plaintiff's Opposition [ECF No. 94] at pp. 31-35.) However, these incidents involve different deputies, different locations, different force techniques, and different circumstances.[1] and courts require that prior incidents be sufficiently similar to put policymakers on notice of the specific deficiency alleged. However, similarity is but one factor in determining whether the lawsuits are relevant- the court must also weigh:

///

///

///

---

[1] Defendant's motion discusses in detail why these cases are not factually similar to the subject incident. (Memorandum of Points and Authorities in support of Defendant County of San Diego's Motion for Summary Judgment [ECF No. 80-1] at pp. 19-23.)

(1) the degree of similarity between the factual allegations; (2) the number of lawsuits; (3) the temporal proximity; (4) the disposition of those cases; (5) the similarity of the defendants; and (6) the size of the municipality relative to the number and type of lawsuits.

*Jackson v. Cnty. of San Bernardino*, No. 523CV00341SSSSHKX, 2023 WL 9066307, at *4 (C.D. Cal. 2023).

Even if Plaintiff can demonstrate that the factual allegations were similar, with respect to disposition, only one of the cases cited by Plaintiff reached a jury verdict finding that excessive force was employed, *Myles v. County of San Diego,* Case No. 15-cv-1985, however, the disposition itself is incomparable to the instant action as the jury's verdict addressed "use of the police canine", a type of force not at issue in this action. (Request for Judicial Notice in support of Defendant County of San Diego's Motion for Summary Judgment [ECF No. 80-2], Exh. 23 (Myles Judgment).) The remaining matters were resolved by settlement, dismissal, summary judgment or post-trial motion to vacate the verdict. (*Id.* at Exh. 12-22). Under these circumstances, the disposition tends to favor not considering these lawsuits as evidence of a defacto policy.

III.   THE *STRODE* INCIDENT, STANDING ALONE, DOES NOT ESTABLISH A "PATTERN" OF TOLERATING EXCESSIVE FORCE AGAINST RESTRAINED INDIVIDUALS

The *Strode* incident, standing alone, does not constitute a "pattern" or "practice" of tolerating excessive force against restrained individuals. Evidence of a single incident of officer misbehavior does not establish *Monell* liability. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000); see also *Vasquez v. City of Santa Paula*, No. 13CV07726CBMAJWX, 2015 WL 12734071, at *3 (C.D. Cal. Mar. 11, 2015), citation omitted ("'Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability' under *Monell* for inadequate training.") Such a finding of liability based solely on a police officer's isolated misbehavior "would unduly threaten" a

municipality with *respondeat superior* liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 830-31 (1985) (Brennan, J., concurring).

The *Strode* incident does not support Monell ratification or custom liability because the Department investigated the incident, did make findings, and did impose discipline—a written reprimand—for the identified deficiency in Deputy Ramos's conduct. The fact that the Department found the force itself within policy does not constitute ratification of a constitutional violation; it reflects the Department's good-faith conclusion that the force was lawful. The fact that Mr. Strode subsequently filed a lawsuit that settled does not retroactively establish that the Department's within-policy finding was wrong or that policymakers were deliberately indifferent.

Moreover, a single prior incident involving the same officer is generally insufficient to establish a widespread custom or practice under Monell. To establish ratification, Plaintiff must show that a final policymaker with knowledge of a constitutional violation actually approved it; the fact that supervisors reviewed the Strode incident and found the force within policy demonstrates review, not deliberate indifference. The written reprimand for failure to communicate also shows the Department was attentive to Ramos's conduct and did impose corrective action.

IV.    PLAINTIFF'S RATIFICATION THEORY FAILS BECAUSE THERE WAS A DISCRETIONARY POLICY DECISION

Plaintiff cannot demonstrate the Sheriff ratified a defacto unconstitutional use of force matter because he cannot prove a "deliberate choice" to approve the specific unconstitutional act.  A municipality may be held liable for a constitutional violation if an authorized policymaker approves a subordinate's decision and the basis for it. *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). However, "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* The policymaker must have knowledge of the constitutional violation and must make a "conscious, affirmative choice" to ratify the conduct at issue. *Id.* In general, a "single failure to discipline" does not rise to the level of ratification necessary to impose liability under *Monell. Haugen v.*

-6-

*Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), *rev'd on other grounds by Brosseau v. Haugen*, 543 U.S. 194 (2004). There must be "something more," such as an "obviously flawed investigation," the final decision-maker's active participation in the challenged conduct, or "extreme factual situations." *Id.*

Here, the Sheriff's mere review and approval of a written reprimand for failure to communicate in the 2017 Strode incident was a discretionary policy determination that the force itself was within policy. Moreover, the Department investigated the Strode incident, made a finding, and issued discipline—the fact that Plaintiff disagrees with the level of discipline does not transform a deliberate policy decision into ratification.

