DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
CHRISTOPHER M. BLAYLOCK, Supervising Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendant County of San Diego and
Nicolai Ramos

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

JAMEL BURT,

Plaintiff,

v.

NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5,

Defendants.

No. 24-cv-00662-CAB-VET

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Hon. Cathy A. Bencivengo
Courtroom 15A

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. CONTENTIONS OF FACT ........ 2

A. The Incident ........ 2

B. Monell Claims Against The County ........ 4

III. CONTENTIONS OF LAW ........ 5

A. Claims Against Ramos (and County for Vicarious Liability) ........ 5

i. Excessive Force/State Law Battery ........ 5

ii. Retaliation ........ 6

iii. Bane Act ........ 7

iv. Deputy Ramos is entitled to qualified immunity if the jury reaches a factual finding that Plaintiff pulled free of his grasp ........ 7

B. Monell Claim Against County ........ 8

i. The County's Use of Force Policy is Facially Valid ........ 8

ii. There is no custom or practice arising from a failure to train Sheriff's personnel ........ 10

iii. There is no custom or practice arising from a failure to discipline Sheriff's personnel ........ 11

iv. There is no pattern of unconstitutional conduct ........ 12

v. Plaintiff's statistical analysis does not demonstrate an Unconstitutional custom or practice. ........ 15

IV. ABANDONED ISSUES ..... **16**

V. EXHIBITS ..... **16**

VI. WITNESSES ..... **22**

A. Percipient Witnesses ..... **22**

B. Expert Witnesses ..... **31**

i. John Stanley ..... **31**

ii. George Georgaklis, D.D.S. ..... **31**

# TABLE OF AUTHORITIES

**CASES** **PAGE (S)**

*Christie v. Iopa*,
176 F.3d 1231 (9th Cir. 1999) .......... 8-9

*City of Canton*,
489 U.S. 378 (1989) .......... 10

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) .......... 8

*Connick v. Thompson*,
563 U.S. 51 (2011) .......... 10

*Fortson v. City of Los Angeles*,
628 F. Supp. 3d 976 (C.D. Cal. 2022) .......... 5

*Gal v. Cnty. of Kauai,*
2020 WL 3895756 (D. Haw. 2020) .......... 13

*Gillam v. City of Vallego,*
2016 WL 4059184 (E.D. Cal. 2016) .......... 12

*Graham v. Connor*,
490 U.S. 386 (1989) .......... 5, 9

*Hartman v. Moore*,
547 U.S. 250 (2006) .......... 6

*Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County,*
542 U.S. 177 (2004) .......... 6

*Hocking v. City of Roseville,*
2008 WL 1808250 (E.D. Cal. Apr. 22, 2008) .......... 15

*Hunter v. County of Sacramento*,
652 F.3d 1225 (9th Cir. 2011) .......... 11

*Jackson v. Cnty. of San Bernardino,*
2023 WL 9066307 (C.D. Cal. 2023) .......... 13

*Lanier v. City of Woodburn*,
518 F.3d 1147 (9th Cir. 2008) .......... 9

# TABLE OF AUTHORITIES

## (CONTINUED)

**CASES** **PAGE (S)**

*Merritt v. Cty. of Los Angeles*,
875 F.2d 765 (9th Cir. 1989) .......... 10

*Minor v. Cnty. of Los Angeles,*
2015 WL 13711269 (C.D. Cal. Sept. 23, 2015) .......... 14

*Nieves v. Bartlett*,
587 U.S. 391 (2019) .......... 6

*O'Brien v. Welty*,
818 F.3d 920 (9th Cir. 2016) .......... 6

*Reese v. Cnty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) .......... 7

*Rivas-Villegas v. Cortesluna*,
595 U.S. 1 (2021) (per curiam) .......... 7

*Seever v. City of Modesto,*
2022 WL 17418355 (E.D. Cal. 2022) .......... 13

*Solis v. City of Sunnyvale,*
2020 WL 7353698 (N.D. Cal. 2020) .......... 12

*Strauss v. City of Chicago*,
760 F.2d 765–769 (7th Cir. 1985) .......... 15

*Sweiha v. County of Alameda,*
2019 WL 4848227 (N.D. Cal. 2019) .......... 13

*Trevino v. Gates*,
99 F.3d 911 (9th Cir. 1996) .......... 8, 11

*United States v. Washington*,
462 F.3d 1124 (9th Cir. 2006) .......... 6

*Wallace v. City of Santa Rosa,*
2013 WL 4675354 (N.D. Cal. Aug. 30, 2013) .......... 11-12

# TABLE OF AUTHORITIES

## (CONTINUED)

**CASES** **PAGE (S)**

*Whiting v. City of San Jose*,
2022 WL 2714968 (N.D. Cal. July 13, 2022) .......... 15

*Wood v. Yordy*,
753 F.3d 899 (9th Cir. 2014) .......... 6-7

Federal Rule of Civil Procedure
Section 26 .......... 31, 32

Federal Rule of Evidence
Section 403 .......... 11
Section 404 .......... 11
Section 408 .......... 14

United States Code
Section 1983 .......... 1, 7, 12, 15

California Vehicle Code
Section 24252 .......... 2

Defendants COUNTY OF SAN DIEGO and NICOLAI RAMOS hereby submit their Memorandum of Contentions of Law and Fact pursuant to Local Rule 16.1(f)(2)(a) in relation to the Pre-Trial Conference currently set for October 16, 2026, in Courtroom 15A of the above-captioned Court. The facts and law at issue, as well as the exhibits and witnesses presented at trial may differ depending on the outcome of the Parties' forthcoming motions in limine, and Defendants' pending Daubert Motion to Exclude Opinions and Testimony of Plaintiff's Expert Roger Clark [ECF No. 82].

## I. INTRODUCTION

This matter arises from Plaintiff Jamel Burt's ("Plaintiff") combative behavior during an investigatory detention that necessitated a use of force. Plaintiff threw a meth pipe out of a truck window during a traffic stop, refused to identify himself to deputies, yelled and cursed, then struggled and broke free from the deputy's grip while being escorted to the patrol vehicle. As a result of Plaintiff's efforts to resist and break free, the deputy executed a textbook take down. The use of force lasted a mere two seconds.

