DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
CHRISTOPHER M. BLAYLOCK, Supervising Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendant County of San Diego and Nicolai Ramos

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

JAMEL BURT,

Plaintiff,

v.

NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5,

Defendants.

No. 24-cv-00662-CAB-VET

**MOTION IN LIMINE NO 4 TO REQUEST SPECIAL JURY INTERROGATORIES (OR EQUIVALENT QUESTIONS) OF DISCRETE FACTS TO ACCOMPANY SPECIAL VERDICT FORM**

Hearing: October 16, 2026
Time: 2:00 P.M.
Courtroom: 15A
Judge: Hon. Cathy A. Bencivengo

Defendants respectfully request that the jury be given special jury interrogatories, as drafted by Defendants, to preserve the issue of qualified immunity to Plaintiff's excessive force claim. Qualified immunity is not a jury issue; it is a legal question that, when decided before or during trial, is decided by the Court with reference to undisputed material facts, and when decided after trial, is decided by the Court with reference to the factual determinations made by the jury. *See A.D. v. California Highway Patrol,* 712 F.3d 446, 460 (9th Cir. 2013). If model jury instructions insufficiently isolate specific disputed facts on which qualified immunity depends, the Court should ask the jury to answer special jury

interrogatories along with the special verdict. Otherwise, a defendant claiming qualified immunity might unfairly lose the opportunity to assert qualified immunity in a post-trial motion under Federal Rule of Civil Procedure 50(b).

## I. Qualified Immunity Applies if Deputy Ramos Reasonably Believed Mr. Burt Pulled Free to Physically Resist His Efforts To Escort Him to the Patrol Vehicle

Qualified immunity protects government officials from suits seeking civil damages. It is an immunity from suit and not simply a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). It protects government officials when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lerma-Mayoral v. City of El Centro*, 2018 U.S. Dist. LEXIS 162117, at *10 (S.D. Cal. Sep. 21, 2018)(citing *Pearson v. Callahan*, 555 U.S. 223, 231(2009)). Qualified immunity is intended to provide individuals with "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd* , 563 U.S. 731, 743 (2011) (citation omitted); *Ford v. Ramirez-Palmer (Estate of Ford),* 301 F.3d 1043, 1049 (9th Cir. 2002)(qualified immunity recognizes that reasonable mistakes can be made as to legal constraints on particular police conduct).

### A. Lack of Clearly Established Law Regarding Use of Takedown When Deputy Reasonably Believes the Suspect has Attempted to Pull Free From His Grasp

The plaintiff in a Section 1983 action has the burden to demonstrate infringement of a clearly established right; if plaintiff fails to do so, the defendant prevails. *Clairmont Mental Health v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established."). In order for law to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Stated another way, to deny qualified immunity, a judge must be satisfied that *no* competent, reasonable person

in the individual defendant's position – *none* – would have acted as he or she did. Thus, it is incumbent on Plaintiffs to identify "a robust 'consensus of cases of persuasive authority'" allegedly violated by each individual defendant. *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). The Supreme Court has called this an "exacting standard." *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 13 (2015). The Supreme Court has also directed that the right must be clearly established in a particularized context. "[W]hether a right is clearly established turns on 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (italics added) (quoting *Saucier*, 533 U.S. at 202.) This determination must be made with specificity and district courts are "not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S.Ct. at 2023.

At the time of this incident, it was clearly established that a takedown can be excessive force. *Santos v. Gates*, 287 F.3d 846, 853-854 (9th Cir. 2002) (finding takedown unreasonable where the crime at issue was only public intoxication and Plaintiff was described as "passive" at the time of the incident, presenting no "immediate threat," and not resisting arrest.) However, it was not clearly established that it would be excessive force to use a takedown against a physically resisting suspect reasonably believed to present a threat to the safety of the Deputy or others.

