DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
CHRISTOPHER M. BLAYLOCK, Supervising Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendant County of San Diego and Nicolai Ramos

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

JAMEL BURT,

Plaintiff,

v.

NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5,

Defendants.

No. 24-cv-00662-CAB-VET

**MOTION IN LIMINE NO. 5 TO PRECLUDE GOLDEN RULE, SEND A MESSAGE, REPTILE ARGUMENTS, AND RACIAL INFERENCES**

Hearing: October 16, 2026
Time: 2:00 p.m.
Courtroom: 15A
Judge: Hon. Cathy A. Bencivengo

## INTRODUCTION

Defendants the County of San Diego (the "County") and Deputy Nicolai Ramos ("Ramos") move in limine to preclude Plaintiff Jamel Burt ("Burt") and his counsel from pressing several categories of improper argument and evidence at the trial of this civil-rights action, which arises from a single roadside use of force. The case will be tried on whether Ramos's brief takedown of Plaintiff was objectively reasonable and, if not, what compensation and, as to Ramos alone, what punitive damages follow. Each category of

argument this motion addresses would divert the jury from that question and invite a verdict based on passion, fear, wealth, or prejudice. Accordingly, the Defendants ask that this Court preclude and exclude the following categories of improper arguments:

1) "Golden Rule" arguments - which ask jurors to place themselves in Plaintiff's position.
2) "Reptile" arguments - which urge jurors to protect themselves and their community from a supposedly dangerous deputy;
3) "Send a message" appeals - asking jurors to punish or deter through a verdict that, on the compensatory claims and against the County, can serve no such purpose.
4) Appeals to racial prejudice or suggestions that the force was racially motivated - Plaintiff pleads no discrimination claim, and the governing reasonableness inquiry is objective; an appeal to race would inject an inflammatory theme with no bearing on any element of his claims.

For each category, Defendants ask the Court to enter a pretrial order and, where any such evidence is admissible for a permissible purpose, to give an appropriate limiting instruction. The Court should grant the motion.

## PERTINENT FACTS

This action arises from December 18, 2022, traffic stop in which Defendant Deputy Nicolai Ramos stopped a truck. Plaintiff Jamal Burt, a passenger in that truck, tossed a methamphetamine pipe out the window. The entirety of the case hinges solely on the propriety of Deputy Ramos' take down of the handcuffed Plaintiff during the escort to the patrol car. The operative complaint asserts claims for Fourth Amendment excessive force and retaliation, false arrest, failure to train, failure to supervise, failure to discipline, *Monell* municipal liability, state-law assault and battery, and violation of the Bane Act. (FAC at 1). The complaint pleads no equal-protection or other racial-discrimination

///

claim, but nevertheless highlights that the driver of the truck and Plaintiff are both African-American. (FAC ¶ 19).

## ARGUMENT

### I. The Court Should Preclude Golden Rule, Reptile, and "Send a Message" Appeals That Ask the Jury to Decide on Passion Rather Than the Evidence

Three related trial tactics share a single vice: each asks the jury to decide this case from passion, fear, or a desire to punish rather than from the evidence about a brief roadside encounter. Golden Rule appeals invite jurors to trade places with Plaintiff; reptile-theory appeals urge them to protect themselves and their community from a supposedly dangerous deputy; and "send a message" appeals ask them to punish or deter through a verdict that, on the compensatory claims and as to the County, can serve no such purpose. Federal courts have long recognized the impermissibility of these types of arguments since they tend to cause confusion of factual or even legal issues and must be excluded under Federal Rule of Evidence § 403. "The jury may not return a verdict based on personal interest, bias or prejudice and an argument asking it to do so is improper." *Caudle v. District of Columbia*, 707 F.3d 354, 359 (D.C. Cir. 2013). Courts forbid appeals to the "golden rule" and "send a message arguments" in order "to prevent the jury from deciding a case based on inappropriate considerations such as emotion." *Id.* at 360–61. See also *Moore v. Hartman*, 102 F. Supp. 3d 35, 161 (D.C. Cir. 2015) rejecting as impermissible arguments including "[w]hen law enforcement officers go over the line, the conduct injures us all.[;]" "if we can't trust our law enforcement personnel to play by the rules and not trample on First Amendment rights, then we're all in trouble[;]" arguing the jury should "send a message;" and that the award of punitive damages is "going to *make a big statement* about what ... kind of behavior ... will [be] tolerated." (emphasis in original).)

