DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
CHRISTOPHER M. BLAYLOCK, Supervising Deputy (SBN 284629)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 904-0151; (619) 531-2469; (619) 531-6005
E-mail: timothy.hanna@sdcounty.ca.gov; christopher.blaylock@sdcounty.ca.gov

Attorneys for Defendants County of San Diego and Nicolai Ramos

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

JAMEL BURT,

Plaintiff,

v.

NICOLAI RAMOS, in his individual capacity, COUNTY OF SAN DIEGO; MICHAEL ALCARION, in his individual capacity; and DOES 1-5,

Defendants.

No. 24-cv-00662-CAB-VET

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF PLAINTIFF'S STATEMENTS AND CONDUCT IMMEDIATELY AFTER USE OF FORCE**

Hearing: October 16, 2026
Time: 2:00 P.M.
Courtroom: 15A
Judge: Hon. Cathy A. Bencivengo

## I. INTRODUCTION

The post-incident statements and behavior of Plaintiff Mr. Burt are relevant evidence on Plaintiff's liability claim for excessive force and retaliation, particularly his claim that he was cooperating with Defendant Deputy Ramos throughout the encounter and whether Deputy Ramos had a retaliatory motivation. His post-incident conduct is relevant of Plaintiff's damages in this action, specifically it shows the extent and nature of Plaintiff's physical injuries and emotional distress he claims he experienced in this incident.

## II. ARGUMENT

### A. Post-Incident Conduct and Statements are Relevant

Evidence relating to Plaintiff's statements and conduct following the use of force make it more probable he was resisting Deputy Ramos at the time force was employed. They also make it less likely that Deputy Ramos had retaliatory motivation in his use of force against Plaintiff.

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.

"Evidence of subsequent events frequently sheds light upon, and thus assumes relevance in relation to, antecedent acts." *Iacobucci v. Boulter*, 193 F.3d 14, 20 (1st Cir. 1999) (Finding post-incident video footage relevant in use of force matter.)

#### i. Use of Force

Plaintiff's post-use of force conduct lends context to the overall event and may have a tendency to show whether Plaintiff was resisting Deputy Ramos at the time force was used. "Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances." *LaLonde v. Cnty. of Riversid*e, 204 F.3d 947, 959 (9th Cir. 2000), citing *Graham v. Connor*, 490 U.S. 386, 397(1989). "In assessing the objective reasonableness of a particular use of force, we consider: (1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021), quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017). In evaluating the government's interest, a district court must consider "(1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether

the suspect was actively resisting arrest or attempting to evade arrest by flight." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022), quoting *Rice*, 989 F.3d at 1121, internal quotation marks omitted.

In his motion, Plaintiff cites the matter of *Tofte v. City of Longview,* No. 3:22-CV-05700-TMC, 2024 WL 4451403 at *5 (W.D. Wash. Oct. 8, 2024). However, that case dealt with the relevance of statements like "kill me now" and "shoot me" in the context of a defendants' suicide-by-cop theory. *Ibid.* Unlike that case, Plaintiff's statements are sought not to prove Plaintiff's motivation, but to provide context by which Plaintiff's pre-incident behavior can be understood.

Here, Plaintiff's post-incident statements and conduct are relevant to whether Plaintiff posed a threat to Deputy Ramos or others at the time force was employed, and whether he was resisting arrest at the time force was employed. Plaintiff testified that he was "cooperating during the encounter" and disagreed with a characterization of his behavior as "uncooperative." (Declaration of Timothy A. Hanna ("Hanna Decl."), Exh. A- Plaintiff's Deposition Testimony at 42:22-43:5.) Deputy Ramos' account of the incident is that Plaintiff was "uncooperative" that he warned Plaintiff multiple times to "stop flexing", and that immediately preceding the use of force Plaintiff "quickly turn[ed] his body to his right, which caused me to temporarily lose the grasp [he] had over his left arm." (*Id.* at Exh. B- Deputy Ramos Deposition Testimony at 159:3-160:4.) Plaintiff disputes that he turned and that Deputy Ramos lost his grasp. (*Id.* at Exh. A at 50:9-23.)

In his third Motion in Limine, Plaintiff seeks to exclude his statements and conduct after the use of force occurred. Specifically, he seeks to include statements like: "What did you do that for, f*cker? You are a bitch", "This bitch ass motherfucker", "You're a bitch, man. I want to kick you in the face so f*cking bad." (Plaintiff's Motion in Limine No. 3 at p. 2.) He also seeks to exclude his conduct where he pretended to spit at Deputy Ramos and Deputy Wilder Tramell. (*Ibid.*) Such statements arguably have a tendency to demonstrate that Plaintiff was not cooperative throughout the course of this encounter, despite his statements to the contrary.

