EUGENE G. IREDALE: SBN 75292
PETER BIBRING: SBN 223981
SARAH MUSUMECI: SBN 328306
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

JOSEPH C. CRUDO: SBN 263993
JOSEPH C. CRUDO PLC
3990 Old Town Avenue, Ste. C101
San Diego, CA 92110
Telephone: (858) 622-7280
Fax: (858) 450-9411
Email: joseph@crudoplc.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMEL BURT,<br><br>Plaintiff,<br><br>v.<br><br>NICOLAI RAMOS, in his individual capacity; COUNTY OF SAN DIEGO;<br><br>Defendants. | CASE NO. 24-CV-0662-CAB-VET<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 1 AND 2 TO EXCLUDE EVIDENCE OF EXCESSIVE FORCE INVESTIGATIONS, LAWSUITS AND SETTLEMENTS AND STRODE INTERNAL AFFAIRS INVESTIGATION**<br><br>Hon. Cathy Ann Bencivengo<br><br>Final Pretrial Conf.: October 16, 2026 at 2:00 PM<br><br>Trial: November 16, 2026 at 8:45 AM |

## I. INTRODUCTION

In August, this Court rejected the County's motion for summary judgment on Plaintiff's *Monell* claims, finding that Plaintiff had presented sufficient evidence of a pattern of prior cases, based on which "a jury could conclude that that the County was on notice of a de facto practice of failing to discipline its employees for excessive force generally, particularly for excessive force on handcuffed or restrained individuals, and failed to take corrective action." MSJ Order, ECF No. 100 at 5. The Court also recognized that "Plaintiff also provide[d] evidence that Ramos himself had a history of using excessive force and the County failed to reprimand and train Ramos before allowing him to return to the line of duty and use force on Plaintiff." *Id.*

Having been told that the evidence is sufficient for a jury to find in Plaintiff's favor, Defendants in these two motions *in limine* take an alternate approach — they seek to exclude that crucial evidence. And astonishingly, they seek to exclude the very evidence the Court weeks ago found would support a jury verdict against them on grounds it is irrelevant: Defendants' motion *in limine* number 1, ECF 106, seeks a categorical order barring all evidence of excessive force investigations, lawsuits, settlements and the County's use of force statistics. Motion *in limine* number 2, ECF 107, seeks to exclude the 2017 Internal Affairs investigation of Ramos's strikingly similar use of force on detainee Joshua Strode.

Defendants' motions should be summarily rejected. Defendants' relevance objections simply attempt to relitigate the legal arguments this Court rejected weeks ago at summary judgment. Evidence simply cannot be irrelevant if it provides the jury with a basis to rule in Plaintiff's favor. Moreover, Defendants' argument cannot be squared with standards for motions *in limine* to exclude evidence, which courts should grant "only if the evidence is clearly inadmissible for any purpose," and should otherwise reject in order to "allow questions of foundation, relevancy, and prejudice to be resolved in context" at trial. *Langer v.*

*Kiser*, 495 F. Supp. 3d 904, 909 (S.D. Cal. 2020).

## II. BACKGROUND

Plaintiff's *Monell* claim rests on three overlapping theories, each of which this Court found triable. First, the Sheriff's Department maintains a custom and practice of tolerating excessive force. Over the three years preceding the incident with Mr. Burt, out of 10,536 reported uses of force, the Department opened only 21 internal-affairs investigations and found just three uses of force out of policy, a rate of 0.029%. Plaintiff's police-practices expert opined that the fact that this rate falls far below comparable agencies can only mean the Department turns a blind eye to excessive force. Second, the County was repeatedly placed on notice of this problem because between 2014 and 2024, it paid more than $35 million to settle approximately fifty excessive force cases, including eight involving handcuffed or restrained individuals. Third, the County failed to discipline Ramos for a nearly identical use of force on Joshua Strode in 2017, a failure the Sheriff reviewed and approved, and which the County paid more than $130,000 to settle.

## III. LEGAL STANDARD

Exclusion of evidence via a motion *in limine* is a disfavored remedy. "Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose. If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Langer v. Kiser*, 495 F. Supp. 3d 904, 909 (S.D. Cal. 2020).