The Sheriff's review and finding of the 2017 incident as within policy, without more, cannot constitute deliberate ratification of a constitutional violation. *Macedo v. Santa Ana Police Dep't Officer David Prewett*, SACV 17-01676-CJC, 2019 WL 13240659, at *10 (C.D. Cal. Jan. 2, 2019) (A determination that an officer's actions were justified under applicable policies, as the Orange County District Attorney and SAPD's Professional Standards Unit did so here, does not amount to *Monell* ratification.); See Also *Dunklin v. Mallinger*, 2013 WL 1501446, at *30 (N.D. Cal. Apr. 10, 2013) (holding that merely affirming a finding that a particular use of force was "within policy" does not constitute ratification); *Garcia v. City of Imperial*, 2010 WL 3911437, at *3 (holding police chief did not ratify officer's conduct by determining that officer acted according to policy)

V.    THE MERE ABSENCE OF EXPLICIT WRITTEN POLICY OR PARTICULAR FORMS OF TRAINING DOES NOT DEMONSTRATE DELIBERATE INDIFFERENCE

Contrary to Plaintiff's assertion that there are serious deficiencies in policies and training, Plaintiff fails to show that the identified deficiencies reflect deliberate indifference to the rights of people with whom officers will come into contact, and that the deficiency was the 'moving force' behind the specific constitutional violation.

The mere absence of an explicit written policy prohibiting force on restrained subjects does not establish deliberate indifference, particularly where the Department has

broader use-of-force policies and training that addresses the objective reasonableness standard. "No case holds that a use-of-force policy must be granular to the point that it defines the officers' specific responses with specific tools to specific situations." *Bauer v. City of Pleasanton*, 19-CV-04593-LB, 2021 WL 2224016, at *16 (N.D. Cal. June 2, 2021) (holding that evidence that policies failed to explicitly "address asphyxia and hypoxia, prolonged use of the taser, use of the WRAP device, and notifying officers of prior contacts with mentally ill people" was insufficient to establish a *Monell* claim.") Here, Plaintiff cannot claim that the lack of an explicit policy specific to use of force against restrained individuals is evidence of a *Monell* violation, because the County has broad policies that adequately address excessive use of force, which includes use of excessive force against restrained individuals.

Similarly, Plaintiff cannot establish deficient training for *Monell* purposes because officers are trained on the proper use of force, including against restrained individuals. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.(*cleaned up). "Only then can such a shortcoming be properly through of as a city policy or custom that is actionable under § 1983." *Id.* (cleaned up). Here, San Diego Sheriff's Deputies are trained in the Graham framework, which inherently requires consideration of whether a subject is restrained. (Exh. H to Hanna Decl. in Support of County's Motion for Summary Judgment (Lewis Depo) [ECF 80-3] at 53:25-54:11(Deputies are trained "that the force has to be objectively reasonable based on the totality of the circumstances.") Additionally, they are given twenty weeks of defensive tactics training at the academy which includes specific training on proper use of handcuffs and other restraints, as well as continual training throughout the course of their career. (*Id.* at 15:14-17:4, 19:6-11, 22:15-23:1, 28:22-30:25, 53:13-57:13.) The Constitution does not require any particular form of training, only that training is not so inadequate that

constitutional violations are a highly predictable consequence. Here, Deputy Ramos received training on use of force and controlling handcuffed individuals. Plaintiff cannot establish that additional training would have prevented the takedown at issue.

DATED: July 20, 2026                    DAMON M. BROWN, County Counsel


By:___*/s/ Timothy A. Hanna*_____
          TIMOTHY A. HANNA, Senior Deputy
          CHRISTOPHER M. BLAYLOCK, Senior Deputy
          Attorneys for Defendant County of San Diego, and
          Nicolai Ramos

-9-

No. 24-cv-00662-CAB-VET