Plaintiff has asserted claims under 42 U.S.C. § 1983 for excessive force, retaliation and false arrest and state law claims for battery and violation of the Bane Act. Plaintiff has also asserted a *Monell* claim against the County for purportedly unconstitutional customs and policies, as well as claims for vicarious liability for the state law causes of action.

Plaintiff contends that Deputy Ramos took him to the ground in retaliation for his foul language and uncooperative behavior. He further contends that this incident is part of a broader unconstitutional practice of using unreasonable force on handcuffed individuals.

Contrary to such claims, Deputy Ramos' use of force was objectively reasonable considering the totality of the circumstances and the information he knew at the time, most notably Plaintiff's successful attempt to break free of Deputy Ramos' grip while being escorted to the patrol vehicle. At that moment, Plaintiff became a danger to officer safety, even while handcuffed, because he could still kick, bite, headbutt or otherwise injure the deputy. Plaintiff will be unable to substantiate his claims that Deputy Ramos' conduct and the arrest were retaliatory or otherwise unlawful. Deputy Ramos' use of force was reviewed

and approved at multiple levels by his supervising sergeant, lieutenant, captain and the Division of Inspectional Services. At each level, the reviewer found that Deputy Ramos acted within the scope of department policies and procedures.

With respect to the *Monell* claims, Defendants will present evidence to demonstrate that their policies prevent excessive and unconstitutional force against restrained individuals, and that their customs, training and discipline reflect a prohibition on such excessive force. Further, Plaintiff's purported evidence is limited to statistical analysis determined by unsound methodology and presented by an expert unqualified to render such opinions, as well as civil court complaints, internal affairs claims and investigations, and settlements which are factually dissimilar to the circumstances of this case and/or did not involve a conclusive finding of excessive force.

## II. CONTENTIONS OF FACT

### A. THE INCIDENT

On December 18, 2022, at approximately 2:09 P.M, Deputy Nicolai Ramos was traveling in his patrol vehicle in Spring Valley when he noted a grey Ford truck with non-working brake lights, a violation of Veh. Code § 24252(A). He turned on his emergency lights and siren. The vehicle did not immediately stop but continued for another ¾ of a mile before turning right. During that failure to yield, Deputy Ramos saw the driver of the truck looking back at the deputy, causing the truck to veer over the double lane divider. As the vehicle turned, Deputy Ramos saw a cylindrical glass object being thrown from the passenger window: a pipe for smoking narcotics. In deposition, Plaintiff admitted that he threw a meth pipe out the window.

The vehicle came to a stop shortly after it turned right. As Deputy Ramos approached the driver, another deputy, Deputy Wilder-Trammell, arrived to assist. The deputies handcuffed the driver and Plaintiff, the passenger, to enable them to safely investigate. Once they were handcuffed, Deputy Ramos walked back to the corner to try to locate the object thrown from the window. There he found glass shards consistent with a broken meth pipe. Meanwhile, Deputy Wilder-Trammell attempted to identify the two detained

individuals by collecting their names, birth dates and addresses. Plaintiff claimed to have no ID on him. Plaintiff refused to provide his address, which was necessary to find him in law enforcement databases. Deputy Ramos informed Plaintiff that he would be put into the patrol vehicle if he failed to cooperate. He did not comply, instead responding "stop yelling in my motherf***ing ear." Body Worn Camera Footage captured by the two Deputies clearly shows Deputy Ramos was not yelling, nor was he near Plaintiff's ear.

Considering Plaintiff's agitated state, Deputy Ramos decided to bring Plaintiff to Deputy Wilder-Trammell's patrol vehicle to give him time to cool off so that they could safely identify him and continue their investigation. As he walked him to the patrol vehicle, Plaintiff said "F*** you!" to Deputy Ramos and made repeated efforts to flex his arm muscles to make the controlled escort to the vehicle more difficult. Deputy Ramos repeatedly requested that Plaintiff stop "flexing." Plaintiff responded, "shut up" and "b**ch a** motherf***."

As they neared the patrol vehicle, Deputy Ramos moved Plaintiff to face the hood of the patrol vehicle so he could safely open the rear passenger door. Plaintiff suddenly turned and momentarily broke Deputy Ramos' grasp. Deputy Ramos grabbed Plaintiff's left arm and used his body weight to take Plaintiff to the ground. Plaintiff landed face first on gravel. Deputy Ramos applied pressure to the back of Plaintiff's head for several seconds as he regained control. Deputy Ramos searched his pockets and shoes for contraband. He then checked the cards he found in his pockets for identification. While doing so, Plaintiff stated, "I'm suing your bitch ass!" He claimed that Deputy Ramos "[put or broke] my teeth out my mouth," and he threatened to kick Deputy Ramos "in the face so f***king bad."

The deputies saw that Plaintiff's mouth was bleeding and requested paramedics to evaluate him. In the interim, the Deputies determined that the driver had a valid Fourth Amendment waiver. They searched the vehicle and located a zip-lock baggie with multiple pills. Some of the pills were blue and had M30 stamped on them. Deputy Ramos identified the pills to be fentanyl.

Paramedics arrived and attempted to medically evaluate Plaintiff, but he refused to have his vitals taken outside the ambulance. Due to Plaintiff's continuing aggressive behavior, the paramedics declined to transport him. Deputy Ramos cited the driver for 11350(A) HS- Possession of a Controlled Narcotic, and released him. He cited Plaintiff for P.C. 148 obstruction and resistance. Deputy Ramos transported Plaintiff to Sharp Grossmont Hospital where he released him and last saw him walking into the Emergency Room.

**B. MONELL CLAIMS AGAINST THE COUNTY**

As noted above, Plaintiff is anticipated to attempt to introduce evidence relating to numerous civil court complaints, internal affairs claims and investigations, and settlements Defendants intend to contend such evidence is neither relevant nor admissible to this action. In the event such evidence is presented at trial, Defendant is prepared to rebut Plaintiff's contentions by presenting evidence and testimony from percipient witnesses to the incidents from which each civil court complaints, internal affairs claims, or internal affairs investigation arose to present facts demonstrating that these incidents are factually dissimilar to the circumstances of this case, did not involve a conclusive finding of excessive force, and/or are otherwise not indicative of any policy, practice or custom tolerating excessive force against restrained individuals.