In *Shay v. City of Huntington Beach*, 816 Fed. Appx. 47, 50 (9th Cir. 2020), the Ninth Circuit found that it was not clearly established at time of arrest that the officer's takedown maneuver was unconstitutionally excessive under circumstances. *Id.* at 50. During an officers' traffic stop of one arrestee for suspicion of driving under the influence, Plaintiff was tackled to stop his telephone video recording of the driver's arrest. *Id.* at 49. The Court noted that "the force used on [Plaintiff] involved a takedown maneuver by one officer and nothing further." *Ibid.* The Court held that "[t]he reasonable officer

///

could have concluded, under the law clearly established at the time, that this amount of force was not unconstitutionally excessive under the circumstances." *Ibid.*

In *Saetrum v. Vogt*, 673 Fed. Appx. 688 (9th Cir. 2016), the Ninth Circuit similarly held that a law enforcement officer's takedown of a suspect did not violate clearly established law. *Id.* at 690-691. In that matter, the officer in the course of an arrest "allegedly drove his patrol car into Plaintiff and then executed a hands-on takedown, causing him to suffer a concussion." *Id.* at 689. The Court recognized "constitutional violations in at least two cases where officers tackled suspects" but found that "both cases involved greater force and weaker justification than are present here." *Id.* at 691 citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 478–79 (9th Cir. 2007) (holding officers used excessive force when they "gang-tackled" a suspect who had committed misdemeanor trespass and the suspect neither posed an immediate threat nor attempted to flee); *Santos v. Gates*, 287 F.3d 846, 853–54 (9th Cir. 2002) (holding officers used excessive force where a takedown resulted in a broken back, the crime was public intoxication and the suspect neither fled nor resisted arrest). The Court concluded that "even assuming the takedown involved an unreasonable application of force, the contours of the law were not sufficiently clear to put any reasonable officer on notice that tackling [Plaintiff] would violate the Constitution."

In *Robbins v. City of San Diego Police Dept.*, 2010 WL 902970, (S.D. Cal. Mar. 8, 2010), San Diego Police Department Officers responding to a 9-1-1 call, and interacting with and observing the Plaintiff determined that he could not "care for himself or the safety of others." *Id.* at *4. The Officers took Plaintiff "down to the ground" when he "struggled against the arrest." *Ibid.* The Court found that "[t]his 'controlled takedown' was reasonable in light of [Plaintiff's] resistance to the arrest and the threat he presented to himself, to the officers, and to potential bystanders." *Ibid.*

Deputy Ramos is entitled to qualified immunity if he had a reasonable belief that Plaintiff was physically resisting and a threat to safety of himself or others because it was not clearly established that a takedown is unconstitutional under those circumstances.

Accordingly, Defendants respectfully request the following special jury interrogatories be presented:

1. Before Deputy Ramos took Plaintiff Jamel Burt to the ground, did Deputy Ramos reasonably believe that Plaintiff was physically resisting his efforts to escort him to the patrol vehicle?
2. Before Deputy Ramos took Plaintiff Jamel Burt to the ground, did Deputy Ramos reasonably believe that Plaintiff would be a threat to the safety of himself, Deputy Wilder or any potential bystanders if Plaintiff was not controlled?
3. Before Deputy Ramos took Plaintiff Jamel Burt to the ground, did Deputy Ramos reasonably believe that Plaintiff Jamel Burt attempted to break free from his grasp?
4. Before Deputy Ramos took Plaintiff Jamel Burt to the ground, did Deputy Ramos reasonably believe that a controlled takedown was necessary to prevent Plaintiff Jamel Burt from breaking free from his grasp?

Defendants note that the purpose of the interrogatories are to preserve Deputy Ramos' defense of qualified immunity. Plaintiff's objection to the interrogatories, if any, can be raised at the time of a Rule 50 motion.

DATED: September 28, 2026

DAMON M. BROWN, County Counsel

By: *__/s/ Timothy A. Hanna__*
Timothy Hanna, Senior Deputy
Christopher Blaylock, Supervising Deputy
Attorneys for Defendants County of San Diego and Nicolai Ramos