Each tactic warrants a pretrial order, when a ruling can prevent the harm rather than attempt to cure it after the jury has heard the appeal. The requests that follow are

///

drawn to reach only the improper appeals, leaving Plaintiff free to argue the reasonableness of the force and the extent of Plaintiff's injuries.

### A. Golden Rule Appeals Asking Jurors to Place Themselves in Plaintiff's Position Should Be Precluded

Plaintiff's counsel should be precluded from asking the jurors to place themselves, or a loved one, in Plaintiff's position when they decide liability or damages. "[G]olden rule" arguments are "universally condemned" because such statements "encourage the jury to depart from neutrality" and make decisions based on "personal interest" and "bias," not on the factual evidence presented. (See *Granfield v. CSX Transp., Inc*., 597 F.3d 474, 491 (1st Cir. 2010); citing to *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988 .); See also *Woods v. Burlington Northern R.R. Co.,* 768 F.2d 1287, 1292 (11th Cir. 1985), overruled on other grounds by *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1 (1987) (Explaining "The straight golden rule argument—'put yourself in the shoes of my client,'—clearly has been banned by binding precedent.");

The appeal is condemned because it substitutes juror self-interest for proof. It is "universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence," *Gibson v. Chubb Nat'l Ins. Co.*, 734 F. Supp. 3d 780, and such arguments are "universally condemned." *Prouty v. Thippanna*, 557 F. Supp. 3d at 216. Courts accordingly grant motions in limine to preclude these appeals before trial: in Gibson, the court barred "argument that asks the jury to put itself in [the plaintiff's] shoes," while preserving the jury's right to "draw upon their personal experiences to assess credibility and persuasiveness." *Gibson v. Chubb Nat'l Ins. Co.*, 734 F. Supp. 3d at 791.

This case presents an acute risk of exactly that tactic. The incident is emotionally charged: Deputy Ramos took a handcuffed man to the ground face-first, breaking two of his front teeth against the concrete. (FAC ¶ 25; FAC ¶ 29). Because Plaintiff's hands were cuffed behind his back, he could not break his fall — a detail that powerfully invites jurors to imagine themselves in his place. (FAC ¶ 26). Plaintiff further seeks punitive

damages on allegations of malicious and oppressive conduct, which sharpens the incentive to appeal to juror emotion rather than proof. (FAC ¶ 129; FAC ¶ 130). A "how would you feel" appeal on these facts would ask the jury to substitute personal identification for the objective-reasonableness inquiry that governs Plaintiff's claims.

A pretrial ruling is essential because the harm cannot be undone once the appeal is heard: the Ninth Circuit erects a "high threshold" to challenges to improper closing argument raised only after trial, reviewing for "plain or fundamental error" absent a contemporaneous objection. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002). Requiring the defense to object in the jury's presence would only underscore the improper appeal, so a pretrial order is the appropriate remedy.

**B. Reptile-Theory and Community-Safety Appeals Inviting Jurors to Imagine Themselves as Victims Should Be Precluded**

The same principle bars the related reptile-theory and community-safety appeals, the tactic of urging jurors to protect themselves and their community from a supposedly dangerous deputy rather than to weigh the evidence. When such an appeal crosses into asking jurors to imagine their family or community as the victim, it is improper for the same reason a Golden Rule argument is: it invites a verdict based on personal interest and passion rather than proof. Rule 403 supplies an independent basis to exclude material whose capacity to prompt "decision on an improper basis, commonly, though not necessarily, an emotional one" substantially outweighs its probative value. *Old Chief v. United States*, 519 U.S. at 180 (quoting Fed. R. Evid. 403 advisory committee's note). Defendants accordingly seek to preclude only the discrete, improper appeal that asks jurors to place themselves or their families in danger from the deputies or "police brutality" broadly, and to render a verdict to guard against that imagined threat.

The "reptile strategy" specifically is a mechanism of emotion-based advocacy that was presented in the publication Reptile: The 2009 Manual of the Plaintiff's Revolution, (2009) David Ball and Don Keenan. A major axiom of the "reptile strategy" states: "When the Reptile sees a survival danger, even a small one, she protects her genes by

impelling the juror to protect himself and the community." Reptile at p. 17. The book also states, "the greater the perceived danger to you or your offspring, the more firmly the Reptile controls you." *Id*. As a result, in order to appeal to juror's reptilian survival senses, the book recommends "that the plaintiff lawyer never separate a proposed safety rule from the danger it was designed to protect." Reptile at p. 51.