This conduct also provides much needed context for the encounter. Deputy Ramos contends that Plaintiff was flexing and pulling against his efforts at control during the encounter, leading up to turning free from his grasp. If Plaintiff is willing to pretend to spit at the officers to cause them to show fear, it may be more likely that he would try to turn and pull free from the grasp of one of those officers to instill that same fear.

Ultimately, this evidence should be admitted because it is relevant to whether Plaintiff was resisting and threatening the Deputy at the time force was employed and provides much needed context to his earlier behavior.

**ii. Retaliation**

Plaintiff's post-incident conduct is also relevant to Plaintiff's claim that Deputy Ramos retaliated against him for failing to cooperate and using foul language because Deputy Ramos used no further force against him despite subsequent profanity laced statements and threats to spit at him or kick him. To maintain a First Amendment retaliation claim, a plaintiff must show (1) that he engaged in constitutionally-protected speech; (2) that defendants engaged in conduct that would "chill a person of ordinary firmness from future First Amendment activity;" and (3) that defendants' desire to chill his speech was the motivation for the allegedly-unlawful conduct. *Ford v. City of Yakima,* 706 F.3d 1188, 1192 (9th Cir.2013). "The evidence must enable Ford ultimately to prove that the officers' desire to chill his speech was a but-for cause of their allegedly unlawful conduct." *Id.* at 1193, citing *Lacey v. Maricopa County,* 693 F.3d 896, 916–17 (9th Cir.2012).

In this matter, Plaintiff has alleged that Deputy Ramos retaliated against him for the exercise of his "right to use language that is blunt or even vulgar and insulting" and his "right to remain silent in response to police interrogation." (Plaintiff's First Amended Complaint, ¶¶ 52-53.) As part of this claim, he will need to prove that Deputy Ramos' use of force was motivated by a desire to chill Plaintiff's expression of those rights. Following the use of force, Plaintiff continued to use foul and vulgar language and directly threatened violence against Deputy Ramos, nor did he suddenly provide the information initially

sought by Deputy Ramos to which he claimed to exercise his right to remain silent. (Plaintiff's Motion in Limine No. 3 at p. 2.) In this matter, Plaintiff's post-incident conduct and statements at least mirror, if not exceed the conduct he claims motivated this use of force. Nevertheless, there is no further use of force. This fact has a tendency to show that Deputy Ramos' use of force was not motivated by Plaintiff's foul language or refusal to answer questions, but alternative non-retaliatory factors like to address the threat Plaintiff presented by his resistant behavior.

**iii. Damages**

Finally, evidence of Plaintiff's post-incident conduct is highly relevant to his physical and emotional distress damages at issue in this action. In evaluating the type and amount of force inflicted, "the nature and degree of physical contact are relevant ... as are the risk of harm and the actual harm experience." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022), citations omitted)

In this matter, Plaintiff has claimed that as a result of this use of force "[h]e was diagnosed with shoulder and wrist sprain, a contusion on his chest wall and right foot, and a dental fracture." (Plaintiff's First Amended Complaint, ¶ 30.) He also claims "[h]e suffered physical pain, embarrassment and shame." *Ibid.* In his deposition, he testified that after the use of force he immediately felt embarrassed and "I felt shock, and I felt in danger." (Hanna Decl., Exh. A- Plaintiff's Deposition Testimony at 73:17-74:10.) Plaintiff's statements and conduct following the use of force have a tendency to show the veracity of Plaintiff's comments that he was in fear for his safety, or embarrassed and in shock. The jury should be entitled to weigh the credibility of Plaintiff's statements by being presented with evidence of his actual behavior and statements at the time of the incident. Further, this evidence shows the extent to which Plaintiff experience pain and physical injury by showing the immediate impact of this use of force and the immediate effect of any injuries he sustained. Such evidence is highly relevant to the issue of damages and should not be excluded.

///

**B. The probative value of this evidence outweighs its prejudice**

The multiple bases of relevance of this evidence substantially outweigh any prejudice Plaintiff may experience. "The court may exclude relevant evidence *if its probative value is substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403, emphasis added. Plaintiff may face some prejudice for this post-incident conduct, but arguably this will not be severely prejudicial because he also uses profanity and exhibits the same behavior prior to the use of force. (Hanna Decl., Exh. B- Deputy Ramos Deposition Testimony at 159:3-160:4.) This slight prejudice must be weighed against the probative value of this evidence as discussed above. In this instance, it is clear the prejudice does not outweigh its probative value.

## III. CONCLUSION

Based on the foregoing, Defendants respectfully request this Court deny Plaintiff's Motion in Limine No. 3 to exclude Plaintiff's Post-Use of Force Statements and Conduct as they are highly relevant to issues of liability and damages at issue in this action.

DATED: October 5, 2026

DAMON M. BROWN, County Counsel

By: *<u>/s/ Timothy A. Hanna</u>*
Timothy Hanna, Senior Deputy
Christopher Blaylock, Supervising Deputy
Attorneys for Defendants County of San Diego and Nicolai Ramos