Relevant evidence is admissible unless the Constitution, a federal statute, or the Rules of Evidence provide otherwise. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015). That is a low bar. Exclusion under Rule 403 is the exception, not the rule. Relevant evidence may be excluded only where its probative value is

"substantially outweighed" by an articulated danger. Fed. R. Evid. 403. Rule 403 "favors admissibility." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Because "[r]elevant evidence is inherently prejudicial," the application of Rule 403 "must be cautious and sparing" and reserved for "excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id*. (internal quotation omitted).

## IV. ARGUMENT

### A. This Court already held that evidence of excessive force investigations, lawsuits and settlements and the Strode IA are relevant to Plaintiff's *Monell* Claim.

The County's motion treats every category of evidence it challenges (prior lawsuits, Internal Affairs investigations, settlements and use of force statistics) as if Plaintiff were offering each one to prove that deputies actually used excessive force in that specific incident. Not so. To hold the County liable for a policy of inaction, Plaintiff must prove deliberate indifference, which requires showing that the County "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citation omitted). Deliberate indifference is shown through policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). Each category of evidence the County seeks to exclude is relevant to show what the County knew about its deputies' use of force, and about its own failure to address it, before December 18, 2022. The Court has already recognized this, finding that Plaintiff "identified several cases from which the County was aware of allegations that the County's employees used excessive force on restrained individuals" and that "a jury could conclude that the County was on notice of a de facto practice of failing to discipline its employes for excessive force…." MSJ Order at 5.

**1. Prior Lawsuits and Internal Affairs Investigations.**

The County's motion repeats an argument the Court has already rejected. At summary judgment, the County argued that the prior lawsuits were not "substantially similar in character" to this case and could not establish a custom. County MSJ, ECF No. 80-1, at 19. Plaintiff responded with specific incidents of force use on handcuffed people in *Bell*, *Fisher*, *Jimenez*, *Martinez*, *Myles*, *Steinmeier*, *Villa*, *Phounsy* and *Strode*. MSJ Oppo, ECF No. 94, at 31-33. The Court denied the motion. The County's motion *in limine* does distinguish that ruling. Instead, it refers the Court back to the same pages of the same brief, stating that the County "distinguished each of these cases from the underlying action at length in its motion for summary judgment." ECF No. 106 at 4. The County's authorities confirm that this is a sufficiency argument, not an admissibility argument. The cases Defendants cite address whether certain evidence is sufficient to *allege* or *prove* a custom, not whether it is *admissible* at trial. None excludes evidence at trial under Rule 401 or 403. Defendants' factual dissimilarity arguments are jury arguments dressed as exclusion rules.

Setting aside whether the prior lawsuits help prove a custom, they independently bear on the County's notice of problems with excessive force. The County argues that most of the cited cases ended without a finding of liability. ECF No. 106 at 4. But the County nonetheless received the claims, defended them, and in many cases paid substantially to resolve them, making it aware of what the deputies were alleged to be doing — pushing a man face-down onto the pavement and punching him in the back of the head after he was handcuffed (*Fisher*), shoving a handcuffed man headfirst into a fence (*Martinez*); or beating a man with a closed fist while he was in restraints (*Villa*) — giving the County notice regardless of how each case ended. Whether the County had notice before December 18, 2022 that its deputies were using force, especially on restrained individuals, without consequence, is a central question for the jury on deliberate indifference. These

prior excessive force investigations, lawsuits and settlements are the most direct evidence of what the County knew and when it knew it.

**2. Settlements.**

Rule 408 does not bar settlement evidence. The rule prohibits using a compromise "to prove or disprove the validity or amount of a disputed claim," and it expressly allowed settlement evidence "for another purpose." Fed. R. Evid. 408(a), (b). Plaintiff does not offer the County's settlements to show that claims in those cases were valid. Plaintiff offers them to show that, while the County's internal review system almost never found force out of policy, it was paying out more than $35 million over ten years to approximately fifty people who alleged excessive force. That gap is what puts the County on notice that its internal findings did not reflect how often its deputies were alleged to be using force unlawfully. The County's argument that "parties settle for a myriad of reasons" (ECF No. 106 at 6) is an argument it can make to the jury, it is not a basis for exclusion. As for the County's concern that the jury might see it as having "deep pockets," the Court can address it with a limiting instruction. Such a concern does not warrant excluding evidence that is directly relevant to an element of a claim.