Plaintiff is also anticipated to introduce statistics related to use of force claims and internal affairs investigations conducted by the San Diego Sheriff's Office. Defendants also contest that such evidence is inadmissible to the extent Plaintiff's expert opinion relies on unsound methodology in a field in which he is not qualified. In the event such evidence is presented at trial, Defendants are prepared to introduce evidence and testimony to demonstrate the sufficiency of the Sheriff's Office's customs, policies and practices for investigating and disciplining excessive force.

///

///

///

## III. CONTENTIONS OF LAW

### A. Claims Against Ramos (and County for Vicarious Liability)

#### i. Excessive Force/State Law Battery

Deputy Ramos used only the amount of force necessary to regain control Plaintiff, and the force was objectively reasonable under these circumstances. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene…[it] "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-397 (1989), internal citations omitted. When Plaintiff pulled from his grasp, Deputy Ramos needed to make a split-second decision. Despite the lack of time to fully assess the circumstances, Deputy Ramos reacted quickly in the manner he gauged necessary to regain control and released Plaintiff as soon as he had done so. Such circumscribed behavior is objectively reasonable when compared to the dangers imposed by a belligerent Plaintiff whose active resistance put the deputy in danger. Further, Deputy Ramos' use of force was reviewed and approved at multiple levels by his supervising sergeant, lieutenant, captain and the Division of Inspectional Services. At each level, the reviewer found that Deputy Ramos acted within the scope of department policies and procedures.

If Plaintiff cannot prove excessive force, his state law battery claim will also fail. As one court recently observed,

> Proving claims for assault and for battery against a police officer ... requires a showing that the officer used unreasonable force. The test employed under California law to determine if the force used was unreasonable is identical to the test employed under federal law applying Section 1983.

*Fortson v. City of Los Angeles,* 628 F. Supp. 3d 976, 994 (C.D. Cal. 2022), quotation omitted.

///

///

**ii. Retaliation**

Plaintiff also alleges retaliation in violation of the First, Fifth and Fourteenth Amendments. "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). If plaintiff can make such a showing, the burden shifts to the government to show that it "would have taken the same action even in the absence of the protected conduct." *O'Brien, supra,* 818 F.3d at 932.

Here, Plaintiff will not be able to establish he was engaged in a constitutionally protected activity because vulgarity and protesting to police conduct when intertwined with a refusal to answer questions during a lawful investigatory detention is not protected speech. *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County,* 542 U.S. 177, 187 (2004) (the First Amendment does not protect speech involving a refusal to identify oneself during a lawful investigatory detention); *United States v. Washington*, 462 F.3d 1124, 1133 (9th Cir. 2006), citing *California v. Byers*, 402 U.S. 424, 432-433 (1971) ( "[q]uestions about a person's identity are not unconstitutional under the 5th amendment even if identification of the person may help lead to the prosecution of that person for a crime.")

Further, Plaintiff cannot establish the retaliatory animus sufficient to establish causation. To prevail on a retaliation claim, a plaintiff must establish "but-for causation" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019), quoting *Hartman, supra,* 547 U.S. at 259. Specifically, Plaintiff must prove "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399. Mere speculation that the law enforcement officer acted with retaliatory animus or motive is not sufficient. *Wood v.*

*Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) In the body worn camera footage, Plaintiff can be seen repeatedly resisting against Deputy Ramos' attempts to escort him and he can be seen turning toward Deputy Ramos at the time force was employed. The force was clearly in response to Plaintiff's actual resistance and not his statements.

**iii. Bane Act**

Plaintiff's Bane Act claim must fail because Plaintiff will not be able to demonstrate Deputy Ramos had the requisite intent. To violate the Bane Act with respect to the use of force, a defendant must have "intended not only the force, but its unreasonableness [and] its character as more than necessary under the circumstances." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). This can be shown by "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Ibid.* Plaintiff will not be able to show Deputy Ramos had a reckless disregard, let alone a specific intent. As detailed above, Deputy Ramos can articulate clearly why he believed force was necessary. Even if that belief were found to be incorrect, it does not necessarily follow that he had such intent or disregard for Plaintiff's rights.

**iv. Deputy Ramos is entitled to qualified immunity if the jury reaches a factual finding that Plaintiff pulled free of his grasp**

Deputy Ramos is entitled to qualified immunity from any damages if the jury finds that Plaintiff pulled free of his grasp because it is not clearly established as unconstitutional to reassert control of a Plaintiff actively resisting the deputy. Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (*per curiam*). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Ibid.* A right is not clearly established if existing precedent does not place the constitutional question " 'beyond debate.' " *Ibid.* Deputy Ramos will be entitled to qualified immunity because there was no specific and controlling precedent in December 2022 that a lone deputy taking a larger

///

detainee to the ground who pulled free of the Deputy's grasp while being escorted constitutes excessive and unnecessary force.

**B. *Monell* Claim Against County**

Plaintiff's Monell claim will fail because it is based on a purported unconstitutional practice that is unsupported by the evidence. In his operative complaint [ECF 35], Plaintiff asserts a laundry list of purportedly unconstitutional customs and practices which boils down to a practice of tolerating improper use of force on restrained individuals. To state a valid *Monell* claim for unconstitutional policy, custom or practice, Plaintiff must allege that his rights were violated pursuant to either: a) a formally adopted municipal "policy," or b) "a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal citations omitted).

As a preliminary matter, Plaintiff's *Monell* liability claims will fail because he cannot demonstrate that he suffered a constitutional violation. No authority allows for "[a]n award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As noted above, Plaintiff will be unable to prove that this was unreasonable force under these circumstances, and it is not per se unconstitutional to use force against a restrained individual. Defense experts and witnesses will testify to the physical threat an individual can pose while handcuffed to kick, bite, headbutt or otherwise injure the arresting officer.