These appeals are improper because they redirect the jury from the only question this trial presents — whether Deputy Ramos's use of force against Mr. Burt was objectively reasonable — to a broader mission of protecting the community from perceived danger. The Ninth Circuit recognizes that closing argument urging jurors "to protect community values, preserve civil order, or deter future lawbreaking" is improper. *United States v. Audette*, 923 F.3d 1227 (9th Cir. 2019.

California courts, which address this tactic by name, are in accord: a "violation of the reptile theory occurs when counsel asks jurors to base their decisions on concerns about their own safety and the safety of the community rather than the applicable standard of care." *Allen v. Patel*, 117 Cal. App. 5th 432, 451 (2025). (quoting *Regalado v. Callaghan*, 3 Cal.App.5th 582, 599 (2016)) Such arguments "attempt to appeal to a jury's emotions by arguing a defendant's conduct threatens the community's safety." *Id*. In *Regalado v. Callaghan*, the California Court of Appeal held that closing remarks telling jurors they were "the conscience of this community" and that the courts exist "to keep the community safe" "were improper," because they urged a verdict to protect the community rather than to evaluate the defendant's specific conduct. *Regalado v. Callaghan*, 3 Cal. App. 5th at 599. The rule follows from the jury's role: an appeal to the jurors' self-interest "is improper and thus is misconduct because such arguments tend to undermine the jury's impartiality." *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 796 (2004) (quoting *People v. Pitts*, 223 Cal.App.3d 606, 696 (1990)). Such an appeal violates "the fundamental concept of an objective trial by an impartial jury." *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th at 797.

///

That concern is at its height here, where the governing excessive-force inquiry is itself an objective one that turns on the reasonableness of Ramos's conduct in this encounter, not on whether the community would be safer for a plaintiff's verdict. *Graham v. Connor*, 490 U.S. 386, 387 (1989).

In *Allen v. Patel*, the trial court barred reptile-theory arguments by motion in limine, "ma[king] it clear during the hearing on MIL 1 that reptile theory arguments were improper." *Allen v. Patel*, 117 Cal. App. 5th at 451. When plaintiff's counsel nonetheless urged the jury to "defend our community" and to declare that "in this community a person cannot put their hands on another person," the Court of Appeal affirmed the resulting new-trial order, concluding that counsel "improperly urged the jury to enter a verdict against defendant as a way of protecting the community from harm." *Id.* at 452. That community-protection framing — cast in the very terms of one person putting hands on another — is exactly the framing a police use-of-force trial invites, and exactly what a targeted pretrial order can foreclose before the jury hears it.

This is a use-of-force case, a subject that lends itself to community-danger framing, and Plaintiff's own expert already casts the Department as one that "turns a blind eye to excessive force." (Plaintiff's Opposition to Summary Judgment at 7). Because an appeal inviting jurors to see themselves as potential victims carries no legitimate probative value and a high capacity to inflame, it should be precluded under Rule 403.

**C. "Send a Message" and Punishment or Deterrence Appeals on the Compensatory Case and Against the County Should Be Precluded**

The third improper appeal asks the jury to punish or deter through its verdict where punishment is not a permissible purpose, and it too should be barred. Compensatory and punitive damages "serve distinct purposes": compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered," while punitive damages operate as private fines intended to punish the defendant and to deter future wrongdoing. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). Because of that

distinction, a jury may not "consider punishment or deterrence as an element of damages and include a sum of money in their verdict so as to punish the defendant or deter others from like conduct" unless the pleadings, evidence, and instructions warrant the separate submission of punitive damages. *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 210 (8th Cir. 1981). Permitting that would "cloud every verdict to a point where the court could not know whether the compensatory damage verdict did or did not include a punitive sum." *Ibid.* Thus, "[w]here punitive damages are not at issue, urging the jury to 'send a message' by its verdict is generally considered an improper appeal to the jurors' passion and prejudice." *Hammonds v. Yeager*, No. EDCV 15-1036 SS, 2017 WL 10560471, at *1 (C.D. Cal. 2017)

The order therefore reaches only the improper appeal to punish or deter through the compensatory verdict and any appeal to punish the County; it leaves ordinary liability and damages advocacy untouched.