**3. Statistical Analysis.**

The statistics come from the County's own records. Over three years, it reported 10,356 uses of force, opened 21 internal affairs investigations into them and sustained only three. The County is charged with knowing its own data. Evidence that its review process found force out of policy roughly once a year bears directly on whether policymakers knew, or should have known, that the process was not functioning as a check on excessive force. Courts have recognized that statistical evidence of this kind can support a municipal custom of tolerating misconduct. In *Larez v City of Los Angeles*, the Ninth Circuit upheld a verdict holding the City and Chief Gates liable based on expert testimony that the department's complaint procedures made it "almost impossible for a police officer

to suffer discipline as a result of the complaint lodged by a citizen." 946 F.2d 630, 647 (9th Cir. 1991). That is precisely the inference Plaintiff's evidence supports here, and on far starker record. The County objects that the 10,356 figure includes all types of force, and that comparisons to other agencies do not account for differences between departments. Those are arguments about weight that the County can make to the jury. They are not a basis for exclusion.

**4. Strode IA Investigation.**

The Strode IA file is also directly relevant to Plaintiff's *Monell* claim. In *Velazquez*, the Ninth Circuit held that a district court abused its discretion by granting a motion *in limine* to preclude reference to complaints, discipline and internal affairs history concerning a defendant officer's prior uses of force. 793 F.3d at 1027-28. The court explained that excluded evidence "was relevant, indeed critical, to prove that the City was aware of [the officer's] alleged tendency to use excessive force." *Id*. at 1028. By excluding it, the district court "entirely prevented [the plaintiff] from developing a potentially meritorious *Monell* claim." *Id*. That is precisely what Defendants ask this Court to do. A "custom or practice can be inferred from . . . evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Id.* at 1027, quoting *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1223 (9th Cir. 2011). "Evidence of 'identical incident[s]' to that alleged by the plaintiff may establish that a municipality was put on notice of its agents' unconstitutional actions" and "evidence of departmental treatment of complaints and use of force can support the [plaintiff's] theory that… disciplinary and complaint processes… contributed to the police excesses complained of because the procedures made clear to [the] officer that [he] could get away with anything." *Id*., quoting *Henry v. Cnty. of Shasta*, 132 F.3d 512, 518-21 (9th Cir. 1997), opinion amended on denial of reh'g, 137 F.3d 1371 (9th Cir. 1998) and *Larez*, 946 F.2d at 646-47.

The Strode incident is part of the core evidence of Plaintiff's *Monell* claim.

In 2017, Ramos used a similar aggressive and unjustified takedown on detainee Joshua Strode. The County investigated the incident, found the force to be within policy and reprimanded Ramos only for failing to communicate. Then it paid $130,708.23 to settle Strode's suit. That sequence is direct evidence that the County was on notice of Ramos's propensity and that its disciplinary process, or lack thereof, taught Ramos he could "get away with anything" and led to the use of force Ramos inflicted on Plaintiff.

**B. The Strode Incident is Crucial Evidence of Causation under *Monell***

The Strode incident provides even more central evidence on another element of Plaintiff's *Monell* claim — it is crucial to showing that the County's policies caused the constitutional injury to Mr. Burt. To sufficiently establish a *Monell* claim, Plaintiff must show more than the existence of a municipal policy or custom that can lead to constitutional violation — the plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 940 (S.D. Cal. 2022) ("To sufficiently establish a *Monell* claim, Plaintiff must show the municipal action was the moving force behind the alleged constitutional violation."). To meet the "moving force" requirement, a plaintiff "must show both causation-in-fact and proximate causation." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).

Here, on both Plaintiff's *Monell* theories that the County permitted a custom and practice of tolerating excessive force, and of ratifying Ramos's actions, the linchpin for causation is the Strode incident — the County has a policy of tolerating excessive force such as the unnecessary takedown of Mr. Burt. But Ramos understood that policy clearly because the County failed to discipline his similar use of force against Strode, and because of that failure, the County's policy caused Ramos to use force again in this incident. The Strode incident provides the primary proof that the County's policy caused Mr. Burt's injury.