**i. The County's Use of Force Policy is Facially Valid**

Plaintiff cannot establish *Monell* liability based on the County's formal written policy because its policy adhered to the Constitutional principles governing use of force against individuals, including restrained individuals. To establish *Monell* liability based on a written policy Plaintiff must show that the policy was, under the relevant timeframe, ***facially*** unlawful. *See Christie v. Iopa*, 176 F.3d 1231, 1241 (9th Cir. 1999) ("The Supreme Court has emphasized the danger of permitting liability for such a facially valid policy…")

(citing *Bryan Cty.*, 520 U.S. at 408). This "requires a party asserting a facial challenge to show that 'no set of circumstances exists under which the [policy] would be valid.'" *Lanier v. City of Woodburn*, 518 F.3d 1147, 1150 (9th Cir. 2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In other words, a policy is considered "facially valid unless it can *never* be applied in a constitutional manner." *Id*. (Italics in original).

A facially valid use of force policy must require "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397 (1989). The test balances the intrusion on the individual's Fourth Amendment right against the governmental interests at stake, and the reasonableness of the search is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

At the time of the incident, the County's use of force policy was established by the Sheriff's Policies and Procedures handbook. Under Section 2.49 of that handbook, "Employees shall not use more force in any situation than is *reasonably necessary* under the circumstances. Employees shall use force in accordance with law and established Departmental procedures, and report all use of force in writing." The Use of Force Guidelines for the San Diego Sheriff's Department were detailed in "Addendum Section F" to the Manual of Policies and Procedures. Pursuant to that section, a Deputy "may use *objectively reasonable force* to effect the arrest, to prevent escape, or to overcome resistance." The policy continues:

> Deputies may only use a level of force they reasonably believe is proportional to the seriousness of the suspected offense or the reasonably perceived level of actual or threatened resistance. To be proportional, the level of force applied must reflect the totality of circumstances surrounding the situation at hand, including the nature and immediacy of any threats posed to officers and others.

(Defendant County of San Diego's Motion for Summary Judgment ("COSD MSJ") [ECF No. 80] at pp. 7-8.) As written, the County's policies and procedures are facially valid

/ / /

because they require compliance with Fourth Amendment guidelines to use only use that force which is objectively reasonable and proportional to the threat.

**ii. There is no custom or practice arising from a failure to train Sheriff's personnel**

Plaintiff cannot demonstrate *Monel* liability for failure to train considering the County's robust training programs regarding use of force. In limited circumstances municipal civil rights liability may be predicated on a "failure to train" employees adequately. *See City of Canton*, 489 U.S. 378, 387 (1989). Such a claim requires: (1) the training program must be inadequate in relation to the tasks the particular employees must perform; (2) the officials must have been deliberately indifferent to the rights of persons with whom the [local officials] come into contact; and (3) the inadequacy of the training must be shown to have actually caused the constitutional deprivation at issue. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For municipal liability to attach, the *identified deficiency* in a public entity's training program must be closely related to the ultimate injury; meaning the plaintiff must prove that the deficiency, actually caused the law enforcement official's indifference to his rights. *Canton*, 489 U.S. at 391. Finally, not only must the *identified deficiency* be the moving force behind the constitutional deprivation, but the plaintiff must also establish that the injury *would have been avoided* had the employee been trained under a program that was not deficient. *Canton,* 489 U.S. at 391. Plaintiffs cannot meet this burden.

The County's training and procedures regarding the use of force, including the use of force against restrained individuals, is not constitutionally deficient. Deputies are given twenty (20) weeks of defensive tactics training and their comprehension and mastery of use of force principles are constantly monitored and evaluated throughout this training. (COSD MSJ [ECF 80] at p. 10) Further, Deputies are exposed to periodic training

///

throughout their career to refresh concepts and policies regarding restraining suspects, escorting suspects, and the use of objectively reasonable force, when necessary. (*Ibid.*)

**iii. There is no custom or practice arising from a failure to discipline Sheriff's personnel**

Plaintiff cannot establish an unconstitutional policy, practice or custom based on the County's failure to discipline because at the time of the incident the County had a robust system for reviewing use of force, and where necessary, discipline its misuse. "[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011)

Every use of force, regardless of whether there is a complaint, is required to be reported and reviewed by several levels in the deputies' chain of command and the Division of Inspectional Services. (COSD MSJ [ECF 80] at p. 11) Further, the San Diego Sheriff's Office's Department of Internal Affairs also reviews every complaint regarding excessive force received by its office. If the complaint does not identify a violation of policy or the law, an internal affairs sergeant will send the complainant a correspondence letter indicating that their complaint was reviewed and informing them that it did not warrant a full investigation. If the complaint has merit, it is elevated to a full internal affairs investigation for serious violations or referred for a command-level investigation for more minor cases that are procedural in nature. (*Id.* at p. 12.)

Further, Plaintiff cannot establish a "failure to discipline" *Monell* claim based on the discipline imposed following an internal affairs investigation into Deputy Ramos' and other Deputies' use of force to restrain a detainee at San Diego Central Jail. This evidence should be excluded to the extent it is offered to prove that in the subject incident Deputy Ramos acted in accordance with a character or trait exhibited in the earlier incident. Fed. R. Evid. 404. It should also be excluded due to the unfair prejudice and the extent to which it will confuse the issue and mislead the jury. Fed. R. Evid. 403. Further, a single incident cannot establish a failure to discipline because an unconstitutional custom or practice must

be so "persistent and widespread" that it amounts to "permanent and well settled" municipal policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Wallace v. City of Santa Rosa,* C 12-6451 MMC, 2013 WL 4675354, at *2 (N.D. Cal. Aug. 30, 2013), citations omitted ("[A] single failure to discipline is insufficient to make out a claim for liability under 42[] U.S.C. § 1983.") First, evidence of this incident should be excluded at trial because even if purportedly introduced for purposes other than to prove Deputy Ramos' character it is very likely the jury will likely be misled or confused into believing it is probative of Deputy Ramos' character. This would be highly prejudicial as it is unlikely a jury could apply an objective standard to determine whether a law enforcement officer's actions were reasonable and necessary when presented with knowledge of past internal affairs complaints. Even if this information were admissible, this prior investigation cannot establish a failure to discipline considering the extensive investigation was conducted, review by and consensus of numerous levels of authority within the Sheriff's office, and its finding which held Deputy Ramos accountable on other claims.