The relief is scoped to what the law permits. Because punitive damages are available against Deputy Ramos individually, a deterrence argument that tracks the punitive-damages instructions would be permissible *in the punitive phase* as to Ramos. *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 519 (9th Cir. 2004). Defendants do not seek to bar that argument. They seek to preclude send-a-message and punishment appeals in connection with liability and compensatory damages, and as to the County, against which punitive damages are categorically unavailable and any appeal to punish the County is improper in all events. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The record confirms the risk: the prayer seeks punitive damages only against the individual defendants, yet Plaintiff frames the case around County-wide practices and asserts the Sheriff's Department has "paid out tens of millions of dollars in dozens of excessive force cases." (FAC at 23; Plaintiff's Opposition to Summary Judgment at 2)

///

///

///

### III. Appeals to Racial Prejudice and Unsupported Suggestions That the Force Was Racially Motivated Should Be Precluded

Plaintiff should also be precluded from appealing to racial prejudice or arguing that Deputy Ramos's use of force was racially motivated, where the complaint pleads no discrimination claim and race is immaterial to any element. The Ninth Circuit has recognized that "[a]ppeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial." *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000) (citing *Bains v. Cambra*, 204 F.3d 964, 974 (9th Cir. 2000)) That principle applies with full force in civil cases: in *Bird v. Glacier Electric Cooperative*, the court reversed a judgment because "appeals to racial prejudice in closing argument in a civil case offended fundamental fairness and violated due process," emphasizing that "[r]acial stereotyping cannot be condoned in civil cases." *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1151 (9th Cir. 2001. The court further condemned argumentative appeals to historical racial prejudice as having no proper place in a civil trial. *Id.* at 1151.

Race is not a fact of consequence in this case. The excessive-force inquiry turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Graham v. Connor*, 490 U.S. 386, 387 (1989), and "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Ibid*. A suggestion that Ramos acted from racial animus is therefore immaterial to the governing standard, and evidence or argument that lacks bearing on a material issue while carrying a high capacity to inflame is excludable because its danger of "decision on an improper basis, commonly, though not necessarily, an emotional one" substantially outweighs any probative value. *Old Chief v. United States*, 519 U.S. at 180.

Similarly, Plaintiff should be precluded from referencing extrinsic, high-profile, or other-agency use-of-force incidents involving Black individuals, including nationally

publicized cases, offered to inflame the jury or by loose analogy to this case. Whether Deputy Ramos used objectively reasonable force on December 18, 2022 turns on "the facts and circumstances confronting" him, "without regard to their underlying intent or motivation," *Graham v. Connor*, 490 U.S. at 387, and incidents involving other officers at other agencies shed no light on that question. The complaint pleads no equal-protection or § 1981 discrimination claim; its enumerated causes of action are for excessive force, retaliation, false arrest, failure to train, failure to supervise, failure to discipline, Monell liability, assault and battery, and the Bane Act. (FAC at 1). With racial motivation absent from every element, and the complaint noting only that Plaintiff and the driver are African-American, an appeal to race would invite the very prejudice-based verdict that *Bird* and *Cabrera* forbid. FAC ¶ 19; *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d at 1151.

## CONCLUSION

For the foregoing reasons, Defendants the County of San Diego and Deputy Nicolai Ramos respectfully request that the Court grant this motion and enter an order precluding Plaintiff and Plaintiff's counsel from offering, referencing, or arguing: (1) Golden Rule appeals asking the jury to place itself, or a loved one, in Plaintiff's position; (2) reptile-theory and community-safety appeals inviting jurors to imagine themselves or their families as victims of the deputy; (3) "send a message" and punishment or deterrence appeals in connection with liability and compensatory damages and against the County; (4) appeals to racial prejudice or unsupported suggestions that the force was racially motivated. Where any such evidence is admissible for a permissible purpose, Defendants request an appropriate limiting instruction under Federal Rule of Evidence 105 as alternative relief.

Based on the foregoing, Defendants respectfully request that the Court exclude any evidence or argument related to the issues described above.

///

///

///

DATED: September 28, 2026

DAMON M. BROWN, County Counsel

By: *Timothy Hanna*
Timothy Hanna, Senior Deputy
Christopher Blaylock, Supervising Deputy
Attorneys for Defendants County of San Diego and Nicolai Ramos