**C. The Strode Incident is Independently Admissible Under Plaintiff's Ratification Theory.**

The Strode Internal Affairs investigation is independently relevant to Plaintiff's ratification theory. A municipality may be liable where "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (citation omitted). The Ninth Circuit has found ratification in this exact scenario: where a policymaker reviews an internal affairs investigation and approves the decision not to sustain a complaint. In *Larez*, an individual filed a complaint with the Los Angeles Police Department (LAPD) alleging that excessive force was used against him in a search. 946 F.2d at 634-35. The LAPD investigated the complaint and the police chief "signed a letter informing [the complainant] that none of his many complaints would be sustained, thereby ratifying the investigation." *Id*. at 645-48. Here, the County's Rule 30(b)(6) designee testified that all formal discipline, including written reprimands, is reviewed up the chain of command "to and including the Sheriff," who can overrule or sustain findings. The Sheriff is a final policymaker. The Strode investigation is relevant to Plaintiff's ratification theory because the final policymaker reviewed the decision clearing Ramos's use of force and endorsed it.

**D. The Strode Investigation is Not Inadmissible Hearsay.**

Defendants' hearsay objection sweeps far too broadly. It treats the entire investigation as singularly inadmissible. In fact, the County's own investigative finds are admissible for two reasons. First, the Strode Internal Affairs file is the County's record of its own investigation which reached its own findings: that Ramos's use of force was within policy and that he would receive only a written reprimand for failing to communicate. The Internal Affairs file also contains Ramos's own statements. Both are statements of a party opponent under Federal Rule of Evidence Rule 801(d)(2). They are also admissible under the business records exception. Fed. R. Evid. 803(6). Second and more importantly, the purpose

of the Strode investigation is to show what the County knew and how its policymakers responded. Offered for that purpose, the investigation is not hearsay because it is not offered to prove the truth of any matter asserted but to prove the County's awareness and its approval of the lack of discipline imposed to Ramos. That the Sheriff's chain of command reviewed and let stand the "within policy" finding is probative of ratification. It is not excludable as hearsay.

### E. Rule 404 Does Not Bar the Strode Investigation Because It Is Not Offered as Impermissible Character Evidence.

Defendants' Rule 404 argument fails because it mischaracterizes the purpose of the evidence. Rule 404 bars "other act" evidence only when offered to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The Strode evidence is not offered for that purpose. It is offered to prove the County's knowledge, its custom and practice of tolerating excessive force, and its ratification of Ramos's conduct. The Ninth Circuit resolved this precise question in *Valezquez*, 793 F.3d at 1028. Confronting the concern that prior-complaint evidence "would have suggested to the jury that [the officer] acted in accordance with these past actions," the court held that any such concern "could have been cured short of categorical exclusion by an appropriate limiting instructing." *Id.*

The court adopted the reasoning of *Beck*, which recognized that evidence of other wrongs or acts that was not admissible to prove the character of a person under Rule 404(b) was nonetheless admissible for "proof of knowledge" on the part of the police department. *Id.*, discussing *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996). The Ninth Circuit noted that, as in *Beck*, a jury might have been reasonable to infer from prior complaints that the Long Beach Police Department was aware that the officer had previously used excessive force when making arrests but had taken no action to curb his propensity. *Id.* at 1028. The Ninth Circuit concluded that "the district court's categorical exclusion of evidence relevant to

establishing [plaintiff's] theory of municipal liability [was] an abuse of discretion. *Id*. The same logic controls here. The Strode Internal Affairs investigation is admissible to prove the County's knowledge of Ramos's violent propensities and its failure to curb it, regardless of Rule 404(b)'s bar on character evidence. Defendants' own authorities confirm this distinction. Each of the decisions they cite addressed evidence offered to show the individual officer's propensity, not evidence offered against a municipality on a *Monell* theory of notice, custom and ratification. To the extent Defendants fear the jury will misuse the evidence as proof of propensity against Ramos on the individual claims, the remedy the Ninth Circuit prescribed is a limiting instruction, not wholesale exclusion of evidence.

**F. Rule 403 Does Not Warrant Exclusion of the Strode IA File.**

Exclusion under Rule 403 is the exception, not the rule. Relevant evidence may be excluded only where its probative value is "substantially outweighed" by an articulated danger. Fed. R. Evid. 403. As set forth above, the Strode Internal Affairs file is central to Plaintiff's *Monell* claim. Much of the Strode record is undisputed and captured on video so the "trial within a trial" Defendants predict is overstated. Any concern about spillover prejudice to Ramos is better addressed by a limiting instruction, not by exclusion.

## V. CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motions *in limine.*

Respectfully submitted,

Dated: October 5, 2026

**IREDALE AND YOO, APC**
*s/ Eugene Iredale*
EUGENE IREDALE
PETER BIBRING
SARAH MUSUMECI
Attorney for Plaintiffs