**iv. There is no pattern of unconstitutional conduct**

Plaintiff is anticipated to seek to introduce evidence relating to several lawsuits filed against the County alleging claims of excessive force as evidence of a defacto policy, practice or custom of tolerating excessive force on restrained individuals. (Plaintiff's First Amended Complaint [ECF No. 35], ¶ 33; Plaintiff's Opposition to the County's Motion for Summary Judgment [ECF No. 94 at pp. 31-35]) "[T]he mere fact that such lawsuits were filed does not support the existence of a policy, custom, or practice" of unconstitutional conduct. *Gillam v. City of Vallego*, No. 214CV2217KJMKJNPS, 2016 WL 4059184, at *7 (E.D. Cal. 2016), *report and recommendation adopted*, 2016 WL 4041508; *Solis v. City of Sunnyvale*, No. 20-CV- 03912-NC, 2020 WL 7353698, at *6 (N.D. Cal. 2020) ("[T]he mere existence of lawsuits against the City does not adequately show that the City adopted a custom of condoning excessive force.") To "help determine whether other lawsuits can establish a widespread custom," district courts in California have articulated six factors they consider:

> (1) the degree of similarity between the factual allegations; (2) the number of lawsuits; (3) the temporal proximity; (4) the disposition of those cases; (5) the similarity of the defendants; and (6) the size of the municipality relative to the number and type of lawsuits.

*Jackson v. Cnty. of San Bernardino*, No. 523CV00341SSSSHKX, 2023 WL 9066307, at *4 (C.D. Cal. 2023).

Plaintiff cannot establish such a custom because he relies on past and ongoing litigation arising from circumstances and uses of force that were not substantially similar to the subject incident. With respect to factual similarity, while "prior incidents of constitutional violations need not be identical to the factual circumstances giving rise to the plaintiff's claims, [] they must be ***substantially similar*** in character." *Seever v. City of Modesto*, No. 121CV01373JLTEPG, 2022 WL 17418355, at *3 (E.D. Cal. 2022) (quotations omitted; emphasis added); *Jackson*, *supra,* 2023 WL 9066307, at *5 (factually distinguishable lawsuits are "immaterial for purposes of determining whether there is a widespread custom in this case."); *Sweiha v. County of Alameda*, 19-cv-03098-LB, 2019 WL 4848227, at *4-5 (N.D. Cal. 2019) (five other incidents did not show unlawful pattern where the incidents "have markedly different facts" to the plaintiff's claims); *Gal v. Cnty. of Kauai*, No. CV 20-00011 JMS-WRP, 2020 WL 3895756, at *4 (D. Haw. 2020) (plaintiff must "identify 'numerous lawsuits' with a *similar use* of alleged excessive force exhibited in those lawsuits to give rise to a reasonable inference of a specific custom or policy…") (Italics in original). None of the cases cited by Plaintiff are sufficiently factually similar to the subject incident to help determine whether there was a widespread custom. (COSD MSJ [ECF No. 80-1] at pp. Defendants are prepared to rebut Plaintiff's claims by demonstrating the factual distinction between the incidents underlying each of the actions on which Plaintiff relies and the subject incident through evidence and testimony of percipient witnesses to the incidents from which those other actions arose.

The past and ongoing litigation cited by Plaintiff also cannot establish a widespread custom or practice because their disposition does not indicate unconstitutional practices. (COSD MSJ [ECF No. 80] at pp. 19-25.) Several of the matters cited were dismissed with

prejudice following a settlement without finding excessive force. Other matters cited by Plaintiff had summary judgment granted for the County, were dismissed for want of prosecution, and one even had a verdict set aside and vacated and was subsequently dismissed with prejudice. Only one matter cited by Plaintiff in his operative complaint involved a verdict finding excessive force, but it was excessive force relating to a dog bite nor under similar circumstances to the force at issue in this action.

Similarly, past County settlements are not probative of an unconstitutional policy, custom or practice. The evidence code expressly states that settlement cannot be used as evidence of fault. Fed. R. Evid. 408 (prohibiting evidence of settlement to prove validity of claim). "Unlike a jury verdict, a settlement [] does not constitute a finding of liability or an admission of misconduct. Liability and misconduct should not be inferred from a settlement." *Minor v. Cnty. of Los Angeles*, EDCV1501346VAPSPX, 2015 WL 13711269, at *3 (C.D. Cal. Sept. 23, 2015) (holding allegations regarding settlements were not relevant to a *Monell* claim). Put differently, the County's decision to settle cases alleging excessive force is not evidence that those claims had merit, nor does it demonstrate a defacto unconstitutional pattern or practice.

Further, none of the internal affairs claims or investigations produced in discovery demonstrate a pattern of using unreasonable force against restrained individuals. In discovery, Plaintiff obtained every use of force claim and internal affairs investigation from 2020-2022. Of those claims, only eight were sufficiently substantive to warrant an internal affairs investigation. Of those eight, only two involved use of force on a restrained individual. Neither bore substantial similarities to the underlying use of force. Internal Affairs Case No. 2021-106.1 involved four strikes to the face with a closed fist of a detainee at San Diego Central Jail. Far from demonstrating a pattern of tolerance, there was a sustained finding of excessive force and a seven-day suspension. The other use of force claim involved several deputies' struggle to restrain an individual which required the use of a WRAP restraint device. The Deputies were exonerated by the investigation, and their force was found to be appropriate. Not only was the force employed entirely different than

that at issue in this action, but it does not demonstrate a pattern of tolerance when the use of force was so thoroughly investigated and found to be reasonable.

**v. Plaintiff's statistical analysis does not demonstrate an Unconstitutional custom or practice**

A low-rate of findings that a use of force violated Sheriff's Office policy does not establish a defacto policy of tolerating excessive force- it is equally consistent with a well-trained department whose officers used force appropriately. "Statistics of unsustained complaints of excessive force and other police misconduct, without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983." *Hocking v. City of Roseville*, No. Civ. S-06-0316 RRB EFB, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008); see also *Strauss v. City of Chicago*, 760 F.2d 765, 768–769 (7th Cir. 1985) (noting that "the number of complaints filed, without more, indicates nothing" because people "may file a complaint for many reasons or for no reason at all.") Plaintiff's expert is anticipated to opine that the Department's failure to discipline for excessive force is shown when one "compares the low number of out-of-policy determinations to the total number of uses of force." (Plaintiff's Opposition [ECF No. 94] at p. 29.) However, a low rate of findings of excessive force when measured against total incidents is not inherently suspect; it may reflect that deputies are well-trained and use force appropriately in most encounters.

These statistics are not probative of a custom or practice of excessive force against restrained individuals because there is no indication how many in the statistical data set were restrained, or whether the type of force employed was like the takedown at issue in this action. *See Whiting v. City of San Jose*, No. 21- CV-05248-VKD, 2022 WL 2714968, at *5 (N.D. Cal. July 13, 2022) (discussing the use of statistical evidence in the context of *Monell* liability to find Plaintiff "need[s] to identify what made the use of force in other matters illegal and show that a *similar illegality was involved in [his] case*.") Finally, comparisons to other law enforcement agencies is not probative in the absence of any

///

indication that the data set for that agency is sufficiently similar to the data set analyzed for the County.

## IV. ABANDONED ISSUES

Defendants have not abandoned any issues raised in their respective responsive pleadings.

## V. EXHIBITS

Defendants identify the following documents, other exhibits or other evidence in Defendants' possession, custody or control that it expects to offer to contradict or rebut Plaintiff's case:

| Number | Date Marked | Date Admitted | Description |
|---|---|---|---|
| A | | | San Diego Sheriff's Department Arrest Report 22156316.1 from Subject Incident (CSD 000030-000040) |
| B | | | San Diego Sheriff's Department Arrest Report 22156316.2 from Subject Incident (CSD 000041-000044) |
| C | | | Background Event Chronology, Event No. E8247218 (CSD 000045-000050) |
| D | | | Citation No. 1109409 (CSD 000391) |
| E | | | Citation No. 1109410 (CSD 000392) |
| F | | | CLETS Information from Subject Incident (CSD 000393-000402) |
| G | | | Rancho San Diego Station Patrol Sergeant's Daily Log December 18, 2022 (CSD 000403-000404) |
| H | | | Photographs from Subject Incident (CSD 000405-000482, 000594-000618) |
| I | | | San Diego County Sheriff's Office Policy & Procedure Manual, sections 2.49, 6.48, 10.10 and Addendum F. |

| | | | |
|---|---|---|---|
| | | | (CSD 000483-000503) |
| J | | | San Diego Sherriff's Department Use of Force Supplemental Report (CSD 000504-000506) |
| K | | | Radio Audio Records relating to the Subject Incident (CSD 000507) |
| L | | | Two (2) body worn camera videos relating to the Subject Incident (CSD 000508-000509) |
| M | | | Background Event Chronology, Event No. E8247218 (CSD 000586-000589) |
| N | | | Audio, Event no. E8247218 (CSD 000590) |
| O | | | Background Event Chronology, Event No. E8247382 (CSD 000591-000592) |
| P | | | Audio, Event no. E8247382 (CSD 000583) |
| Q | | | 2022 Addendum F (CSD 000619-000636) |
| R | | | Qualification Report re Nicolai Ramos (CSD 000637) |
| S | | | POST Certification Profile re Nicolai Ramos (CSD 000638-000640) |
| T | | | LMS Transcripts re Nicolai Ramos (CSD 000648-000682) |
| U | | | Training Certificates  re Nicolai Ramos (CSD 001458-001460) |
| V | | | SDSD Training History (CSD 001994-002059, CSD 002087-002128) |
| W | | | Policy 2.48 (CSD 003561) |
| X | | | UOF Review Report version 2 (CSD 003562) |
| Y | | | Additional Policy (CSD 004068-004074) |
| Z | | | Plaintiff Jamel Burt's Bonita Smiles Records |
| AA | | | Deposition Transcript of Dep. Jacob Wilder with Exhibits |
| AB | | | Deposition Transcript of Ghazal Farhang with Exhibits |

| | | | |
|---|---|---|---|
| AC | | | Deposition Transcript of Lt. Ashley Lewis with Exhibits |
| AD | | | Deposition Transcript of Lt. Lon Nguyen with Exhibits |
| AE | | | Deposition Transcript of Dep. Nicolai Ramos with Exhibits |
| AF | | | Deposition Transcript of Plaintiff Jamel Burt with Exhibits |
| AG | | | Deposition Transcript of Roger Clark with Exhibits |
| AH | | | Plaintiff Jamel Burt's Responses and Objections to Defendant County of San Diego's Requests for Production of Documents, Set One |
| AI | | | Plaintiff Jamel Burt's Responses and Objections to Defendant County of San Diego's Interrogatories, Set One |
| AJ | | | Plaintiff Jamel Burt's Responses and Objections to Defendant Dep. Nicolai Ramos' Interrogatories, Set One |
| AK | | | Plaintiff Jamel Burt's Responses and Objections to Defendant Det. Michael Alcarion's Interrogatories, Set One |
| AL | | | Plaintiff Jamel Burt's Initial Expert Disclosures |
| AM | | | Plaintiff Jamel Burt's Supplemental Expert Disclosures |
| AN | | | Expert Report of George Georgaklis, D.D.S. |
| AO | | | Expert Report of John Stanley |

Defendants identify the following documents, other exhibits or other evidence in Defendants' possession, custody or control that it may offer to contradict or rebut Plaintiff's case:

| Number | Date Marked | Date Admitted | Description |
|---|---|---|---|
| AP | | | Plaintiff Jamel Burt Arrest Records, Booking No. 21132879 (CSD 000001-000011) |
| AQ | | | Plaintiff Jamel Burt Arrest Records, Booking No. 22745087 (CSD 000012-000019) |
| AR | | | Plaintiff Jamel Burt Arrest Records, Booking No. 24712844 (CSD 000020-000026) |
| AS | | | Plaintiff Jamel Burt Arrest Records, Booking No. 212561601 (CSD 000027) |
| AT | | | Plaintiff Jamel Burt Arrest Records, Booking No. 212561602 (CSD 000028) |
| AU | | | Plaintiff Jamel Burt Arrest Records, Booking No. 212561604 (CSD 000029) |
| AV | | | San Diego Sheriff Medical Records: Burt, Jamel (CSD 000051-0000390) |
| AW | | | San Diego County Sheriff's Department Incarcerated Person History (CSD 000510-000585) |
| AX | | | Background Event Chronology, Event No. E8247218 (CSD 000586-000589) |
| AY | | | Audio, Event no. E8247218 (CSD 000590) |
| AZ | | | Priors PHI Report (CSD 002129) |
| BA | | | Broussard Accused Video (CSD 002149) |
| BB | | | De La Torre Video (CSD 002150) |
| BC | | | Kearney Accused Video (CSD 002151) |
| BD | | | Ramos Accused Video (CSD 002152) |
| BE | | | S. Jones Video (CSD 002153) |
| BF | | | Sergeant Lawson Video (CSD 002154) |
| BG | | | Sherman Accused Video (CSD 002155) |
| BH | | | Stevens Video (CSD 002156) |

| | | | |
|---|---|---|---|
| BI | | | Photos (CSD 002157-002171) |
| BJ | | | 2017-06-02 CCTV Recording (CSD 002172-002174) |
| BK | | | Sheriff's Body-Worn Camera Footage (CSD 003451-003461) |
| BL | | | RMS Case No. 20153173 (CSD 003462-003490) |
| BM | | | Property and Evidence for 20153173 (CSD 003491-003537) |
| BN | | | Comms Center E688903 (CSD 003538-003551) |
| BO | | | Sheriff's Body-Worn Camera Footage (CSD 003552) |
| BP | | | 2018-060.1 Strode E (CSD 003553-003559) |
| BQ | | | Academy file re Nicolai Ramos (CSD 003560) |
| BR | | | Sheriff's Body-Worn Camera Footage (CSD 003564-004067) |
| BS | | | Additional Policy (CSD 004068-004074) |
| BT | | | False arrest uploaded (CSD 004075) |
| BU | | | Internal Affairs (CSD 004076-006017) |
| BV | | | Plaintiff Jamel Burt's U.S. Customs and Border Protection Records |
| BW | | | Deposition Transcript of Det. Michael Alcarion with Exhibits |
| BX | | | Deposition Transcript of Kyle Bibel with Exhibits |
| BY | | | Defendant County of San Diego's Responses to Plaintiff Jamel Burt's Request for Production of Documents, Set One |
| BZ | | | Defendant County of San Diego's Responses to Plaintiff Jamel Burt's Special Interrogatories, Set One |
| CA | | | Defendant County of San Diego's Responses to Plaintiff Jamel Burt's Request for Admission, Set One |
| CB | | | Defendant County of San Diego's Responses to Plaintiff Jamel Burt's Request for Production of |

| | | | |
|---|---|---|---|
| | | | Documents, Set Two |
| CC | | | Defendant County of San Diego's Responses to Plaintiff Jamel Burt's Request for Production of Documents, Set Three |
| CD | | | Defendant County of San Diego's Responses to Plaintiff Jamel Burt's Request for Production of Documents, Set Four |
| CE | | | Defendant County of San Diego's Supplemental Responses to Plaintiff Jamel Burt's Request for Production of Documents, Set One |
| CF | | | Defendant County of San Diego's Second Supplemental Responses to Plaintiff Jamel Burt's Request for Production of Documents, Set One |
| CG | | | Defendant County of San Diego's Supplemental Responses to Plaintiff Jamel Burt's Special Interrogatories, Set One |
| CH | | | Defendant County of San Diego's Second Supplemental Responses to Plaintiff Jamel Burt's Special Interrogatories, Set One |
| CI | | | Defendant County of San Diego's Third Supplemental Responses to Plaintiff Jamel Burt's Special Interrogatories, Set One |
| CJ | | | Expert Report of Roger Clark |
| CK | | | Mom TRO application |
| CL | | | Home Depot PC484 arrest report |
| CM | | | BWC from prior 148 |
| CN | | | TRO from recent DV |

///

///

///

## VI. WITNESSES

### A. PERCIPIENT WITNESSES

Defendants identify the following percipient witnesses whom they expect to present at trial:

1) Nicolai Ramos, SDSO Deputy – Defendant, contact through the Office of County Counsel.

2) Jacob Wilder-Tramell, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

3) Javier Morales, SDSO Deputy Detective – Percipient witness, contact through the Office of County Counsel.

4) James McCurty, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

5) David Perkins, SDSO Lieutenant– Percipient witness, contact through the Office of County Counsel.

6) Matthew Glisson, SDSO Captain (Ret.) – Percipient witness, contact through the Office of County Counsel.

7) John Spach, SDSO Lieutenant– Percipient witness, contact through the Office of County Counsel.

8) Ashley Lewis, SDSO Lieutenant – Percipient witness, contact through the Office of County Counsel.

9) Lon Nguyen, SDSO Lieutenant – Percipient witness, contact through the Office of County Counsel.

Defendants identify the following percipient witnesses whom they may call at trial if the need arises:

10) Jamel Burt – Plaintiff, contact through his Counsel of Record.

11) Perry Lotts – Percipient witness, 6333 Harris Heights Ave., Glen Burnie, MD 21061; (443) 553-3212.

///

12) Ghazal Farhang, D.D.S. – Plaintiff's Non-Retained Expert Witness, 1558 East H Street, Ste. B, Chula Vista, CA 91913; (619) 421-9070.

13) James Petruse, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

14) Nicholas Dohmen, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

15) James Santos, Jr., SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

16) Ryan Murphy, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

17) Jeffrey Houser, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

18) Chris Hydar, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

19) Jeffrey Cruz, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

20) Brian Baydo, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

21) Cliff Cutrell, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

22) Jeremy Banks, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

23) David Ertz, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

24) Shane Allison, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

25) Andrew Brumfield, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

26) Ronald Bushnell, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

27) David Pockington, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

28) Zachary Harris, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

29) Frank Leyva, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

30) Kenneth Edward, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

31) Peter Alvarado, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

32) Jeffrey Chu, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

33) Joseph McManus, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

34) Christopher Cadigan, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

35) Jason Ferguson, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

36) Alexander Soliman, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

37) Dylan Haddad, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

38) Chase Fisher, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

39) Julio Rodriguez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

40) Jorge Enciso, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

41) Salvador Suarez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

42) Ryan Seabron, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

43) Diego Lopez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

44) Andrew Prendiville, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

45) Charles DeLaCruz, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

46) Aaron Vrabel, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

47) Spencer Schafer, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

48) Jose Lopez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

49) Laura Coyne, SDSO Lieutenant – Percipient witness, contact through the Office of County Counsel.

50) Michael Lawson, SDSO Sergeant – Percipient witness, contact through the Office of County Counsel.

51) Mason Hendrix, SDSO Sergeant – Percipient witness, contact through the Office of County Counsel.

52) John Douthitt, SDSO Sergeant – Percipient witness, contact through the Office of County Counsel.

53) Drew Beatty, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

54) Adrian Carrillo, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

55) Roland Garza, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

56) Joseph Kodadek, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

57) John Robledo, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

58) Scott Rossall, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

59) Frank Stalzer, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

60) Scott Winter, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

61) Kevin McCauley, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

62) Nicholas Morgan, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

63) Joshua Nahan, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

64) Christian Broussard, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

65) William Kearney, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

66) Kyle Bibel, SDSO Sergeant (Ret.) – Percipient witness, contact through the Office of County Counsel.

67) Casey Dow, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

68) Stephen McCarthy, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

69) Michael Saunders, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

70) David Barrera, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

71) Roger Hurst, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

72) Jeff Hornacek, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

73) Greg Ward, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

74) Joe Bartlee, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

75) Kevin Moore, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

76) Tim Matzkiw, SDSO Lieutenant – Percipient witness, contact through the Office of County Counsel.

77) David Lovejoy, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

78) John Buckley, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

79) Gerardo Roman, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

80) Dimitris Vlahakis, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

81) Elizabeth Montoya, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

82) Tony Keller, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

83) Kenneth Lind, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

84) Michael Cascioppo, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

85) Alexander Doyle, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

86) Justin Cole, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

87) Nicholas Huton, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

88) Landon Kuhn, SDSO Sergeant– Percipient witness, contact through the Office of County Counsel.

89) Evelyn Leon, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

90) James Cea, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

91) Kenneth Jones, SDSO Lieutenant – Percipient witness, contact through the Office of County Counsel.

92) Marshall Mora III, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

93) Gregory Buchnoff, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

94) Mark Cahill, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

95) Benjamin Nazerian, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

96) Javier Rodriguez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

97) Michael Rand, SDSO Lieutenant– Percipient witness, contact through the Office of County Counsel.

98) Howard Kluge III, SDSO Sergeant – Percipient witness, contact through the Office of County Counsel.

99) Matthew Walters, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

100) Dominic Banaga, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

101) John P. Boyce, SDSO Lieutenant – Percipient witness, contact through the Office of County Counsel.

102) Michael Abas, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

103) Jared Birrenkott, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

104) Plutarco Vail, SDSO Sergeant – Percipient witness, contact through the Office of County Counsel.

105) Mark Milton, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

106) Kerry Johnson, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

107) Kenneth Feistel, Jr., SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

108) Nicholas Ramirez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

109) Andres Garcia, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

110) Nicholas Koons, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

111) Michanna Krzykowski, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

112) Nicolas Gonzalez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

113) Jenelle Hudson, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

114) Bryce Thompson, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

115) Aaron Tenorio, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

116) Isaac Martinez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

117) Anel Rodriguez, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

118) Dominic Banaga, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

119) Preston Robbins, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

120) Nicholas Hutton, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

121) Trentyn Staley, SDSO Deputy – Percipient witness, contact through the Office of County Counsel.

///

///

///

///

**B. <u>EXPERT WITNESSES</u>**

Defendants identify the following retained expert witnesses that they expect to call at trial:

**i. John Stanley** –2220 Bonita Avenue, La Verne, CA 91750; (626) 831-8284.

Mr. Stanley is a retired Lieutenant of the Los Angeles Sheriff's Department. He served as a peace officer for the County of Los Angeles for nearly 34 years. During that time, he worked in various roles, including custody, patrol, training, emergency operations, administration, and other specialized assignments. He also held multiple positions of progressively increasing responsibility, from deputy to sergeant to lieutenant. As a deputy sheriff, he worked line-level positions in both custody and patrol. As a sergeant, he also held line-level positions in custody and patrol, and served as a training sergeant and squad leader for the LASD crowd and riot control team, the Sheriff's Response Team (SRT). As a lieutenant, he served as a station watch commander and also had a collateral duty as platoon leader of the SRT.

Mr. Stanley is anticipated to provide testimony on police tactics, use of force, arrest and control, control and movement of handcuffed individuals, retaliation, treatment of detainees and people in custody, practices and procedures related to takedowns (including takedowns of restrained individuals), proper training, supervision, and discipline of peace officers, including the investigation, disposition, and discipline in complaints and allegations of excessive force, as well as any other opinions stated in his Fed. R. Civ. Proc. 26(a)(2) Expert Report. Mr. Stanley may also testify in rebuttal to any expert testimony offered by Plaintiffs.

**ii. George Georgaklis, D.D.S.** –4510 Executive Drive, Ste. 106, San Diego, CA 92121; (858) 552-1223.

Dr. Georgaklis is a practicing dentist. Since graduating from Tufts University School of Medicine in 1980, he has practiced in the field of General dentistry, full mouth reconstruction, TMJ dysfunction, implantology and orthodontics. He currently devotes 90% of his professional time to clinical practice.

Dr. Georgaklis is expected to testify as to the nature and extent of Plaintiff's purported dental injuries, the reasonableness and necessity of Plaintiff's dental treatment, the reasonableness of the costs billed for those treatments, and any other opinions stated in his Fed. R. Civ. Proc. 26(a)(2) Expert Report. Dr. Georgaklis may also testify in rebuttal to any expert testimony offered by Plaintiffs.

DATED: September 18, 2026 DAMON M. BROWN, County Counsel

By: *_/s/ Timothy A. Hanna_*
TIMOTHY A. HANNA, Senior Deputy
CHRISTOPHER M. BLAYLOCK, Senior Deputy
Attorneys for Defendant County of San Diego and Nicolai Ramos